## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **SENECA FOODS CORPORATION,** ) | **Court No. 22-00243** |
| **Plaintiff,** ) | |
| ) | **PUBLIC VERSION** |
| **v.** ) | |
| ) | Confidential Information deleted |
| **UNITED STATES,** ) | from Pages 8, 26, 27, 29, 30, and |
| ) | Exhibits 13.2–18.2 and 29.2–30.2 |
| **Defendant.** ) | |

## COMPLAINT

Seneca Foods Corporation ("Seneca" or "Plaintiff"), by and through its counsel, Covington & Burling LLP, for its Complaint against Defendant United States, acting by and through the U.S. Department of Commerce (the "Department" or "Commerce"), alleges as follows:

1.      This action concerns Defendant's unlawful denial of requests for exclusion ("exclusion requests") from tariffs imposed under Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862) ("Section 232"), that were filed by Seneca.

2.      Section 232 authorizes the President to take action against imports following an investigation that properly concludes that the imports in question are being brought into the United States "in such quantities or under such circumstances as to threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A).

3.      In March 2018, the President, acting pursuant to Section 232, issued Presidential Proclamation 9705, which imposed a 25 percent *ad valorem* tariff on certain imports of steel products ("Section 232 tariffs" or "the tariffs"). *See Adjusting Imports of Steel into the United States*, Pres. Proc. No. 9705, 83 Fed. Reg. 11,625 (Dep't Commerce Mar. 8, 2018) ("Proclamation 9705").

4.      The President's Proclamation stated that the tariffs were intended to "help our domestic steel industry, to revive idled facilities, open closed mills, preserve necessary skills by hiring new steel workers, and maintain or increase production." Proclamation 9705, 83 Fed. Reg. at 11,626. At the same time, the President recognized that the Secretary had recommended that he "authorize {the Secretary}, in response to specific requests from affected domestic parties, to exclude from any adopted import restrictions those steel articles for which the Secretary determines there is a lack of sufficient U.S. production capacity of comparable products." *Id.*, 83 Fed. Reg. at 11,625.

5.      Accordingly, Proclamation 9705 instructed the Department to provide relief from the Section 232 tariffs for steel products "determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality," or based upon "specific national security considerations." *Id.*, 83 Fed. Reg. at 11,627.

6.      Pursuant to Proclamation 9705, the Department developed a product exclusion process through which the agency would grant interested parties an exclusion from the Section 232 tariffs for imports of products, *inter alia*, "not produced in the United States in a sufficient and reasonably available amount." *Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106, 12,110 (Dep't Commerce Mar. 19, 2018) ("March 2018 Interim Rule"); *see also Submission of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026 (Dep't Commerce Sept. 11, 2018) ("September 2018 Revised IFR"); *Implementation of New Commerce Section 232 Exclusions Portal*, 84 Fed. Reg. 26,751 (Dep't Commerce June 10, 2019) ("June 2019 Revised IFR"); *Section 232 Steel and Aluminum Tariff*

PUBLIC VERSION

*Exclusions Process*, 85 Fed. Reg. 81,060 (Dep't Commerce Dec. 14, 2020) ("December 2020 Revised IFR").

7.     Seneca is primarily a fruit and vegetable processor with 24 facilities across the United States. Seneca is the largest vegetable canner in the United States, representing a significant quantity of the canned vegetables sold in the country (excluding tomatoes and dry beans). Seneca also engages in farming, plant breeding, seed development, transportation, and can manufacturing.

8.     Seneca requires tin mill products, which consist of steel, in order to manufacture its own cans for vegetables. Today, Seneca is the last U.S.-based food company that still makes its own cans. Seneca has invested more than $50 million over the last 12 years in its can making operations, with its primary can making facility in Baraboo, Wisconsin, and another smaller facility located in Payette, Idaho. Seneca employs over 350 people in these operations, with an annual payroll in the tens of millions of dollars.

9.     Prior to 2014, apart from minor trials of imported material, Seneca purchased 100% of its tin mill products from domestic producers. In 2013, Seneca's major U.S. supplier communicated concerns about the sustainability of a major portion of domestic tin mill production. Tin mill products represent roughly 2% of overall U.S. steel production, and there are only two fully integrated domestic producers: United States Steel Corporation ("USS") and Cliffs Steel Inc. (formerly known as Cleveland-Cliffs Inc., which in 2020 acquired the tin mill operations of ArcelorMittal USA LLC). One smaller supplier, Ohio Coatings Company, provides coating only; in order to make Seneca's products, it must rely on other suppliers for the necessary substrate, which it often cannot obtain in sufficient volumes.

10.     In 2014, Seneca began qualifying foreign suppliers and importing a portion of its required tin mill products from other countries due to domestic supply shortfalls, which only became more acute in subsequent years. As a result, when the Section 232 tariffs entered into

force and the exclusion process was established in 2018, Seneca immediately requested product exclusions in March and April 2018 for a limited volume of imported prime electrolytic tinplate ("ETP") products. *See* Seneca Exclusion Request IDs BIS-2018-0006-0019 (Mar. 28, 2018), BIS-2018-0006-0770 (Apr. 13, 2018), and BIS-2018-0006-5050 (Apr. 28, 2018), attached hereto as **Exhibits 1–3**, respectively.

11.     The only objection from the domestic industry came from USS, which claimed that it had available capacity even though—as Seneca explained in its rebuttal—representatives of USS had informed Seneca in early March 2018 that USS "had no short term capacity" but expected to have availability later in the year. Seneca Rebuttals to USS Objections for BIS-2018-0006-0019 and BIS-2018-0006-0770, attached hereto as **Exhibits 4** and **5**, respectively, at 1. Seneca further explained that the volumes covered by its 2018 requests were ordered in the fall of 2017, before the Section 232 tariffs were imposed, and were "critically necessary to satisfy production demand for containers to be used for the summer fresh vegetable harvest and pack season" in 2018. *Id.* The International Trade Administration ("ITA") of the Department nonetheless credited the USS objection and recommended that Commerce find that the ETP at issue is produced in a sufficient and reasonably available amount and deny the requests on that basis, which it did in a decision memorandum signed on July 12, 2018. *See* BIS Decision Document – Steel Section 232 Remedy Exclusion Request, Exclusion Request ID BIS-2018-0006-0770 (July 12, 2018), attached hereto as **Exhibit 6**.

12.     After filing the exclusion requests that were ultimately denied in mid-2018, Seneca continued to attempt to source tons of tin mill steel from USS, given its certified claims to Commerce of available capacity. On May 15, 2018, Seneca placed a purchase order with USS for delivery in August 2018. Deliveries of that order were substantially delayed, with the final coil arriving in February 2019. From that date forward—throughout 2019, 2020, and

2021—Seneca continued to engage USS for additional tons, but USS invariably declined to offer any volume.

13.     On October 21, 2021, Seneca filed five exclusion requests for tin mill products, two of which were for tin-free steel ("TFS") products and the remaining three of which were for ETP products. *See* Seneca Exclusion Request Nos. 257423 (Oct. 20, 2021), 257428 (Oct. 20, 2021), 257708 (Oct. 21, 2021), 257709 (Oct. 21, 2021), and 257712 (Oct. 21, 2021), attached hereto as **Exhibits 7–11**, respectively. All five October 2021 requests were for volumes scheduled for delivery during the fourth quarter of 2021. After confirming that no additional volume was available from domestic producers for early 2022, Seneca filed a sixth exclusion request on January 23, 2022, also for ETP products. *See* Seneca Exclusion Request Number 275504 (Jan. 23, 2022), attached hereto as **Exhibit 12**.

14.     These six exclusion requests were submitted after Seneca had confirmed that no domestic producers were able to supply the required volumes of steel, a fact that Seneca explained to Commerce in certified submissions. As in 2018, USS nonetheless objected to Seneca's exclusion requests, on the purported basis that it could provide the subject tin mill products in "a sufficient and reasonably available amount or of a satisfactory quality," despite having previously confirmed with Seneca that it was *not* able to provide the required volumes within the required timeframe. Indeed, even *after* USS filed its objections, the company again confirmed to Seneca that USS could not provide *any* volume for the required tin mill products into early 2022. In conjunction with its rebuttal submissions, Seneca provided contemporaneous evidence of these communications with USS to Commerce. *See* Seneca Rebuttal to USS Objections for Exclusion Request Nos. 257423, 257428 (Dec. 2, 2021), attached hereto as **Exhibits 13.2** and **14.2**, respectively; Seneca Rebuttal to USS Objections for Exclusion Request Nos. 257708, 257709, and 257712 (Dec. 3, 2021), attached hereto as **Exhibits 15.2**, **16.2**, and **17.2**, respectively.

15.     In December 2021, USS "acknowledge{d} that, as stated in Seneca's rebuttals, it has not supplied the Requestor with tin mill products since February 2019, which is more than two years before submission of U.S. Steel's objections," and that "{c}ontradictory statements in each of the Objections {filed by USS} were made in error." USS Surrebuttal to Seneca Exclusion Request Nos. 257423, 257428, 257708, 257709, and 257712, attached hereto as **Exhibits 42–46**, respectively, at Attachment p. 1. USS also acknowledged that across this extended time frame, during which it made zero tons available to Seneca, "U.S. Steel regularly discussed tin mill product availability and sales with Seneca throughout 2019, 2020, and 2021." *Id.*

16.     Despite certified statements and contemporaneous documents establishing the lack of a sufficient quantity of tin mill products in the domestic market, including from USS, Commerce yielded to objections from USS and denied all six of Seneca's exclusion requests. *See* BIS Decision Documents – Steel Section 232 Remedy Exclusion Request, Exclusion Request Numbers 257423, 257428, 257708, 257709, 257712 (Apr. 9, 2022), attached hereto as **Exhibits 19–23**, respectively; BIS Decision Document – Steel Section 232 Remedy Exclusion Request, Exclusion Request Number 275504 (Apr. 30, 2022), attached hereto as **Exhibit 24**. In so doing, the Department issued generic, boilerplate denials, ignoring or failing to give appropriate weight to evidence that USS had consistently declined to supply a single ton of steel to Seneca at any time since February 2019 and remained unable and/or unwilling to supply the requested tin mill products in the requisite timeframe identified by Seneca in its requests. *See* **Exhibits 19–24**.

17.     Indeed, Commerce failed to offer a reasoned basis for its rejection of Seneca's arguments regarding the longstanding unavailability of tin mill products from USS at any time, including when the relevant orders were placed and scheduled for delivery. Nor did Commerce address the fact that USS itself acknowledged the limited availability of tinplate during the

relevant time frame for Seneca's requests. Instead, without explanation as to the demonstrated unavailability for Seneca of ETP and TFS from USS, Commerce relied on the *hypothetical future* availability of these tin mill products from USS to deny Seneca's requests. *See* **Exhibits 19–23** at ITA Recommendation Document p. 2.

18.     The Department's failure to consider the evidence provided by Seneca that USS was unable and/or unwilling to supply the requested tin mill products in the required quantity within the specified time period and to provide a reasoned explanation of the basis for its denial of Seneca's exclusion requests is arbitrary, capricious, and an abuse of discretion, in violation of the Administrative Procedure Act. *See* 5 U.S.C. §§ 701 *et seq.*

19.     In addition, on March 15, 2022, Seneca filed two new exclusion requests for tin mill products, one for TFS products and the other for ETP products. *See* Seneca Exclusion Request Nos. 283368 (Mar. 15, 2022) and 283369 (Mar. 15, 2022), attached hereto as **Exhibits 25** and **26**, respectively.

20.     As explained to Commerce in certified submissions, the volumes covered by the March 2022 requests were limited to orders placed by Seneca for 2022 supply and placed soon after all relevant domestic producers—including USS—affirmatively declined to award Seneca any additional volume for 2022. *See id.* at Attachment p. 3. As before, USS yet again objected to Seneca's exclusion requests. *See* USS Objections (Apr. 16, 2022) to Seneca Exclusion Request Nos. 283368 and 283369, attached hereto as **Exhibits 27** and **28**, respectively. These objections were filed even though (i) the relevant imports of ETP and TFS products were limited to volumes ordered in late 2021 only after USS affirmatively declined to contract for *any* tin mill supply to Seneca in 2022; (ii) USS had declined even to give Seneca a quote for tin mill products due to its inability to supply additional material in 2022; and (iii) USS had neither quoted nor offered to Seneca, let alone delivered, a *single ton of steel* for *almost three years*. Nevertheless, USS stated in a certified submission to BIS that it was

"capable of immediately manufacturing" the requested ETP and TFS products for Seneca. *Compare* **Exhibits 25–26** at Attachment pp. 1, 3 *with* **Exhibit 27–28** at 7.

21.     In rebuttal, Seneca submitted confidential business information ("CBI") documenting that in November 2021, USS [

                              ]; that all orders had been placed in October 2021, with expected delivery dates for the vast majority of the volume from [                    ], 2022; and that USS had just recently offered Seneca [

                              ] for delivery no sooner than [          ], after the time frame for the principal volumes at issue. *See* Seneca Rebuttal No. 51109 to USS Objection for Exclusion Request No. 283368 (Apr. 23, 2022), attached hereto as **Exhibit 29.2**; Seneca Rebuttal No. 51110 to USS Objection for Exclusion Request No. 283369 (Apr. 23, 2022), attached hereto as **Exhibit 30.2**.

22.     On July 9, 2022, the Department denied both of Seneca's March 2022 exclusion requests, this time not on the merits but on the basis of an entirely new and unexplained "Rationale," namely: "ITA is unable to provide a complete analysis due to an issue with the request." *See* BIS Decision Documents – Steel Section 232 Remedy Exclusion Request, Exclusion Request Nos. 283368, 283369 (July 9, 2022), attached hereto as **Exhibits 31** and **32**, respectively, at ITA Recommendation Document p. 1. There is no clue in the BIS Decision Memoranda as to what the "issue with the request" might be. Indeed, the memos do not acknowledge the basis for the ITA Recommendation, or the fact that ITA did not perform a complete analysis: the memos merely indicate that ITA "provided the attached findings" and recommends a denial, which BIS accepted without the slightest scrutiny and with no explanation. *See id.* at BIS Decision Document p. 1.

23.     The blind deference of BIS to ITA's recommendation that both Seneca requests be denied was wholly unjustified for multiple reasons. For one thing, in both recommendation

documents, the ITA analysis with respect to "Quality" is erroneous on its face. The ITA expert treated quality as a disputed issue, but it was not: Seneca expressly disclaimed quality as a basis for its rebuttals. *Compare* **Exhibits 31–32** at ITA Recommendation Document p. 2 *with* Seneca Rebuttal No. 51109 to USS Objection for Exclusion Request No. 283368 (Apr. 23, 2022), attached hereto as **Exhibits 29.1** and **30.1**, at 1. Worse, the expert's "Analysis of the Record" in Request 283369 opens by stating that "Seneca seeks exclusion for prime tin-free steel." **Exhibit 32** at ITA Recommendation Document p. 2. This is flatly, and obviously, incorrect: the product description for Request 283369 makes clear that it covers "Prime electrolytic tinplate," or ETP—not TFS. *See* **Exhibit 26** at 4.

24.     In addition, the "issue with the request" appeared to be based in large part on the ITA expert's view that "there is insufficient technical information to resolve whether the requested product is identified in the CBI." *See* **Exhibits 31–32** at ITA Recommendation Document p. 2. Yet the CBI at issue contained verbatim copies of the very same communications with USS that Seneca had submitted in prior rebuttals. With the prior rebuttals, the ITA expert had no confusion or difficulty identifying the products at issue in the CBI, analyzing disputed issues, and recommending a decision on the merits (albeit one that was not supported by the record evidence). *See* **Exhibits 19–24**. Yet for the two requests filed in March on the same products, the Department reversed itself and repeatedly indicated that "ITA is unable" to complete its evaluation as to quantity or delivery time, the key disputed criteria. *See* **Exhibits 31–32** at ITA Recommendation Document pp. 2–3.

25.     Moreover, the Department's explanation of why it was suddenly "unable" to perform its assigned duty was woefully inadequate. If Seneca had wanted to resubmit these requests with "new or different facts," as the BIS memo encourages, *see id.* at BIS Decision Document p. 2, it is entirely unclear as to what technical or delivery information would need

to be corrected or added to make the resubmissions ripe for "a complete analysis" and decisions on the merits.

26.     The Department's denials of Seneca's March 2022 requests based on errors of fact, the failure to engage or analyze evidence of insufficient availability provided by Seneca, and the newly alleged insufficiency of technical information in previously unchallenged CBI materials, as well as the failure of the Department to provide a reasoned explanation for the basis of its denials or for its inconsistent treatment of the same CBI information, are arbitrary, capricious, and an abuse of discretion, in violation of the Administrative Procedure Act. *See* 5 U.S.C. §§ 701 *et seq*.

## JURISDICTION

27.     This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(2) and (4) because it concerns claims against the United States or its agencies arising out of laws concerning "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and the "administration and enforcement" of such laws.

## THE PARTIES AND STANDING

28.     Plaintiff Seneca purchases imported tin mill products, consisting of steel, from foreign countries in order to manufacture its own cans in the United States.

29.     Plaintiff has standing to bring this action because it is "adversely affected or aggrieved by agency action" within the meaning of the Administrative Procedure Act ("APA"), namely the Department of Commerce's wrongful denial of Seneca's requests from exclusions from Section 232 steel tariffs. 5 U.S.C. § 702; 28 U.S.C. § 2631(i).

30.     Defendant is the United States of America, acting by and through the U.S. Department of Commerce.

## TIMELINESS OF THIS ACTION

31.    A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues." 28 U.S.C. § 2636(i). The instant action contests Commerce's 2022 denials of Plaintiff's requests for exclusion from the Section 232 tariffs. Commerce denied these requests through published decision memoranda. *See* **Exhibits 19–24**, **31–32**. Plaintiff's claims accrued, at earliest, on April 9, 2022, when the Bureau of Industry and Security ("BIS"), a sub agency of the U.S. Department of Commerce, issued the first of its eight decision memoranda denying Plaintiff's exclusion requests. *See* **Table 1** (summarizing Seneca's exclusion requests). The remaining decision memoranda were issued on April 30, 2022 and July 9, 2022. *See id.* This Summons and Complaint, therefore, are timely filed within the time specified in 28 U.S.C. § 2636(i), having been filed within two years of the issuance of the decision memoranda.

## FACTUAL BACKGROUND

**A.    Statutory and Regulatory Background**

32.    Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. § 1862), authorizes the Secretary of Commerce, in coordination with the Secretary of Defense, to conduct an investigation "to determine the effects on the national security of imports" of any articles. Upon completing this investigation, the Secretary must provide the President with a report advising whether the articles under investigation are "being imported into the United States in such quantities or under such circumstances as to threaten to impair the national security." 19 U.S.C. § 1862(b)(1)(A), (3)(A).

33.    If the President concurs with the Secretary's finding that a threat exists, the President shall "determine the nature and duration of the action that, in the judgment of the President, must be taken to adjust the imports of the article and its derivatives so that such imports will not threaten to impair the national security." *Id.* § 1862(c)(1)(A)(ii).

34.     Pursuant to Section 232, on March 8, 2018, the President issued Proclamation 9705, imposing additional duties on imports of steel in order to "enable domestic steel producers to use approximately 80 percent of existing domestic production capacity and thereby achieve long-term economic viability through increased production." Proclamation 9705, 83 Fed. Reg. at 11,625. The Proclamation further directed the Secretary of Commerce to grant exclusions from these tariffs if the Secretary determines that any steel product for which an exclusion is requested is not "produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality." *Id.* at 11,627. The Proclamation noted that imposing additional duties on steel imports "would enable domestic steel producers to use approximately 80 percent of existing domestic production capacity and thereby achieve long-term economic viability through increased production." *Id.* at 11,625.

35.     On March 19, 2018, the Department of Commerce, through BIS, issued an interim final rule (codified at 15 C.F.R. pt. 705, supp. 1) setting forth the circumstances in which the Department would grant a product exclusion to directly affected U.S. businesses. Following a notice and comment period, on September 11, 2018, the Secretary supplemented the rules for product exclusion requests in a second interim final rule. *See* September 2018 Revised IFR, 83 Fed. Reg. 46,026.

36.     On June 10, 2019, the Department of Commerce issued a third interim final rule that granted the public the ability to submit new exclusion requests through the newly-developed 232 Exclusions Portal (https://232app.azurewebsites.net/). June 2019 Revised IFR, 84 Fed. Reg. 26,751. On December 14, 2020, the Department of Commerce issued yet another interim final rule to "implement additional changes the Department has determined will further improve the 232 exclusions process." December 2020 Revised IFR, 85 Fed. Reg. at 81,060.

37.     The regulations adopted by the Department of Commerce set forth the procedures for affected parties to request product exclusions from the Section 232 tariffs or

quotas. They also provide that domestic producers may object if they are capable of promptly providing the imported product in the United States.

38.     According to the Department, "{t}he exclusion process is available to individuals and companies to ensure that they can obtain adequate supply of steel and aluminum products of size, shape, and function that are not available in the United States in adequate quantity or quality." 2018 Revised IFR, 83 Fed. Reg. at 46,028; *see also id.* ("{T}he exclusion process will be there to fill any temporary gaps in the U.S. supply to ensure that companies . . . will have the steel and aluminum they need to continue to invest in the United States.").

39.     The Department's regulations provide that a product is "not produced in the United States in a sufficient and reasonably available amount" if:

> the amount of steel that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities. Available "immediately" means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer "within eight weeks," or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier.

December 2020 Revised IFR, 85 Fed. Reg. at 81,076; 15 C.F.R. pt. 705, supp. 1(c)(6)(i).

40.     The Department's regulations place the burden on the objector to demonstrate that it can produce the product at issue within the requisite timeframe. *See* September 2018 Revised IFR, 83 Fed. Reg. at 46,029 ("{I}f a U.S. supplier objects to an exclusion request, the burden is on that supplier to demonstrate that the exclusion should be denied because of failure to meet the specified criteria.").

41.     Under the Department's regulations, requesters have no procedural opportunity to appeal the denial of an exclusion request within the agency or to challenge the Department's assessment of competing factual claims. Rather, the Department has instructed U.S. purchasers

whose requests are denied on the basis of inaccurate or unsubstantiated objections instead to file new exclusion requests based on any newly obtained information regarding availability from objecting domestic producers. *Id.* at 46,043; *see also* December 2020 Revised IFR, 85 Fed. Reg. at 81,065 ("Should all objectors be unable to produce a requested product as they represented in their objections, the requester may submit a new request with documentation evidencing this refusal.").

42.     In particular, the Department has made clear that the process allows "an exclusion requester to subsequently reference in a new exclusion request that an objector was not able to provide the steel or aluminum in a previous exclusion request." December 2020 Revised IFR, 85 Fed. Reg. at 81,066. As a result, when the "same objector objects to the new exclusion request, the rebuttal process allows the exclusion requester to document in the rebuttal the past activity with that objector," which according to its regulations the Department should take into account in its assessment of the new request. *Id.*

**B.      Insufficient Availability of Domestic Tinplate and the Experience of Seneca and the U.S. Can Manufacturing Industry with Section 232 Product Exclusions**

43.     Since 2018, the Section 232 action has provided an opportunity for the domestic steel industry to invest in modernizing and expanding its tin mill production capability. Yet despite strong U.S. demand for steel cans, especially during the COVID-19 pandemic, the exact opposite has occurred: recent trends in U.S. tin mill production are all downward. Since the Section 232 restrictions were imposed, the availability and reliability of domestic tinplate have both declined. Significant U.S. capacity has permanently closed: the eleven domestic tin mill lines that were active before the COVID-19 pandemic have shrunk to eight, and may further dwindle to seven after the reported closure of U.S. Steel's Pittsburg, California plant in the coming months.

44.     These closures reflect strategic decisions by U.S. steel companies to shutter tin mill lines even amid an environment of robust demand and high prices for tinplate products.

Producers such as USS have instead chosen to prioritize higher-margin, higher-volume steel products at the expense of tin mill production.

45.    As a result of the insufficient and declining availability of domestic tinplate from U.S. producers, Seneca has been compelled to turn increasingly to imports. For example, in 2018 Seneca sourced approximately 65 percent of total tin mill product purchases from domestic sources. Even at that time, when the Section 232 action went into effect, Seneca was already forced to rely heavily on imports to cover demand.

46.    Yet in 2021, after several years of Section 232 relief, Seneca was supplied *fewer* tons by the domestic industry than in 2018. Moreover, because demand for steel cans increased, the share of tinplate that Seneca was able to source domestically fell sharply, from 65 percent in 2018 to 51 percent in 2021.

47.    If an adequate supply of quality tin mill steel products were available in the United States, Seneca would prefer to rely on domestic sources. The advantages of domestic production—in terms of lead times, freight and storage costs, and currency risks—are multiple and significant. Having reliable U.S. suppliers enables Seneca to remain flexible and responsive to customers' evolving needs, which can be difficult to forecast. Seneca has thus relied on the domestic industry to the maximum degree possible, purchasing all tons that domestic producers are willing and able to supply. Unfortunately, domestic steel producers such as USS have time and time again proven to be unreliable or outright unwilling suppliers.

48.    Immediately after the Section 232 tariffs entered into force and the exclusion process was established, Seneca requested product exclusions in March and April 2018 for a limited volume of imported ETP that had previously been ordered in the fall of 2017, before the Section 232 tariffs were imposed, when the availability of tin mill products from the domestic industry was limited. *See* **Exhibits 1–3**.

49.     In its 2018 requests, Seneca emphasized its "desire to support strong domestic tinplate production," but explained that it was "critical that we protect ourselves with some fraction of imported supply" due to the limited availability of domestic tinplate. *Id.* In particular, Seneca explained that its two principal domestic suppliers had recently indicated that they could not commit to provide any additional volumes in 2018. *Id.*

50.     USS was the only domestic producer to file an objection to Seneca's requests. USS claimed that it had available capacity despite the fact that representatives of USS had informed Seneca in early March 2018 that USS "had no short term capacity," and that it expected to have availability only later in the year. *See* **Exhibits 4–5** at 1.

51.     Despite the evidence of insufficient availability presented by Seneca, ITA apparently credited the USS objection and recommended that Commerce find that the ETP at issue is produced in a sufficient and reasonably available amount and deny the requests on that basis. The ITA recommendation was not made public, but Commerce accepted it without explanation and denied Seneca's requests in decision memoranda signed in July 2018. *See, e.g.*, **Exhibit 6**.

52.     Seneca had no procedural option to appeal these denials within Commerce. *See* September 2018 Revised IFR, 83 Fed. Reg. at 46,043 ("There is no specific appeals process."). Rather, consistent with guidance from the agency, Seneca continued attempting to source tin mill products from USS. Despite some partial success in mid-2018—when USS agreed to supply limited tons, but then failed to deliver those tons on time and did not complete the order until February 2019—Seneca was not offered and did not receive *any* tin mill supply from USS throughout the rest of 2019, all of 2020, and all of 2021.

53.     With respect to exclusion determinations made during the same time period that Seneca's 2018 requests were denied, the U.S. Government Accountability Office ("GAO") found that from March 2018 to November 2019, the Department did not conduct any analysis

or undertake any effort to verify objectors' claims that they could or would produce the products for which exclusions were sought. *See* GAO, *Steel and Aluminum Tariffs, Commerce Should Improve Its Exclusion Request Process and Economic Impact Reviews* (GAO-20-517, Sept. 2020), attached hereto as **Exhibit 33**, at 18.

54.     After a lengthy investigation and audit into the Department's administration of Section 232 exclusions, the Inspector General issued a report finding that "ITA recommended denying {requests} due to sufficient U.S. supply even though objectors did not provide information on plant capacity or plant utilization." U.S. Dep't of Commerce, Office of Inspector General, *Decisions on Exclusions from Section 232 Tariffs Were Not Transparent and Based on Incomplete and Inaccurate Information*, Final Report No. OIG-21-020-A (Jan. 25, 2021) ("OIG Final Report"), attached hereto as **Exhibit 34**, at 4. In fact, according to the Inspector General, "ITA made recommendations using incomplete or contradictory information that resulted in denials even though it was unclear if the product was available from domestic U.S. suppliers in an adequate quantity or within the required timeframe." *Id.* at 3.

55.     Further, the Inspector General identified in the Department's conduct at least the potential for improper influence in the exclusion request process and the appearance of impropriety. *See* Information Memorandum for Secretary Ross from Carol N. Rice, Assistant Inspector General for Audit and Evaluation, *Management Alert: Certain Communications by Department Officials Suggest Improper Influence in the Section 232 Exclusion Request Review Process, Final Memorandum No. OIG-20-003-M* (Oct. 28, 2019), attached hereto as **Exhibit 35**.

56.     In cases filed by similarly situated plaintiffs, it also has come to light that there were extensive off-record, *ex parte* discussions between the Department and objector companies in relation to the product exclusion requests. Those plaintiffs were offered no

opportunity to review or comment on those communications. *See, e.g.*, *JSW Steel (USA) Inc. v. United States*, Slip Op. 20-111, Ct. No. 19-00133 (Ct. Int'l Trade July 11, 2020); *see also Borusan Mannesmann Pipe U.S., Inc. v. United States*, Slip Op. 20-90, Ct. No. 20-00012 (Ct. Int'l Trade June 25, 2020).

57.     The GAO and Inspector General reports, along with the *ex parte* communications brought to light in other judicial proceedings, indicate that the Department has a longstanding practice of privileging objections—even if baseless or contradicted by other evidence—filed by domestic steel producers, while at the same time failing to provide reasoned analysis of contrary record evidence provided by requesting companies. With respect to exclusion requests for ETP and TFS products, this pattern has continued into 2022, when Seneca's most recent requests for those products were all denied without adequate explanation.

**C.     Seneca's Requests at Issue for Product Exclusions from the Section 232 Tariffs**

58.     Unable to challenge the Department's acceptance of the USS objections and denial of Seneca's 2018 exclusion requests within the agency, Seneca continued to attempt to source ETP and TFS from USS throughout 2019, 2020, and 2021. Yet despite extended and repeated discussions, USS declined to supply Seneca *any* tin mill steel, and other domestic producers were unable to provide additional ETP or TFS volumes to meet Seneca's needs. With this new, and conclusive, evidence of insufficient availability from domestic producers, Seneca returned to the Commerce Department starting in late 2021 to file new exclusion requests for imports of those tin mill products.

59.     Specifically, Seneca filed eight requests between October 2021 and March 2022 to exclude from the Section 232 tariffs limited volumes of imported TFS and ETP products that the domestic industry, including USS, had affirmatively declined to supply. *See* **Table 1**; *see also* **Exhibits 7–12** and **25–26**.

60.     Specifically, Seneca filed: (i) two exclusion requests on October 21, 2021, and one exclusion request on March 15, 2022, for prime TFS, with a melted finish, "double reduced" for use in vegetable can lids, and of varying thickness; and (ii) three exclusion requests on October 21, 2021, one exclusion request on January 23, 2022, and one exclusion request on March 15, 2022, for prime ETP with a melted finish, "double reduced" for use in vegetable can lids, and of varying thickness. *See* **Exhibits 7–12** and **25–26**. The October 2021 requests covered imports previously ordered and scheduled for delivery during the fourth quarter of 2021, while the January 2022 and March 2022 requests covered imports ordered in late 2021 and scheduled for delivery during 2022. *See id.*

61.     The following table summarizes Seneca's exclusion requests at issue in this litigation and the corresponding determinations from the Department:

| Table 1 | | | | | |
|---|---|---|---|---|---|
| **Seneca Exclusion Requests Filed for Tin Mill Products** | | | | | |
| **Number** | **Date Filed** | **Description** | **Harmonized Tariff Schedule Code** | **Country of Origin** | **Date Denied** |
| 257423 | October 20, 2021 | TFS | 7210500020 | Japan | April 9, 2022 |
| 257428 | October 20, 2021 | TFS | 7210500020 | Japan | April 9, 2022 |
| 257708 | October 21, 2021 | ETP | 7210120000 | China | April 9, 2022 |
| 257709 | October 21, 2021 | ETP | 7210120000 | Turkey | April 9, 2022 |
| 257712 | October 21, 2021 | ETP | 7210120000 | Turkey | April 9, 2022 |
| 275504 | January 23, 2022 | ETP | 7210120000 | China | April 30, 2022 |

| 283368 | March 15, 2022 | TFS | 7210500020 | China | July 9, 2022 |
| 283369 | March 15, 2022 | ETP | 7210120000 | Turkey | July 9, 2022 |

62. Seneca explained in all eight exclusion requests that the relevant tin mill products were ordered from foreign producers and scheduled for delivery to the United States only after USS and other domestic producers had affirmatively declined to supply these volumes to Seneca during the relevant time frame. *See id.*

### 1.    Seneca's Six Requests Filed in October 2021 and January 2022

63. In its October 2021 requests, Seneca explained that it had contacted USS to understand its availability for 2021 and 2022, and emphasized that USS "was unwilling even to give us a quote for tin mill products due to its inability to supply any additional material in 2021 or beyond." *See* **Exhibits 7–11** at Attachment p. 3. The October 2021 requests also explained that the volumes covered were limited to orders placed by Seneca between late 2020 and the spring of 2021, after Seneca's domestic suppliers had declined to provide additional volume for 2021. *Id.* at Attachment pp. 1–3. Moreover, these orders were all scheduled for delivery during the fourth quarter of 2021. *Id.* at Attachment p. 1.

64. In November 2021, USS objected to the October 2021 requests, arguing that it had available capacity to supply Seneca "within 120 days," but not disputing that USS had no availability when Seneca placed the orders covered by those requests. USS Objection to Seneca Exclusion Request Nos. 257423, 257428, 257708, 257709, and 257712, attached hereto as **Exhibits 36–40**, respectively, at 2. Indeed, the USS objection acknowledged that "the U.S. tin mill market experienced some supply constraints in the immediate wake of the COVID-19 pandemic," but claimed that "such conditions were temporary and do not impact U.S. Steel's

ability to supply TFS or other tin mill products during the remainder of 2021 and into 2022." **Exhibits 36–37** at 6; **Exhibits 38–40** at 6 (stating the same for ETP).

65.     Seneca's rebuttal submissions in December 2021 explained that there was no dispute regarding the fact that USS could not and did not supply any volume to Seneca during the relevant time frame for the requests at issue. On November 13, 2020, USS confirmed via phone that it would not offer Seneca any steel for delivery in 2021, regardless of price—a communication summarized in an email appended to Seneca's rebuttal. *See* Seneca Rebuttal to USS Objections to Exclusion Request Nos. 257423, 257428, 257708, 257709, and 257712, attached hereto as **Exhibits 13.2**, **14.2**, **15.2**, **16.2**, and **17.2**, respectively. Seneca further explained that the purchase orders covered by the October 2021 requests were placed on November 20, 2020, April 22, 2021, and May 3, 2021, after USS had declined to provide Seneca any TFS or ETP during 2021. *Id.*

66.     In addition, Seneca emphasized that *even after* filing its November 2021 objections, in which USS certified to the Department its supposed ability to supply tin mill products to Seneca during the remainder of 2021 and into 2022, USS separately communicated to Seneca in writing that it had no ETP or TFS to offer Seneca for the duration of 2021 or into early 2022. Copies of the relevant e-mail communications with USS were included with Seneca's rebuttal. *See* **Exhibits 13.2**, **14.2**, **15.2**, **16.2**, and **17.2**.

67.     The USS surrebuttals, filed in mid-December 2021, conceded that the "COVID-19 pandemic and other economic forces resulted in temporary U.S. tin mill supply constraints / delays in 2020 and early 2021 (i.e. when the Requestor {Seneca} ordered this TFS)," but claimed that USS "is currently offering tin mill product spot sales . . . for 2022." **Exhibits 42–45** at 3; **Exhibit 46** at 4. At no point did USS dispute the unavailability of the relevant ETP and TFS products during the time frame specified in and covered by Seneca's requests. *See* **Exhibits 42–46**.

68.     In these December 2021 surrebuttals, USS for the first time "acknowledge{d} that, as stated in Seneca's rebuttals, it has not supplied the Requestor with tin mill products since February 2019, which is more than two years before submission of U.S. Steel's objections," and that "{c}ontradictory statements in each of the Objections {filed by USS} were made in error." *Id.* at Attachment p. 1. USS also acknowledged that across this extended time frame, during which it made zero tons available to Seneca, "U.S. Steel regularly discussed tin mill product availability and sales with Seneca throughout 2019, 2020, and 2021." *Id.* These statements confirm Seneca's repeated attempts in vain to buy tin mill products from USS after Commerce denied Seneca's 2018 exclusion request based on USS claims of availability.

69.     The submissions relating to Seneca's January 2022 ETP request followed a similar path. The import orders covered by that request were placed in late 2021 only after all domestic producers, including USS, affirmatively declined to commit any additional 2022 volume to Seneca. USS nonetheless objected in February 2022. *See* USS Objection to Seneca Exclusion Request No. 275504 (Feb. 25, 2022), attached hereto as **Exhibit 41**.

70.     Arguments by USS in response to Seneca's January 2022 request were unique in one notable respect: USS continued to make and certify factual claims that it previously acknowledged were false. In December 2021, as noted, USS had conceded that it "ha{d} not supplied the Requestor with tin mill products since February 2019, which is more than two years before submission of U.S. Steel's objections" and that contradictory statements were "made in error." **Exhibits 42–46** at Attachment p. 1. Yet in February 2022, just two months later, USS *yet again* asserted and certified the very same erroneous claim in its objection: "U.S. Steel has supplied Seneca with ETP within the last two years." **Exhibit 41** at 7.

71.     In its March 2022 rebuttal, Seneca again emphasized to Commerce that "this claim is false," given that "USS has neither quoted nor offered, let alone delivered, to Seneca a *single ton of steel* for *more than two years*." Seneca Rebuttal No. 50538 to USS Objection to

Exclusion Request No. 275504 (Mar. 5, 2022), attached hereto as **Exhibit 18.1**, at Attachment p. 1. Yet in contrast to its prior admissions of significant error on this point, the March 2022 surrebuttal of USS offered no correction of this known falsehood. *See* USS Surrebuttal to Seneca Exclusion Request No. 275504 (Mar. 13, 2022), attached hereto as **Exhibit 47**.

72.     Commerce denied all six exclusion requests at issue in April 2022, after USS had repeatedly made material misrepresentations to the agency on critical issues of availability. *See* **Exhibits 19–24**. In denying Seneca's requests, Commerce failed entirely to address the certified statements from Seneca, corroborated by contemporaneous email communications, demonstrating that USS had affirmatively declined to supply Seneca the requested tin mill products within the relevant time frames—or at any time since February 2019. Nor did Commerce address the fact that all orders at issue in the five October 2021 requests were scheduled for delivery in the fourth quarter of 2021, when it is undisputed that USS had refused to supply Seneca. Finally, Commerce failed to acknowledge or address the fact that Seneca ordered the volumes covered by the January 2022 request in late 2021, only after USS had again declined to supply Seneca. *See id.*

73.     Instead, based on a Recommendation Document from ITA, Commerce issued Decision Memoranda denying the Seneca requests with standard boilerplate language:

> In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA has provided the attached findings and recommends denying the request for an exclusion. BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be granted notwithstanding recommendation of denial.
>
> *See id.* at BIS Decision Document p. 1.

74.     The ITA's Recommendation Documents for the October 2021 requests noted that although Seneca stated in its rebuttal that as of November 2021, USS had again declined to commit to supplying any volumes into early 2022, USS stated in its surrebuttal that it could

provide the requested tin mill products "as spot sales rather than contract volumes." The ITA then concluded that "this does not impact USS's ability to supply the requested quantity." *See* **Exhibits 19–23** at ITA Recommendation Document p. 2. At no point did ITA acknowledge the fact that USS itself, in its surrebuttals, had contradicted and withdrawn certified statements in its objections that it had supplied Seneca with tin mill steel during the past two years. *See generally* **Exhibits 19–23**.

75.     Similarly, the ITA Recommendation Document for the January 2022 request noted that despite Seneca's submission of evidence that "in November 2021 USS affirmatively declined to supply the very same volume that is at issue in this request," the agency concluded that "{n}othing in the information provided contradicts U.S. Steel's certified statements in its objection and in its surrebuttal that it can currently manufacture 100% of the requested quantity." **Exhibit 24** at ITA Recommendation Document p. 2. At no point did ITA acknowledge that USS had again certified and then failed to correct claims about recent sales to Seneca that it previously conceded were false.

76.     Nor did ITA address the fact that the "current process already" allows "the exclusion requester to document in the rebuttal the past activity with that objector," including the objector's failure to provide the steel at issue in the exclusion request. December 2020 Revised IFR, 85 Fed. Reg. at 81,066. Instead, in reaching its conclusion, ITA simply ignored the consistent and longstanding failure of USS to provide *any* of the requested quantity, in direct contradiction of the agency's interpretation of the relevant regulations.

77.     In all six ITA Recommendation Documents, USS is listed in Section 3.a as claiming the ability to supply "100%" of the requested volumes. *See* **Exhibits 19–24** at ITA Recommendation Document p. 2. This "Quantity" section requires ITA to answer the following question: "Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims?" *Id.* Across all six requests, the ITA response to

this question—remarkably, given the extensive evidence provided by Seneca and conceded by USS regarding its consistent refusals to supply Seneca with tin mill steel over an extended period—was a flat "No." *See id.*

78.     Indeed, the ITA provided no reasoning at all to support its conclusion that the inability of USS to commit or supply *any* volume to Seneca over a multi-year period somehow did "not impact {USS's} ability to supply the requested quantity." **Exhibits 19–23** at ITA Recommendation Document p. 2. The ITA likewise failed to cite to any evidence supporting its finding that the claimed willingness of USS to consider providing sporadic "spot sales" to Seneca in the future somehow constituted a "sufficient and reasonably available amount" of tin mill products for Seneca at any point in time, much less within the time frames expressly specified in the exclusion requests at issue—which the ITA failed entirely to acknowledge or address. *See id.* at ITA Recommendation Document p. 1.

79.     In its Decision Memos, Commerce did not supplement, analyze, or otherwise explain the ITA's reasoning or recommendations, nor did it provide more than a cursory statement indicating that BIS had accepted the ITA's bottom-line conclusion on availability. *See id.* at BIS Decision Document pp. 1–2.

### 2.     Seneca's Two Requests Filed in March 2022

80.     On March 15, 2022, Seneca filed two new exclusion requests for tin mill products: Request 283368 for TFS and Request 283369 for ETP. *See* **Exhibits 25–26**. The volumes covered by these requests were limited to orders placed by Seneca in October 2021 for deliveries in 2022. Crucially, these orders were placed only after all relevant domestic producers—including USS—affirmatively declined to award Seneca these required volumes for 2022. *See id.* at Attachment p. 1. In certified submissions, Seneca made clear that it ordered the ETP and TFS at issue after USS refused to award Seneca *any* contractual volume for 2022, and that constraints on 2022 orders were so acute that USS was unwilling even to quote for tin

mill products. *See id.* at Attachment p. 3. In addition, Seneca made clear to the Department that

USS had neither quoted nor offered to Seneca, let alone delivered, a single ton of steel for more

than two years. *See id.*

      81.    In April 2022, USS nonetheless objected to Seneca's March 2022 requests,

again claiming that it could provide the subject tin mill products in "a sufficient and reasonably

available amount or of a satisfactory quality." *See* **Exhibits 27–28**. In certified submissions to

the Department, USS "confirm{ed}" that it was "capable of immediately manufacturing" the

requested TFS and ETP products. *Id.* USS did not address or acknowledge Seneca's certified

submissions regarding the longstanding refusal of USS to supply any tin mill products to

Seneca. *Compare* **Exhibits 25–26** *with* **Exhibits 27–28**.

      82.    On April 23, 2022, Seneca submitted rebuttals demonstrating that there was no

dispute regarding the fact that USS outright refused to supply any volumes of TFS and ETP

products to Seneca during the relevant time frame for the requests at issue. *See* **Exhibits 29.1**

and **30.1**. In support of its rebuttal submissions, Seneca submitted a CBI document that

contained three exhibits. *See* **Exhibits 29.2** and **30.2**.

      83.    In confidential Exhibit 1, Seneca provided email communications in November

2021 between [

                       ]. Specifically, on [        ], Seneca's [       ]

asked USS: [

                                           ] *See id.*

On [       ], [      ] of USS replied: [

                           ] *See id.* Identical copies of the

communications in confidential Exhibit 1 were previously submitted with Seneca's rebuttals

in support of its October 2021 and January 2022 requests. *Compare* **Exhibits 29.2** and **30.2** at

1 *with* **Exhibits 13.2**, **14.2**, **15.2**, **16.2**, **17.2**, and **18.2** at 2.

84.     In confidential Exhibit 2, Seneca submitted a confidential [

], with details on [

] for all products at issue in the March 2022 exclusion

requests. *See* **Exhibits 29.2** and **30.2**. Exhibit 2 indicated that the vast majority of the volumes

at issue were expected to arrive by June 2022—*i.e.*, before a single ton of any tin mill product

was to be delivered to Seneca by USS. *See id.* Specifically, confidential Exhibit 2 indicated

that Seneca Exclusion Request 283368 related to [

].

According to this exhibit, Request 283369 related to [

]. *See id.*

85.     In confidential Exhibit 3, Seneca provided a copy of recent email

communications between [                         ]. Specifically, the emails showed that after

declining to quote, offer, or deliver a single ton of steel to Seneca since February 2019, USS

[

]. *See id.* Placed in context, this offer

represented less than [             ] of the [         ] of TFS that Seneca requested from USS in

March, and *far less than [ ]* of Seneca's annual demand for tin mill products. The

contemporaneous email communications thus made clear that the volumes at issue in Seneca's

March 2022 exclusion requests were not available from USS at the time Seneca placed the

orders, or by the time of the scheduled deliveries, or at the time the relevant rebuttal and

surrebuttal submissions were filed. *See id.*

86.     On or around May 3, 2022, USS submitted surrebuttals regarding Seneca's

March 2022 requests. USS Surrebuttal to Seneca Exclusion Request Nos. 283368, 283369

(May 3, 2022), attached hereto as **Exhibit 48** and **49**, respectively. The USS surrebuttals again

did not dispute the evidence provided by Seneca regarding the continuing unavailability of the requested TFS and ETP products at the relevant times and in the required volumes. *See id.*

87.     On July 9, 2022, the Department denied both of the March 2022 exclusion requests for ETP and TFS—the same result as before, but this time on an entirely different, and for Seneca unprecedented, basis. *See* **Exhibits 31–32**. Specifically, for the first time, the Department reasoned that the ITA was "unable to provide a complete analysis due to an issue with the request," apparently because its Subject Matter Expert ("SME") analysis determined "there {wa}s insufficient technical information available to resolve whether the requested product is identified in the CBI." *See id* at ITA Recommendation Document pp. 1–2. In other words, the Department—for reasons that were not specified—concluded that it lacked sufficient "technical information" to determine whether the requested TFS and ETP products were identified in Seneca's CBI submissions. The ITA also indicated for the first time that it was unable to evaluate timeliness due to allegedly conflicting or ambiguous delivery information. As a result, ITA declined to provide any substantive analysis of the merits of Seneca's requests on the key criteria of available quantity and timeliness of delivery. And BIS, without comment or explanation, accepted the ITA recommendation of denial even though ITA failed to provide "a complete analysis"—or any analysis—of the issues in dispute.

88.     In multiple respects, these denials represented a departure from reasoned decision-making and fundamental requirements of administrative law.

89.     First, for both requests, the ITA's "Analysis of the Record" with respect to "Quality" was rife with significant factual errors. As an initial matter, the SME erroneously indicated that the objector's claims regarding the quality of its domestic production was contradicted by evidence submitted by Seneca, when in reality quality was not disputed. In response to whether "anything" in the request or rebuttal "provide{s} evidence to contradict the objector's claims" as to quality, the ITA expert responded "Yes." *See id* at ITA

Recommendation Document p. 2. But Seneca had expressly disclaimed quality as a basis for its rebuttals ("The basis of your rebuttal is for the following reason(s): . . . Quality – No."). *Compare* **Exhibits 29.1** and **30.1** at 1 *with* **Exhibits 31–32** at ITA Recommendation Document p. 2. In addition, with regard to Request 283369, which on its face covers only "Prime electrolytic tinplate" or ETP, the SME erroneously stated that "Seneca seeks an exclusion for prime tin-free steel" or TFS. *Compare* **Exhibit 26** at 4 *with* **Exhibit 32** at ITA Recommendation Document p. 2. The agency's "expert," in other words, failed to grasp which criteria were in dispute *and* which products were at issue. By themselves, these critical factual mistakes make clear that ITA utterly failed to perform its duty with even a minimum level of competence.

90.     Second, the ITA justified its refusal to provide "a complete analysis" of key and disputed quantity and timeliness issues based on its finding that "there is insufficient technical information available to resolve whether the requested product is identified in the CBI." *See* **Exhibits 31–32** at ITA Recommendation Document p. 2. Indeed, with regard to the key issue of "Quantity," as to which Seneca provided extensive evidence of the unavailability of TFS and ETP products from USS, the *only* reasoning or analysis provided by ITA, in its entirety, states: "ITA is unable to provide a complete analysis due to an issue with the request." *See id.* at ITA Recommendation Document pp. 1–2.

91.     The agency reached this result even though it was directly inconsistent with the agency's practice regarding the six exclusion requests filed in October 2021 and January 2022. In support of all six prior requests, Seneca filed rebuttals containing the very same confidential November 2021 communications with USS found in CBI Exhibit 1. While its determinations were contrary to law, the Department at least resolved all six prior requests on the merits, revealing no difficulty in assessing the product information disclosed in those communications. *See* **Exhibits 19–24**. That product information on its face is quite straightforward and in no way confusing, as the email exchange twice refers to the relevant products as follows: [

] **Exhibits 13.2**, **14.2**, **15.2**, **16.2**, **17.2**, and **18.2** at 1. These products, of course, are the very same ones at issue in Seneca's March 2022 requests—and the agency in no way explained, or even acknowledged, its departure from its handling of the very same information in prior requests.

92.   The ITA also indicated that it was "unable to evaluate this exclusion request" with regard to timeliness because Exhibit 2 allegedly "presents delivery information that conflicts with the delivery information in its exclusion request." *See* **Exhibits 31–32** at ITA Recommendation Document p. 3. Due to this alleged "ambiguity," ITA claimed that it was "unable to evaluate" Seneca's certified evidence that the orders at issue were for almost exclusively for deliveries scheduled to arrive by June 30, 2022, which is before the July timeframe when USS hoped to deliver a very small volume of TFS. *See id.*

93.   Finally, with respect to all of the issues that ITA claimed made it impossible for it to provide a recommendation on the merits, the Department's explanation was entirely unclear, to the extent it provided any explanation at all. The ITA analysis does not disclose the "insufficient technical information" that made it impossible for the agency to resolve whether the requested product is in fact the product identified in the CBI, a fact that Seneca expressly certified. Nor does ITA identify any conflict or ambiguity in the expected delivery dates disclosed by Seneca in the public request and in its confidential business records. Not only do those omissions render ITA's explanation inadequate on its face; they also mean that as a practical matter, there would be no way for Seneca to cure these alleged but unspecified defects in a future resubmission.

94.   With respect to Seneca's March 2022 requests, the Department had ample information in the record to issue a determination on the merits, as it did with Seneca's prior exclusion requests for ETP and TFS—where the action was unlawful, but at least issues of

availability were resolved. Its refusal or inability to perform this simple delegated task, its failure to engage the evidence submitted by Seneca as to the insufficient domestic availability of these products, and its failure to provide any explanation of the alleged but unspecified factual shortcomings in Seneca's submissions constitute unreasoned agency action.

## COUNT I

### (Administrative Procedure Act (5 U.S.C. §§ 701-706))

95.　　Paragraphs 1 through 94 above are re-alleged and incorporated herein by reference.

96.　　The Administrative Procedure Act authorizes the Court to hold unlawful and set aside agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; {or} (E) unsupported by substantial evidence." 5 U.S.C. § 706(2).

97.　　The Department's findings that the products subject to Seneca's six exclusion requests filed in October 2021 and January 2022 were "produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality" and subsequent denials of Seneca's requests for exclusion from the Section 232 tariffs on steel were arbitrary and capricious because the Department (1) failed to meaningfully consider relevant factors when making its determinations, (2) failed to follow its own published interpretation of its regulations that evidence of past unavailability is relevant to the resolution of new exclusion requests, (3) failed to adequately explain the basis for its determinations, and (4) failed to meaningfully consider the evidence before it.

98.　　Specifically, the Department failed to meaningfully consider and explain its analysis regarding:

- the conceded refusal of USS, despite continued outreach by Seneca, to supply any tons to Seneca, whether on a contract or spot basis, for more than two years prior to the exclusion requests at issue being filed;

- the admitted and repeated misstatements of material facts by USS in certified submissions to the Department; or

- the fact that Seneca and USS both agreed that supplies of the relevant ETP and TFS were not available from USS when the relevant import orders were placed by Seneca or when those tons were scheduled for delivery.

99. The Department's failure to "observe{} procedure required by law" resulted in the unlawful imposition of Section 232 tariffs on Seneca's imports and thus must be held "unlawful and set aside" by this Court. 5 U.S.C. § 706(2).

## COUNT II

### (Administrative Procedure Act (5 U.S.C. §§ 701-706))

100. Paragraphs 1 through 99 above are re-alleged and incorporated herein by reference.

101. The Department's unexplained reliance on ITA's finding that it was "unable to provide a complete analysis" of whether the products subject to Seneca's two exclusion requests filed in March 2022 were "produced in the United States in a sufficient and reasonably available amount and of a satisfactory quality" due to "an issue with the request{s}" was arbitrary and capricious, including because the Department (1) previously assessed the very same supporting documentation on six separate occasions as sufficient to provide a complete analysis, and (2) failed to adequately explain the basis for its determinations.

102. Specifically, Seneca previously submitted the very same confidential email communications in the six requests covered by Count One, all of which the Department at least resolved on the merits, finding nothing to be insufficient or otherwise lacking in those confidential submissions. Yet with respect to the two March 2022 requests, which are supported by the same confidential communications as well as by additional evidence of unavailability, ITA repeatedly declined to provide any analysis of key disputed issues.

103.    The Department's unexplained, inconsistent treatment of these determinations is arbitrary and capricious. Agencies must "treat like cases alike." *Westar Energy, Inc. v. Fed. Energy Regul. Comm'n*, 473 F.3d 1239, 1241 (D.C. Cir. 2007). Where an agency seeks to treat similar situations dissimilarly, the agency must provide sufficient justification for the dissimilar treatment. *See N. & Santa Fe Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 776 (D.C. Cir. 2005) ("An agency must provide an adequate explanation to justify treating similarly situated parties differently."). Here, the agency failed to provide any such adequate explanation.

104.    Even setting aside these inconsistencies, the Department failed to adequately explain the basis for its findings regarding the allegedly "insufficient" technical information or the alleged "ambiguity" in delivery information. Its explanation was unclear and inadequate on its face: Seneca could not plausibly ascertain what corrections to make in any resubmission so as to enable a "complete analysis" and decision on the merits. This vague and inadequate explanation fails the requirement that "the agency's explanation for its decision must be sufficient to enable {courts} to conclude that {it} was the product of reasoned decisionmaking," *Jicarilla Apache Nation v. Dep't of Interior*, 613 F.3d 1112, 1118 (D.C. Cir. 2010) (second alteration in original) (quotation marks omitted).

105.    The Department's failure to "observe{} procedure required by law" resulted in the unlawful imposition of Section 232 tariffs on Seneca's imports and thus must be held "unlawful and set aside" by this Court. 5 U.S.C. § 706(2).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)    Enter judgment that the Department of Commerce's denials of Plaintiff's exclusion requests were arbitrary and capricious or otherwise unlawful in violation of the APA (5 U.S.C. §§ 701 *et seq.*);

(2)     Declare that Plaintiff was entitled to the requested exclusions from the Section 232 tariffs, in accordance with Proclamation 9705 and 15 C.F.R. pt. 705, supp. 1, and order the U.S. Department of Commerce to grant the denied exclusions, thereby enabling U.S. Customs and Border Protection to refund the Section 232 tariffs paid by Plaintiff on imports covered by these exclusion requests;

(3)     Alternatively, remand the matter to the Department of Commerce for proper treatment and consideration in accordance with the requirements of the APA; and

(4)     Grant Plaintiff such other relief as the Court deems just and proper.

Respectfully submitted,


/s/ James M. Smith
James M. Smith
Kwan Woo (Kwan) Kim

**Covington & Burling LLP**
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001-4956
(202) 662-5550

Counsel to Plaintiff

Dated: August 19, 2022