## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| SENECA FOODS CORPORATION,<br><br>                    Plaintiff,<br><br>          v.<br><br>UNITED STATES,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 22-00243

Hon. Gary S. Katzmann

### NOTICE OF SUPPLEMENTAL AUTHORITY

Proposed Defendant-Intervenor United States Steel Corporation ("U. S. Steel") respectfully submits this Notice of Supplemental Authority to advise this Court of recent developments in the consolidated appeal before the Federal Circuit in *California Steel Industries v. United States* ("*CSI*"), which may have a bearing on U. S. Steel's October 5, 2022 motion to intervene in the above-captioned action (ECF No. 11). In *CSI*, the Federal Circuit upheld a decision by this Court to deny U. S. Steel's motions to intervene in certain actions involving challenges by importers to denials of product exclusion requests for tariffs imposed pursuant to Section 232 of the Trade Expansion Act of 1962. *See California Steel Indus., Inc. v. United States*, No. 2021-2172, 2022 WL 4100241 (Fed. Cir. Sept. 8, 2022). On October 24, 2022, U. S. Steel filed a Petition for Rehearing and Rehearing *En Banc* requesting that the Federal Circuit reconsider *CSI* and overturn that decision (*See* Exhibit 1 hereto). On October 25, 2022, the Federal Circuit invited responses from the Appellees to the petition filed by U. S. Steel (*See* Exhibit 2 hereto).

U. S. steel advises the Court of the developments in the *CSI* proceedings as they may result in a change to Federal Circuit law regarding the rights of parties to intervene in actions before the Court.

Respectfully submitted,

/s/ Luke A. Meisner
Jeffrey D. Gerrish
Luke A. Meisner
Michelle R. Avrutin
SCHAGRIN ASSOCIATES
900 Seventh Street, NW
Suite 500
Washington, DC 20001
(202) 223-1700

*Counsel for United States Steel Corporation*

November 14, 2022

# EXHIBIT 1

**Nos. 2021-2172, –2180, –2181, –2182, –2183, –2185**

# In the United States Court of Appeals
# For the Federal Circuit

---

**CALIFORNIA STEEL INDUSTRIES, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

·--------------------------------

**NORTH AMERICAN INTERPIPE, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

·--------------------------------

**EVRAZ INC. NA,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

--------------------------------

**AM/NS CALVERT LLC,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

--------------------------------

**VALBRUNA SLATER STAINLESS, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**ELECTRALLOY/G.O. CARLSON,**
*Defendant-Appellant*

----------------------------------

**VOESTALPINE HIGH PERFORMANCE METALS CORP., EDRO SPECIALTY STEELS, INC.,**
*Plaintiffs-Appellees*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**ELECTRALLOY/G.O. CARLSON, CRUCIBLE INDUSTRIES LLC, ELLWOOD CITY FORGE COMPANY, ELLWOOD SPECIALTY STEEL,**
*Defendants-Appellants*

On Appeal from the Court of International Trade

# PETITION FOR REHEARING AND REHEARING EN BANC

Thomas M. Beline
James E. Ransdell
Chase J. Dunn
Nicole Brunda
CASSIDY LEVY KENT (USA) LLP
900 19th Street N.W., Suite 400
Washington, DC 20006
Phone: (202) 567-2300
Fax: (202) 567-2301

*Counsel to United States Steel Corporation in CAFC Ct. Nos. 21-2172, 21-2182*

Luke A. Meisner
SCHAGRIN ASSOCIATES
900 7th Street, Suite 500
Washington, DC 20001
Phone: (202) 223-1700

*Counsel to United States Steel Corporation in CAFC Ct. No. 21-218*

Charles A. Rothfeld
Matthew J. McConkey
MAYER BROWN LLP
1999 K Street N.W.
Washington, DC 20006
Phone: (202) 263-3000
Fax: (202) 331-3101

*Counsel to United States Steel Corporation in CAFC Ct. No. 21-2180*

John R. Magnus
TRADEWINS LLC
1330 Connecticut Ave. N.W.
Washington, DC 20036
Phone: (202)-744-0368

*Counsel to Electralloy/G.O. Carlson, Ellwood City Forge, Ellwood Specialty Steel, and Crucible Industries in CAFC Ct. Nos. 21-2183, 21-2185*

FORM 9. Certificate of Interest                                    Form 9 (p. 1)
                                                                     July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 2021-2172 |
| **Short Case Caption** | California Steel Industries v. United States |
| **Filing Party/Entity** | U. S. Steel Corp. |

> **Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/24/2022

Signature: /s/ Charles Rothfeld

Name: Charles Rothfeld

**FORM 9. Certificate of Interest**

Form 9 (p. 2)
July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| United States Steel Corporation | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable                 ☑    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable                 ☑    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable                 ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

**Attachment to Certificate of Interest of United States Steel Corporation**

### CAFC Ct. No. 2021-2172
*California Steel Industries, Inc. v. United States*

The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency, or expected to appear in this court are:

| | |
|---|---|
| *Appearing before this Court*: | **Mayer Brown LLP**<br>Charles Rothfeld, Special Counsel<br>Matthew McConkey, Partner |
| *Before trial court*: | **Mayer Brown LLP**<br>Matthew McConkey, Partner |

The case titles, trial court case numbers, and trial court judge of all cases known to be pending in any court that will directly be affected by this court's decision in the pending appeal are:

voestalpine High Performance Metals Corp. v. United States
U.S. Court of International Trade Ct. No. 21-00093
Judge M. Miller Baker
Appealed to the U.S. Court of Appeals for the Federal Circuit, Ct. No. 21-2185

Valbruna Slater Stainless, Inc. v. United States
U.S. Court of International Trade Ct. No. 21-00027
Judge M. Miller Baker
Appealed to the U.S. Court of Appeals for the Federal Circuit, Ct. No. 21-2183

North American Interpipe, Inc. v. United States
U.S. Court of International Trade Ct. No. 20-03825
Judge M. Miller Baker
Appealed to the U.S. Court of Appeals for the Federal Circuit, Ct. No. 21-2180

AM/NS Calvert LLC v. United States
U.S. Court of International Trade Ct. No. 21-00005
Judge M. Miller Baker
Appealed to the U.S. Court of Appeals for the Federal Circuit, Ct. No. 21-2182

Evraz Inc. NA v. United States
U.S. Court of International Trade Ct. No. 20-03869
Judge M. Miller Baker
Appealed to the U.S. Court of Appeals for the Federal Circuit, Ct. No. 21-2181

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

FEDERAL RULES OF APPELLATE PROCEDURE 35 AND
    40(a)(2) STATEMENT .................................................................... 1

STATEMENT ................................................................................................ 5

REASONS FOR GRANTING THE PETITION ..................................... 9

    A.    U. S. Steel has "interests" in this litigation within the
        meaning of Rule 24............................................................... 10

        1.    The majority misapplied Rule 24.............................. 10

        2.    The majority's analysis conflicts with decisions of
            the Supreme Court and other courts of appeals. ....... 12

    B.    The government does not adequately represent U. S.
        Steel's interests. ................................................................. 17

    C.    The questions presented here have tremendous
        practical importance. ......................................................... 20

CONCLUSION ........................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bus. Guides, Inc. v. Chromatic Commc'ns Enterp., Inc.,*
  498 U.S. 533 (1991)...............................................................................11

*Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,*
  386 U.S. 129 (1967)..........................................................4, 11, 12, 13

*Flying J, Inc. v. Van Hollen,*
  578 F.3d 569 (7th Cir. 2009) .............................................................14

*Fund for Animals, Inc. v. Norton,*
  322 F.3d 728 (D.C. Cir. 2003) .....................................................14, 18

*JLS, Inc. v. PSC of W. Va.,*
  321 Fed. App'x. 286 (4th Cir. 2009).....................................................19

*Jones v. Prince George's Cnty.,*
  348 F.3d 1014 (D.C. Cir. 2003) ...........................................................15

*California ex rel. Lockyer v. United States,*
  450 F.3d 436 (9th Cir. 2006)................................................................14

*Natural Resources Defense Council v. Costle,*
  561 F.2d 904 (D.C. Cir. 1977) .......................................................19, 20

*Planned Parenthood of Minnesota, Inc. v. Citizens for Comty.
  Action,* 558 F.2d 861 (8th Cir. 1977) .................................................13

*In re Sierra Club,*
  945 F.2d 776 (4th Cir. 1991)................................................................15

*Sierra Club v. Espy,*
  18 F.3d 1202 (5th Cir. 1994)................................................................21

*Smuck v. Hobson,*
  408 F.2d 175 (D.C. Cir. 1969) (en banc) ......................................13, 21

ii

*Standard Heating & Air Conditioning Co. v. City of*
    *Minneapolis*, 137 F.3d 567 (8th Cir. 1998) ........................................ 18

*Texas v. United States*,
    805 F.3d 653 (5th Cir. 2015) ............................................................. 14

*Trbovich v. United Mine Workers*,
    404 U.S. 528 (1972) .................................................................. 4, 8, 17

*United States v. Alisal Water Corp.*,
    370 F.3d 915 (9th Cir. 2004) ............................................................. 13

*Utah Ass'n of Counties v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001) ......................................................... 18

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n*,
    834 F.3d 562 (5th Cir. 2016) .................................................. 13, 14, 15

*Wilderness Soc'y v. United States Forest Serv.*,
    630 F.3d 1173 (9th Cir. 2011) ........................................................... 21

## Statutes

Trade Expansion Act of 1962 Section 232 ........................................ 5, 19

## Other Authorities

Proclamation 9705: Adjusting Imports of Steel into the
    United States, 83 Fed. Reg. 11,625 (Mar. 15, 2018) ............................ 5

Submissions of Exclusion Requests & Objections to
    Submitted Requests for Steel & Aluminum, 83 Fed. Reg.
    46,026 (Sept. 11, 2018) ..................................................................... 19

*Interest,* AMERICAN HERITAGE DICTIONARY 940 (3d ed. 1992) ................ 11

Douglas H. Ginsburg & Donald Falk, *The Court En Banc*, 59
    GEO. WASH. L. REV. 1008, 1025, 1028 (1990) .................................... 21

Court of International Trade Rule 24 ............................................. *passim*

## FEDERAL RULES OF APPELLATE PROCEDURE 35 AND 40(a)(2) STATEMENT

These cases present recurring questions of significant practical and doctrinal importance regarding the rules that govern intervention: A divided panel of this Court embraced aberrant limits on the right to intervene that depart from the approach taken by the Supreme Court and other courts of appeals.

The cases arise out of challenges to tariffs that the President imposed on certain steel imports. Steel importers (respondents here) commenced administrative proceedings before the Commerce Department, seeking to exclude specified imports from the tariffs. Petitioner United States Steel Corporation, a domestic producer of those products, exercised its regulatory right to participate in the proceedings to oppose the exclusion requests, which the Department then denied. When the importers brought suit in the Court of International Trade (CIT) to challenge that denial, U. S. Steel moved to intervene pursuant to CIT Rule 24. The CIT denied the motion.[1]

---

[1] The panel's decision addressed six consolidated actions. Because the actions are materially identical for purposes of the issues presented

The panel majority has now affirmed those denials. It held that neither U. S. Steel's economic interest in preservation of the tariffs nor its participation in the administrative proceedings leading to denial of the tariff-exclusion requests qualifies as an "interest" that justifies intervention under Rule 24. It added that U. S. Steel's participation in the litigation would add nothing material to the government's defense of the exclusion determinations. Judge Newman dissented on both points, "discern[ing] no reason to deny intervention to the entities that were objectors [to the tariff exclusions] and are directly affected by the imposition of this tariff." Add-27.

Respectfully, Judge Newman was right, and the majority wrong, on both elements of the panel's holding. The language, history, and policy of Rule 24 show that practical impacts—including economic effects and participation in the administrative proceedings that underlay a lawsuit—establish one or more "interests" that warrant intervention in litigation. The majority's contrary holding cannot be reconciled with the approach of the Supreme Court and plainly conflicts

---

here, this petition does not distinguish between them and uses "U. S. Steel" to refer to all appellants.

with decisions of numerous other courts of appeals. The majority's additional determination that intervention is unwarranted because the government's defense of the hundreds of tariff-exclusion rulings at issue would be "adequate" likewise departs from Supreme Court guidance and is irreconcilable with the holdings of other courts of appeals.

As Judge Newman noted in dissent, "[f]air judicial process favors permitting affected voices to be heard." Add-27. The majority's rejection of that principle leaves this Court an outlier.

Consequently, based on my professional judgment, I believe this appeal requires an answer to the following questions of exceptional importance:

(1) Whether either economic interests or exercise of a regulatory right to participate in the administrative proceedings that give rise to a lawsuit provides an "interest relating to the property or transaction that is the subject of the action," so as to support intervention under CIT Rule 24.

(2) Whether the government's participation in litigation "adequately protect[s]" the interest of private parties within the meaning of CIT Rule 24, making intervention by those parties

3

inappropriate, when the government's institutional concerns differ from the specific economic interests of the private party that are at stake in the litigation.

                                                   */s/ Charles Rothfeld*
                                                  Charles Rothfeld

In addition, based on my professional judgment, I believe the panel decision is contrary to the following decisions of the Supreme Court of the United States: *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129 (1967); and *Trbovich v. United Mine Workers,* 404 U.S. 528 (1972).

                                                   */s/ Charles Rothfeld*
                                                  Charles Rothfeld

## STATEMENT

1. The opinions of the panel majority and Judge Newman describe the statutory and regulatory background. Briefly, the President imposed tariffs on certain steel imports pursuant to Section 232 of the Trade Expansion Act of 1962, finding that domestic steelmakers were vital to national security but were threatened by large volumes of low-priced imports. Proclamation 9705: Adjusting Imports of Steel into the United States, 83 Fed. Reg. 11,625 (Mar. 15, 2018). The President explained that the tariff program's goal was "help[ing] our domestic steel industry to revive idled facilities, open closed mills, preserve necessary skills by hiring new steel workers, and maintain or increase production." *Id.* at 11,626.

Commerce Department regulations implementing this program permit importers to request exclusion from the tariffs of products that the importers show to be unavailable in the United States. The regulations then give domestic steel producers the right to participate in the administrative exclusion proceedings to rebut the importers' unavailability claims. *See* Add-23-25 (citing regulations).

In the proceedings giving rise to this litigation, steel importers sought to exclude certain imported products from the tariffs. U. S. Steel objected, submitting information establishing that it could produce the products subject to the exclusion requests. After considering this material, Commerce denied the requests. *See* Add-6-7, 24.

The importers responded by filing these lawsuits against the United States in the CIT, challenging the agency's denial of hundreds of exclusion requests under the Administrative Procedure Act. U. S. Steel sought to intervene in the actions pursuant to CIT Rule 24(a)(2),[2] which, in relevant part, provides a right to intervene to an entity that

> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately protect that interest.

U. S. Steel described its interests in detail, noting that domestic steel manufacturers are the intended beneficiaries of the tariff program; that U. S. Steel helped create the administrative records that underlay the rulings now under attack by the importers; that it participated in

---

[2] This language is identical to, and plainly is derived from, that of Federal Rule of Civil Procedure 24.

the proceedings leading to the challenged administrative decisions; and that it would suffer significant economic injury were plaintiffs' imports excluded from tariffs. *See* Add.-16, 25. Nevertheless, the CIT denied the motions to intervene, holding that some domestic producers lacked standing, that the others had no "interest" in the litigation within the meaning of Rule 24, and that the government's participation adequately protects U. S. Steel. *See* Add-7-11.

On appeal, this Court unanimously held that U. S. Steel has standing in all cases (Add-12-15)—but a divided panel affirmed the CIT's determination that U. S. Steel lacks "a legally protectable interest in this case." Add-16. The majority recognized that the controlling regulation gives U. S. Steel a right to participate in the administrative proceedings giving rise to the litigation, and that U. S. Steel did in fact participate, but it concluded that this act of "administrative grace" did not create a Rule 24 "interest." Add-17. The majority similarly assumed that U. S. Steel has "economic interests" in the outcome of the litigation, but held categorically "that 'mere economic interests'" also are not "legally protectable." *Id.* Finally, because U. S. Steel "seek[s] the same relief as the government," the majority opined that the company's

participation as intervenor would not "add any material aspect beyond what is already present." Add-17-18. This was so even though the United States expressly took "'no position as to whether [it] adequately represents the manufacturers' interests." Add-26 (quoting U.S. Br. 23).

Judge Newman dissented. She observed that U. S. Steel was a "participant[] in the Commerce proceeding and [is] directly affected by the tariff." Add-25. In such circumstances, she continued, "[t]he U.S. Steel objectors have clear economic interests in these tariff exclusion requests, and meet the requirements of Rule 24(a)(2) that they have 'an interest relating to the property or transaction that is the subject of the action.'" Add-26-27. Citing *Trbovich*, she added that an intervenor's burden of showing the possible inadequacy of existing representation is "'minimal,'" that the government's broad interest as sovereign may not be presumed identical to the narrower interests of private parties, and that the government cannot be "charged with knowledge of the economic interests of the intervenors"—so that the government's participation is not "sufficient to adequately represent those interests." *Id.* at 26.

Accordingly, Judge Newman "discern[ed] no reason to deny intervention to the entities that were objectors and are directly affected by the imposition of this tariff." Add-27.

## REASONS FOR GRANTING THE PETITION

The panel's holdings in this case produce a result that is extraordinary—and strikingly counter-intuitive. The President promulgated the national-security tariff program at issue here for the express purpose of benefitting domestic producers like U. S. Steel. The outcome of this litigation will have an obvious economic impact on U. S. Steel, either providing it—or denying it—the significant benefit of those tariff protections. For that reason, the company had a right to, and did in fact, participate in the administrative proceedings that produced the challenged rulings. But the panel majority nevertheless held that U. S. Steel has no "protectable interest" at all in attempts to undo its administrative victories. The majority added that any interest U. S. Steel does have is adequately represented by the government—even though the government *itself* expressly declined to represent that it would adequately represent U. S. Steel's interest, is charged by law with advancing interests that *differ* from those of U. S. Steel, and has

settled tariff-exclusion cases that U. S. Steel would have litigated to judgment.

These holdings are incorrect. They contravene the meaning of Rule 24. They depart from the approach of the Supreme Court and the rulings of other courts of appeals, which would have reversed the CIT's holding. They interfere with the conduct of full and fair litigation, barring "affected voices" from being heard. Add-27. And as Judge Neman demonstrated, they produce a result that denies affected parties "[f]air judicial process." *Id.* Review by the en banc Court is warranted.

### A. U. S. Steel has "interests" in this litigation within the meaning of Rule 24.

#### 1. *The majority misapplied Rule 24.*

The majority assumed for purposes of its decision that the outcome of this litigation would impair U. S. Steel's economic interests; it recognized as well that the governing regulation gave U. S. Steel the right to participate in the administrative proceedings at issue here. But the majority held that these considerations *categorically* do not constitute a "legally protectable" interest of the sort necessary to support intervention. Although the majority did not identify what interests it thought *would* be legally protectable in this sense—except,

perhaps, a statutory right to participate in litigation (*see* Add.-16)—it excluded the sorts of direct practical interests that typically motivate and are resolved by litigation.

That analysis cannot be squared with the text, history, or policy of Rule 24. The Rule refers to "interest[s]" unqualified by any limitation. That term generally is understood to mean "[r]egard for one's own benefit or advantage" (AMERICAN HERITAGE DICTIONARY 940 (3d ed. 1992)), a notably broad definition that is not cabined within any narrow or technical constraints. *Cf. Bus. Guides, Inc. v. Chromatic Commc'ns Enterp., Inc.,* 498 U.S. 533, 540 (1991) (FRCP given "their plain meaning"). That point was made forcefully by the Rules Advisory Committee, which—in language subsequently embraced by the Supreme Court—emphasized the proper approach to Rule 24: "'If an absentee would be *substantially affected in a practical sense* by the determination made in an action, he should, as a general rule, be entitled to intervene.'" *Cascade*, at 386 U.S. at 134 n.3 (quoting Advisory Committee Note to the 1966 amendment to FRCP 24) (emphasis added).

11

And here, U. S. Steel surely will be "substantially affected in a practical sense" by the resolution of this case, in at least two related respects. Its economic interests are directly affected by the imposition (or not) of tariffs on imported steel products that it makes domestically; and it has an interest in preserving the hundreds of administrative determinations that it sought and that are grounded in factual information it submitted and explained. The panel majority did not suggest otherwise. Those considerations give U. S. Steel a right to intervene.

### 2. The majority's analysis conflicts with decisions of the Supreme Court and other courts of appeals.

Against this background, it is unsurprising that holdings of the Supreme Court and other circuits directly contradict the majority's decision.

**First**, the Supreme Court held in *Cascade* that economic interests *do* support intervention. There, the Court determined that Cascade, a retail gas distributor, was entitled to intervene as of right in a divestiture suit that would affect the operations of Cascade's supplier; pointing to the possibility that the divestiture ruling could affect Cascade's supply of gas, the Court held that "Rule 24(a)(2) is broad

enough to include Cascade." 386 U.S. at 136. As other courts have recognized, this ruling determined that Cascade "was entitled to intervention of right although its only 'interest' was the economic harm it claimed would follow from an allegedly inadequate plan for divestiture approved by the Government in an antitrust proceeding." *Smuck v. Hobson,* 408 F.2d 175, 179 (D.C. Cir. 1969) (en banc). *See Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n,* 834 F.3d 562, 567-68 (5th Cir. 2016) (describing *Cascade* as "Supreme Court precedent permitting intervention based on economic interests"). The majority's ruling here cannot be reconciled with that holding.

**Second**, following *Cascade,* numerous courts of appeals have held that "economic interests can justify intervention when they are directly related to the litigation." *Wal-Mart,* 834 F.3d at 568.[3] Indeed, the D.C. Circuit has held that the "conclusion that the [intervenor] has constitutional standing is *alone* sufficient to establish that [it] has 'an

---

[3] *See, e.g., United States v. Alisal Water Corp.,* 370 F.3d 915, 919 (9th Cir. 2004) ("a non-speculative, economic interest may be sufficient to support a right of intervention."); *Planned Parenthood of Minnesota, Inc. v. Citizens for Comty. Action,* 558 F.2d 861, 869 (8th Cir. 1977) (intervention permitted "to assure that … property values are not adversely affected").

interest relating to the property or transaction which is the subject of the action.'" *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (Garland, J.) (emphasis added). In any event, even those courts that require more than a showing of standing to satisfy Rule 24(a)(2) find intervention appropriate when the intervenor is "someone who[] the law on which his claim is founded was intended to protect," "provided that the [intervenor] would be directly rather than remotely harmed" by an adverse ruling in the litigation. *Flying J, Inc. v. Van Hollen,* 578 F.3d 569, 572 (7th Cir. 2009) (Posner, J.).[4] The majority's analysis here, which held flatly that "'mere economic interests will not suffice'"—and which rejected the right to intervene after holding that U.S. Steel *does* have standing—is in manifest conflict with these decisions.[5]

---

[4] Other courts agree with the Seventh Circuit that intervention is warranted when litigation involves a program of which the intervenor is an "intended beneficiar[y]." *Texas v. United States,* 805 F.3d 653, 660 (5th Cir. 2015); *California ex rel. Lockyer v. United States,* 450 F.3d 436, 441 (9th Cir. 2006).

[5] The majority's holding finds no support in the declaration by some courts that, to support intervention, an "interest" must be "legally protectable." "Often, this is a tautological exercise—a party may intervene if its interest is legally protectable and its interest is legally protectable if it can intervene." *Wal-Mart*, at 834 F.3d 568.

***Third***, courts of appeals also have held that participation in administrative proceedings that have a practical impact on a would-be intervenor creates a Rule 24 "interest." *See, e.g.*, *In re Sierra Club,* 945 F.2d 776, 779 & n.8 (4th Cir. 1991) (intervenor's interest stemmed from having been "made a party to the permitting process"; given that involvement, the intervenor was "not seeking to intervene … merely … because of a speculative future interest"). This is a matter of simple common sense: within the ordinary meaning of Rule 24's language, a participant in administrative proceedings has an obvious interest in the outcome of a regulatory process in which the governing rules entitled it to, and in which it did in fact, participate. And this principle, too, conflicts with the majority's holding.[6]

---

[6] The majority was incorrect to suggest that participation in administrative proceedings could establish a legally protectable interest in a subsequent judicial action only if there were a nondiscretionary *statutory* right to participate in those proceedings. That requirement finds no support in the language or policy of Rule 24(a)(2), and other courts have recognized that "intervenors of right need only an 'interest' in the litigation—not a 'cause of action' or 'permission to sue.'" *Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1018 (D.C. Cir. 2003); *see, e.g., Wal-Mart*, 834 F.3d at 566 ("[a]n interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement") (citation omitted). The majority relied for its contrary rule on the principle that standing may not be

Applying these principles would make short work of this case. It is undeniable that U. S. Steel is an intended beneficiary of a tariff program that the President promulgated specifically to "help our domestic steel industry." There is no doubt that U. S. Steel obtains significant, direct, and non-speculative economic benefits from application of those tariffs to products it produces. The governing regulations authorized U. S. Steel to participate in the exclusion proceedings at issue here, and it did participate, to advance its concrete economic interests in preservation of the challenged tariffs. And U. S. Steel will be directly affected by the outcome of a challenge to proceedings in which it was an active participant.

Accordingly, the outcome here turns on a pure issue of law regarding the meaning of the term "interest" in Rule 24, on which this Court is now an outlier. Review is warranted to resolve that issue and

based on "'the undifferentiated public interest in executive officers' compliance with the law.'" Add.-17 (citation omitted). But that rule has no bearing here. U.S. Steel *does* have standing. And it seeks to intervene, not to advance an "undifferentiated public interest," but to protect its *own* concrete economic and participatory interests in application of steel tariffs to its products.

to confirm, in Judge Newman's words, that "[t]he domestic producers meet the intervention standards of Rule 24." Add-27.

## B. The government does not adequately represent U. S. Steel's interests.

The majority also departed from the approaches of the Supreme Court and of other courts of appeals when it held that, in light of the government's defense of the exclusion rulings, U. S. Steel "fail[ed] to show that [its] participation [in the litigation] could add any material aspect beyond what is already present." Add-18. The majority's application of this standard—which turned substantially on the observation that U. S. Steel "seek[s] the same relief as the government" (Add-17)—was far too limiting. As Judge Newman demonstrated, the Supreme Court has held that the "'requirement of the Rule is satisfied if the applicant shows that the representation of his interest "may be" inadequate; and the burden of making that showing should be treated as minimal.'" Add-26 (quoting *Trbovich*, 404 U.S. at 538 n.10). Here, as other courts of appeals have held in materially identical circumstances, there is every reason to expect that the government's representation of U. S. Steel's interests will be *in*adequate.

17

**First**, as then-Judge Garland wrote for the D.C. Circuit, courts "often conclude[] that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736. That is because "[a] government entity … is charged by law with representing the public interest of its citizens," while a private-party intervenor "is seeking to protect a more narrow and 'parochial' financial interest not shared by the citizens [at large]." *Id*. at 737 (citation and internal quotation marks omitted). The government "would be shirking its duty were it to advance this narrower interest at the expense of its representation of the general public interest." *Id*. Numerous other circuits have reached an identical conclusion. *See*, *e.g.*, *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1253-54 (10th Cir. 2001); *Standard Heating & Air Conditioning Co. v. City of Minneapolis,* 137 F.3d 567, 572 (8th Cir. 1998).

That principle applies with obvious force here. Neither Commerce nor the citizenry at large has an exclusive focus on defending tariffs that benefit U. S. Steel's products. To the contrary, Commerce has made clear that its "sovereign interest" in the tariff-exclusion process lies in striking a balance that "achieve[s] the national security objectives of the

18

[Section 232] duties and quantitative limitations while not unduly burdening other parts of the U.S. industry." Submissions of Exclusion Requests & Objections to Submitted Requests for Steel & Aluminum, 83 Fed. Reg. 46,026, 46,064 (Sept. 11, 2018). Commerce's pursuit of this balance may well diverge from U. S. Steel's "parochial financial interests" in preservation of the hundreds of exclusion decisions challenged in these cases. This is not a hypothetical prospect: as Judge Newman emphasized, the government has candidly declined to represent that its defense of U. S. Steel's interest will be adequate (see Add-26), and Commerce in fact has settled, rather than defended, a number of challenges to Section 232 exclusion-request denials—including one (*Interpipe*) that had been at issue in *these* consolidated cases.

**Second**, as other courts of appeals have recognized, the government often will not have the technical expertise necessary to present a private party's case as well as would that party. *See, e.g., JLS, Inc. v. PSC of W. Va.,* 321 Fed. App'x. 286, 291 (4th Cir. 2009) (non-precedential decision); *Natural Resources Defense Council v. Costle,* 561 F.2d 904, 912 (D.C. Cir. 1977). This concern, too, is fully applicable

here: U. S. Steel is uniquely well-situated to explain, based on proprietary information supplied administratively, why the record establishes its ability to produce articles identical to or substitutable for those the importers want excluded from tariffs.[7]

### C. The questions presented here have tremendous practical importance.

Finally, the need for further review is especially acute because the questions presented here are ones of substantial practical importance, with implications for national security. Issues involving the right to intervene arise with great frequency, often in cases that themselves have significant stakes. Just in the limited context of steel tariffs, Judge Newman observed that "[t]he multiplicity of imported products and the impact on the various domestic producers weigh in favor of permitting intervention." Add-26. Given the hundreds of thousands of tariff-exclusion requests, the issue will persist in this setting. And as Judge Ginsburg has explained, en banc review is warranted to settle this sort

---

[7] U. S. Steel is not seeking to go outside "the administrative record," as the majority suggested. Add-17-18. Instead, the point is that U. S. Steel is better positioned than is the government to address the import of information about its production capabilities that *it* offered during the exclusion proceedings, where the court's review may turn "on questions of very technical detail and data." *Costle,* 561 F.2d at 913.

of "recurring issue that is likely to affect a large number of cases or persons" or a "recurring issue concerning the administration of justice in th[e] circuit." Douglas H. Ginsburg & Donald Falk, *The Court En Banc*, 59 GEO. WASH. L. REV. 1008, 1025, 1028 (1990).

Moreover, whether intervention is permitted has a real impact on the conduct of litigation. For reasons already noted, private parties, including U. S. Steel, often will be disadvantaged if they must rely on the government to defend their interests: Agencies may have different goals, may have less incentive to litigate cases vigorously, may be more willing to compromise or settle, and may be less familiar with the factual or technical nuances of the record. Consequently, as courts of appeals almost uniformly have recognized, the "'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Sierra Club v. Espy,* 18 F.3d 1202, 1207 (5th Cir. 1994).[8]

---

[8] *Accord Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011); *Smuck*, 408 F.2d at 179.

Or, as Judge Newman put it, "[f]air judicial process favors permitting affected voices to be heard." Add-27. Because the majority's decision frustrates that goal, en banc review is warranted.

## CONCLUSION

The Court should grant panel rehearing or rehearing en banc.

Respectfully submitted,

|  | */s/ Charles A. Rothfeld* |
|---|---|
| Thomas M. Beline | Charles A. Rothfeld |
| James E. Ransdell | Matthew J. McConkey |
| Chase J. Dunn | MAYER BROWN LLP |
| Nicole Brunda | 1999 K Street N.W. |
| CASSIDY LEVY KENT (USA) LLP | Washington, DC 20006 |
| 900 19th Street N.W., Suite 400 | Phone: (202) 263-3000 |
| Washington, DC 20006 | Fax: (202) 331-3101 |
| Phone: (202) 567-2300 | |
| Fax: (202) 567-2301 | |

*Counsel to United States Steel Corporation in CAFC Ct. Nos. 21-2172, 21-2182*

*Counsel to United States Steel Corporation in CAFC Ct. No. 21-2180*

Luke A. Meisner
SCHAGRIN ASSOCIATES
900 7th Street, Suite 500
Washington, DC 20001
Phone: (202) 223-1700

John R. Magnus
TRADEWINS LLC
1330 Connecticut Ave. N.W.
Washington, DC 20036
Phone: (202)-744-0368

*Counsel to United States Steel Corporation in CAFC Ct. No. 21-218*

*Counsel to Electralloy/G.O. Carlson, Ellwood City Forge, Ellwood Specialty Steel, and Crucible Industries in CAFC Ct. Nos. 21-2183, 21-2185*

October 24, 2022

ADDENDUM

# United States Court of Appeals
# for the Federal Circuit

_____

**CALIFORNIA STEEL INDUSTRIES, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

_____

2021-2172

_____

Appeal from the United States Court of International Trade in 1:21-cv-00015-MMB, Judge M. Miller Baker.

-------------------------------------------------

**NORTH AMERICAN INTERPIPE, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

_____

2021-2180

_____

Appeal from the United States Court of International
Trade in No. 1:20-cv-03825-MMB, Judge M. Miller Baker.

-------------------------------------------------

**EVRAZ INC. NA,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

_____

2021-2181

_____

Appeal from the United States Court of International
Trade in No. 1:20-cv-03869-MMB, Judge M. Miller Baker.

-------------------------------------------------

**AM/NS CALVERT LLC,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*
_____

2021-2182
_____

Appeal from the United States Court of International
Trade in No. 1:21-cv-00005-MMB, Judge M. Miller Baker.

-------------------------------------------------

**VALBRUNA SLATER STAINLESS, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**ELECTRALLOY/G.O. CARLSON,**
*Defendant-Appellant*
_____

2021-2183
_____

Appeal from the United States Court of International Trade in No. 1:21-cv-00027-MMB, Judge M. Miller Baker.

-------------------------------------------------

**VOESTALPINE HIGH PERFORMANCE METALS CORP., EDRO SPECIALTY STEELS, INC.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**ELECTRALLOY/G.O. CARLSON, CRUCIBLE INDUSTRIES LLC, ELLWOOD CITY FORGE COMPANY, ELLWOOD SPECIALTY STEEL,**
*Defendants-Appellants*

_____

2021-2185

_____

Appeal from the United States Court of International Trade in No. 1:21-cv-00093-MMB, Judge M. Miller Baker.

_____

Decided: September 8, 2022

_____

SANFORD M. LITVACK, Chaffetz Lindsey LLP, New York, NY, argued for all plaintiffs-appellees. Plaintiff-appellee California Steel Industries, Inc. also represented by ROBERT MATTHEW BURKE, ANDREW POPLINGER.

CRAIG A. LEWIS, Hogan Lovells US LLP, Washington,

DC, for plaintiffs-appellees North American Interpipe, Inc., Evraz Inc. NA, Valbruna Slater Stainless, Inc. Also represented by HAROLD DEEN KAPLAN, NICHOLAS LANEVILLE.

ROBERT ALAN LUBERDA, Kelley Drye & Warren, LLP, Washington, DC, for plaintiff-appellee AM/NS Calvert LLC. Also represented by JOSHUA MOREY, PAUL C. ROSENTHAL.

MATTHEW MOSHER NOLAN, ArentFox Schiff LLP, Washington, DC, for plaintiffs-appellees voestalpine High Performance Metals Corp., Edro Specialty Steels, Inc. Also represented by JESSICA R. DIPIETRO, NANCY NOONAN, LEAH N. SCARPELLI.

ANN MOTTO, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY, STEPHEN CARL TOSINI.

JAMES EDWARD RANSDELL, IV, Cassidy Levy Kent (USA) LLP, Washington, DC, argued for defendants-appellants. Also represented by THOMAS M. BELINE, NICOLE BRUNDA, CHASE DUNN, JACK ALAN LEVY; MICHELLE ROSE AVRUTIN, BENJAMIN JACOB BAY, NICHOLAS J. BIRCH, CHRISTOPHER CLOUTIER, ELIZABETH DRAKE, WILLIAM ALFRED FENNELL, LUKE A. MEISNER, KELSEY RULE, ROGER BRIAN SCHAGRIN, Schagrin Associates, Washington, DC; JOHN ROBERT MAGNUS, TradeWins LLC, Washington, DC; MATTHEW MCCONKEY, CHARLES ALAN ROTHFELD, Mayer Brown LLP, Washington, DC.

_____

Before MOORE, *Chief Judge*, NEWMAN and HUGHES, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HUGHES.

Dissenting opinion filed by *Circuit Judge* NEWMAN.

HUGHES, *Circuit Judge.*

Before the United States Court of International Trade, several domestic importers challenged the United States Department of Commerce's denials of their requests to be excluded from paying certain national security tariffs and to obtain refunds for such paid tariffs. Domestic steel producers United States Steel Corporation, Electralloy/G.O. Carlson, Crucible Industries LLC, Ellwood City Forge Company, and Ellwood Specialty Steel moved to intervene as of right, arguing that these exclusion-request disputes implicated their interests. The Court of International Trade denied their motions. *N. Am. Interpipe, Inc. v. United States*, 519 F. Supp. 3d 1313 (Ct. Int'l Trade 2021) (*Decision*). The proposed intervenors appeal from the court's denial. We affirm.

## I

Section 232 of the Trade Expansion Act of 1962 authorizes the President to restrict imports of goods to safeguard national security. 19 U.S.C. § 1862. Pursuant to this authority, in March 2018, "the President imposed a 25 percent ad valorem tariff on imports of certain steel products." *Decision*, 519 F. Supp. 3d at 1319 (citing Proclamation No. 9705, Adjusting Imports of Steel into the United States, 83 Fed. Reg. 11,625 (Mar. 8, 2018)). Domestic importers could request a tariff exclusion, however, either if the imported steel product was "not produced in the United States in a satisfactory quality," or "for a specific national security consideration." *Id.* (quoting Requirements for Submissions Requesting Exclusions, 83 Fed. Reg. 12,106, 12,110 (Mar. 19, 2018)). Likewise, "[a]ny individual or organization that manufactures steel articles in the United States" could then object to any such exclusion requests, providing domestic steel producers the opportunity to show that they either have or could have quickly produced a sufficient quantity of the same or similar quality product. *Id.*

at 1320 (quoting Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026, 46,058 (Sept. 11, 2018) (alteration in original)).

Plaintiffs-appellees, here, are domestic manufacturers or distributors who had imported steel products subject to this § 232 ad valorem tariff. *Id.* These importers sought exclusions from the tariff. *Id.* In response, several domestic steel producers objected to the exclusion requests, asserting that "they could satisfactorily produce all of, or sufficient substitutes for, the material that was the subject of the exclusion requests." *Id.* Commerce denied the exclusion requests, and the importers "paid the challenged duties and imported the steel products in question notwithstanding the exclusion denials." *Id.*

The importers then filed lawsuits alleging Administrative Procedure Act violations under the Court of International Trade's residual jurisdiction, *see* 28 U.S.C. § 1581(i), "contending that Commerce failed to consider relevant factors and evidence, failed to give adequate explanations for its decisions, and in some instances considered legally irrelevant factors." *Decision*, 519 F. Supp. 3d at 1321. The importers requested either that a refund be issued or that the case be remanded to Commerce for further proceedings. *Id.* The domestic steel producers, who had objected to the importers' tariff exclusion requests before Commerce, moved to intervene as party defendants in the importers' lawsuits.[1] They all "move[d] to intervene as a matter of

---

[1]    United States Steel Corporation sought to intervene in four cases, brought by California Steel Industries, Inc. (No. 21-15), North American Interpipe Inc. (No. 20-3825), Evraz Inc. NA and Evraz Inc. NA Canada (No. 20-3869), and AM/NS Calvert LLC (No. 21-5); Electralloy/G.O. Carlson sought to intervene in two cases,

right under [United States Court of International Trade]
Rule 24(a)(2) (based on a claimed interest in the transac-
tions at issue) and, alternatively, for permissive interven-
tion under Rule 24(b)(1)(B) (based on a claimed shared
defense)." *Id.* Proposed intervenor U.S. Steel also "move[d]
for permissive intervention under Rule 24(b)(1)(A) (based
on a claimed conditional right to intervene by statute)." *Id.*
The Court of International Trade denied intervention in all
six cases. *Id.* at 1335.

    The court first addressed "the threshold question of the
proposed intervenors' standing," and denied motions to in-
tervene in four of the six cases for lack of standing. *Id.* at
1321–22. In the court's view, "Article III requires as a
threshold matter that a proposed intervenor—regardless of
the basis upon which intervention is sought—demonstrate
independent constitutional standing insofar as the pro-
posed intervenor seeks any relief that is different from that
sought by the existing parties to the case." *Id.* at 1321. This
means, the court explained, that the proposed intervenor
must either show "its independent constitutional standing
or its 'piggyback standing,' i.e., standing based on seeking
the same relief sought by an existing party to the case." *Id.*

---

brought by Valbruna Slater Stainless, Inc. (No. 21-27), and
Voestalpine High Performance Metals Corporation and
Edro Special Steels, Inc. (No. 21-93); and Crucible Indus-
tries, LLC, Ellwood City Forge Company, and Ellwood Spe-
cialty Steel sought to intervene in the case brought by
Voestalpine and Edro (No. 21-93). In addition, four mem-
bers of the American Line Pipe Producers Association—
American Cast Iron Pipe Company, Berg Steel Pipe Corpo-
ration, Berg Spiral Pipe Corporation, and Stupp Corpora-
tion—sought to intervene in their individual capacities in
the case brought by Evraz (No. 20-3869), but they have not
appealed the Court of International Trade's decision deny-
ing their motion to intervene.

at 1322 (citation omitted). Because "U.S. Steel [had] dis-claim[ed] seeking any relief separate from that sought by the government" in North American Interpipe's action (No. 20-3825) and in Evraz's action (No. 20-3869), the court found that U.S. Steel had "established its piggyback stand-ing." *Id.* But the court determined that none of the pro-posed intervenors had "address[ed], much less establish[ed], either their independent constitutional standing or their piggyback standing" in the remaining four cases (Nos. 21-5, 21-15, 21-27, 21-93). *Id.*

Having determined that U.S. Steel had standing, the court then considered whether it was entitled to interven-tion under Rule 24(a)(2), applying the following four-part test:

> (1) the motion must be timely; (2) the moving party must claim an interest in the property or transac-tion at issue that is "'legally protectable'—merely economic interests will not suffice"; (3) "that inter-est's relationship to the litigation must be 'of such a *direct* and *immediate* character that the interve-nor will either gain or lose by the *direct* legal oper-ation and effect of the judgment'"; and (4) "the movant must demonstrate that said interest is not adequately addressed by the government's partici-pation."

*Decision*, 519 F. Supp. 3d at 1323 (first quoting *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012); then quoting *Am. Mar. Transp., Inc. v. United States*, 870 F.2d 1559, 1562 (Fed. Cir. 1989)).[2] Applying this standard, the court

---

[2]    Although *Wolfsen* and *American Maritime* involved Court of Federal Claims Rule 24—rather than CIT Rule 24—the Court of International Trade determined that "the

found the motions timely but concluded that "they fail[ed] to satisfy the other three elements of the Federal Circuit's test for intervention as a matter of right under Rule 24(a)(2)." *Id.* at 1328.

The court found no legally protectable interests in Commerce's denials of the importers' § 232 exclusion requests. *Id.* at 1325–26. "The problem with [U.S. Steel's] arguments," the court explained, "is that upholding Commerce's exclusions will not provide the [proposed] intervenors with sales opportunities" since, "despite denial of the exclusion requests, U.S. Steel did not subsequently supply the products at issue to [the importers]." *Id.* at 1326. So "the only 'interest' identified by U.S. Steel in this matter is the indirect economic benefit U.S. Steel believes it would receive by ensuring that [the importers are] injured by unfair tariff treatment." *Id.*

The results here, the court determined, "would be the same even *if*, hypothetically, the imports in question were suspended and gathering dust in port warehouses pending the outcome of this litigation." *Id.* Thus, any gain would "be both indirect and contingent, resulting not from the direct effect of the judgment but instead from [the importers'] choice to purchase from the proposed intervenors rather than completing the imports." *Id.*

The court went on, because U.S. Steel seeks "the same relief as the government, their entry into these cases is presumptively barred unless they demonstrate that their

---

rationale of *Wolfsen* and *American Maritime* [is] directly controlling in the Court of International Trade" because "the Federal Circuit applied authorities that interpreted Federal Rule of Civil Procedure 24" and "[t]he relevant Court of Federal Claims rule is—like th[e] [CIT's] Rule 24—drawn verbatim from Federal Rule of Civil Procedure 24." *Decision*, 519 F. Supp. 3d at 1323 n.15.

participation could add some material aspect beyond what is already present." *Id.* at 1327 (cleaned up). The court concluded that U.S. Steel had made no such showing, having "assert[ed] only that the government's sovereign interest in maintaining the Section 232 exclusion process does not encompass their proprietary interests in these specific transactions." *Id.*

The court further observed that the proposed intervenors had contended that "they [could] make 'factual contributions' that w[ould] cure 'imperfect administrative records.'" *Id.* at 1328. But the court gave no weight to such contentions, having instead determined that any such "'factual contributions' would not 'add some material aspect to the case beyond what is already present'" since "judicial review is confined to the existing administrative records in these matters." *Id.* (quoting *Wolfsen*, 694 F.3d at 1318).

The Court of International Trade concluded that the proposed intervenors were not entitled to intervention as a matter of right under Rule 24(a)(2), *id.*, and also decided that they were not eligible for permissible intervention under Rule 24(b)(1), *see id.* at 1329–35.[3] The court thus denied the motions to intervene. The proposed intervenors appeal. "Denial of a motion to intervene is a final judgment and immediately appealable." *Wolfsen*, 695 F.3d at 1314. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## II

"This court has not previously identified the standard to be applied when reviewing a trial court's denial of a motion to intervene as of right." *Wolfsen*, 695 F.3d at 1314. The proposed intervenors and the government assert that we should review a denial of intervention de novo. The importers disagree, contending that we should review for

---

[3] The proposed intervenors do not challenge any permissive intervention determinations.

abuse of discretion and pointing out that we have "expressly noted" this in an earlier, unpublished opinion. Plaintiffs-Appellees' Answering Br. 11 (citing *Abbott Lab'ys v. Diamedix Corp.*, No. 94-1345, 1994 WL 782247, at *2 (Fed. Cir. July 26, 1994)). But we had noted, in *Wolfsen*, that the regional circuits "are split on the question, though slightly more courts favor de novo review." 695 F.3d at 1314. There, we found no need to decide the issue because we "would affirm under both proposed standards of review," and so "the question of the standard to apply [was] non-dispositive." *Id.* We reach the same conclusion here.

We review questions of standing de novo. *Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015).

## III

The Court of International Trade denied the following motions to intervene for lack of standing: U.S. Steel's motions to intervene in the cases brought by AM/NS Calvert (No. 21-5) and California Steel (No. 21-15); Electralloy/G.O. Carlson's motions to intervene in the cases brought by Valbruna (No. 21-27) and Voestalpine and Edro (No. 21-93); and Crucible's, Ellwood City Forge's, and Ellwood Specialty Steel's motion to intervene in the case brought by Voestalpine and Edro (No. 21-93). While the court found that U.S. Steel had standing in the remaining two cases—brought by North American Interpipe (No. 20-3825) and by Evraz (No. 20-3869)—the Court of International Trade still denied U.S. Steel's motions to intervene in those cases since U.S. Steel had not established it was entitled to intervention under Court of International Trade Rule 24(a)(2). The proposed intervenors challenge the Court of International Trade's denials, arguing that in all cases they both have standing and are entitled to intervene under Rule 24(a)(2).

Although we ultimately affirm the Court of International Trade's decision denying all of the motions to

intervene for lack of entitlement under Rule 24(a)(2), we begin by addressing the court's decisions on standing because standing is a threshold jurisdictional question. *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1648, 1650–51 (2017).

### A

The proposed intervenors contend that the Court of International Trade erred in concluding that they must establish standing to intervene. They also assert that, even if standing were necessary to intervene, the proposed intervenors have established such standing. Although we agree with the trial court that all of the intervenors must establish standing, we conclude that they did so here.

### 1

"For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right." *Town of Chester*, 137 S. Ct. at 1651. This means that, "at the least, an intervenor of right must demonstrate Article III standing when it seeks additional relief beyond that which the plaintiff requests." *Id.*

While the proposed intervenors admit that a *plaintiff*-intervenor must have standing to intervene, *see id.*, in their view, "it is unnecessary for prospective *defendant*-intervenors to establish Article III standing" since "intervention on the side of the defendant at the trial court level necessarily *does not* expand the claims at issue," Appellants' Opening Br. 17–18. They reason that this is because the plaintiff or plaintiff-intervenor is "the party invoking federal jurisdiction" who "bears the burden of establishing" standing. *Id.* at 18 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). So, since "[h]ere, the justiciable case or controversy between plaintiff and defendant satisfies Article III," the proposed intervenors assert that "a party seeking to intervene need not demonstrate that he has

14                    CALIFORNIA STEEL INDUSTRIES, INC. v. US

standing." *Id.* at 18 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)). We disagree.

The proposed intervenors' only basis for distinguishing between plaintiff- and defendant-intervenors rests on the premise that intervenors' motivations to join a suit align with the motivations of the traditional parties to the case. Based on that premise, they argue that a defendant-intervenor should be treated like a defendant. But a defendant-intervenor does not enter litigation in the same way as a traditional defendant. Though it is true that "Article III standing is not a threshold determination that courts normally make before allowing a defendant to enter a case," this is because "[t]he standing inquiry is generally 'directed at those who invoke the court's jurisdiction,' and most defendants are pulled into a case unwillingly." *Crossroads Grassroots Pol'y Strategies v. Fed. Election Comm'n*, 788 F.3d 312, 316 (D.C. Cir. 2015) (citation omitted).

A defendant-intervenor does not fit the same mold as the traditional unwilling defendant. Rather, a defendant-intervenor actively seeks to participate in the resolution of a case in which the plaintiff did not bring a claim against or request any relief from the proposed intervenor. Thus, "where a party tries to intervene as another defendant," that defendant-intervenor must "demonstrate Article III standing." *Id.*

2

The proposed intervenors assert that the Court of International Trade erred in determining that they lacked standing in the suits brought by AM/NS Calvert (No. 21-5), California Steel (No. 21-15), Valbruna (No. 21-27), and Voestalpine and Edro (No. 21-93). In their view, "a simple comparison of the [g]overnment's prayer for relief with those [in the proposed intervenors'] Proposed Answers establishes that" the proposed intervenors and the government seek the same relief, thereby conferring standing

upon the proposed intervenors. Appellants' Opening Br. 19. We agree.

Because in each of these cases the proposed intervenors' requested relief is largely identical to the government's prayer for relief, the proposed intervenors have established piggyback standing.[4] *Compare* Appx4833 ("U.S. Steel respectfully requests that judgment be entered sustaining the decision of Commerce to deny [§] 232 steel tariff exclusions requested by Calvert, and granting such other and further relief as may be just and appropriate."), *and* Appx7232 (same), *with* Appx4883 (Government "requests that the Court enter judgment in its favor, order that the complaint be dismissed, and grant defendant such other and further relief as the Court may deem just and proper."), *and* Appx7297 (same); *see also* Appx9371, Appx11628, Appx11719, Appx11745 (Electralloy/G.O. Carlson, Ellwood City, Ellwood Specialty Steel, and Crucible requesting relief in the lawsuits brought by Valbruna or Voestalpine and Edro identical to the relief requested by U.S. Steel in the lawsuits brought by Calvert or California Steel).

---

[4]     Even if it were unclear whether the proposed intervenors requested additional relief beyond what the government requested, the appropriate action would have been for the Court of International Trade to request clarification from the parties before sua sponte raising and deciding the standing inquiry. *See Town of Chester*, 137 S. Ct. at 1652 & n.4 (finding that the proposed intervenors' statements "at best le[ft] it ambiguous whether" the proposed intervenor sought damages for itself or was simply seeking the same damages as the party it moved to join; noting that "[t]his confusion needs to be dispelled" and that the court is "not inclined to resolve it in the first instance"; vacating the judgment and remanding the case since "the Court of Appeals did not resolve this ambiguity").

B

Although the proposed intervenors have established standing, they must still identify a legally protectable interest to qualify as intervenors under Rule 24(a)(2). The proposed intervenors contend that they have a legally protectable interest in Commerce's denials of the importers' exclusion requests, considering the proposed intervenors' "administrative participation, direct economic stake, and position as intended beneficiaries" of the President's ad valorem tariff. Appellants' Reply Br. 1. They assert that (1) "participation in adversarial administrative proceedings bestows a Rule 24(a)(2) interest in the result obtained," *id.* at 8, (2) "actions to undo tariffs that specifically protect domestic producers give rise to economic interests that unfavorable judgments would impair," *id.* at 15, and (3) "judgments removing tariff protection may practically impair the interests of direct beneficiaries of those tariffs," *id.* at 22. We disagree.

Even if the proposed intervenors "were active administrative parties, consistent with Commerce's regulations," as they claim, *id.* at 10, this is an insufficient basis to find that the proposed intervenors have a legally protectable interest in this case. As the Court of International Trade correctly observed, § 232 permits Commerce to hear from domestic parties before considering whether to grant or deny an exclusion request, but it "does not require Commerce to do so, nor does it impose any requirement that Commerce—much less th[e] Court [of International Trade]—permit outsiders to voice objections to any exclusions that the Department might grant." *Decision*, 519 F. Supp. 3d at 1324. And Commerce's decision to hear such objections "is, in effect, an act of administrative grace that creates no protected legal interests." *Id.* at 1324–25. Likewise, "Commerce's administrative scheme implementing [§] 232 permits *any* domestic person or entity to voice objections to exclusions requests," but the statute "does not require Commerce to" hear from domestic entities. *Id.* at

1324–25. So, "[f]or purposes of Rule 24(a)(2), any scheme such as Commerce's here that effectively permits *anyone* to participate in administrative proceedings confers a legally protectable interest on no one." *Id.* (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992) (holding that Congress may not "convert the undifferentiated public interest in executive officers' compliance with the law into an individual right vindicable in the courts" (cleaned up))). That the proposed intervenors chose to seize on Commerce's administrative grace and object to the pertinent requests does not transform their participation during the administrative proceedings into a legally protectable interest during subsequent judicial proceedings. And the proposed intervenors' alleged economic interests cannot suffice either. *Wolfsen*, 695 F.3d at 1315 (explaining that "mere[] economic interests will not suffice" to establish that a proposed intervenor has a legally protectable interest).

Since the proposed intervenors failed to identify a legally protectable interest, as is required to establish intervention as of right under Rule 24(a)(2), the Court of International Trade rightly denied the motions to intervene. And without an identifiable, legally protectable interest, the proposed intervenors' arguments about the practicable impairment of their interests have no merit. *See Nat. Res. Def. Council v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1345 (10th Cir. 1978) ("[T]he question of impairment is not separate from the question of existence of an interest.").

Further, the proposed intervenors must show that their "participation could add some material aspect beyond what is already present." *Wolfsen*, 695 F.3d at 1318. And they make no such demonstration here. The proposed intervenors admit that they seek the same relief as the government and emphasize only their potential "factual contributions"—given that they are better situated to prove their production capabilities compared to the government—which are irrelevant since the administrative

Case 21-2172-GS Document 64-2   Page 58-11 Filed 09/08/2022 of 71

18                    CALIFORNIA STEEL INDUSTRIES, INC. v. US

record is generally closed once before the judiciary. *See Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379–80 (Fed. Cir. 2009). Without more, the proposed intervenors fail to show that their participation could add any material aspect beyond what is already present.

## IV

The Court of International Trade should have found that the proposed intervenors established piggyback standing in all six cases before us on appeal. Notwithstanding this error, the court correctly determined that none of the proposed intervenors had identified a legally protectable interest. We accordingly affirm the Court of International Trade's decision denying the motions to intervene.

**AFFIRMED**

# United States Court of Appeals for the Federal Circuit

───────────────

**CALIFORNIA STEEL INDUSTRIES, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

───────────────

2021-2172

───────────────

Appeal from the United States Court of International Trade in 1:21-cv-00015-MMB, Judge M. Miller Baker.

------------------------------------------------

**NORTH AMERICAN INTERPIPE, INC.,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

_____

2021-2180

_____

Appeal from the United States Court of International Trade in No. 1:20-cv-03825-MMB, Judge M. Miller Baker.

-------------------------------------------------

**EVRAZ INC. NA,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

_____

2021-2181

_____

Appeal from the United States Court of International Trade in No. 1:20-cv-03869-MMB, Judge M. Miller Baker.

-------------------------------------------------

**AM/NS CALVERT LLC,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**UNITED STATES STEEL CORPORATION,**
*Defendant-Appellant*

_____

2021-2182

_____

Appeal from the United States Court of International Trade in No. 1:21-cv-00005-MMB, Judge M. Miller Baker.

-------------------------------------------------

**VALBRUNA SLATER STAINLESS, INC.,**
*Plaintiff-Appellee*

v.

**UNITED STATES,**
*Defendant-Appellee*

v.

**ELECTRALLOY/G.O. CARLSON,**
*Defendant-Appellant*

_____

2021-2183

_____

4                    CALIFORNIA STEEL INDUSTRIES, INC. v. US

Appeal from the United States Court of International Trade in No. 1:21-cv-00027-MMB, Judge M. Miller Baker.

-------------------------------------------------

**VOESTALPINE HIGH PERFORMANCE METALS CORP., EDRO SPECIALTY STEELS, INC.,**
*Plaintiffs-Appellees*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

**v.**

**ELECTRALLOY/G.O. CARLSON, CRUCIBLE INDUSTRIES LLC, ELLWOOD CITY FORGE COMPANY, ELLWOOD SPECIALTY STEEL,**
*Defendants-Appellants*

_____

2021-2185

_____

Appeal from the United States Court of International Trade in No. 1:21-cv-00093-MMB, Judge M. Miller Baker.

_____

NEWMAN, *Circuit Judge*, dissenting.

This appeal concerns the right of certain domestic steel producers to intervene in the appeal of tariff proceedings (here a tariff whose purpose is to support domestic steel manufacturing capacity for products critical to national security) by imposing a tariff on corresponding imported steel. The court now denies these domestic steel producers

the right to participate in the appeal to the Court of International Trade concerning requests for relief from those tariffs.[1]  The panel majority rules that although these domestic steel producers have standing to intervene, they do not have a legally protectable interest.  Maj. Op. at 17.  However, the authorizing statute contemplates participation by affected domestic industries, in service to the national security purposes of this statute.  From the denial of the requested interventions, I respectfully dissent.

## Background

Presidential Proclamation No. 9705, *Adjusting Imports of Steel into the United States*, was issued in 2018 and declared that:

> [S]teel articles are being imported into the United States in such quantities and under such circumstances as to threaten to impair the national security of the United States.

83 Fed. Reg. at 11,625 (Mar. 8, 2018).  The Proclamation, applying Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, imposes:

> a global tariff of 24 percent on imports of steel articles in order to reduce imports to a level that the Secretary assessed would enable domestic steel producers to use approximately 80 percent of existing domestic production capacity and thereby

---

[1]     *North American Interpipe, Inc. v. United States*, No. 03825; *Evrz Inc. NA v. United States*, 20-03869; *AM/NS Calvert LLC v. United States*, 21-0005; *California Steel Indus., Inc. v. United States*, 21-00015; *Valrbuna Slater Stainless, Inc. v. United States*, 21-00027; and *Voestalpine High Performance Metals Corp. v. United States*, 519 F. Supp. 3d 1313 (Ct. Int'l Tr. 2021).

achieve long-term economic viability through in-
creased production.

*Id.*  The Commerce Department is charged with adminis-
tering the tariff.  *Id.*

Commerce established a procedure whereby domestic
companies importing the listed steel products can seek ex-
clusion from the Section 232 tariff.  83 Fed. Reg. at 46,057–
58 (Sept. 11, 2018) (allowing "individuals or organizations
located in the United States . . . using steel in business ac-
tivities" to file tariff exclusion requests).  Importers seeking
such tariff exclusion are required to demonstrate that steel
produced in the United States cannot meet their needs be-
cause the specific item is not produced in adequate quality
or amount.  *Id.*

California Steel and other importers (collectively, "Cal.
Steel") sought exclusion from the Section 232 tariff for hun-
dreds of steel items during the 2018–2020 period.  Cal.
Steel asserted that domestic producers were unable to
meet their needs for particular products or purposes.  U.S.
Steel and other domestic steel producers (collectively, "U.S.
Steel") opposed those exclusion requests on the ground that
domestic producers could provide all the needed steel, and
that the Section 232 tariff should be applied.

When Commerce denied Cal. Steel's requests for tariff
exclusion, the importers paid the duties, and now seek re-
funds in the Court of International Trade ("CIT").  U.S.
Steel seeks to intervene under CIT Rule 24, which allows
intervention when economic interests are affected and the
intervenor's interest is not adequately represented by any
party to the action.  The CIT denied intervention, leading
to this appeal.

DISCUSSION

My colleagues hold that although the would-be interve-
nors have standing, they do not have a legally protectable

interest. In my view, the requested intervention should be permitted.

United States Steel Corp. and other domestic steel producers participated as objectors[2] to requested tariff exclusions, having the right to participate in the Commerce proceedings. 83 Fed. Reg. at 12,111 (Mar. 19, 2018) ("Any individual or organization in the United States may file objections to steel exclusion requests . . . ."). An objector does not lose that right when appeal is taken. Although the panel majority states that the regulation does not "effectively permit[] *anyone* to participate" in a subsequent appeal, Maj. Op. at 17, all of these would-be intervenors were participants in the Commerce proceeding and are directly affected by the tariff. U.S. Steel argues that it has a legally protectable interest and the right to participate under CIT Rule 24 as well as under the statute governing this tariff, 19 U.S.C. § 1862.

Intervention under CIT Rule 24 requires that the movant "claim some interest in the property affected by the case" where "that interest's relationship to the litigation must be 'of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment.'" *Wolfsen Land & Cattle Co. v. Pac. Coast Fed'n of Fishermen's Ass'ns*, 695 F.3d 1310, 1315 (Fed. Cir. 2012) (quoting *Am. Marine Transp., Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989) (emphases in original)). "These requirements are construed in favor of intervention." *Wolfsen*, 695 F.3d at 1315. U.S. Steel argues that Rule 24 provides objectors with the

---

[2]    The parties to tariff request proceedings are referred to as "requesters" or "objectors" in the administrative proceedings. 15 C.F.R. § 705 Supp. 1(b).

CALIFORNIA STEEL INDUSTRIES, INC. v. US

right to defend the results of a proceeding in which it participated and by which it is affected.

Intervention by non-parties has been analyzed in a variety of circumstances. *See, e.g.*, *In re Sierra Club*, 945 F.2d 776, 779–80 (4th Cir. 1991), where the court allowed intervention in the district court in a dispute over the constitutionality of a regulation. The Fourth Circuit explained that because the court's enjoining of parts of an environmental regulation would "impede Sierra Club's ability to protect its interest in the [related] administrative proceeding," Sierra Club had the right to intervene. *Id.* at 779.

CIT Rule 24 does not authorize intervention as of right when the "existing parties adequately represent [the intervenor's] interest." However, "[t]he requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Here, the United States explicitly "take[s] no position as to whether the United States adequately represents the manufacturers' interests." Gov't Br. 23. This statement rebuts the "presumption that the government as sovereign adequately represents the interest of citizens concerning matters that invoke 'sovereign interests.'" *Wolfsen*, 695 F.3d at 1319 (Reyna, J., concurring). Nor can the government be charged with knowledge of the economic interests of the intervenors, sufficient to adequately represent those interests.

The multiplicity of imported products and the impact on the various domestic producers weigh in favor of permitting intervention. The U.S. Steel objectors have clear economic interests in these tariff exclusion requests, and meet the requirements of Rule 24(a)(2) that they have "an interest relating to the property or transaction that is the

subject of the action," and no "existing parties adequately represent that interest."

Fair judicial process favors permitting affected voices to be heard. The domestic producers meet the intervention standards of Rule 24. I discern no reason to deny intervention to the entities that were objectors and are directly affected by the imposition of this tariff. From my colleagues' contrary ruling, I respectfully dissent.

**CIT Rule 24.** Intervention

(a) <u>Intervention of Right</u>. On timely motion, the court must permit anyone to intervene who:

(1) is given an unconditional right to intervene by a federal statute; or

(2) in an action described in section 517(g) of the Tariff Act of 1930, is a person determined to have entered merchandise through evasion or is the interested party that filed the allegation; or claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(3) In an action described in 28 U.S.C. § 1581(c), a timely motion must be made no later than 30 days after the date of service of the complaint as provided for in Rule 3(f), unless for good cause shown at such later time for the following reasons:

(i) mistake, inadvertence, surprise or excusable neglect; or

(ii) under circumstances in which by due diligence a motion to intervene under this subsection could not have been made within the 30-day period. Also, in an action described in 28 U.S.C. § 1581(c), except an action described in section 517(g) of the Tariff Act of 1930, at the time a party's motion for intervention is made, attorneys for that party are required to comply with the procedures set forth in Rule 73.2 (c) by

ADD-28

filing of a Business Proprietary Information Certification where appropriate.

(b) <u>Permissive Intervention</u>.

(1) <u>In General</u>. On timely motion, the court may permit anyone to intervene who:

(A) is given a conditional right to intervene by a federal statute; or

(B) has a claim or defense that shares with the main action a common question of law or fact.

(2) <u>By a Government Officer or Agency</u>. On timely motion, the court may permit a federal governmental officer or agency to intervene if a party's claim or defense is based on:

(A) a statute or executive order administered by the officer or agency; or

(B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

(3) <u>Delay or Prejudice</u>. In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

(c) <u>Notice and Pleading Required</u>.

(1) Except in an action described in 28 U.S.C. § 1581(c), a person desiring to intervene must serve a motion to intervene upon the parties as provided in Rule 5. The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought.

(2) In an action described in 28 U.S.C. § 1581(c), an interested party who was a party to the proceeding in connection with which the matter arose and who desires to intervene pursuant to subparagraph (a) must, after consultation as provided in Rule 7(b), serve a motion to intervene upon the parties as provided in Rule 5. The motion must state (1) whether the motion for intervention has been consented to by the parties, and (2) the grounds in support of the motion. When the movant for intervention seeks to intervene on the side of the plaintiff, the motion must state the movant's standing, and must state the administrative determination to be reviewed and the issues that the intervenor desires to litigate. When the movant for intervention seeks to intervene on the side of the defendant, the motion must state the movant's standing. If no other party objects within 14 days after service of the motion, or if all parties consent to the motion, the clerk of the court may order the requested relief.

# CERTIFICATE OF COMPLIANCE

This petition complies with the type-volume limitation of Federal Rule of Appellate Procedure 35 because it contains 3892 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b)(2).

This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirement of Rule 32(a)(6) because it was been prepared in a proportionately spaced typeface using Microsoft Word in Century Schoolbook 14-point type for text and footnotes.

*/s/ Charles A. Rothfeld*
Charles A. Rothfeld

*Counsel for Petitioner*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on October 24, 2022 I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system which will serve all counsel of record.

/s/ *Charles A. Rothfeld*

Charles A. Rothfeld

*Counsel for Petitioner*

# EXHIBIT 2



**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**
717 MADISON PLACE, N.W.
WASHINGTON, D.C. 20439

PETER R. MARKSTEINER
CLERK OF COURT

CLERK'S OFFICE
202-275-8000

October 25, 2022

Sanford M. Litvack
Chaffetz Lindsey LLP
1700 Broadway
33rd Floor
New York, NY 10019

Craig A. Lewis
Hogan Lovells US LLP
Columbia Square
555 Thirteenth Street NW
Washington, DC 20004

Robert Alan Luberda
Kelley Drye & Warren, LLP
3050 K Street, NW
Washington, DC 20007

Matthew Mosher Nolan
ArentFox Schiff LLP
1717 K Street, NW
Washington, DC 20006

Ann Motto
United States Department of Justice
Civil Division
Commercial Litigation Branch
Ben Franklin Station
PO Box 480
Washington, DC 20044

**Re:   California Steel Industries, Inc. v. US   Appeal No. 21-2172**

Dear Counsel:

The court invites responses from Appellees to the combined petition for panel rehearing and rehearing en banc filed by the Appellants in this matter.

Please file the responses in accordance with Federal Circuit Rules 35 and 40 on or before November 8, 2022.

Very truly yours,

/s/ Peter R. Marksteiner
Peter R. Marksteiner
Clerk of Court

cc:   Charles Alan Rothfeld