**NONCONFIDENTIAL VERSION**

## UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE GARY S. KATZMANN

| | |
|---|---|
| SENECA FOODS CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>Defendant. )<br>) | Court No. 22-00243 |

## PLAINTIFF'S RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD

Pursuant to USCIT Rule 56.1 and this Court's order of January 24, 2023 (ECF 30), Plaintiff Seneca Foods Corporation ("Seneca") respectfully submits this Motion for Judgment on the Agency Record. This motion challenges eight decisions by the Department of Commerce ("Commerce" or the "Department") denying Seneca's requests for exclusions from Section 232 (19 U.S.C. § 1862) tariffs for certain tin mill products, which consist of steel. Specifically, Seneca challenges Commerce's denials of the following requests for exclusion from Section 232 tariffs:

- Request no. 257423 filed on October 20, 2021 for tin-free steel ("TFS"), HTSUS 7210500020, which was denied on April 9, 2022;

- Request no. 257428 filed on October 20, 2021 for TFS, HTSUS 7210500020, which was denied on April 9, 2022;

- Request no. 257708 filed on October 21, 2021, for electrolytic tinplate ("ETP"), HTSUS 7210120000, which was denied on April 9, 2022;

- Request no. 257709 filed on October 21, 2021, for ETP, HTSUS 7210120000, which was denied on April 9, 2022;

- Request no. 257712 filed on October 21, 2021, for ETP, HTSUS 7210120000, which was denied on April 9, 2022;

- Request no. 275504 filed on January 23, 2022, for ETP, HTSUS 7210120000, which was denied on April 30, 2022;

- Request no. 283368 filed on March 15, 2022, for TFS, HTSUS 7210500020, which was denied on July 9, 2022; and

- Request no. 283369 filed on March 15, 2022, for ETP, HTSUS 7210120000, which was denied on July 9, 2022.

This Court has exclusive jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1) because it concerns claims against the United States or its agencies arising out of laws concerning "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue" and the "administration and enforcement" of such laws.

For the reasons more fully set forth in the accompanying brief, incorporated herein by reference, the Department's denials of Seneca's eight requests for exclusion from the Section 232 tariffs were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of the Administrative Procedure Act ("APA"). 5 U.S.C. § 706(2)(A). In every decision, the evidence was overwhelming that United States Steel Corporation ("USS")—despite claims of available capacity—had refused to sell Seneca the relevant tin mill products (or any products at all) over a multi-year period. The Department's denials run counter to clear weight of the evidence, and its decisions fail to explain, or even consider, why it chose to ignore not only USS's consistent refusals over multiple years to supply Seneca but also USS's admitted and repeated misstatements

of material facts to the Department. In some of its denials, Commerce went so far as to claim that there was *no* evidence to contradict USS's implausible claims of available capacity, despite mountains of evidence submitted by Seneca. And in other decisions, the Department admitted it failed to provide a full analysis, yet denied the requests for unexplained technical issues. This pattern falls far short of the reasoned decisionmaking required by the APA.

Accordingly, Plaintiff respectfully requests that this Court: (i) grant its motion setting aside the Department's decisions denying Seneca's requests; (ii) declare that the Department's denials were arbitrary and capricious or otherwise unlawful under the APA; (iii) declare that Seneca was entitled to the requested exclusions from Section 232 tariffs; (iv) instruct the Department to grant the denied exclusions, enabling U.S. Customs and Border Protection to refund the Section 232 tariffs collected on entries covered by Plaintiff's requested exclusions; and (v) provide any other relief the Court deems just and proper. Alternatively, Seneca asks the Court to remand the matter to the Department of Commerce for proper treatment and consideration of the requests in accordance with the requirements of the APA.

*/s/ James M. Smith*
James M. Smith
Thomas Brugato
Kwan Woo (Kwan) Kim
Brock M. Mason
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com
tbrugato@cov.com
kkim@cov.com
bmason@cov.com

February 28, 2023                 *Counsel for Plaintiff Seneca Foods Corporation*

NONCONFIDENTIAL VERSION

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN

|  |  |  |
|---|---|---|
| SENECA FOODS CORPORATION, | ) | Court No. 22-000243 |
|  | ) |  |
| Plaintiff, | ) | **NONCONFIDENTIAL** |
|  | ) | **VERSION** |
| v. | ) |  |
|  | ) | Confidential Information deleted |
| UNITED STATES, | ) | From Pages 12, 17, 19, 23, 24, |
|  | ) | 29, 32, and 33. |
| Defendant. | ) |  |
|  | ) |  |

## BRIEF IN SUPPORT OF PLAINTIFF'S RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD

*/s/ James M. Smith*
James M. Smith
Thomas Brugato
Kwan Woo (Kwan) Kim
Brock M. Mason
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com
tbrugato@cov.com
kkim@cov.com
bmason@cov.com

February 28, 2023                *Counsel for Plaintiff Seneca Foods Corporation*

NONCONFIDENTIAL VERSION

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ................................................................................. 1

II.     RULE 56.1 STATEMENT ...................................................................................... 4

      A.     Issue Presented for Review ........................................................................ 4

      B.     Administrative Determinations for Review .................................................. 5

III.     BACKGROUND .................................................................................................... 5

      A.     Parties ........................................................................................................ 5

      B.     Statutory and Regulatory Framework .......................................................... 6

      C.     The Department's History of Privileging Objectors ................................... 8

      D.     The Department's Wrongful Denials of Seneca's October 2021 and January 2022 Exclusion Requests .......................................................................................... 9

           1.     Seneca's Attempts to Obtain Domestic Steel Before 2021. ........................... 9

           2.     Seneca's October 2021 Exclusion Requests ................................................ 11

           3.     Seneca's January 2022 Exclusion Request .................................................. 13

           4.     The Department's Denials of the October 2021 and January 2022 Exclusion Requests ................................................................................. 14

      E.     The Department's Wrongful Denials of Seneca's March 2022 Requests ..................... 16

IV.     STANDARD OF REVIEW .................................................................................... 20

V.     ARGUMENT ....................................................................................................... 22

      A.     The Department's Denials of the October 2021 and January 2022 Exclusion Requests Were Arbitrary and Capricious .............................................................. 22

           1.     The Department's Findings that USS Could Supply the Relevant Products Run Counter to the Evidence Before the Agency ............................. 22

           2.     Contrary to Procedure, the Department Failed to Consider and Adequately Explain its Determination to Ignore Evidence of USS's Repeated Refusals to Supply Seneca ............................................ 26

      B.     The Department's Denials of the March 2022 Exclusion Requests Were Arbitrary and Capricious ................................................................................................. 28

           1.     Citing Only an "Issue with the Request," the Department Failed to Explain Its Denials ..................................................................... 28

**NONCONFIDENTIAL VERSION**

2.    The Department's Decisions Run Counter to the Evidence and Fail to Consider Relevant Factors......................................................................31

3.    Without Explanation, the Department Deviated from Past Practice and Treated the Same Materials Differently ......................................................33

C.    Commerce's Denials are Inconsistent with Its Stated Policies of Considering "Past Activity" with an Objector, or Else Unreasonable...........................................35

D.    An Open Remand Would Be Futile ........................................................................37

VI.    CONCLUSION...............................................................................................................39

NONCONFIDENTIAL VERSION

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Labor Relations Auth.*,
   778 F.2d 850 (D.C. Cir. 1985) ........................................................................21

*American Petroleum Institute v. EPA*,
   706 F.3d 474 (D.C. Cir. 2013) ......................................................................37

*AT&T Services, Inc. v. FCC*,
   21 F.4th 841 (D.C. Cir. 2021) .................................................................26, 33

*Borusan Mannesmann Pipe U.S., Inc. v. United States*,
   Slip Op. 20-90, Ct. No. 20-00012 ...................................................................9

*Burlington N. & Santa Fe. Ry. Co. v. Surface Transp. Bd.*,
   403 F.3d 771 (D.C. Cir. 2005) ......................................................................21

*City of Kansas City, Mo. v. Dep't of Hous. & Urban Dev.*,
   923 F.2d 188 (D.C. Cir. 1991) ......................................................................25

*Dep't of Com. v. New York*,
   139 S. Ct. 2551 (2019) ...................................................................................3

*EPA v. EME Homer City Generation, LP*,
   572 U.S. 489 (2014).......................................................................................36

*Euzebio v. McDonough*,
   989 F.3d 1305 (Fed. Cir. 2021) ...............................................................21, 34

*FCC v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009).......................................................................................34

*Guertin v. United States*,
   743 F.3d 382 (2d Cir. 2014) ..........................................................................37

*Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. NLRB*,
   459 F.2d 1329 (D.C. Cir. 1972) ...............................................................22, 38

*Jicarilla Apache Nation v. Dep't of Interior*,
   613 F.3d 1112 (D. C. Cir. 2010) ....................................................................21

*JSW Steel (USA) Inc. v. United States*,
   466 F. Supp. 3d 1320, 1329–30 (Ct. Int'l Trade 2020)............................9, 28, 31

*Judulang v. Holder*,
    565 U.S. 42 (2011)....................................................................................20, 21, 26

*Middle Rio Grande Conservancy Dist. v. Norton*,
    294 F.3d 1220 (10th Cir. 2002) ...........................................................38

*Mizerak v. Adams*,
    682 F.2d 374 (2d Cir. 1982) ..............................................................25

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)....................................................................*passim*

*Nexteel Co., Ltd. v. United States*,
    28 F.4th 1226 (Fed. Cir. 2022) .......................................................4, 21, 37

*Nippon Steel Corp. v. United States*,
    458 F.3d 1345 (Fed. Cir. 2006) .......................................................4, 37

*NLMK Pa., LLC v. United States*,
    558 F. Supp. 3d 1401, 1406 (Ct. Int'l Trade 2022) ...........................26

*NLMK Pa., LLC v. United States*,
    No. 20-00507, 2023 WL 355074 (Ct. Int'l Trade Jan. 23, 2023) ..........3, 28, 35, 38

*Robert Bosch, LLC v. Iancu*,
    778 F. App'x 871 (Fed. Cir. 2019)...................................................34

*In re Sang-Su Lee*,
    277 F.3d 1338 (Fed. Cir. 2002) .......................................................21

*Sierra Club v. U.S. EPA*,
    346 F.3d 955 (9th Cir. 2003), *amended by* 352 F.3d 1186.................38

*U.S. Sugar Corp. v. EPA*,
    830 F.3d 579 (D.C. Cir. 2016) .........................................................28

*Universal Camera Corp. v. NLRB*,
    340 U.S. 474 (1952)..........................................................................26

**Statutes**

5 U.S.C. § 706(1) .......................................................................................37

5 U.S.C. § 706(2) ...............................................................................4, 20, 21

19 U.S.C. § 1862 ........................................................................................6

28 U.S.C. § 2640(e) ....................................................................................20

28 U.S.C. § 2643(a)(1), (c)(1) .................................................................37

**Other Authorities**

15 C.F.R. § 705, Supp. 1 ...............................................................7, 8, 24, 32

Adjusting Imports of Steel into the United States, Pres. Proc. No. 9705, 83 Fed.
   Reg. 11,625 (Mar. 8, 2018) .................................................... 6, 36

GAO, *Steel and Aluminum Tariffs, Commerce Should Improve Its Exclusion
   Request Process and Economic Impact Reviews* 18 (GAO-20-517, Sept. 2020)
   ...............................................................................................9

*Implementation of New Commerce Section 232 Exclusions Portal*, 84 Fed. Reg.
   26,751 (June 10, 2019) .......................................................7

*Requirements for Submissions Requesting Exclusions From the Remedies
   Instituted in Presidential Proclamations Adjusting Imports of Steel Into the
   United States and Adjusting Imports of Aluminum Into the United States; and
   the Filing of Objections to Submitted Exclusion Requests for Steel and
   Aluminum*, 83 Fed. Reg. 12,106 (Mar. 19, 2018) ................................7

*Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060
   (Dec. 14, 2020) ............................................................2, 7

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel
   and Aluminum*, 83 Fed. Reg. 46,026 (Sept. 11, 2018) ........................7

U.S. Department of Commerce, Seneca Rebuttal No. 47412 to USS Objection No.
   96541 .......................................................................14

U.S. International Trade Commission, *Tin- and Chromium-Coated Steel Sheet
   from Japan*, Inv. No. 731-TA-860 (Third Review) (2018) ................. 1, 13

U.S. Dep't of Commerce, Office of Inspector General, *Decisions on Exclusions
   from Section 232 Tariffs Were Not Transparent and Based on Incomplete and
   Inaccurate Information*, Final Report No. OIG-21-020-A (Jan. 25, 2021) ............9

**NONCONFIDENTIAL VERSION**

## I.      PRELIMINARY STATEMENT

Plaintiff Seneca Foods Corporation ("Seneca") is the last remaining U.S.-based food company to manufacture its own cans. To enable that manufacturing, it requires tin mill products, which consist of steel, in consistent quantities. But due to domestic supply shortages, and despite continuous attempts to source from domestic suppliers, Seneca has increasingly been forced to turn to imported steel, which it does only after confirming that no additional supplies are available from domestic sources. Under the exclusion process established by the U.S. Department of Commerce ("Commerce" or the "Department"), these imports *should* be excluded from Section 232 tariffs because no domestic sources were able to supply the requested volumes of relevant steel products in the appropriate timeline. Here, however, despite unrebutted record evidence that domestic sources were unable to supply the volumes at issue, Commerce—with no meaningful, let alone adequate, explanation—denied Seneca's exclusion requests.

In October 2021, and January and March 2022, Seneca filed eight requests for exclusion from Section 232 tariffs because domestic suppliers could not provide the necessary volumes of tin mill products in the requisite time frame identified by Seneca in its requests. Before placing the orders at issue in these requests, Seneca confirmed with all of its domestic suppliers—including United States Steel Corporation ("USS")—that they were unable to supply the necessary tonnage within the relevant time frame. Domestic tin mills make sales through annual contracts negotiated around the fourth quarter of each year for shipments the following year.[1] USS, in particular, was

---

[1] According to the U.S. International Trade Commission, "nearly all U.S. producers' sales of {tin- and chromium-coated steel} were on an annual or longer-term contract basis with very few spot sales." U.S. International Trade Commission, *Tin- and Chromium-Coated Steel Sheet from Japan*, Inv. No. 731-TA-860 (Third Review) (2018), at 15; *see also id.*, at 13 ("{M}ost {tin- and chromium-coated steel} was sold in the U.S. market through contract sales establishing both price and target quantities…. {via} annual contracts that were negotiated in the fourth quarter of each year for shipments in the following year.").

unwilling even to quote Seneca a price for tin mill products due to severe shortages, and had repeatedly declined to supply Seneca with a single ton of tin mill steel for over two years.

In its exclusion requests, Seneca documented the domestic steel shortage for these types of steel products and the inability or unwillingness of domestic suppliers to provide sufficient volumes of tin mill products to Seneca. Yet despite refusing to fill every order at issue and having supplied zero tons of tin mill steel to Seneca over an extended period, USS objected to Seneca's requests, claiming that—all of a sudden—it would now supply volumes to Seneca. In rebuttal submissions, Seneca provided the Department with extensive evidence in response, showing that USS had unequivocally refused to fill the exact orders covered by the requests at the time they were placed because of insufficient capacity, that USS had not provided *any* products to Seneca for almost three years, and that even *after* filing its objections, USS had again refused to supply Seneca with needed volumes. All of this irrefutable evidence debunked USS's claims of available capacity, especially in light of the Department's policy of "allow{ing} the exclusion requester to document … past activity with {an} objector" to prevent "domestic parties {from} objecting to an exclusion request and then refusing to fill orders." Section 232 Steel and Aluminum Tariff Exclusions Process, 85 Fed. Reg. 81,060, 81,066 (Dec. 14, 2020). The record evidence pointed to only one conclusion: despite USS's claims (some of which it later admitted were false), it was unwilling, if not unable, to supply the requested volumes of tin mill products, both at the time the covered purchase orders were placed and in the near term.

Nevertheless, the Department denied all eight of Seneca's requests. For the six Seneca requests filed in October 2021 and January 2022, the Department denied the requests on the basis that—despite all evidence to the contrary—USS could supply the volumes at issue. Not only did this conclusion run counter to all of the evidence, the Department's denials failed even to address

the evidence compiled by Seneca, let alone provide a rational basis for its decisions. Even worse, when denying Seneca's March 2022 requests, the Department admitted it had not provided a substantive analysis of the relevant issues; instead it denied the requests based on an unexplained "issue" with these requests, which were in all material respects indistinguishable from others in which the Department found no such issue. Throughout all the denials, the Department never addressed the undisputed evidence that USS had refused to supply Seneca at the time the orders were made, that USS had made material misstatements about its past dealings with Seneca, that USS had refused to fill new orders even *after* certifying to the Department that it could do so, and that at the time of the requests USS had not supplied *any* tin mill steel products to Seneca in over two years.

The denials of these exclusion requests by the Department are thus arbitrary and capricious. They run counter to the evidence before the agency, and they fail to address any of the evidence contrary to the Department's decisions or provide any semblance of reasoned decisionmaking. Indeed, with the March 2022 requests, the Department simply admitted it did not analyze the relevant issues but denied the requests anyway. This strays beyond "the bounds of reasoned decisionmaking" required by the Administrative Procedure Act ("APA"), even under the deferential arbitrary and capricious standard. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019). Merely concluding that a domestic supplier can sell the requested quantity when it has repeatedly declined to do so, or dodging the merits of the request altogether, is insufficient. Instead, "Commerce must address evidence that runs contrary to its decisions." *NLMK Pa., LLC v. United States*, No. 20-00507, 2023 WL 355074, at *8 (Ct. Int'l Trade Jan. 23, 2023) (Commerce's finding that a domestic producer could supply the requested quantity was arbitrary and capricious because

"Commerce provides no reasoning in its denials, and does not engage with evidence which runs contrary to its decision."). It entirely failed to address the contrary evidence here.

For these reasons, and as explained below, this Court should set aside these unlawful decisions. But rather than issue an open remand, the Court should direct Commerce to grant the exclusion requests. For when "the record supports only one outcome," as in this case, an open-ended remand is "futile." *Nexteel Co., Ltd. v. United States*, 28 F.4th 1226, 1238 (Fed. Cir. 2022). Instead, a remand with instructions or an outright reversal of the agency's determination may be appropriate. *See Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1359 (Fed. Cir. 2006). Seneca began the exclusion process nearly one-and-a-half years ago. An open-ended remand would unnecessarily delay relief, for as should have been clear from the beginning, the evidence submitted to the Department points in only one direction: for Seneca, the requested volumes of tin mill steel were unavailable from the domestic industry—including from USS, the only domestic producer to file an objection—within the requisite time frames.

## II.      RULE 56.1 STATEMENT

### A.      Issue Presented for Review

The issue presented for review is whether the decisions of Commerce denying Seneca's eight requests for exclusion from Section 232 tariffs were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" in violation of the APA (5 U.S.C. § 706(2)(A)) because of the Department's failures to: (1) grant these exclusion requests, since the denials run counter to the evidence before the agency; (2) adequately consider USS's consistent refusals or inability to supply Seneca with the requested products over multiple years; (3) adequately consider USS's repeated misstatements of material facts; (4) adequately explain and justify its decisions to ignore such evidence and deny the requests; (5) adequately identify and explain the supposed technical issues with some of the requests and why those issues required denial; and (6) apply

NONCONFIDENTIAL VERSION

consistent standards in analyzing Plaintiff's requests, absent a justification for treating materially indistinguishable requests as complete in some circumstances but presenting "issues" in others.

**B.     Administrative Determinations for Review**

Plaintiff challenges eight decisions by the Department denying requests for exclusions from Section 232 tariffs for imported prime tin-free steel ("TFS") and prime electrolytic tinplate ("ETP"). These exclusion requests and the corresponding determinations from the Department are as follows:

| Seneca Exclusion Requests Filed for Tin Mill Products | | | | | |
|---|---|---|---|---|---|
| **Number** | **Date Filed** | **Description** | **Harmonized Tariff Schedule Code** | **Country of Origin** | **Date Denied** |
| 257423 | October 20, 2021 | TFS | 7210500020 | Japan | April 9, 2022 |
| 257428 | October 20, 2021 | TFS | 7210500020 | Japan | April 9, 2022 |
| 257708 | October 21, 2021 | ETP | 7210120000 | China | April 9, 2022 |
| 257709 | October 21, 2021 | ETP | 7210120000 | Turkey | April 9, 2022 |
| 257712 | October 21, 2021 | ETP | 7210120000 | Turkey | April 9, 2022 |
| 275504 | January 23, 2022 | ETP | 7210120000 | China | April 30, 2022 |
| 283368 | March 15, 2022 | TFS | 7210500020 | China | July 9, 2022 |
| 283369 | March 15, 2022 | ETP | 7210120000 | Turkey | July 9, 2022 |

**III.     BACKGROUND**

**A.     Parties**

Plaintiff Seneca Foods Corporation ("Seneca") is primarily a fruit and vegetable processor and the largest vegetable canner in the United States. Seneca is the last U.S.-based food company

NONCONFIDENTIAL VERSION

that still makes its own cans, and it requires tin mill products—which consist of steel—to manufacture them. Given domestic shortages and the inability of domestic producers to supply the required volumes, Seneca was forced to purchase the quantities at issue in these exclusion requests from foreign suppliers.

Defendant is the United States of America, acting by and through the U.S. Department of Commerce and its sub-agencies the Bureau of Industry and Security ("BIS") and the International Trade Administration ("ITA").

### B.     Statutory and Regulatory Framework

Section 232 of the Trade Expansion Act of 1962, as amended (codified at 19 U.S.C. § 1862), authorizes the President to take certain actions against imported goods when, following an investigation by the Secretary of Commerce, it is found that the imports in question are being brought into the United States "in such quantities or under such circumstances as to threaten to impair the national security." 19 U.S.C. § 1862(c)(1)(A). In March 2018, invoking Section 232 and following an investigation by Commerce, the President issued Presidential Proclamation 9705, which imposed a 25 percent *ad valorem* tariff on certain imports of steel products ("Section 232 tariffs"). *See* Adjusting Imports of Steel into the United States, Pres. Proc. No. 9705, 83 Fed. Reg. 11,625 (Mar. 8, 2018). The Proclamation stated that the tariffs were intended to "help our domestic steel industry, to revive idled facilities, open closed mills, preserve necessary skills by hiring new steel workers, and maintain or increase production." *Id.* at 11,626. But the President also instructed the Department to provide relief from Section 232 tariffs for steel products "determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality," or based upon "specific national security considerations." *Id.* at 11,627.

Acting under this direction, the Department promulgated regulations creating a product exclusion process through which the agency would grant certain entities limited and product-

specific exclusions from Section 232 tariffs.[2] The Department's Bureau of Industry and Security ("BIS") and the International Trade Administration ("ITA") review submitted requests to determine whether, among other things, the product "is not produced in the United States in a sufficient and reasonably available amount." 15 C.F.R. § 705, Supp. 1(c)(6)(i);[3] *see also* Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026, 46,027 (Sept. 11, 2018). A product is not produced "in a sufficient or reasonably available amount" if the "amount that is needed by the end user requesting the exclusion is not available immediately in the United States," where "immediately" means "'within eight weeks,' or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier." 15 C.F.R. § 705, Supp. 1(c)(6)(i). In other words, a requester is eligible for an exclusion if domestic suppliers cannot provide the entire specified quantity within eight weeks or before that quantity is delivered from foreign suppliers, whichever is longer. Additionally, if a domestic steel producer who objects to the exclusion can deliver ten percent or more of the relevant products, the Department may deny an exclusion for that percentage of the requested volume. *Id.*

---

[2] *See* Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum, 83 Fed. Reg. 12,106 (Mar. 19, 2018); Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026 (Sept. 11, 2018); Implementation of New Commerce Section 232 Exclusions Portal, 84 Fed. Reg. 26,751 (June 10, 2019); Section 232 Steel and Aluminum Tariff Exclusions Process, 85 Fed. Reg. 81,060 (Dec. 14, 2020). These iterations of the exclusion process have been codified at 15 C.F.R. § 705, Supp. 1.

[3] BIS is "the lead agency deciding whether to grant steel and aluminum tariff requests," but ITA takes the lead in "analyzing requests and objections to evaluate whether there is domestic production available to meet the requestor's product needs, as provided in the exclusion requests." Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46,026, 46,027 (Sept. 11, 2018).

Following submission of an exclusion request, the Department allows domestic suppliers to object, but any objector claiming it can manufacture the relevant products immediately "must identify *how* it will be able to produce and deliver the quantity of steel … needed either within eight weeks, or if after eight weeks, by a date which is earlier than the named foreign supplier would deliver the entire quantity of the requested product." *Id.* at (d)(4)(emphasis added). "If a U.S. supplier objects to an exclusion request, the burden is on that supplier to demonstrate that the exclusion should be denied because of failure to meet the specified criteria." 83 Fed. Reg. at 46,029. The requester can then submit a rebuttal to address the objection and provide additional evidence, if necessary, about the claims made by the objector. *See* 15 C.F.R. § 705, Supp. 1(f). Finally, if a rebuttal is submitted, the objector can submit a surrebuttal in response. *See id.* at 1(g).

The exclusion process also allows a requester to document its experience with an objector who claims an ability to supply the relevant products. The procedures allow "an exclusion requester to subsequently reference in a new exclusion request that an objector was not able to provide the steel or aluminum in a previous exclusion request." 85 Fed. Reg. at 81,066; *see also id.* at 81,065 ("Should all objectors be unable to produce a requested product as they represented in their objections, the requester may submit a new request with documentation evidencing this refusal."); 83 Fed. Reg. at 46,043. When "the same objector objects to the new exclusion request, the rebuttal process allows the exclusion requester to document in the rebuttal the past activity with that objector." 85 Fed. Reg. at 81,066. This prevents "domestic parties {from} objecting to an exclusion request and then refusing to fill orders." *Id.*

### C.  The Department's History of Privileging Objectors

Unfortunately, the exclusion process has had an inauspicious history. Various governmental bodies have found significant flaws in the Department's review of exclusion requests. From March 2018 to November 2019, for example, the U.S. Government Accountability

NONCONFIDENTIAL VERSION

Office ("GAO") found that the Department did not conduct *any* analysis or undertake *any* effort to verify an objector's claims that it "can fulfill the quantity it states it is able to provide." *See* GAO, *Steel and Aluminum Tariffs, Commerce Should Improve Its Exclusion Request Process and Economic Impact Reviews* 18 (GAO-20-517, Sept. 2020).[4]

Similarly, the Department's Inspector General, after a lengthy audit and investigation into the exclusion process, issued a report finding that "ITA recommended denying {requests} due to sufficient U.S. supply even though objectors did not provide information on plant capacity or plant utilization." U.S. Dep't of Commerce, Office of Inspector General, *Decisions on Exclusions from Section 232 Tariffs Were Not Transparent and Based on Incomplete and Inaccurate Information*, Final Report No. OIG-21-020-A (Jan. 25, 2021), at 4. The report also found that "ITA made recommendations using incomplete or contradictory information that resulted in denials even though it was unclear if the product was available from domestic U.S. suppliers in an adequate quantity or within the required timeframe." *Id.* at 3.[5]

## D.   The Department's Wrongful Denials of Seneca's October 2021 and January 2022 Exclusion Requests

### 1.   Seneca's Attempts to Obtain Domestic Steel Before 2021

Prior to 2014, other than some minor trials of imported steel, Seneca purchased "100% of {its} tin mill products from domestic producers." AR 021. In 2013, however, Seneca's major U.S. supplier conveyed its concerns about the sustainability of a major portion of domestic tin mill

---

[4] The entire report can be accessed at https://www.gao.gov/products/gao-20-517.

[5] In other cases filed by similarly situated plaintiffs, it has also come to light that there were extensive off-record, *ex parte* discussions between the Department and objector companies in relation to the product exclusion requests. Those plaintiffs were offered no opportunity to review or comment on those communications. *See, e.g.*, *JSW Steel (USA) Inc. v. United States*, 466 F. Supp. 3d 1320, 1329–30 (Ct. Int'l Trade 2020); *Borusan Mannesmann Pipe U.S., Inc. v. United States*, No. 20-90, Ct. No. 20-00012 (Ct. Int'l Trade June 25, 2020).

production. Seneca then began qualifying foreign suppliers and importing a portion of its required volumes from other countries due to domestic supply shortfalls, which only became more acute in subsequent years. As Seneca explained in its exclusion requests, from 2016 through 2020, the percentage of domestic demand for tin mill products that was supplied by U.S. producers has stayed at around 57% to 60%. AR 021. By 2021, Seneca was able to source only 51% of its tin mill products from domestic sources, making it inevitable that Seneca would be forced to turn to imports to cover its supply needs.

In March and April of 2018, shortly after Section 232 tariffs took effect and during the same period surveyed by the GAO in its report, Seneca filed exclusion requests for limited volumes of ETP (Exclusion Request IDs BIS-2018-0006-0019; BIS-2018-0006-0770; and BIS-2018-0006-5050; compiled in Plaintiff's Complaint Exhibits 1–6, ECF 6.2 and 7.2). Seneca placed orders for those volumes in 2017—before the tariffs took effect—after consulting with its domestic suppliers and confirming that they were unable to supply the needed volumes. *See* Pl.'s Ex. 1, at 7; Ex. 2, at 8; Ex. 3, at 9. USS objected to Seneca's request, claiming it could provide the needed amounts even though—as Seneca explained in its rebuttal—USS had informed Seneca in March 2018 that it "had no short term capacity." Pl.'s Ex. 4, at 1; Ex. 5, at 1. Despite this clear evidence of USS's lack of availability, ITA nonetheless credited USS's claims that it could supply the needed volumes "in a sufficient and reasonably available amount," and the Department denied Seneca's request. Pl.'s Ex. 6, at 1–2.

In light of USS's certified claims of available capacity, Seneca placed a purchase order with USS on May 6, 2018 for a small quantity—"not any meaningful volume"—scheduled for delivery in August 2018. AR 038. Delivery of that order was substantially delayed, with the final product arriving half-a-year late, in February of 2019. *Id*. From that time forward, despite repeated

attempts by Seneca to source needed tin mill products, USS did not supply a single ton of *any* such products throughout the rest of 2019 and all of 2020 and 2021. *See* AR 038, 048. As a result, Seneca was forced to import the required tonnage to compensate for the domestic supply shortfall.

### 2.    Seneca's October 2021 Exclusion Requests

In October 2021, Seneca filed five requests to exclude limited volumes of imported TFS and ETP from Section 232 tariffs (Request Nos. 257423, 257428, 257708, 257709, and 257712). The October requests covered orders placed by Seneca between late 2020 and spring 2021, for delivery in the fourth quarter of 2021. *See* AR 020, 070, 119, 168, 217. These orders were placed "soon after all relevant domestic producers affirmatively declined to award Seneca any additional volume." AR 020, 070, 119, 168, 217. Seneca also reached out to USS specifically to inquire about its ability to supply the requested products, but USS "was unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional material in 2021 or beyond." AR 022, 072, 121, 170, 219.

USS objected to all five requests, claiming it could supply "100%" of the requested volumes "on a timely basis." *See* AR 028, 078, 127, 176, 225. But USS never disputed that it was unable—and had affirmatively declined—to supply the required volumes at the time of Seneca's orders, as reported by Seneca in its initial requests. USS even conceded that "the U.S. tin mill market experienced some supply constraints in the immediate wake of the COVID-19 pandemic," the exact time frame for the orders at issue in the October requests. AR 028, 078, 127, 176, 225. Additionally, USS erroneously claimed that it had provided tin mill products to Seneca within the last two years, even though it had been well over two years since USS had provided *any* such products to Seneca. *See* AR 029, 079, 128, 177, 226.

In its rebuttals, Seneca pointed out that there was no dispute regarding the fact that USS could not and did not supply any volume of tin mill products to Seneca during the relevant time

frame for the October 2021 requests. AR 036, 086, 135, 184, 233. Despite being asked to supply the relevant materials, USS had refused. Seneca's rebuttals also included an email to this effect, summarizing a phone call with USS from November 2020, immediately prior to the orders at issue, in which USS declined to "offer{} anything now at any price" due to its inability to supply any products for delivery in 2021. AR 041, 091, 140, 189, 238.

In addition, Seneca provided written evidence showing that *even after* filing its objections in November 2021 and claiming an ability to supply the relevant volumes in a timely manner, USS separately communicated to Seneca that it had no ETP or TFS to offer for the remainder of 2021 and into 2022. AR 036, 086, 135, 184, 233. [




]

Seneca's rebuttals also addressed USS's claim to have supplied Seneca with TFS and ETP within the last two years. As Seneca explained to the Department, "{t}his claim is false," since "{t}he most recent delivery of *any steel* from USS to Seneca occurred on February 19, 2019— more than two years ago." AR 038, 088, 137, 186, 235 (emphasis in original). That delivery, moreover, "was of a single coil, not any meaningful volume," and had been delivered half-a-year late. AR 038, 088, 137, 186, 235. "{I}n our experience," Seneca explained to the Department, "Seneca cannot look to USS as a dependable source of steel supply," despite USS's suggestions that it "has been a regular supplier of tin mill products to Seneca in recent years." AR 038, 088, 137, 186, 235.

In its surrebuttals, USS again did not dispute its inability and refusal to supply the relevant ETP and TFS volumes during the time frame covered by Seneca's requests. Additionally, USS again conceded that "{t}he COVID-19 pandemic and other economic forces resulted in temporary U.S. tin mill supply constraints/delays in 2020 and early 2021 (i.e., *when the Requestor ordered this {product}*)." AR 046, 096, 144, 193, 243 (emphasis added). It also for the first time admitted that its certified statements to the Department about having supplied Seneca in the recent past were false, conceding that, "as stated in Seneca's rebuttals, {USS} has not supplied the Requestor with tin mill products since February 2019, which is more than two years before submission of U.S. Steel's objections…. Contradictory statements in each of the Objections were made in error." AR 048, 098, 147, 196, 245. Yet despite these concessions, and despite the evidence compiled in Seneca's rebuttals, USS still claimed it could supply the relevant volumes through spot sales. AR 045, 096, 144, 193, 243. However, this claim was at odds with the fact that USS and other domestic producers conduct business almost exclusively through annual contracts, and make "very few spot sales."[6]

### 3.    Seneca's January 2022 Exclusion Request

The January 2022 exclusion request followed a similar pattern. That request covered an order for ETP from late 2021 for delivery in 2022, placed "soon after all relevant domestic producers affirmatively declined to award Seneca any additional volume." AR 266. Seneca had again reached out to USS specifically to inquire about its ability to supply the requested volume, but USS "was unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional material in 2022." AR 268. In February 2022 USS again objected, claiming

---

[6] U.S. International Trade Commission, *Tin- and Chromium-Coated Steel Sheet from Japan*, Inv. No. 731-TA-860 (Third Review) (2018), at 15.

NONCONFIDENTIAL VERSION

it could supply "100%" of the relevant volumes within the necessary time frame. AR 265, 274. USS *again* claimed to have "supplied Seneca with ETP within the last two years," AR 275, even after having admitted two months earlier in its surrebuttals to the October requests that this claim was false, *see* AR 048, 098, 147, 196, 245; *see also* U.S. Department of Commerce, Seneca Rebuttal No. 47412 to USS Objection No. 96541, https://232app.azurewebsites.net/Forms/ ObjectionRebuttalItem/47412 (indicating that USS's surrebuttal was submitted on or around the Dec. 12, 2021 posting date).

In its rebuttal, Seneca again provided confidential communications with USS showing that, in November of 2021, USS had declined to provide any ETP or TFS to Seneca for delivery in 2022. *See* AR 286. Seneca also pointed out that USS had again erroneously claimed to have supplied Seneca with tin mill products during the last two years: "This claim is false." AR 283. Finally, Seneca urged the Department to grant Seneca's requests, pointing out that "USS should not be allowed to decline repeated requests to supply Seneca's … orders, yet then block an exclusion for those very same orders." AR 283. Thus, "Commerce cannot reasonably give weight to an objection from USS that belatedly, and far from credibly, claims the ability to make deliveries that USS has consistently declined." AR 282.

### 4. The Department's Denials of the October 2021 and January 2022 Exclusion Requests

Despite all of this evidence presented by Seneca, in April 2022 the Department denied all six exclusion requests from October 2021 and January 2022. In its denials, Commerce failed entirely to address the certified statements from Seneca, corroborated by contemporaneous email communications and undisputed by USS, demonstrating that USS had affirmatively declined to supply Seneca the requested tin mill products within the relevant time frames—or at any time since February 2019. Nor did Commerce address the certified statements and corroborating evidence

NONCONFIDENTIAL VERSION

demonstrating that, even after filing objections to the October requests, USS had *again* declined to supply the relevant volumes, despite having made certified claims of availability in its prior objections. Finally, Commerce failed to address the repeated and material misstatements by USS, in which USS erroneously claimed to have supplied Seneca with tin mill products during the last two years—false statements made to the Department even after USS had admitted error.

Instead, based on a Recommendation Document from ITA, Commerce denied Seneca's requests using boilerplate language: "In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount … ITA has provided the attached findings and recommends denying the request for an exclusion. BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be granted…." AR 001, 050, 100, 149, 198, 247.

ITA recommended denial based on its implausible view that USS could in theory "meet{} the quality, quantity, and timeliness criteria" and thus supply the relevant products. AR 003, 052, 102, 151, 200, 249. When discussing the disputed issue of quantity—i.e., whether USS could supply the requested volumes of tin mill products—ITA mentioned Seneca's rebuttal evidence that, in November 2021, USS declined to offer any ETP or TFS for 2022. But it then proceeded to ignore it, apparently accepting USS's claim that contrary to its standard sales practices, it could supply the required products "as spot sales rather than contract volumes." AR 004, 053, 103, 152, 201; *see also* AR 250. Despite all the evidence to the contrary, ITA even went so far as to claim that there was *nothing* "in the request, rebuttal, or surrebuttal … {that} provide{s} evidence to contradict the objector's claims" about quantity. AR 004, 053, 103, 152, 201, 250.

ITA made the same assertion with respect to the issue of timeliness—i.e., whether USS could deliver the necessary volumes in the time frame required by the regulations. Apart from the

single January request, ITA implausibly found that there was "no" evidence to contradict USS's claims that it could deliver the products on time, despite voluminous contrary evidence presented by Seneca. AR 005, 054, 104, 153, 202. For the January request, ITA found that confidential information provided by USS required "ITA to adjust {USS}'s delivery time." AR 251. However, ITA still credited USS's claims that it could "deliver the product in a timely manner" and ignored all of Seneca's evidence to the contrary. AR 251. The end result was thus the same: ITA made no mention of Seneca's contemporaneous evidence that USS had declined to sell any tin mill products in the relevant time frames and offered no explanation of why that evidence was insufficient to demonstrate that USS could not or would not supply the requested volumes.

Throughout the Recommendation Documents, ITA also failed even to mention USS's repeated, false statements that it had supplied Seneca with tin mill steel during the past two years. Nor did ITA attempt to explain how USS's inability to supply Seneca over a two-year window— despite repeated attempts by Seneca to source the very same products from USS—had no impact on its ability, suddenly, to produce and immediately deliver the entirety of the requested volumes. ITA also never addressed why USS's claims should be given any weight, especially when it was undisputed that USS affirmatively declined to supply the required volumes at the time the orders were made and then nonetheless decided to object to exclusion requests regarding those very same orders.

### E.    The Department's Wrongful Denials of Seneca's March 2022 Requests

On March 15, 2022, Seneca filed two new exclusion requests for tin mill products: Request No. 283368 for TFS and Request No. 283369 for ETP. The volumes covered by these requests were limited to orders placed by Seneca in October 2021 for delivery in 2022. As with its prior orders, these orders were placed "soon after all relevant domestic producers affirmatively declined to award Seneca any additional volume for 2022," AR 316, 361, and USS in particular had been

**NONCONFIDENTIAL VERSION**

"unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional material in 2022," AR 318, 363. By this point, it had been over two-and-a-half years since USS had supplied *any* tin mill products to Seneca.

Yet again, in April 2022, USS objected to Seneca's exclusion requests. While claiming it could supply "100%" of the relevant volumes within the relevant time frame, AR 325, 370, USS did not dispute it had affirmatively declined to supply Seneca with any products at the time the purchase orders were made. It also conceded that it had not "attempted to sell, or successfully sold," either TFS or ETP to Seneca in the past two years. *See* AR 326, 371.

In its rebuttals, Seneca reiterated that the purchase orders at issue were placed in October 2021, after all relevant domestic producers, including USS, had affirmatively declined to make available any additional volume for 2022. AR 329, 378. Seneca did acknowledge that shortly before its rebuttals in April 2022, USS had finally—after months of flat denials—agreed to supply a "tiny fraction" of the volumes at issue in the requests, though the "delivery timetable for these minor volumes {was} not in line with the delivery schedule for the purchase orders at issue in these requests." AR 330, 379. [

] USS's offer to supply ETP was likewise for only "limited volumes" during late 2022, after the arrival of the bulk of Seneca's purchases of imports for delivery in 2022. AR 330, 379; *see also* AR 332, 381.

In July 2022, the Department denied both exclusion requests, though on a new basis. For the first time, the Department denied the requests without even purporting to analyze the merits: it merely stated that ITA was "unable to provide a complete analysis due to an issue with the request{s}," though it never explained what the "issue" was. AR 295, 344. For example, when addressing the issue of quantity (whether USS could supply the required amount), the Recommendation Documents simply disclaimed altogether ITA's ability to analyze the merits of the request because, as it said in full, "ITA is unable to provide a complete analysis due to an issue with the request." AR 296, 345. ITA never explained what this "issue" was, nor why that "issue" required a denial of the request as opposed to some other action. Similarly, with respect to timeliness, ITA claimed that Seneca's confidential communications containing delivery information "conflicts with the delivery information in its exclusion request." AR 297, 346. "Due to this ambiguity, ITA is unable to evaluate this exclusion request." AR 297, 346. Again, ITA never explained what the "ambiguity" was, nor why it weighed in favor of a denial. ITA failed even to mention—let alone consider—Seneca's abundant evidence that USS could not and would not supply Seneca with the required volumes of TFS and ETP.

ITA's recommendations were also rife with significant factual errors. For example, in both decisions, ITA's subject matter expert ("SME") stated that there were facts or evidence "to contradict the objector's claims" about the quality of the USS products, AR 296, 345, even though Seneca had never made quality an issue in these exclusion requests and had expressly waived it as a basis for exclusion, *see* AR 329, 374 ("The basis for your rebuttal is for the following reason(s): … Quality—No."). And with regard to Request No. 283369—which covers only "{p}rime electrolytic tinplate" or ETP—the SME erroneously claimed that "Seneca seeks exclusion for

prime tin-free steel." *See* AR 345, 352. In other words, the agency failed to correctly identify the basic facts of which criteria were in dispute *and* which products were at issue.

Even when addressing the wrong criteria, ITA again skirted the merits of the exclusion request. After erroneously concluding that Seneca had presented evidence to contradict USS's claims about quality, it again posited "an issue with {Seneca's} request," making ITA "unable to provide a complete analysis." AR 296, 345. According to ITA, there was "insufficient technical information" to resolve "whether the requested product{s} {are} identified in {Seneca's} CBI." AR 296, 345. Seneca's confidential information, however, clearly identifies the relevant products. In the [

] Moreover, the Department's sudden inability to identify the requested products contradicts its practices for the October 2021 and January 2022 requests. Those requests contained some of the very same confidential information as the March 2022 requests, and while the agency's denials of those former requests were unlawful, the Department had no difficulty in determining "whether the requested product{s}" were identified in the requests. *Compare* AR 043, 093, 142, 191, 240, 286, *with* AR 332, 381.

More generally, Seneca's March 2022 requests contained materially identical information compared to its prior requests on the relevant issues of quantity and timeliness. Like its prior requests, the March 2022 requests were for the same type of products (ETP and TFS); the volumes were sourced from the exact same foreign supplier as some of the prior requests, *compare* AR 305,

350 *with* AR 157; Seneca presented the same type of evidence concerning domestic supply shortages and USS's refusal to supply the volumes at issue at all relevant time periods, *compare* AR 316–19, 361–64 *with* AR 168–70; and Seneca even included some of the exact same communications used as evidence in its prior rebuttals, *compare* AR 043, 093 142, 191, 240, 286, *with* AR 332, 381. The Department had no "issues" reaching the merits on these prior requests, and it gave no explanation as to why the March 2022 requests were suddenly insufficient.

On all three issues—quality (which was irrelevant), quantity, and timeliness—ITA conceded it had not performed "a complete analysis." *See* AR 296–97, 345–46. Regardless, and without any explanation, the Department denied both March 2022 requests.

## IV.   STANDARD OF REVIEW

This Court reviews challenges to Section 232 exclusion request denials under the same standard provided by section 706 of the APA. *See* 28 U.S.C. § 2640(e). Under the APA, the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

Arbitrary and capricious review "ensur{es} that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). The reviewing court must "examin{e} the reasons for agency decisions—or, as the case may be, the absence of such reasons," *id.*, to ensure that an agency not only reaches "a sound decision," but "articulate{s} the reasons for that decision," *In re Sang-Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002). The agency's articulation must make a "rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up), and its "explanation for its decision must be sufficient to enable {courts} to

conclude that {it} was the product of reasoned decisionmaking," *Jicarilla Apache Nation v. Dep't of Interior*, 613 F.3d 1112, 1118 (D. C. Cir. 2010).

An agency action is arbitrary and capricious when the agency, for example: (1) "entirely failed to consider an important aspect of the problem"; (2) "offered an explanation for its decision that runs counter to the evidence before the agency"; or (3) acted in a way "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43. Likewise, agency action that departs from past practice without a reasoned justification, or treated "similarly situated {entities} differently" without "a reasoned explanation and substantial evidence," is arbitrary and capricious. *Euzebio v. McDonough*, 989 F.3d 1305, 1322 (Fed. Cir. 2021) (quoting *Burlington N. & Santa Fe. Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005)). The court plays "a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang*, 565 U.S. at 53.

When an agency has acted arbitrarily and capriciously, the APA directs the court to "hold unlawful and set aside" that action. 5 U.S.C. § 706(2). In such instances, courts often remand to the agency for further proceedings. But when "the record supports only one outcome," an "open-ended remand" becomes "futile." *Nexteel*, 28 F.4th at 1238; *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Fed. Labor Relations Auth.*, 778 F.2d 850, 862 n.19 (D.C. Cir. 1985) (remand is inappropriate when there is "only one rational course to follow") (quoting *International Union, UAW v. NLRB*, 459 F.2d 1329, 1346–47 (D.C. Cir. 1972) (internal quotation marks omitted)).

## V.     ARGUMENT

### A.     The Department's Denials of the October 2021 and January 2022 Exclusion Requests Were Arbitrary and Capricious

#### 1.     The Department's Findings that USS Could Supply the Relevant Products Run Counter to the Evidence Before the Agency

When an agency offers "an explanation for its decision that runs counter to the evidence before the agency," its actions are arbitrary and capricious and cannot be sustained. *State Farm*, 463 U.S. at 43. This is especially true when an agency decision "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Id*. The Department's denials of Seneca's October 2021 and January 2022 exclusion requests ran counter to the overwhelming weight of evidence: it is undisputed that USS was incapable of supplying Seneca at the time of its orders, that at the time of the exclusion requests USS had not supplied Seneca with *a single ton* of *any* tin mill product for over two years, and that USS had made material misstatements to the Department about its past sales to Seneca. Moreover, Seneca presented written evidence showing that even after USS claimed it could supply the necessary tonnage, USS again declined to provide Seneca with *any* volumes. The Department's denial of Seneca's exclusion requests—based on the view that USS could provide the requisite products in a timely manner, and that there was no evidence to the contrary—is "so implausible" that it must be set aside. *Id*.

In each of its October 2021 and January 2022 exclusion requests, Seneca certified and provided evidence that before purchasing from foreign suppliers, it exhausted domestic options—including USS. In its October requests—covering orders from late 2020 to spring 2021, for delivery in late 2021—Seneca explained to the Department that "{t}hese orders were placed soon after all relevant domestic producers affirmatively declined to award Seneca any additional volume for 2021." AR 020, 070, 119, 168, 217. As for USS, it was "unwilling even to give {Seneca} a

NONCONFIDENTIAL VERSION

quote for tin mill products due to its inability to supply any additional material in 2021 or beyond." AR 022, 072, 121, 170, 219. In support of this, Seneca provided the Department with an email from November 2020, summarizing a phone call with USS where USS explained it was "not offering anything now at any price." AR 041, 091, 140, 189, 238.

Similarly, in its January 2022 exclusion request, Seneca explained that the orders at issue "were placed soon after all relevant domestic producers affirmatively declined to award Seneca any additional volume for 2022." AR 266. The orders were placed in late 2021 for delivery in 2022. AR 282. Again, USS had been contacted specifically and was "unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional material in 2022." AR 268. In its rebuttal, Seneca provided the Department with confidential evidence corroborating this point, showing that despite inquiries from Seneca in November 2021 (the time period at issue), USS declined to provide *any* TFS or ETP for 2022. AR 286. [



                                                                        ]

In its various objections, USS never disputed that at the time of the covered orders, USS had affirmatively declined to provide Seneca with any tin mill products. Indeed, USS even admitted that "{t}he COVID-19 pandemic and other economic forces resulted in temporary U.S. tin mill supply constraints/delays in 2020 and early 2021," the exact time when Seneca made the orders at issue in the October 2021 requests. AR 045, 095, 144, 193, 242. USS also admitted that, despite initially claiming the opposite, it had not supplied Seneca with *any* tin mill products "since

February 2019, which is more than two years before submission of {USS}'s objections." AR 048, 098, 147, 196, 245.

While conceding that it lacked capacity to supply Seneca in the relevant time frame, USS objected to the October and January requests by claiming it could supply "100%" of the required volumes "within the … manufacturing and delivery day lead time" of Seneca's foreign suppliers. AR 028, 078, 127, 176, 225, 274; *see also* 15 C.F.R. pt. 705, supp. 1(c)(6)(i) (a product is "immediately" available when it can be "delivered by a U.S. producer 'within eight weeks', or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier"). Yet Seneca provided written evidence to the Department that *even after* filing the bulk of its objections, in November 2021 USS had *again* declined to provide Seneca with any tin mill products for 2022—despite its certified claims of availability before the Department. [

] USS's claims of immediate availability, in other words, were undermined by its own documented refusals to supply Seneca not only during the time frame covered by the requests (i.e., orders placed in late 2020 to spring 2021, for delivery in late 2021), but also for the entirety of the following calendar year, through December 2022.

The evidence before the agency pointed in only one direction: the requested volumes were not available, much less "immediately" available, to Seneca from USS. First, it is undisputed that USS affirmatively declined to provide Seneca any tonnage at the time these orders were made, despite Seneca's repeated requests to USS. Second, despite USS's claims to the contrary, Seneca provided written evidence documenting USS's inability to supply the requested volumes even after USS had objected to the exclusion requests. Third, both sides ultimately agreed that it had been

*over two years* since USS had supplied *any* tin mill products to Seneca. And finally, it is undisputed that USS had made material misstatements to the Department in response to inquiries about its past sales to Seneca—placing the credibility of USS in serious doubt. Yet despite this evidence, the Department accepted without question USS's unsupported claim that it could "produce 100 percent of the requested volume," AR 004, 053, 103, 152, 201, 250, and could do so "in a timely manner," AR 005, 054, 104, 153, 202, 251. Even more implausibly, despite the overwhelming evidence to the contrary, ITA claimed there was literally "{n}o" "evidence to contradict {USS's} claims" that it could supply the requested products in a timely manner. AR 004–05, 053–54, 103–04, 152–53, 201–02, 250–51.

"Agency action based on a factual premise that is flatly contradicted by the agency's own record does not constitute reasoned decisionmaking, and cannot survive under the arbitrary and capricious standard." *City of Kansas City, Mo. v. Dep't of Hous. & Urban Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991); *see also Mizerak v. Adams*, 682 F.2d 374, 376 (2d Cir. 1982) ("{A}n agency decision is arbitrary and must be set aside when it rests on a crucial factual premise shown by the agency's records to be indisputably incorrect.").

The Department's denials are entirely implausible in the face of the evidence before the agency. USS's bare assertion in its objections of hypothetical future availability is insufficient, especially when it subsequently refused to fill orders and had already made material misstatements to the agency. There was a proven track record of USS declining to supply Seneca over a multi-year period, undisputed evidence that USS refused to fill the very same orders covered by the requests at the time they were placed, undisputed evidence that USS had made repeated false representations to the Department, and written evidence showing that USS was again unable to supply the relevant products—over a time frame stretching more than one year into the future—

even after filing its dubious objections. Commerce's decision to look past all of this and somehow credit USS's claims is a "clear error of judgment," *State Farm*, 463 U.S. at 43, given the "highly persuasive evidence to the contrary," *AT&T Servs., Inc. v. FCC*, 21 F.4th 841, 846 (D.C. Cir. 2021).

> **2.**    **Contrary to Procedure, the Department Failed to Consider and Adequately Explain its Determination to Ignore Evidence of USS's Repeated Refusals to Supply Seneca**

Agencies must "consider{} … the relevant factors" when taking any action, and courts must strike down agency actions which fail to do so. *State Farm*, 463 U.S. at 43; *see also Judulang*, 565 U.S. at 53 (courts must assess "whether the decision was based on a consideration of the relevant factors") (cleaned up). And after considering the relevant factors, the agency must then "articulate a satisfactory explanation" of its decision, including a "rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (internal quotation marks omitted).

In the context of Section 232 exclusion requests, "Commerce {must} explain its determination, specifically, how the record supports its determination in light of the relevant law and consider what fairly detracts from its conclusion." *NLMK Pa., LLC v. United States*, 558 F. Supp. 3d 1401, 1406 (Ct. Int'l Trade 2022); *see generally Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1952) (agencies "must take into account whatever in the record fairly detracts" from their decision). Commerce's procedures likewise "allow the exclusion requester to document … past activity with {an} objector" to prevent a situation where "domestic parties object{} to an exclusion request and then refus{e} to fill orders"—an outcome that Commerce, according to its own regulations, expressly aims to avoid in its administration of requests for product exclusions. 85 Fed. Reg. at 81,066. Any evidence, therefore, showing that a objector claimed availability but then refused to fill orders should be addressed by Commerce in its explanations of its decisions.

NONCONFIDENTIAL VERSION

Here, Commerce failed to consider the appropriate factors and to explain its decisions. As described above, the extensive evidence presented by Seneca established that USS was unable to supply the required volumes, both at the time of Seneca's orders and at the time of USS's objections, and that USS had not supplied *any* products in multiple years. And the course of dealing between USS and Seneca likewise established that—despite its claims of availability to the Department—USS repeatedly "refus{ed} to fill orders" from Seneca. 85 Fed. Reg. at 81,066. USS even admitted that despite having "regularly discussed tin mill product availability and sales with Seneca throughout 2019, 2020, and 2021," USS had "not supplied {Seneca} with tin mill products since February 2019, which is more than two years before … {USS's} objections." AR 048. As Seneca explained to the Department, USS had not proven "a reliable source of supply" for tin mill products. AR 038. Indeed, USS claimed it had supplied Seneca with tin mill products within the two years prior to its objections, AR 029, then admitted it had not in fact done so, AR 048, but later again falsely claimed to have done so, AR 275.

Given this robust evidence, the APA required that the Department carefully discuss and analyze USS's material misstatements, USS's years of unavailability and failures to supply Seneca, and USS's repeated refusals to offer any tin mill products despite its claims to the Department of immediate availability. The Department, instead, ignored all contrary evidence. It gave no explanation or consideration to USS's repeated refusals to supply Seneca, USS's material misstatements to the Department, or USS's failure to provide any products to Seneca over multiple years. Faced with this past history and mounting evidence that USS—despite its objections— would not supply and had not supplied Seneca, the Department simply concluded that there was

*nothing* "in the request, rebuttal, or surrebuttal … provid{ing} evidence to contradict the objector's claims." *See* AR 004–05, 053–54, 103–04, 152–53, 201–02, 250–51.[7]

Commerce thus failed to "explain what information {it} considered, how it was weighed, {and} why the evidence compelled denial." *JSW Steel (USA) Inc.*, 466 F. Supp. 3d at 1330; *see also State Farm*, 463 U.S. at 43 (an agency "must examine the relevant data and articulate a satisfactory explanation for its action"); *U.S. Sugar Corp. v. EPA*, 830 F.3d 579, 650 (D.C. Cir. 2016) ("The {agency} had a duty here to examine and justify the 'key assumptions' underlying its decision, and it failed to do so."). Instead, "Commerce provide{d} no reasoning in its denials, and {did} not engage with evidence which runs contrary to its decision." *NLMK Pa.,* 2023 WL 355074, at *8 (evidence that a producer "had not … sold any such {product} on the market over the last ten years" was "contrary evidence" of its availability that "Commerce *must* address … in its decision.") (emphasis added). Commerce's failure to consider or even attempt to explain away the contrary evidence makes its denials arbitrary and capricious.

### B.    The Department's Denials of the March 2022 Exclusion Requests Were Arbitrary and Capricious

#### 1.    Citing Only an "Issue with the Request," the Department Failed to Explain Its Denials

The Department's more recent denials of Seneca's March 2022 requests were likewise arbitrary and capricious. As with all of its prior requests, Seneca placed these orders only after all relevant domestic producers—including USS—affirmatively declined to provide Seneca with the

---

[7] Ironically, the only exception to the agency's failure to engage contrary evidence occurred in its denial of Seneca's January 2022 request, where ITA focused on supposedly contrary information *submitted by USS*, not by Seneca. ITA found that there was evidence to rebut USS's delivery timeline, but that evidence was USS's own confidential business information that necessitated a slight "adjust{ment}" on the correct delivery time. AR 251. The Department still accepted that USS could supply Seneca within the relevant time frame, despite USS's written acknowledgement to Seneca that it could not do so during 2022. *See* AR 251, 286.

NONCONFIDENTIAL VERSION

volumes it required for 2022. AR 316, 318, 361, 363. The purchase orders were placed in late 2021 and scheduled for delivery primarily by June 2022 (with one final delivery in September 2022). AR 329–30, 378–79. At the time, USS had not supplied Seneca a single ton of steel for over two years, and USS was "unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional material in 2022." AR 318, 363. Seneca presented confidential communications proving this point, *see* AR 332, 381, which USS never disputed.

But in its April 2022 objections, USS again claimed it was "capable of immediately manufacturing" "100%" of the required products within the necessary time frame. AR 325–26, 370–71. Seneca again provided confidential communications proving this was false. After declining to quote, offer, or deliver a single ton of steel to Seneca since February 2019, [

] USS also offered only limited amounts of ETP for delivery in late 2022, after the bulk of the foreign deliveries would be delivered. AR 330, 379.

In other words, the evidence again showed clearly that the full volumes at issue in Seneca's March 2022 exclusion requests were *not* available from USS at the time Seneca placed the orders, at the time of the scheduled deliveries, or at the time of USS's objections and surrebuttals.

Despite this, the Department again denied Seneca's exclusion requests in full. But unlike its prior denials, the Department did so because, it said, there was "an issue with the request{s}," though it never explained what the "issue" was. AR 295, 344. For example, on the key question of

available quantity, ITA simply stated, in full, that, "ITA is unable to provide a complete analysis due to an issue with the request." AR 296, 345. ITA never stated what the "issue with the request" was regarding quantity, nor did it explain why that "issue" required a denial of the exclusion requests. Similarly, on the question of timeliness, ITA claimed, in full: "Seneca provides CBI as an attachment to its rebuttal, which presents delivery information that conflicts with the delivery information in its exclusion request. Due to this ambiguity, ITA is unable to evaluate this exclusion request." AR 297, 346. Yet ITA never explained *how* this delivery information conflicted with the information contained in Seneca's exclusion request, nor why that ambiguity led to a denial.

The Department's analysis was also filled with basic factual errors. For example, in both requests ITA "found" that there was "evidence to contradict the objector's claims" concerning the quality of USS's products, as if Seneca had disputed the quality of USS's products and presented evidence of this in its rebuttals. AR 296, 345. But Seneca never presented any "evidence" concerning product quality in its rebuttals—indeed, Seneca expressly disclaimed quality as a disputed issue. *See* AR 329, 374 ("The basis of your rebuttal is for the following reason(s):…Quality—No"). Further, in its analysis of Request No. 283369, ITA said that "Seneca seeks exclusion for prime tin-free steel," or TFS, AR 345, even though that request covers only "{p}rime electrolytic tinplate," or ETP, AR 352.

Under the APA, an agency must "examine the relevant data and articulate a satisfactory explanation for its action, including a rational connection between the facts found and the choice made." *State Farm*, 463 U.S. at 43 (cleaned up). Even apart from its elementary errors of fact, the Department failed to articulate any explanation for its denials, let alone a "satisfactory" one. With regard to quantity, it simply said there was an "issue with the request," without any attempt to explain what the issue was, how it could be remedied, or why it called for denial. Similarly, with

respect to timeliness, the Department gave no clue as to why the delivery information given by Seneca conflicted with Seneca's exclusion requests, or why this supposed conflict warranted a denial. As the Department conceded, ITA did not even conduct "a complete analysis" of the exclusion requests. AR 295, 344.

As in other cases, "Commerce's denials are devoid of explanation and frustrate judicial review." *JSW Steel (USA)*, 466 F. Supp. 3d at 1330. The denials do not explain "what record evidence, if any, Commerce relied upon {since} both the BIS decision memoranda and ITA recommendation memoranda do not explain what information the sub-agencies considered, how it was weighed, or why the evidence compelled denial." *Id.* at 1330–31 (finding agency action arbitrary capricious since "{n}owhere does BIS refer to any record evidence in its decision memoranda," and its "unsupported conclusion does not apprise the court of …how {it} reached that finding"). Accordingly, the Department's denials were arbitrary and capricious.

### 2. The Department's Decisions Run Counter to the Evidence and Fail to Consider Relevant Factors

Even if the Department had discussed the merits of the March 2022 exclusion requests, its denials still would have been arbitrary and capricious. The evidence was unequivocal that USS could not provide the requested volumes. As with its prior requests, Seneca purchased from foreign suppliers only after domestic producers—including USS—declined to provide any additional volume. AR 316, 318, 361, 363. The orders at issue in these exclusion requests were for delivery in 2022, and at the time, USS had been "unwilling even to give {Seneca} a quote for tin mill products due to its inability to supply any additional materials in 2022," likely because "USS ha{d} neither quoted nor offered to Seneca, let alone delivered, a *single ton of steel for more than two years*." AR 318, 363 (emphasis in original). As proof, Seneca again presented to the Department confidential communications from late 2021, showing that USS had affirmatively declined to

NONCONFIDENTIAL VERSION

provide any volumes for 2022. AR 332, 381. USS never disputed any of this in its objections: at the time Seneca was forced to purchase imports to cover its 2022 needs, USS had affirmatively declined to provide Seneca with any products in 2022, and it had not provided a single ton of steel to Seneca in over two years.

Despite its conceded inability to supply Seneca at the time of purchase, USS objected to the exclusion requests and once again claimed that it could manufacture and deliver "100%" of the relevant volumes within the appropriate time frame. AR 325–26, 370–71. In its rebuttals, Seneca presented confidential communications showing Seneca had repeatedly sought to source both ETP and TFS from USS during early 2022, and that [

] To put this in context, USS's offer represented less than [        ] of the [        ] of TFS Seneca requested from USS [        ] and less than [        ] of the roughly 3,000 tons of TFS for which it was seeking an exclusion. AR 306, 332. This tiny amount of TFS was scheduled for delivery no sooner than [        ], AR 332, over [        ] later than the [        ] delivery date for Seneca's foreign supplier and well over eight weeks from the time of Seneca's request and USS's objection, AR 332; 15 C.F.R. pt. 705, supp. 1(c)(6)(i). In addition, USS—belatedly—was able to offer only a small amount of ETP for delivery in late 2022, long after the bulk of Seneca's purchases of imports were due to arrive. AR 330, 379.

In short, the evidence before the Department established that USS had repeatedly declined to provide the requested volumes, that it had failed to supply *any* volumes for over two years, and that despite claims of availability, it was only willing to supply a tiny fraction of the products at issue and then only well after Seneca's delivery time frame. Yet the Department gave no

explanation as to why the supposed technical issues with Seneca's requests outweighed this evidence; it even conceded that it did not engage in a complete analysis of the relevant issues. AR 295, 344. As with the earlier requests, the Department's denial represents a "clear error of judgment," *State Farm*, 463 U.S. at 43, given the "highly persuasive evidence" that domestic suppliers were unable to supply Seneca's tin mill needs, *AT&T Servs.*, 21 F.4th at 846.

### 3. Without Explanation, the Department Deviated from Past Practice and Treated the Same Materials Differently

Finally, the Department deviated from past practice without explanation. On the question of quality—which, as discussed, ITA mistakenly took to be disputed—ITA's analysis asserted that "there is insufficient technical information available to resolve whether the requested product is identified in the CBI." AR 296, 345. On this basis, apparently, "ITA {was} unable to provide a complete analysis" of the purported issue of quality. AR 296, 345. The CBI submitted by Seneca in its rebuttal included the same confidential communications filed with its October 2021 and January 2022 requests. *Compare* AR 043, 093, 142, 191, 240, 286 *with* AR 332, 381. Yet in those prior requests, the Department had no problem reaching a decision on the merits, even if that decision was arbitrary and capricious. The Department showed it was perfectly capable of assessing the information and identifying the relevant products. Moreover, the CBI was quite explicit in identifying the relevant products: [



] The Department's claim that it was unable to "resolve whether the requested product is identified in the CBI" is untenable. AR 296, 345.

ITA likewise failed to provide any justification for its sudden departure from past practice on the relevant issues of quantity and timeliness. On the issue of quantity, for example, it claimed

NONCONFIDENTIAL VERSION

there was a vague "issue with the request" preventing it from conducting a "complete analysis." AR 296, 345. But Seneca's March 2022 requests presented materially identical information as its prior requests, where the Department found no such "issue." The March requests were for the same products (ETP and TFS), from the same supplier listed in some previous requests, *compare* AR 305, 350 *with* AR 157, Seneca presented the same type of evidence concerning domestic supply shortages and USS's refusal to supply the volumes at issue at all relevant time periods, *compare* AR 316–19, 361–64 *with* AR 168–70, and Seneca even included some of the exact same communications used as evidence in its prior rebuttals, *compare* AR 043, 093, 142, 191, 240, 286, *with* AR 332, 381. The Department had no "issues" reaching the merits on these prior requests, and it gave no explanation as to why the information included in the March requests were suddenly insufficient.

In this abrupt change of course, the Department failed to provide "a reasoned explanation" of its decisions to "appl{y} different standards to similarly situated {entities}." *Euzebio*, 989 F.3d at 1322; *see also FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) (when changing course, agencies must "show that there are good reasons for the new policy"). If the information submitted by Seneca in its October 2021 and January 2022 requests was sufficient to resolve the key issues of quantity and timeliness (even if erroneously), why was materially identical and in some cases the exact same information insufficient for the Department's resolution of Seneca's March 2022 requests? The Department gave no explanation for the difference in treatment, and has now made compliance with the exclusion process a guessing game. Commerce did not even acknowledge that this same information had been evaluated previously, let alone justify its shift in practice. This differing treatment—changing evidential standards on a whim—cannot be sustained. *See Robert Bosch, LLC v. Iancu*, 778 F. App'x 871, 874–75 (Fed. Cir. 2019) (agreeing

that "{n}othing could better evidence an arbitrary and capricious decision than the very same panel reaching exactly the opposite conclusion in two proceedings on an identical issue").

### C. Commerce's Denials are Inconsistent with Its Stated Policies of Considering "Past Activity" with an Objector, or Else Unreasonable

Under the Department's exclusion process, the course of dealing between a requester and objector matters when determining whether a steel product is "immediately" available. As explained by the Department, "the rebuttal process allows the exclusion requester to document in the rebuttal the past activity with {an} objector," so as to prevent "domestic parties {from} objecting to an exclusion request and then refusing to fill orders." 85 Fed. Reg. at 81,066. Similarly, it is not enough for an objector to claim that they could, "in theory," supply the required products—more must be shown, especially when the objector's past dealings and market practices throw into doubt any claims of immediate availability. *See, e.g.*, *NLMK Pa.*, 2023 WL 355074, at *8 (evidence that a producer "had not … sold any such {product} on the market over the last ten years" was "contrary evidence" of its availability that "Commerce must address"). Moreover, as the Department has emphasized, the way "to determine definitively whether an objector is in fact able to provide the steel … article in question {is} by attempting to obtain the product from the objector." 85 Fed. Reg.. at 81,065.

These policy statements of the Department emphasizing the importance of "past activity" involving "attempt{s} to obtain the product from the objector" cannot be reconciled with the denial of Seneca's eight requests. It is undisputed that, before Seneca placed the orders at issue, USS had affirmatively declined to provide the required volumes of TFS and ETP. AR 022, 072, 121, 170, 219, 268, 318, 363. Seneca made those orders only *after* all domestic producers had indicated they could not (or would not) supply Seneca with the required volumes. And USS affirmatively declined to supply Seneca even *after* objecting to the October 2021 requests and within days of

NONCONFIDENTIAL VERSION

objecting to the March 2022 requests. AR 036, 086, 135, 184, 233, 330, 379. USS had not provided Seneca with a *single ton* of tin mill products in over two years. Seneca had thus taken the "definitive{}" steps to determine whether USS was "in fact able to provide the steel" by "attempting to obtain" the needed volumes both before and during the exclusion process—but USS consistently refused. 85 Fed. Reg. at 81,065. Crediting USS's claims that it could now, "in theory," supply Seneca with the needed quantities only perpetuates the precise result Commerce claims it wants to avoid: allowing domestic producers to object but then "refus{e} to fill orders," *id.* at 81,066, as USS did in November 2021, AR 036, 086, 135, 184, 233. Under the Department's own guidance, this result cannot stand.

If, despite its explicit guidance, the Department's exclusion process is *solely* prospective—countenancing only the forward-looking claims of objectors without any consideration of past dealings—then it is arbitrary and capricious both facially and as-applied to these requests. *See State Farm*, 463 U.S. at 43 ("{A}n agency rule {is} arbitrary and capricious if the agency has … entirely failed to consider an important aspect of the problem."); *see also EPA v. EME Homer City Generation, LP*, 572 U.S. 489, 524 (2014) (parties can bring a "particularized, as-applied challenge" for arbitrary and capricious applications of an otherwise valid rule).

In his proclamation, the President authorized the Secretary of Commerce to "provide relief" from Section 232 tariffs when "any steel article" is "not to be produced in the United States in a sufficient and reasonably available amount." Pres. Proc. No. 9705, 83 Fed. Reg. 11,625 (Mar. 8, 2018). When domestic suppliers are *actually* unable or unwilling to supply needed steel, requesters should be given relief. Yet a purely prospective approach to determine whether steel articles are "produced in the United States in a sufficient and reasonably available amount" will "entirely fail{} to consider an important aspect of the problem" that such exclusions were meant to address.

*State Farm*, 463 U.S. at 43. A rule that considers only claims of future, theoretical capacity, while ignoring uncontested evidence of past refusals to supply, provides no "relief" for eligible requesters. Domestic producers can simply continue to object, yet never fulfill orders—precisely as USS has done here—leaving requesters to suffer the results. But the Proclamation cannot be read this way, and such an approach is wholly unreasonable. Indeed, "{t}he reasonableness of adopting a predictive methodology is not the same as the reasonableness of *maintaining* one in the face of experience." *American Petroleum Inst. v. EPA*, 706 F.3d 474, 477 (D.C. Cir. 2013). "{C}onsidering whether to maintain a methodology *necessarily* invites reflection on the success of earlier applications." *Id.* (emphasis added). Commerce's decision to ignore USS's repeated, multi-year refusals to supply Seneca, but then credit USS's claims of immediate availability, flies "in the face of experience." *Id.* A purely prospective methodology, in other words, provides no "relief" at all when objectors' theoretical projections of future availability remain untethered from on-the-ground market realities. Such a process cannot be sustained in light of the President's directive or under the APA, and this Court should set it aside.

### D.    An Open Remand Would Be Futile

For cases challenging the imposition of tariffs, this Court has authority to order any form of appropriate relief, including a money judgment against the United States. *See* 28 U.S.C. § 2643(a)(1), (c)(1). And under the APA, courts can "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). While remand is the typical remedy for an arbitrary and capricious agency action, when the record "supports only one outcome," an open remand becomes "futile." *Nexteel*, 28 F.4th at 1238. In that situation, a remand with instructions or an outright reversal of the agency's determination is appropriate. *See Nippon Steel Corp.*, 458 F.3d at 1359; *see also Guertin v. United States*, 743 F.3d 382, 388 (2d Cir. 2014) (holding that "remand to the agency for further proceedings is not necessary because there is compelling evidence in the

NONCONFIDENTIAL VERSION

record … that would not change if remanded to the agency"); *Middle Rio Grande Conservancy Dist. v. Norton*, 294 F.3d 1220, 1226 (10th Cir. 2002) (remand was inappropriate since "the record contains overwhelming evidence" dictating one course of action); *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. NLRB*, 459 F.2d 1329, 1347 (D.C. Cir. 1972) (declining to remand since "there is only one rational course for the {agency} to follow").

An open remand would be futile here. In this case, unlike others, there is "only one possible conclusion from the record." *NLMK Pa.*, 2023 WL 355074, at *8. The failings of the Department are not simply procedural. Even if the Department were to remedy some of its errors and fully address the record evidence, only one outcome could be upheld on review—granting Seneca's requests, since no domestic supplier, including USS, would provide the required volumes within the relevant time frames. "{T}he record here has been fully developed, and the conclusions that must follow from it are clear." *Sierra Club v. U.S. EPA*, 346 F.3d 955, 963 (9th Cir. 2003), *amended by* 352 F.3d 1186. USS has conceded that for over two years, it failed to supply *a single ton* of tin mill products to Seneca. And it has also conceded that at the time of Seneca's purchases that are the subject of these exclusion requests, USS had no capacity to supply the relevant products. Moreover, USS's claims of available capacity have been undermined not only by its own statements—as provided in Seneca's rebuttals to the Department—but by its own misstatements and complete failure to supply any required products over a multi-year period. Given this extensive evidence, were the Department to find yet again that USS is capable of supplying Seneca's tin mill needs within the relevant timeline, that finding would not be supported with adequate evidence, making it arbitrary and capricious.

Accordingly, this Court should order the Department to grant the denied exclusions from Section 232 tariffs, since only that course of action can be sustained under the Administrative

Procedure Act.  In the alternative, the Court should impose a deadline for the Department to promptly make a new decision on any remand.

## VI.    CONCLUSION

For these reasons, Seneca asks the Court to (i) grant its motion setting aside the Department's decisions denying Seneca's requests; (ii) declare that the Department's denials were arbitrary and capricious or otherwise unlawful under the APA; (iii) declare that Seneca was entitled to the requested exclusions from Section 232 tariffs; (iv) instruct the Department to grant the denied exclusions, enabling U.S. Customs and Border Protection to refund the Section 232 tariffs paid on import entries of Seneca's purchases; and (v) provide any other relief the Court deems just and proper. Alternatively, Seneca asks the court to remand the matter to the Department of Commerce for proper treatment and consideration of the requests in accordance with the requirements of the APA and subject to a specified deadline.

Respectfully Submitted,

*/s/ James M. Smith*
James M. Smith
Thomas Brugato
Kwan Woo (Kwan) Kim
Brock M. Mason
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com
tbrugato@cov.com
kkim@cov.com
bmason@cov.com

February 28, 2023                                    *Counsel for Plaintiff Seneca Foods Corporation*

NONCONFIDENTIAL VERSION

<u>**CERTIFICATE OF COMPLIANCE**</u>

Pursuant to Chambers Procedure 2(B)(2), the undersigned certifies that Plaintiff Seneca Foods Corporation's Brief in Support of Plaintiff's Rule 56.1 Motion for Judgment on the Agency Record contains 13,361 words as computed by Covington & Burling's word processing system, excluding those portions that do not count toward the word limitation, and thus complies with the Court's Chambers Procedures.

<u>*/s/ James M. Smith*</u>
James M. Smith
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com

February 28, 2023                                        *Counsel for Plaintiff Seneca Foods Corporation*