IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| SENECA FOODS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 22-00243 |
| | ) | |
| v. | ) | **PUBLIC VERSION** |
| | ) | |
| UNITED STATES, | ) | Business Proprietary Information |
| | ) | Denoted by Brackets [ ] on Page(s) |
| | ) | 8, 15, 16, 17 |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

KYLE S. BECKRICH
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-9322
Email: Kyle.Beckrich@usdoj.gov

April 11, 2023

*Attorneys for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ ii

STATEMENT PURSUANT TO RULE 56.1(c)(1). ........ 1

I. The Administrative Determinations Under Review ........ 1

II. Statement Of The Issues ........ 2

STATEMENT OF FACTS ........ 2

I. The Section 232 Steel Investigation And The President's Proclamations ........ 2

II. Commerce's Administrative Procedures For Requesting Product Exclusions ........ 3

III. Seneca's Exclusion Requests, The Domestic Industry's Responses, And Commerce's Denials ........ 7

A. Seneca's October 2021 And January 2022 Exclusion Requests ........ 7

B. Seneca's March 2022 Exclusion Requests ........ 9

SUMMARY OF ARGUMENT ........ 9

ARGUMENT ........ 10

I. Standard Of Review ........ 10

II. Commerce Reasonably Denied Seneca's October 2021 and January 2022 Six Exclusion Requests Based On The Domestic Availability Of The Relevant Products ........ 12

III. The Court Should Grant Our Request For Voluntary Remand For Commerce To Reconsider Seneca's March 2022 Exclusion Requests ........ 20

IV. If The Court Determines That Commerce Erred, Remand Is The Appropriate Remedy ........ 23

CONCLUSION ........ 25

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*Albertson v. FCC*,
182 F.2d 397 (D.C. Cir. 1950).....20

*Allied Tech. Grp., Inc. v. United States*,
649 F.3d 1320 (Fed. Cir. 2011).....17

*Bowman Transp. Inc. v. Arkansas-Best Freight System*,
419 U.S. 281 (1974).....11

*Canadian Lumber Trade Alliance v. United States*,
517 F.3d 1319 (Fed. Cir. 2008).....11

*Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*,
375 F.3d 412 (6th Cir. 2004).....20

*Downhole Pipe & Equip., L.P. v. United States*,
776 F.3d 1369 (Fed. Cir. 2015).....12

*F.C.C. v. Fox Television Stations, Inc.*,
556 U.S. 502 (2009).....11

*Former Emps. of Alcatel Telecomm. Cable v. Herman*,
24 CIT 655 (2000).....11

*Genuine Parts Co. v. Env't Prot. Agency*,
890 F.3d 304 (D.C. Cir. 2018).....20

*I.N.S. v. Ventura*,
537 U.S. 12 (2002).....24

*In re Section 301 Cases*,
No. 21-00052, Slip Op. 23-35 at 21, 2023 WL 2553926 (Ct. Int'l Trade Mar. 17, 2023) . 12, 17, 20

*Inland Steel Indus., Inc. v. United States*,
188 F.3d 1349 (Fed. Cir. 1999).....20

*JSW Steel (USA) Inc. v. United States*,
466 F. Supp. 3d 1320 (Ct. Int'l Trade 2020).....23

*Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins.*,
463 U.S. 29 (1983).....11, 12, 24

*Nexteel Co. v. United States*,
28 F. 4th 1226 (Fed. Cir. 2022).....24

*Nippon Steel Corp. v. Int'l Trade Comm'n*,
345 F.3d 1379 (Fed. Cir. 2003) ....................23, 24

*NLMK Pennsylvania, LLC v. United States*,
No. 21-00507, Slip. Op. 23-7 at 20-21, 2023 WL 355074, at (Ct. Int'l Trade Jan. 23, 2023)...24

*OTR Wheel Eng'g, Inc. v. United States*,
901 F. Supp. 2d 1375 (Ct. Int'l Trade 2013) ....................20

*SEC v. Chenery Corp*.,
332 U.S. 194 (1947)....................11

*Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*,
412 F. Supp. 2d 1330 (Ct. Int'l Trade 2005)....................21, 22

*SKF USA Inc. v. United States*,
254 F.3d 1022 (Fed. Cir. 2001) ....................20, 21, 22

*Trujillo v. General Elec. Co.*,
621 F.2d 1084 (10th Cir. 1980) ....................20, 22

**Statutes**

19 U.S.C. § 1862....................1, 2

28 U.S.C. § 1581(i) ....................10

28 U.S.C. § 2640(e) ....................10

**Regulations**

15 C.F.R. Pt. 705....................passim

**Other Authorities**

*Adjusting Imports of steel Into the United States*,
*Proclamation 9705*, 83 Fed. Reg. 11,625 (Mar. 8, 2018) ....................3

*Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (Dep't of Commerce Mar. 19, 2018) ....................3

*Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dep't of Commerce Dec. 14, 2020)....................3, 19

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,027 (Dep't of Commerce Sept. 11, 2018) .........................6

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

SENECA FOODS CORPORATION,

Plaintiff,

v.

UNITED STATES,

Defendant.

Court No. 22-00243

ORDER

On consideration of plaintiff's motion for judgment on the administrative record, defendant's response, and all other pertinent papers, it is hereby

ORDERED that six of the challenged determinations—concerning Exclusion Request Nos. 257423, 257428, 257708, 257709, 257712, and 275504—are sustained;

ORDERED that the two remaining challenged determinations—concerning Exclusion Request Nos. 283368 and 283369—are remanded to the Department of Commerce for reexamination;

ORDERED that the Department of Commerce shall file its remand results on Exclusion Request Nos. 283368 and 283369 within 45 days after the date of this order.

Dated:______________, 2023
New York, N.Y.

___________________________
JUDGE

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| SENECA FOODS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 22-00243<br><br>**PUBLIC VERSION**<br>Business Proprietary Information Denoted by Brackets [ ] on Page(s) 8, 15, 16, 17 |

DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

Pursuant to Rule 56.1 of the Rules of this Court, defendant, the United States, respectfully submits this response to the motion for judgment on the agency record and supporting brief (Br.) filed by plaintiff, Seneca Foods Corporation (Seneca). Seneca challenges the Department of Commerce's decisions to deny eight requests for exclusions from import measures imposed on certain steel articles by the President under Section 232 of the Trade Expansion Act of 1962, 19 U.S.C. § 1862, as amended (Section 232). The Court should deny Seneca's motion as to six of those requests because Commerce's decisions were not arbitrary, capricious, or contrary to law. For the remaining two, we respectfully request that the Court remand those requests for further examination in light of the issues Seneca has raised in its motion.

STATEMENT PURSUANT TO USCIT RULE 56.1(c)(1)

I. The Administrative Determinations Under Review

The administrative determinations under review are Commerce's denials of Seneca's eight requests to exclude certain imports of prime tin-free steel (TFS) and prime electrolytic

tinplate (ETP) from the Section 232 national security duties on steel articles.

II. Statement Of The Issues

1. Whether Seneca has demonstrated that Commerce's decisions denying Seneca's requests to exclude imports of TFS and ETP from the President's national security tariffs were arbitrary, capricious, or contrary to law.

2. Whether the Court should grant Commerce's request to voluntarily remand the two exclusion requests that Commerce denied without reaching the merits.

## STATEMENT OF FACTS

I. The Section 232 Steel Investigation And The President's Proclamations

Section 232 authorizes the President to adjust imports of an article and its derivatives if the President concurs with a finding by the Secretary of Commerce (the Secretary) that such imports threaten to impair the national security. *See generally* 19 U.S.C. § 1862.

The Secretary initiated an investigation to determine the effect of imports of steel and aluminum on the national security, which was conducted by the Bureau of Industry and Security (BIS), a Commerce sub-agency. *See generally* U.S. Dep't of Commerce, *The Effects of Imports of Steel on the National Security* (Jan. 11, 2018), *available at* https://2017-2021.commerce.gov/sites/default/files/the_effect_of_imports_of_steel_on_the_national_security_-_with_redactions_-_20180111.pdf. The Secretary issued a report and recommendation to the President, finding that steel imports are "weakening {the United States'} internal economy" and "threaten to impair the national security as defined in Section 232." *Id.* at 5.

After considering the Secretary's report, the President issued *Proclamation 9705,* in which he concurred with the Secretary's finding that steel articles are being imported in such quantities and under such circumstances as to threaten to impair the national security of the

United States, and announced measures on "adjusting imports of steel." *Adjusting Imports of Steel Into the United States*, *Proclamation 9705*, 83 Fed. Reg. 11625 (Mar. 8, 2018) (*Proclamation 9705*). The President established a 25 percent tariff on imports of certain steel articles, effective March 23, 2018.

Simultaneously, the President authorized the Secretary of Commerce to provide relief from the tariffs for products determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or based upon specific national security considerations. *Proclamation 9705*, Cl. (3). The President explained that "relief shall be provided for a steel article only after a request for exclusion is made by a directly affected party located in the United States." *Id.* The President instructed Commerce to issue procedures for the requests for exclusion within 10 days after *Proclamation 9705* was issued. *Id.* Cl. (4).

II. Commerce's Administrative Procedures For Requesting Product Exclusions

On March 19, 2018, Commerce promulgated an interim final rule, establishing the exclusion process envisioned in *Proclamation 9705*. *Requirements for Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and Aluminum*, 83 Fed. Reg. 12,106 (Dep't of Commerce Mar. 19, 2018), codified at 15 C.F.R. Pt. 705, Supp. 1.[1]

Under its regulations, only directly affected individuals or organizations (*e.g.*, construction, manufacturing, or supplying steel product to users) located in the United States

[1] The current version of the regulations, which went into effective December 14, 2020, applied to these exclusion requests, which Seneca filed between October 2021 and March 2022. *See Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060 (Dep't of Commerce Dec. 14, 2020).

may submit an exclusion request.  *Id.* § (c)(1).  Commerce will approve exclusions on a product basis, and the approvals are generally limited to the individual or organization that submitted the request.  *Id.* § (c)(2).

Requestors must complete and submit a fillable form available on Commerce's website, *id*. § (b), as well as specify the business activities in the United States with which they are engaged that qualify the individual or organization to be directly affected and thus eligible to submit a request, *id.* § (c)(5)(i).  "The request should clearly identify, and provide support for, the basis upon which the exclusion is sought."  *Id.*

The fillable form required requestors to supply specific factual information, including: (1) the product type and class for which the exclusion is requested, (2) the 10-digit Harmonized Tariff Schedule Code of the United States (HTSUS) for the single product covered by the request, (3) the quantity of product required (stated in kilograms) under a one-year exclusion, (4) estimates of the number of days required to take delivery of, manufacture, and ship the product covered by the request, (5) a full description of the physical properties and chemical composition of the product the requestor seeks to import, (6) any standards organizations that have set specifications for the product, (7) the application for the product, (8) why similar products manufactured in the United States are not suitable, and (9) domestic product availability information.  *See, e.g.*, AR008-018.

Commerce reviews each request to determine whether an article described in the request meets one of three criteria: (1) the article is not produced in the United States in a sufficient and reasonably available amount, (2) the article is not produced in the United States in a satisfactory quality, or (3) specific national security considerations.  15 C.F.R. Pt. 705, Supp. 1, § (c)(6).

Not produced in the United States in a sufficient and reasonably available amount "means

that the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities." *Id.* § (c)(6)(i). "Immediately" "means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer 'within eight weeks', or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier." *Id*.

Not produced in the United States in a satisfactory quality "does not mean the steel or aluminum needs to be identical, but it does need to be equivalent as a substitute product." *Id.* § (c)(6)(ii). "Substitute product" "means that the steel or aluminum being produced by an objector can meet 'immediately' . . . the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S.-produced steel to be used in that business activity in the United States by that end user." *Id.*

Any individual or organization that domestically manufacturers steel or aluminum articles may file objections to exclusion requests. *Id.* § (d)(1). An objection "should clearly identify, and provide support for, its opposition to the proposed exclusion." *Id.* § (d)(4). The fillable form instructed objectors to: (1) indicate whether the objector currently manufactures the product or is capable of immediately manufacturing the product, (2) explain the time period within which the objector can produce the product, if it does not currently manufacture the product, (3) state whether the objector manufactures, or can immediately manufacture, a substitute product, (4) discuss the suitability of the objector's product compared to that identified in the request, (5) provide a full technical description of the physical properties and chemical composition of the product the objector manufactures relative to specifications cited in the request, (6) state what percentage of the total product tonnage requirement covered by the

request that the objector can manufacture on a timely basis, and (7) the number of days required to ship, manufacture, and deliver the product. *See, e.g.*, AR023-031.

Requestors may also submit rebuttals and objectors may submit surrebuttals. 15 C.F.R. Pt. 705, Supp. 1 § (f)-(g). Because information provided in the submissions is made available to the public, the regulations state that information not subject to public disclosure should not be submitted. *Id.* § (b)(5)(ii). "For persons seeking to submit confidential or proprietary business information (CBI), the submission available to the public must contain a summary of the CBI in sufficient detail to permit a reasonable understanding of the substance of the information." *Id.* § (b)(5)(iii). Requestors and objectors may also submit CBI directly to Commerce. *Id.*

Commerce reviews an exclusion request based on the information included in the exclusion request, any objections to an exclusion request, any rebuttals to the objections made by an individual or organization that submitted the exclusion request, and any surrebuttals.[2] *See id.* § (h)(2)(i). For exclusion requests that receive no objections, Commerce will post a decision granting the request if it identifies no national security concerns. *Id.* § (h)(2)(ii).

Approved exclusions will be effective five business days after publication of Commerce's response granting an exclusion, and, on that date, "the requester will be able to rely upon the approved exclusion request in calculating the duties owed on the product imported in accordance with the terms listed in the approved exclusion request." *Id.* § (h)(2)(iii)(A). Commerce further directed that "{e}xclusions will generally be approved for one year." *Id.*

---

[2] Commerce utilizes BIS and the International Trade Administration (ITA) to evaluate requests. BIS is "the lead agency" in deciding whether to grant a request, and ITA "analyz{es} requests and objections to evaluate whether there is domestic production available to meet the requestor's product needs." *Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,027 (Dep't of Commerce Sept. 11, 2018). ITA, upon completion of its review, provides BIS with a recommendation as to whether an exclusion request should be granted.

§ (h)(2)(iv).

III.     Seneca's Exclusion Requests, The Domestic Industry's Responses, And
         Commerce's Denials

Seneca is a fruit and vegetable processor that uses tin mill products (including TFS and

ETP) to make its own cans.  AR020.  Between October 2021 and March 2022, Seneca applied

for eight exclusions from the Section 232 tariffs on steel articles.  Seneca sought three exclusions

for TFS and five exclusions for ETP.  Br. at 5.

         A.     Seneca's October 2021 And January 2022 Exclusion Requests

Seneca claims that the volumes in its October 2021 requests are limited to orders placed

by Seneca between late 2020 and spring 2021 for delivery in the fourth quarter of 2021.  AR020.

Seneca claims that the volume in its January 2022 request is limited to "orders placed by Seneca

in late 2021 for 2022 supply."  AR271.  Seneca claimed in its requests that it contacted domestic

suppliers, at the time it placed its orders, regarding whether the domestic suppliers could contract

for its needs.  AR022.  According to Seneca, the domestic suppliers indicated they could not

enter into contracts to supply Seneca's needs at that time.  AR022.  Months later, when Seneca

filed its requests, Seneca relied on those prior representations as the basis for its exclusion

requests.  AR022.

U.S. Steel was the sole objector to Seneca's requests.  U.S. Steel "confirm{ed} it {was}

capable of producing {the products} that meet{} all requested specifications."  AR029.

"Therefore, the requested {products} are produced by and available from domestic

manufacturers."  AR029.

Seneca filed rebuttals to U.S. Steel's objections.  In its rebuttals, Seneca continued to

assert that U.S. Steel declined to enter into contracts in late 2020 and spring 2021 for the contract

volumes at issue in its October 2021 requests.  AR037.  Similarly, Seneca claimed that U.S. Steel

declined to enter into contracts in late 2021 for its 2022 supply.  AR287.  Seneca attached two

emails containing CBI to its rebuttals.  The first email was an internal email which Seneca

characterizes as a communication that it had with U.S. Steel.  AR041.  The second email was

from U.S. Steel and concerned U.S. Steel's [

            ].  AR043-044; *see also* AR037 (Seneca asserts that "all indications thus far

suggest that {U.S. Steel} will not supply Seneca with any contracted volume for next year").

        U.S. Steel filed surrebuttals.  In those surrebuttals, U.S. Steel explained that Seneca

focuses on "'contract' volumes and fails to mention that U.S. Steel ha{d} recently offered

Seneca . . . spot sale volumes."[3]  AR046.  U.S. Steel explained that "the COVID-19 pandemic

and other economic forces" prevented it from entering into contract sales in 2020 and early 2021.

AR046.  However, U.S. Steel certified that, rather than offering contract volumes, it was offering

spot volumes.  AR046.  U.S. Steel included CBI detailing the quantity of the requested products

that it could produce and the manufacturing and delivery time for those products.  AR049-050.

        Commerce considered the record for each of the six exclusion requests filed by Seneca

and issued six decisions denying the requests.  We address these decisions in greater detail

below, but Commerce concluded that U.S. Steel provided evidence that it could provide the

requested products immediately through spot sales.  AR004.  Because Seneca's evidence only

related to U.S. Steel's availability to provide contract volumes, Commerce concluded that

Seneca did not contradict the information certified by U.S. Steel.  Because the record

demonstrated that the products were immediately available in the domestic industry, Commerce

denied the requests.

---

[3] As Seneca explains in its motion, tin mill products are sold through either annual
contracts, normally negotiated in the fourth quarter of each year for shipments in the following
year, or spot sales, which are agreements to immediately provide a specific volume.  *See* Br. at 1.

B.      Seneca's March 2022 Exclusion Requests

Seneca submitted two additional exclusion requests for tin mill products in March 2022. These requests were for products that were to be delivered in 2022. AR318. Like the previous requests, Seneca maintained that U.S. Steel previously declined to supply the requested volume. AR333. And like the previous requests, U.S. Steel contended that Seneca does not rebut the fact that U.S. Steel currently has the available capacity to manufacture the requested volume of the products. AR345.

For these two requests, Commerce denied the request because it was unable to "provide a complete analysis due to an issue with the request{s}." AR301, AR350. Commerce relied on a subject-matter expert (SME) to evaluate the facts presented by the requests, objections, rebuttals, and surrebuttals. AR301, AR350. In evaluating whether U.S. Steel could provide the requested product in sufficient quality, the SME evaluated "whether the CBI {provided by Seneca} addresses the requested product and can be used as a basis for evaluating U.S. Steel's objection." AR302, AR351. The SME concluded that "insufficient technical information" was available "to resolve whether the requested product is identified in the CBI." AR302, AR351. Similarly, with respect to U.S. Steel's delivery time, ITA explained that Seneca's CBI "presents delivery information that conflicts with the delivery information in the exclusion request." AR303, AR352. Accordingly, "ITA {wa}s unable to evaluate the exclusion request{s}," and the requests were denied. AR303, AR352.

SUMMARY OF ARGUMENT

The Court should sustain Commerce's decisions to deny six of Seneca's eight exclusion requests. As to those requests, Commerce complied with its regulations and its decisions were reasonable in light of the evidence presented by Seneca and the objector, U.S. Steel. Seneca's

arguments do not demonstrate otherwise. As to the remaining two decisions, we respectfully request that the Court grant our request for voluntary remand of those requests for further examination.

Seneca's exclusion requests are based upon its allegation that the requested products are not domestically available. Specifically, Seneca argues that because U.S. Steel did not commit to provide contract volumes to Seneca months prior to Seneca filing any exclusion request, U.S. Steel cannot subsequently have any capacity to produce the requested products. However, U.S. Steel indicated its willingness to supply the requested products through spot sales. Although U.S. Steel was unable to commit to contract volumes due to economic factors surrounding the COVID-19 pandemic, it provided evidence that it could immediately deliver the products through spot sales. Seneca failed to offer evidence directly addressing U.S. Steel's capacity to provide spot sales, and thus Commerce reasonably weighed the evidence and determined that the requested products were domestically available. Accordingly, Commerce denied six of the eight requests filed by Seneca due to domestic availability.

As to the remainder of Seneca's exclusion requests, consisting of two requests that Commerce denied as ambiguous and deficient, we respectfully request that the Court remand those decisions for re-examination in light of the issues that Seneca has raised in its motion.

## ARGUMENT

### I. Standard Of Review

In a civil action brought under 28 U.S.C. § 1581(i), "the Court of International Trade shall review the matter as provided in section 706 of title 5." 28 U.S.C. § 2640(e). "When reviewing a decision of the Court of International Trade in a suit brought pursuant to 28 U.S.C. § 1581(i), {the court} appl{ies} the standard of review set forth by the Administrative Procedure

Act, and will 'hold unlawful and set aside {agency} action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (quoting 5 U.S.C. § 706(2)).

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto. Ins*., 463 U.S. 29, 43 (1983). Commerce "must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Id.* (citations omitted).

As this Court has held,

> The arbitrary and capricious standard of review is {also} narrower than the substantial evidence standard, and the court will therefore remand {Commerce's} . . . determination only if it finds that 'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Former Emps. of Alcatel Telecomm. Cable v. Herman*, 24 CIT 655, 658–59 (2000) (quoting *Motor Vehicle*, 463 U.S. at 43).

While the Court "'{m}ay not supply a reasoned basis for the agency's action that the agency itself has not given,' {it} will, however, 'uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.'" *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43 (quoting *SEC v. Chenery Corp*., 332 U.S. 194, 196 (1947), *and Bowman Transp. Inc. v. Arkansas-Best Freight System*, 419 U.S. 281, 285, 286 (1974)); *see also F.C.C. v. Fox Television Stations, Inc*., 556 U.S. 502, 513 (2009) (describing the arbitrary and capricious standard of

review as "narrow").

II. Commerce Reasonably Denied Seneca's October 2021 and January 2022 Six Exclusion Requests Based On The Domestic Availability Of The Relevant Products

Seneca submitted six exclusion requests between October 2021 and January 2022 covering both ETP and TFS. For each of those six requests, Commerce concluded that at least one objector could meet the quality, quantity, and timeliness criteria, and thus the products were domestically available. *See, e.g.*, AR001-007.[4] Seneca challenges that determination, arguing that Commerce's conclusion that U.S. Steel could supply tin mill product to Seneca "is 'so implausible' that it must be set aside." Br. at 22 (quoting *Motor Vehicle*, 463 U.S. at 43). In other words, Seneca does not challenge the quality of U.S. Steel's products or its ability to timely deliver those products, but limits its challenge to whether the evidence supports Commerce's finding that U.S. Steel could supply the necessary tonnage (or any tonnage at all). *Id.* As shown below, Commerce evaluated the relevant evidence and factors and provided a rational explanation for its decisions. Seneca's mere disagreement with Commerce's weighing of the evidence is no basis to overturn Commerce's decisions. *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1376-77 (Fed. Cir. 2015); *In re Section 301 Cases*, No. 21-00052, Slip Op. 23-35 at 21, 2023 WL 2553926, at *9 (Ct. Int'l Trade Mar. 17, 2023) ("It is not the court's role to reweigh the evidence . . . .").

Commerce considered the relevant evidence and the path to its decisions is easily discernible. *Motor Vehicle*, 463 U.S. at 43. Indeed, ITA evaluated "all relevant submitted

[4] As demonstrated in Seneca's brief, the same analysis and evidence applies to each of these six requests. The record for each of these requests are largely duplicative of one another. Rather than citing to the same evidence or analysis six times, we cite to the record documents for exclusion request no. 257423. Unless otherwise noted, those citations are demonstrative of the other five requests filed between October 2021 and January 2022.

documentation, including relevant confidential or proprietary business information." AR003. Likewise, BIS "considered the evidence provided, including in the exclusion request as well as any applicable objection filings." AR001. In making its determination that U.S. Steel could produce 100 percent of the requested volume, Commerce noted that "both Seneca and U.S. Steel submit{ted} confidential business information (CBI) related to U.S. Steel's ability to meet the quantity criterion." AR004. Commerce concluded that "{b}ased on the evidence submitted, nothing contradicts the information certified by U.S. Steel in its objection submission." AR004. Commerce addressed Seneca's claim that U.S. Steel "has been unwilling to commit to any contractual volume thus far, most recently in November 2021." AR004. Commerce found that U.S. Steel claimed to be able to provide the requested volume as *spot sales* rather than contract volumes. AR004. Accordingly, Commerce concluded that Seneca's challenge to U.S. Steel's statements in its objections unfounded. AR004.

This reasoned rationale for Commerce's decisions is well supported by the record. In Seneca's narrative attached to its exclusion request, it explained that "the volumes covered by these requests are limited to orders placed by Seneca between late 2020 and spring 2021." AR020; *see also* AR271 (for Seneca's January 2022 exclusion request, "the volume covered by this request is limited to orders placed by Seneca in late 2021 for 2022 supply"). Seneca explained that it "filed these exclusion requests only after placing purchase orders for imports—and only after confirming that the domestic industry ha{d} no availability for the relevant timeframe." AR022. Based on Seneca's own representations in its requests, then, its claim that the products at issue were not domestically available was based on representations made by the domestic industry *months prior* to when Seneca filed any exclusion requests, and based on the domestic industry's availability to provide the products through contract sales.

Seneca confirmed this position in filings its rebuttals to U.S. Steel's objections. After U.S. Steel claimed it did have capacity to provide the requested volumes of ETP and TFS, Seneca claimed that the timeframes for its requests were when Seneca placed its orders. AR034 ("the timeframe for this request was an order placed on 4/22/2021"); *see also* AR135 ("the timeframe for this request was an order placed on 11/20/2020"), AR184 ("the timeframe for this request was an order placed on 5/3/2021"), AR285 ("The relevant orders were placed in late 2021 . . . ."). Seneca argued that because U.S. Steel did not contract to supply the volumes in 2020 and 2021, U.S. Steel's objections "deserve no weight." AR037.

However, U.S. Steel addressed Seneca's arguments in its surrebuttals.[5] U.S. Steel explained that Seneca's focus is on contract volumes rather than spot sale volumes. AR046; *see also* Br. at 1 (distinguishing spot sales with annual contract sales). As U.S. Steel explained, it only offered spot sales for 2022. AR046. In light of "the COVID-19 pandemic and other economic forces," the U.S. tin mill industry suffered supply constraints/delays in 2020 and 2021, when Seneca sought its contract volumes. AR046. However, by the time Seneca filed its requests, U.S. Steel had regained its capacity to deliver the relevant quantity of the product immediately. AR046. U.S. Steel attached CBI to its surrebuttal setting forth both its capacity to produce the products and the manufacturing and delivery time for those products. AR049-050.

When Commerce evaluates exclusion requests, it determines, among other factors not challenged here, whether the article described in the requests "is not produced in the United

[5] With respect to Seneca's January 2022 exclusion request, U.S. Steel's surrebuttal explains that "Seneca does not directly rebut the fact that--as of March 2022--U.S. Steel can immediately manufacture and deliver the requested quantity of ETP. Section 232 tariff exclusions are prospective, rather than retrospective, and must be evaluated based on current product availability." AR295. Like its surrebuttals to Seneca's October 2021 requests, U.S. Steel included CBI setting forth both its capacity to produce and the manufacturing and delivery time for ETP. AR297-98.

States in an amount which can be delivered in a time period equal to or less than the time needed for the requester to obtain the product from their foreign supplier." 15 C.F.R. Pt. 705, Supp. 1, § (c)(6). Commerce has provided guidance as to how it evaluates this factor:

> "Not produced in the United States in a sufficient and reasonably available amount" means that the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to meet its specified business activities. Available "immediately" means that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer "within eight weeks", or, if that is not possible, by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier.

*Id.* § (c)(6)(i).

Commerce's inquiry is whether a domestic supplier can deliver the product "in a time period equal to or less than the time needed for the requester to obtain the product from their foreign supplier." *Id.* § (c)(6). According to the evidence submitted by U.S. Steel, it could deliver TFS to Seneca in [ ] and could deliver ETP to Seneca in [ ] depending on which facility manufactured the product. AR049-50, AR298. Both of those time periods are significantly less than the 95 days for TFS and 270 days for ETP that Seneca stated it needed to obtain the products from its foreign supplier. *See* AR010-11, AR111-12. And as Commerce concluded, "nothing contradicts the information certified by U.S. Steel." AR004.

Seneca provided three sources of information to rebut U.S. Steel's claims: (1) its own statements in its filing; (2) an internal Seneca email from November 2020 characterizing alleged communications with U.S. Steel; and (3) a November 2021 email from U.S. Steel. AR036-044. With respect to the first two sources, Seneca argues that it has proved U.S. Steel was unable to commit to provide contract volumes of the products on November 20, 2020, April 22, 2021, and May 3, 2021. AR037. But U.S. Steel has not alleged, nor did Commerce find, that U.S. Steel

committed to provide contract volumes at those times. Instead, Commerce concluded that U.S. Steel demonstrated it could provide "spot sales rather than contract volumes." AR004. Seneca's own statements and exhibit support that U.S. Steel was willing to make spot sales. Seneca stated that "USS confirmed via phone . . . that it did not want to make any commitment at the time at any price" (*i.e.* provide contract volumes), "and noted that if it had any volume in future months" (*i.e.* volume for spot sales), "it would contact Seneca." AR037, AR041; *see also* Br. at 1 (distinguishing till mill products sold through annual contracts from spot sales, which are agreements to immediately provide a specific volume). Because U.S. Steel represented that it could deliver those spot sales immediately (and in a sufficient quantity), Commerce determined that the products were reasonably available in the United States and the requests should be denied. AR003.

Seneca's third source of information fares no better. For the October 2021 requests, Seneca concedes that U.S. Steel's availability to provide the requested products in 2022 is "irrelevant to these requests." AR037. With respect to the January 2022 request, the November 2021 email from U.S. Steel concerned [

]. *See* AR291; *see also* AR037 (describing "all indications" as confirming that U.S. Steel "will not supply Seneca with any contracted volumes for next year"). Seneca offered no evidence that contradicted U.S. Steel's certified statements that it could immediately provide the requested products in sufficient quantity through spot sales.

Though Seneca framed its approach to filing its requests months (and even almost a year) after attempting to obtain contract volumes from the domestic industry as "responsible," AR022, that approach does not change the scope of Commerce's query. As we have stated, Commerce must determine whether a domestic supplier can deliver the product "in a time period equal to or

less than the time needed for the requester to obtain the product from their foreign supplier."  15 C.F.R. Pt. 705, Supp. 1, § (c)(6).  U.S. Steel offered proof that it could provide the product in that time period through spot sales, Commerce reasonably relied on that uncontradicted evidence, and thus, Commerce's determination should be sustained.

The arguments in Seneca's brief do not undermine Commerce's reasoning.  Seneca argues that: (1) Commerce's conclusions are "so implausible" based on the "overwhelming evidence" that "pointed in only one direction" that they must be set aside, and (2) that Commerce failed to consider all the evidence, in particular the course of dealing between the parties.  Br. at 22-26; Br. at 26-28.  As shown below, Seneca overstates its supportive evidence in this case, and instead merely disagrees with how Commerce weighed the evidence, which is no basis for this Court to overturn Commerce's decisions.  *In re Section 301 Cases*, 2023 WL 2553926, at *9.

The "overwhelming" and "robust" evidence that Seneca relies on is one *internal* email from November 2020, nearly a full year before any relevant exclusion request was filed, and one email from U.S. Steel with respect to its [                                                            ]. AR040-044.  As we have already explained, those two pieces of evidence relate to U.S. Steel's ability to provide contract volumes in 2021 and 2022, which Commerce never determined U.S. Steel could provide.  Moreover, Seneca overlooks the fact that agency decision makers are "entitled to rely on" "certif{ied}" factual statements in determining whether a party will comply with the Government's requirements.  *See Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1330 (Fed. Cir. 2011).  U.S. Steel, in its certified statements and CBI, demonstrated that it had the capacity to immediately deliver the requested products through spot sales.  AR046-050. To suggest that the evidence "point{s} in only one direction" both mischaracterizes the evidence upon which Seneca relies and ignores the evidence provided by U.S. Steel.  *See* Br. at 24.

Likewise, Seneca's arguments that Commerce failed to consider evidence or explain its determination is equally unavailing. Br. at 26-28. Commerce explicitly acknowledged the CBI (the emails submitted by Seneca and the production capacity document submitted by U.S. Steel). AR004. Commerce even quoted Seneca's argument that U.S. Steel has been unwilling to commit to any contract volumes, even as recently as November 2021. AR004. However, Commerce found that Seneca's arguments and evidence "d{id} not impact U.S. Steel's ability to supply the requested quantity" immediately as of the time of the requests. AR004. As we have explained, that is because U.S. Steel stated that it could immediately provide the requested products "as spot sales rather than contract volumes." AR004.

Seneca also argues that the APA required that Commerce "carefully discuss and analyze {U.S. Steel's} material misstatements" and "years of unavailability and failures to supply Seneca." Br. at 27. Notwithstanding Seneca's failure to cite any law in support of its proposition, it once again overstates the record evidence. The alleged "material misstatement" made by U.S. Steel concerned whether it had supplied Seneca with the TFS and ETP within the two years prior to the requests. AR038. In its surrebuttal, however, U.S. Steel clarified "that . . . it has not supplied {Seneca} with tin mill products since February 2019, which is more than two years before submission of U.S. Steel's objections." AR049. U.S. Steel further stated that any prior "contradictory statements . . . were made in error." AR049. Accordingly, the "material misstatements" made by U.S. Steel were acknowledged and corrected on the record by U.S. Steel. Commerce did not rely on those misstatements as a basis for denying the requests. *See* AR001-007. Regarding U.S. Steel's prior failure to supply ETP and TFS to Seneca, Commerce explained why that evidence, which related to contract volumes, did not contradict U.S. Steel's availability to immediately provide the products as spot sales. AR004.

Finally, selectively quoting a comment to the Section 232 Steel and Aluminum Tariff Exclusions Process interim rule, Seneca alleges that Commerce should address any evidence "showing that a{n} objector claimed availability but then refused to fill orders."  Br. at 26. Seneca, however, by its own admissions, never placed an order with U.S. Steel that went unfilled.  *See id.* at 27 (asserting arguments based on "USS's repeated refusals to *offer* any tin products." (emphasis added)).  To the contrary, Seneca offered no record evidence that it placed any volume or spot orders with U.S. Steel during the relevant time.  In response to a related comment on the interim final rule, Commerce also noted:

> Over time, as more of their domestic capacity comes back online or is added, these same objectors may be able to fulfill larger percentages of the exclusion requests, which would help to better achieve the stated purposes of the duties in helping to support the domestic production capabilities and capacity that are critical to protecting U.S. national security.

85 Fed. Reg. at 81,066.  Such is the case here as U.S. Steel brought its capacity back online following the COVID-19 pandemic and could provide the requested product to Seneca through spot sales.

At bottom, Seneca simply disagrees with how Commerce weighed the evidence.  It believes that Commerce should have disregarded U.S. Steel's claimed ability to provide ETP and TFS through spot sales because of its inability to commit to firm contract volumes for the previous two years.  But U.S. Steel explained why that argument lacks merit.  It explained that "the COVID-19 pandemic and other economic forces" limited its ability to commit to contract volumes in recent years, but that it could now provide spot sales volumes of the products. AR046.  U.S. Steel certified those statements as accurate and provided CBI containing the delivery times for the products.  AR048-050.  There is no basis for the Court to overturn these decisions simply because Seneca disagrees with the weight Commerce ascribed to the evidence.

*See In re Section 301 Cases*, 2023 WL 2553926, at *9.

Nor can Seneca "retry factual issues . . . *de novo*" simply because it is disappointed by Commerce's decisions. *Inland Steel Indus., Inc. v. United States*, 188 F.3d 1349, 1359 (Fed. Cir. 1999); *OTR Wheel Eng'g, Inc. v. United States*, 901 F. Supp. 2d 1375, 1380 (Ct. Int'l Trade 2013). Further, Seneca produced no evidence that Commerce failed to consider, meaning this is not a case where Commerce "ignore{d} evidence that undercuts its judgment." *Genuine Parts Co. v. Env't Prot. Agency*, 890 F.3d 304, 346 (D.C. Cir. 2018). Commerce's decisions to deny Seneca's six October 2021 and January 2022 exclusion requests should be sustained.

## III. The Court Should Grant Our Request For Voluntary Remand For Commerce To Reconsider Seneca's March 2022 Exclusion Requests

"When an agency action is reviewed by the courts, . . . the agency may request a remand, without confessing error, to reconsider its previous position." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). Indeed, under the circumstances here, which involve weighing multiple interests and evidence from disparate sources, "a remand to the agency is required, absent the most unusual circumstances verging on bad faith." *Id.* at 1029-30 (identifying the appropriateness of remand with respect to a change in policy relating to the interpretation of an ambiguous statute); *see also Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004) (finding that the district court abused its discretion in denying voluntary remand that would have "cure{d} the very legal defects asserted by plaintiffs challenging federal action."). Voluntary remand is consistent with the principle that "{a}dministrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Trujillo v. General Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980) (citing *Albertson v. FCC*, 182 F.2d 397, 399 (D.C. Cir. 1950)).

Remand is "usually appropriate" if "the agency's concern is substantial and legitimate." *SKF*, 254 F.3d at 1029.  Commerce's concerns are substantial and legitimate where:  (1) "Commerce has provided a compelling justification for its remand request," (2) "the need for finality - although an important consideration - does not outweigh the justification for voluntary remand presented by Commerce," and (3) the "scope of Commerce's remand request is appropriate."  *Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States*, 412 F. Supp. 2d 1330, 1336-39 (Ct. Int'l Trade 2005).

In March 2022, Seneca submitted two exclusion requests for tin mill products: one for TFS and one for ETP.  AR306-318, AR355-367.  Commerce denied these last two exclusion requests without reaching the merits of the requests.  Specifically, Commerce declined to analyze Seneca's requests based upon ITA's determination at the time that it was "unable to provide a complete analysis due to an issue with the request."  AR301, AR350.

For these two requests, Commerce relied on a SME to evaluate the facts presented by the requests, objections, rebuttals, and surrebuttals.  AR301, AR350.  In evaluating whether U.S. Steel could provide the requested product in sufficient quality, the SME evaluated "whether the CBI {provided by Seneca} addresses the requested product and can be used as a basis for evaluating U.S. Steel's objection."  AR302, AR351.  The SME concluded that "insufficient technical information" was available "to resolve whether the requested product is identified in the CBI."  AR302, AR351.  Similarly, with respect to U.S. Steel's delivery time, ITA explained that Seneca's CBI "presents delivery information that conflicts with the delivery information in the exclusion request."  AR303, AR352.  Accordingly, "ITA is unable to evaluate the exclusion request."  AR303, AR352.

Seneca raises several challenges to Commerce's denial of these two requests. First, Seneca argues that Commerce never explained what issues existed with the request that warranted denial without reaching the merits. Br. at 29-30. Second, Seneca argues that it never challenged the quality of U.S. Steel's products, so any ambiguity with respect to quality should not have been a basis for denying the request. *Id.* at 30. Third, Seneca argues that ITA never explained how the delivery information in its CBI conflicted with the delivery information in the exclusion request. *Id.* Finally, Seneca argues that the same alleged issues in these two requests were present in Seneca's other six requests, which Commerce was able to evaluate on the merits. *Id.* at 33-35.

We respectfully request, without confessing error, that the Court grant our motion for voluntary remand so that Commerce can reconsider these two requests. *See SKF*, 254 F.3d at 1029. Commerce's request for a remand is based on substantial and legitimate concerns. *Id.* First, in light of the issues raised in Seneca's brief, Commerce has a compelling interest in deciding whether the two requests can be considered on the merits in the first instance. *Shakeproof Assembly*, 412 F. Supp. 2d at 1336. Second, given that a decision on the merits has not yet been made, the need for finality does not outweigh Commerce's justification. *Id.* at 1337. Indeed, this Court should not reach a decision on the merits in the first instance. *See Trujillo*, 621 F.2d at 1086 ("Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider."). Third, the scope of Commerce's request is appropriate. *Shakeproof Assembly*, 412 F. Supp. 2d at 1339. Commerce estimates that a remand with respect to these two requests will require 45 days. That time will allow Commerce to determine whether a decision on the merits can be made, and

if so, allow Commerce time to reach that decision. We therefore respectfully request that the Court return these decisions to Commerce for further consideration.

IV. If The Court Determines That Commerce Erred, Remand Is The Appropriate Remedy

We lastly turn to the issue of the appropriate relief, should this Court find that Commerce's determinations are arbitrary, capricious, or otherwise not in accordance with law. Rather than requesting a remand—which is the traditional form of relief in this kind of case, *e.g*, *JSW Steel (USA) Inc. v. United States*, 466 F. Supp. 3d 1320, 1332 (Ct. Int'l Trade 2020)—Seneca asks this Court to set aside Commerce's denials, substitute its decision for that of Commerce, grant its exclusion requests, and instruct United States Customs and Border Protection to refund the section 232 duties it has paid. Br. at 37-39. Seneca insists that remand "would be futile here" because an outright grant of the exclusion requests are the only conclusion that can follow from the record evidence. *Id.* at 38.

Respectfully, Seneca is incorrect. Its requested relief would be a clear overreach of the Court's authority in these types of record review cases. *Nippon Steel Corp. v. Int'l Trade Comm'n*, 345 F.3d 1379, 1381-82 (Fed. Cir. 2003) ("Despite {the Court of International Trade's} express dissatisfaction with the fact-finding {in the underlying decision}, the Court of International Trade abused its discretion by not returning the case to the {agency} for further consideration."). Indeed, it is this Court's role to "review" Commerce's decisions. *Id.* at 1381. "{T}o the extent the Court of International Trade engage{s} in refinding the facts . . . or interposing its own determinations" on the issues in the case, "the Court . . . exceed{s} its authority." *Id.*

As demonstrated above, the relevant records demonstrate that U.S. Steel could provide the products for which Seneca sought exclusions. Seneca bases its exclusion requests on its

argument that at some earlier point in time, U.S. Steel was unable to commit to providing the products through contract sales. But the record demonstrates that U.S. Steel has the ability to deliver the products immediately through spot sales. Even assuming Seneca is successful in showing that Commerce could have presented a more "rational connection" between the "facts found" and "choices made," *Motor Vehicle*, 463 U.S. at 43, the record in this case demonstrates that Seneca's contentions are far from clear-cut. *Nexteel Co. v. United States*, 28 F. 4th 1226, 1238 (Fed. Cir. 2022) (holding that an open-ended reman is appropriate in light of "conflicting evidence" and the possibility of more than one outcome).

Moreover, this Court addressed this issue in another section 232 exclusion case earlier this year. *See NLMK Pennsylvania, LLC v. United States*, No. 21-00507, Slip. Op. 23-7 at 20-21, 2023 WL 355074, at *8 (Ct. Int'l Trade Jan. 23, 2023). In *NLMK*, where one remand had already taken place, the Court rejected the notion that a second remand would be futile. The Court held that "a 'judicial judgment cannot be made to do service for an administrative judgment.'" *Id.* (quoting *I.N.S. v. Ventura*, 537 U.S. 12, 16 (2002)). "The agency brings expertise to bear, evaluates evidence, and makes initial determinations through informed analysis." *Id.* Because a remand has not yet taken place in this case, and for two of the requests Commerce has not yet issued a determination on the merits, the Court has even greater reason than in *NLMK* to deny Seneca's request for extraordinary relief in the event the Court sets aside any of Commerce's denials.

At bottom, if the Court believes that some of Commerce's explanations or decisions in this case were less than adequately supported, then the appropriate relief is remand for a redetermination consistent with this Court's decision, not an outright grant of Seneca's exclusion requests. *Nippon Steel*, 345 F.3d at 1381-82; *Nexteel Co.*, 28 F. 4th at 1238. The record in this

case clearly does not support the extraordinary relief that Seneca seeks, and Seneca has no plausible basis to claim otherwise.

## CONCLUSION

For these reasons, we respectfully request that the Court sustain six of the challenged determinations. We respectfully request that the Court remand the remaining two determinations to Commerce for reexamination in light of the issues Seneca has raised.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Kyle S. Beckrich
KYLE S. BECKRICH
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480, Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 616-9322
Email: Kyle.Beckrich@usdoj.gov

April 11, 2023 *Attorneys for Defendants*

CERTIFICATE OF COMPLIANCE

Pursuant to Chambers Procedure 2(B)(2), the undersigned certifies that Defendant's Response to Plaintiff's Motion for Judgment on the Administrative Record contains 7,544 words as computed by our word processing system, excluding those portions that do not count toward the word limitation. Our filing thus complies with the Court's Chambers Procedures.

/s/Kyle S. Beckrich
Kyle S. Beckrich