**NONCONFIDENTIAL VERSION**

# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE GARY S. KATZMANN

| | |
|---|---|
| SENECA FOODS CORPORATION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>UNITED STATES, )<br>)<br>Defendant. )<br>) | Court No. 22-000243<br><br>**NONCONFIDENTIAL VERSION**<br><br>Confidential Information Deleted From Pages 4 and 13. |

### REPLY BRIEF IN SUPPORT OF PLAINTIFF'S RULE 56.1 MOTION FOR JUDGMENT ON THE AGENCY RECORD

*/s/ James M. Smith*
James M. Smith
Thomas Brugato
Kwan Woo (Kwan) Kim
Brock M. Mason
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com
tbrugato@cov.com
kkim@cov.com
bmason@cov.com

May 2, 2023                    *Counsel for Plaintiff Seneca Foods Corporation*

i

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ................................................................................... 1

II. ARGUMENT .................................................................................................................. 2

    A. Commerce's Denials Run Contrary to the Evidence. ........................................... 2

        1. USS Repeatedly Declined to Supply Spot or Contract Volumes at Any Relevant Time. ................................................................................... 3

        2. Commerce's Refusal to Consider USS's Material Misstatements Is Arbitrary and Capricious. ............................................................................. 6

    B. By Ignoring the Evidence, Commerce Failed to Consider Relevant Factors and to Adequately Explain its Denials. ................................................................. 8

    C. The APA and Commerce's Own Policies Require Consideration of USS's History of Consistent Unavailability. .................................................................. 9

    D. This Court Should Refrain from Remanding the March 2022 Requests Until It has Decided the Merits of the October 2021 and January 2022 Requests. .............................................................................................................. 12

    E. An Open Remand of the October 2021 and January 2022 Requests Would Be Futile. ............................................................................................................. 14

III. CONCLUSION ............................................................................................................ 15

# TABLE OF AUTHORITIES

                                                                                       **Page(s)**

**Cases**

*American Petroleum Inst. v. EPA*,
   706 F.3d 474 (D.C. Cir. 2013) .................................................................................................11

*Aqua Prods., Inc. v. Matal*,
   872 F.3d 1290 (Fed. Cir. 2017) ................................................................................................11

*Atl. Sugar, Ltd. v. United States*,
   511 F. Supp. 819 (Ct. Int'l Trade 1981) ..................................................................................14

*Bechtel v. FCC*,
   957 F.2d 873 (D.C. Cir. 1992) ........................................................................................... 10, 11

*Butte Cnty., Cal. v. Hogen*,
   613 F.3d 190 (D.C. Cir. 2010) .................................................................................................11

*City of Kansas City, Mo. v. Dep't of Hous. & Urban Dev.*,
   923 F.2d 188 (D.C. Cir. 1991) ...................................................................................................3

*Michigan v. EPA*,
   576 U.S. 743 (2015) ...................................................................................................................5

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 23 (1983) .....................................................................................................................3

*Nexteel Co., Ltd. v. United States*,
   28 F.4th 1226 (Fed. Cir. 2022) ................................................................................................14

*Nippon Steel Corp. v. United States*,
   458 F.3d 1345 (Fed. Cir. 2006) ................................................................................................14

*NLMK Pa., LLC v. United States*,
   558 F. Supp. 3d 1401 (Ct. Int'l Trade 2022) .............................................................................9

*NLMK Pa., LLC v. United States*,
   617 F. Supp. 3d 1316 (Ct. Int'l Trade 2023) ..................................................................... 12, 14

*Sea Shepherd N.Z. v. United States*,
   469 F. Supp. 3d 1330 (Ct. Int'l Trade 2020) ...........................................................................14

*SEC v. Chenery Corp.*,
   318 U.S. 80 (1943) .....................................................................................................................5

*SKF USA Inc. v. United States*,
   254 F.3d 1022 (Fed. Cir. 2001) ........................................................................................12

**Other Authorities**

15 C.F.R. § 705, Supp. 1(c)(6)(i) ..........................................................................................9

83 Fed. Reg. 11,625 (Mar. 8, 2018) ....................................................................................10

Section 232 Steel and Aluminum Tariff Exclusions Process, 85 Fed. Reg. 81,060
   (Dec. 14, 2020) ............................................................................................... 5, 9, 10

Commerce, *Seneca Rebuttal No. 47412 to USS Objection No. 96541*,
   https://232app.azurewebsites.net/Forms/ObjectionRebuttalItem/47412
   (indicating that USS's surrebuttal was posted on Dec. 12, 2021) ..........................................7

**NONCONFIDENTIAL VERSION**

## I. PRELIMINARY STATEMENT

Seneca Foods Corporation ("Seneca") has demonstrated that the evidence pointed only one way: United States Steel Corporation's ("USS") claims of availability were baseless. USS refused to supply Seneca for multiple years, including as it filed objections, and made repeated misstatements about its past availability. In light of that clear track record, USS's sudden claims of availability—contradicted by its own written statements, both to Seneca and to the government—should not have been credited. At a minimum, Commerce was required to engage with the clear evidence of consistent unavailability and provide a meaningful explanation as to why it nevertheless could deny Seneca's exclusion requests. But it failed to do so. Accordingly, the denials of Seneca's exclusion requests by the Department of Commerce ("Commerce" or the "Department") were arbitrary and capricious.

Commerce now attempts to distort the evidence while continuing to ignore basic facts in the record. For the October 2021 and January 2022 requests, Commerce claims that Seneca addressed only contract sales, not spot sales, and that Seneca did not provide evidence of current unavailability, only past unavailability. Both claims are incorrect. The evidence presented by Seneca demonstrated that USS had failed to provide *any* tin mill products—spot or contract—for *years*. And mere days after objecting to Seneca's October requests, USS again refused to supply Seneca with needed products via spot sales. Past or present, spot or contract, USS would not and did not supply Seneca. Moreover, USS's repeated misstatements about past sales to Seneca undermine its claim of sudden availability. The evidence cannot support the agency's decision that the requested volumes were available from USS, and Commerce's *post hoc* attempts to justify its denials are both incoherent and forbidden by basic principles of administrative law. In light of the

1

agency's failure to adequately consider the evidence or explain itself, Commerce's denials are arbitrary and capricious and must be set aside.

As for the Department's request for voluntary remand regarding the March 2022 requests, this Court should exercise its discretion and wait to remand these requests only after adjudicating the merits of Seneca's APA claims for the October 2021 and January 2022 requests. The Court's rulings on those requests will be highly probative for Commerce's reconsideration of the March 2022 requests, given the similar evidence.

Finally, this Court should remand the full set of requests with instructions that Commerce grant the requested exclusions—the record can sustain no other course of action. In the alternative, the Court should remand with a tight timeline for Commerce's proper treatment of these requests in line with the demands of the APA.

## II. ARGUMENT

### A. Commerce's Denials Run Contrary to the Evidence.

Commerce's denials—which rest exclusively on USS's sudden and unsubstantiated claims of prospective ability to provide spot sales—cannot be sustained. Both before the agency and in its opening brief, Seneca demonstrated that the weight of evidence pointed overwhelmingly in one direction: USS could not or would not supply Seneca with the requested volumes of tin mill products at the time of the underlying orders, at the time of Seneca's exclusion requests, or at any other relevant time. *See* Pl.'s Br. at 22–26. As explained in Seneca's brief: (1) Seneca certified and provided a contemporaneous email showing that at the time of the orders at issue in the October requests, USS confirmed it could not "supply any additional material in 2021 or beyond"; (2) Seneca provided confidential communications showing that at the time of the underlying order for the January request—and *after* USS's objections to the October requests—USS again declined to provide any sales of tin-free steel ("TFS") or electrolytic tinplate ("ETP") for 2022; (3) USS

conceded that it had not supplied Seneca since February 2019 despite repeated attempts by Seneca to purchase from USS; and (4) USS admitted it made material misstatements to the Department about its sales to Seneca—namely, claiming that there had been recent sales when in fact no supply had been made available to Seneca for years, despite Seneca's repeated requests. *See id.*

Commerce's attempt to justify its denials cannot be squared with the record. The evidence shows clearly that USS repeatedly declined to supply spot or contract volumes at any relevant time period, and USS's repeated misstatements make Commerce's denials all the more unjustified. USS had not supplied Seneca any tin mill products for years, refused repeated requests by Seneca to purchase any volumes (through both spot and contract sales), and misrepresented to Commerce that it had in fact supplied Seneca with volumes in the past two years. Under the APA, Commerce's decision to credit USS's claims of availability "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). It rests "on a factual premise that is flatly contradicted by the agency's own record." *City of Kansas City, Mo. v. Dep't of Hous. & Urban Dev.*, 923 F.2d 188, 194 (D.C. Cir. 1991). The agency has yet even to engage with its own record: incredibly, it still maintains—despite all the evidence—that "nothing contradicts the information certified by U.S. Steel." Def.'s Br. at 15 (internal quotation marks omitted). Commerce's denials of Seneca's October and January requests are arbitrary and capricious, in violation of the requirements of the APA.

> **1. USS Repeatedly Declined to Supply Spot or Contract Volumes at Any Relevant Time.**

Faced with this clear record of consistent unavailability of supply from USS for Seneca, Commerce makes two flawed arguments in an attempt to justify ignoring this evidence. First, drawing a distinction between spot and contract sales, Commerce claims that "Seneca's focus is

on contract volumes rather than spot sale volumes," Def.'s Br. at 14, and thus "Seneca offered no evidence that contradicted U.S. Steel's certified statements that it could immediately provide the requested products in sufficient quantity through spot sale*s*," *id*. at 16. Second, Commerce claims that Seneca's evidence showing that tin mill products were not available from USS "was based on representations made by the domestic industry *months prior* to when Seneca filed any exclusion requests." Def.'s Br. at 13. Commerce is incorrect on both counts.

Seneca provided Commerce with USS's own written denials of availability—including for spot sales—transmitted to Seneca a few days after USS had certified to Commerce that it could provide the needed volumes. Seneca documented this refusal in its rebuttals via a confidential [           ]. [                                    ] AR 043, 093, 142, 191, 240, 286. But with regard to spot sales, USS left open the possibility that if [                                    ] AR 043, 093, 142, 191, 240, 286. On [           ], days after USS's objections to the October requests,[1] Seneca inquired whether any such spot sales were available; USS responded: [

                                    ] AR 043, 093, 142, 191, 240, 286.

Despite claiming availability in its filings with Commerce just days prior, USS told Seneca it had [                    ] AR 043, 093, 142, 191, 240, 286. As Seneca explained to Commerce in its rebuttals, "given that rejection, it is unclear why USS is filing objections." AR 038, 088, 136, 185, 234; *see also* AR 282. "{B}y attempting to obtain the product from {USS}," Seneca had "determine{d} definitively whether {USS} {was} in fact able to provide the steel …

---

[1] USS's objections to the October requests were posted on Commerce's portal on various dates between November 26 and 29, 2021. *See* AR 019, 068, 118, 167, 216.

4

article in question." Section 232 Steel and Aluminum Tariff Exclusions Process, 85 Fed. Reg. 81,060, 81,065 (Dec. 14, 2020).

This failure to make spot volumes available even after filing objections continued the longstanding refusal by USS to sell to Seneca. USS failed to provide any spot or contract volumes at the time of the underlying orders or prior to the exclusion requests, despite repeated requests from Seneca. Before making any of the orders at issue in the October and January requests, Seneca confirmed with USS and other domestic manufacturers that they would not supply the needed volumes. Seneca certified that it made those purchases only after all domestic producers—including USS—"affirmatively declined to award Seneca" with the needed volumes. AR 020, 070, 119, 168, 217; *see also* AR 266. Seneca provided the Department with an email from November 2020 summarizing a conversation with USS, where USS declined to "offer{} *anything* now at any price" but promised to "contact {Seneca}" "if they have available production in any month." AR 041, 091, 140, 189, 238 (emphasis added).[2] Yet despite USS's admission that it was in regular contact with Seneca regarding potential sales, AR 048, 098, 147, 196, 245, "USS ha{d} not reached out to Seneca to commit *any* 2021 volume," AR 037, 087, 136, 185, 234. USS never disputed any of this in its submissions to Commerce.

---

[2] In its response, Commerce tries to cast doubt on this and other evidence, describing the November 2020 email in particular as an "*alleged* communication{} with U.S. Steel." Def.'s Br. at 15 (emphasis added). As with many of its arguments, this characterization by the Department disregards the record evidence. Not only were Seneca's submissions certified as accurate and complete subject to criminal liability, but the November email documenting USS's persistent unavailability was never challenged by USS. In fact, USS repeatedly conceded that it experienced "tin mill supply constraints/delays in 2020 and early 2021," the exact time frame for the November 2020 email. AR 046, 095, 144, 193, 242. More importantly, Commerce never challenged this evidence in its denials; its attempts to do so here violate "the foundational principle of administrative law that a court may uphold agency action only on the grounds that the agency invoked when it took the action." *Michigan v. EPA*, 576 U.S. 743, 758 (2015) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)).

There was, in other words, a years-long history of USS refusing to supply Seneca with needed tin mill products. USS admitted as much in its statements before the Department, indicating that it "ha{d} not supplied {Seneca} with tin mill products since February 2019, which is more than two years before submission of U. S. Steel's objections." AR 048, 098, 147, 196, 245. Indeed, USS even acknowledged that it had "regularly discussed tin mill product availability and sales with Seneca throughout 2019, 2020, and 2021," but tellingly did not claim to have offered to make any volumes available to Seneca—for contract or spot sales—in any of those years. AR 048, 098, 147, 196, 245. Yet only USS objected to Seneca's requests; two other U.S. tin mills, which unlike USS did in fact supply Seneca during the relevant time frame, took no issue with Seneca's attempts to obtain exclusions for needed volumes that it had to source from foreign suppliers. *See, e.g.*, AR 021–22.

Commerce was thus faced with written evidence—and USS's own concessions—that USS refused to supply *any* volumes (whether via spot or contract sales) at the time of the exclusion requests, at the time of the underlying orders, and at every other relevant time. When Seneca sought these exclusions, it had been years since USS provided it with any tin mill products, despite repeated attempts to source needed volumes. The Department ignored all of this, and its decision cannot be squared with the record.

### 2. Commerce's Refusal to Consider USS's Material Misstatements Is Arbitrary and Capricious.

Commerce's decision to credit USS's claims of availability is even more unjustified in light of USS's repeated, material misstatements. For the October requests, USS certified to the Department that it had provided tin mill products to Seneca during the two years prior to USS's objections. AR 029, 079, 128, 177, 226. After Seneca highlighted this falsehood, USS admitted "it ha{d} not supplied {Seneca} with tin mill products … {for} more than two years" before its

6

objections, and that "{c}ontradictory statements in each of {USS's} Objections were made in error." AR 048, 098, 147, 196, 245. USS provided no explanation for why that "error" was made. But nearly two months later, when objecting to the January request, USS *again* claimed to have supplied tin mill products to Seneca within the last two years. AR 275.[3] Seneca again called attention to this falsehood, AR 283, but USS *never* corrected it, *see* AR 291–92.

As with the evidence of unavailability, the Department tries to sidestep this issue by essentially ignoring it. It claims that USS's misstatements were "acknowledged and corrected" and that "Commerce did not rely on those misstatements as a basis for denying the requests." Def.'s Br. at 18. While USS did acknowledge its repeated misstatements in its surrebuttals to the October requests, it perpetuated those misstatements—without correction—for the January request.

More importantly, USS's repeated, certified misstatements go to the heart of its credibility that it would in fact be able to supply Seneca. Commerce's theory of why denial was appropriate hinged entirely on crediting USS's unsubstantiated claims of availability. *See* Def.'s Br. at 17 (claiming USS's certified statements and CBI "demonstrated that it had the capacity to immediately deliver the requested products"). Even if the Department's terse decision did not expressly "rely" on USS's misstatements, it gave no explanation of why USS's claims should be credited despite USS's repeated provision of false information.

Seneca produced more than enough evidence to demonstrate why USS's claims were implausible: USS had not supplied Seneca for years, had refused multiple attempts by Seneca to source needed volumes, and had even declined to provide spot sales *after* certifying availability

---

[3] USS's objection to the January request was posted on February 25, 2022, AR 265, over two months after admitting it had not in fact supplied Seneca since early 2019, *see* U.S. Department of Commerce, *Seneca Rebuttal No. 47412 to USS Objection No. 96541*, https://232app.azurewebsites.net/Forms/ObjectionRebuttalItem/47412 (indicating that USS's surrebuttal was posted on Dec. 12, 2021).

before the Department. Taken together with USS's repeated, certified (and for the January request, uncorrected) misstatements about its past availability, the evidence pointed in one direction—USS's claims of availability were baseless. Seneca made this point clearly to the Department: "Commerce cannot reasonably give weight to an objection from USS that belatedly, and far from credibly, claims the ability to make deliveries that USS has consistently declined." AR 282. Subsequent experience only proved that Seneca was correct: within days of Commerce's decisions that USS could provide "100 percent of the requested volume{s}" for the October requests, AR 004, 053, 103, 152, 201, USS again confirmed in writing that it would not supply Seneca with the needed volumes, *see* AR 332, 381.

> **B.     By Ignoring the Evidence, Commerce Failed to Consider Relevant Factors and to Adequately Explain its Denials.**

Commerce's attempts to sidestep crucial evidence have resulted in an obvious failure to "consider{} … the relevant factors" or to adequately explain itself. *State Farm*, 463 U.S. at 42. As explained above, Seneca provided clear evidence that USS's claims of availability were baseless. In addition to Seneca's own certified submissions and the undisputed facts about USS's history of unavailability and material misstatements, Seneca provided USS's own written denials of availability—spot or contract, past or present.

Given the clear evidence, Commerce's conclusory statements that it "evaluat{ed} … relevant submitted documentation" and "considered the evidence provided" are insufficient. *See, e.g.*, AR 003, 001; *see also* Def.'s Br. at 12–13. Its full analysis of USS's ability to supply the requested products simply accepted without explanation USS's implausible claim of available spot sales: "Based on the evidence submitted, nothing contradicts the information certified by U.S. Steel." AR 004, 053, 103, 152, 201; *see also* AR 250. The Department gave no explanation at all of why USS's claims should be believed. USS had already made repeated misstatements about its

8

commercial activities—some never corrected—and had a long history of unavailability. USS's own written statements to Seneca also contradicted its claims of available spot sales, and were made mere days after submitting its objections.

Commerce skipped over all of this, claiming falsely that Seneca addressed only contract sales. But ignoring evidence—including by distorting it—does not suffice. "Commerce {must} *explain* its determination, specifically … what fairly detracts from its conclusion." *NLMK Pa., LLC v. United States*, 558 F. Supp. 3d 1401, 1406 (Ct. Int'l Trade 2022) (emphasis added); *see also* Def.'s Br. at 18 (claiming "Seneca{} fail{ed} to cite any law in support of its proposition" that Commerce must consider the evidence contradicting USS's claims). In light of the facts established above, the Department's boilerplate denials cannot suffice.

C. The APA and Commerce's Own Policies Require Consideration of USS's History of Consistent Unavailability.

Even apart from its misstatements and post-objection refusals to deal, USS's sudden claim of availability is suspect after years of not supplying Seneca. Commerce claims that the Department's stated policies of considering past activity are inapplicable here and that USS's claims of possible future availability—standing alone—are sufficient. *See* Def.'s Br. at 17–19. But this cannot be squared with the Department's own statements, and if Commerce now insists on ignoring all evidence of past and current unavailability, then the entire exclusion process is arbitrary and capricious under the APA as applied to Seneca's requests.

*First*, under Commerce's stated policies, an objector's past unavailability matters. The exclusion process is designed to "allow{} the exclusion requester to document … past activity with {an} objector." 85 Fed. Reg. at 81,066. Even though Commerce's determination is whether a domestic manufacturer can "immediately" supply needed volumes, 15 C.F.R. § 705, Supp. 1(c)(6)(i), the Department considers an objector's commercial history to prevent abuse of the

9

exclusion process. Such abuse includes when an objector claims availability but then "refus{es} to fill orders." 85 Fed. Reg. at 81,066. On this score, Seneca demonstrated why USS's claims of availability should not be credited. USS had consistently refused—for years—to supply any volumes of tin mill products, including days after claiming availability before the Department. USS had consistently "refus{ed} to fill orders." *Id.*

In a remarkable and entirely *post hoc* defense, Commerce now responds that its policy of considering "past activity" is not implicated here because "Seneca … never placed an *order* with U.S. Steel that went unfilled." Def.'s Br. at 19 (emphasis added). Rather, USS simply refused to "*offer*" any tin mill products. *Id*. That is a distinction without a difference—and one that defies logic. Purchasing steel from USS requires that USS actually accept an order; Seneca cannot unilaterally "place{} an order" with USS in the same way that a consumer might order a product from an online retailer. As USS itself admitted to Commerce, Seneca repeatedly and consistently attempted to place orders with USS "throughout 2019, 2020, and 2021," all to no avail. AR 048, 098, 147, 196, 245.

Commerce's interpretation is not only illogical, it is entirely inconsistent with the President's core directive. The exclusion process is designed to "provide relief" from Section 232 tariffs when they are not "reasonably available" from domestic producers. Pres. Proc. No. 9705, 83 Fed. Reg. 11,625, 11,627 (Mar. 8, 2018). And the Department's policy of considering past behavior "implies a correlative duty to evaluate {that} polic{y} over time to ascertain whether {it} work{s}—that is, whether {it} actually produce{s} the benefits the {agency} originally predicted {it} would." *Bechtel v. FCC*, 957 F.2d 873, 881 (D.C. Cir. 1992). Yet in this case, Commerce continues to endorse USS's repeated, yet entirely unsubstantiated claims of availability, providing no relief to Seneca despite clear evidence that the requested volumes were not and are not

"reasonably available" from domestic producers. *See* Def.'s Br. at 16. Commerce's answer, then, has "failed to consider an important aspect of the problem." *State Farm*, 463 U.S. at 43.

Even apart from its incoherence, Commerce's newly minted interpretation has no relevance here. The Department never raised this point in its denials of Seneca's exclusion requests, and it cannot do so now, for "{t}he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Chenery*, 318 U.S. at 87.

*Second*, if the Department's position instead is that the exclusion process is *solely* prospective, then the entire Section 232 product exclusion system as administered by Commerce is arbitrary and capricious, for the APA requires Commerce to consider an objector's history of unavailability. A prospective assessment of an objector's availability requires considering the objector's credibility and its track record of supplying the relevant products. If, as here, an objector consistently refuses to supply a given product over a course of years, despite continuing outreach from the requester, that evidence undermines any sudden claim of future availability. Ignoring that evidence would be unreasonable. *See Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) ("{T}he agency must take account of all the evidence of record, including that which detracts from the conclusion the agency ultimately reaches."); *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("{A}n agency cannot ignore evidence contradicting its position.").

Under the APA, the "reasonableness" of a prospective approach "necessarily invites reflection" on past applications, and a method that ignores past unavailability becomes arbitrary "in the face of experience." *American Petroleum Inst. v. EPA*, 706 F.3d 474, 477 (D.C. Cir. 2013). More generally, "changes in factual … circumstances may impose upon {an} agency an obligation to reconsider settled policy," *Bechtel*, 957 F.2d at 881, especially when "a significant factual predicate of a prior decision has been removed," *id.* (cleaned up). Turning a blind eye to an

11

objector's history and credibility thus renders the entire exclusion process arbitrary. Here, for example, Seneca demonstrated that USS's claims of availability were not credible and were contradicted by USS's own contemporaneous written communications. USS had not supplied Seneca any tin mill products for years, since February 2019, yet Commerce for some reason claims—without citation or record support—that USS had "brought its capacity back online following the COVID-19 pandemic." Def.'s Br. at 19. Commerce has consistently refused to engage with overwhelming evidence of unavailability, even claiming that "nothing contradicts" USS's assertions. AR 004, 053, 103, 152, 201; *see also* AR 250.

In short, under the Department's own policies, USS's claims should have been foreclosed. But if the Department refuses to consider clear evidence of past and current unavailability under the auspices of a "prospective only" approach, then the exclusion process itself is arbitrary and capricious. Either way, Commerce must consider USS's credibility and history of unavailability. This Court has already recognized this point in the Section 232 context. *See NLMK Pa., LLC v. United States*, 617 F. Supp. 3d 1316, 1327 (Ct. Int'l Trade 2023) (evidence that objector had not supplied product for years was "contrary evidence" that "Commerce must address"). The Court should reaffirm it here.

> D. **This Court Should Refrain from Remanding the March 2022 Requests Until It has Decided the Merits of the October 2021 and January 2022 Requests.**

Without confessing error, Commerce requests a voluntary remand to "reconsider" Seneca's March 2022 requests "in light of the issues raised in Seneca's brief." Def.'s Br. at 22. The Court "has discretion over whether to remand." *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001). It should exercise that discretion and wait to remand the March 2022 requests until the Court has decided Seneca's APA claims for the October 2021 and January 2022 requests.

12

The Court's adjudication of those earlier requests will be highly relevant to Commerce's evaluation of the March 2022 requests.

Seneca's March 2022 exclusion requests present many of the same issues as its October 2021 and January 2022 exclusion requests. *See* Pl.'s Br. at 31–33. As with those earlier requests, the March requests covered orders made by Seneca only after USS affirmatively declined to supply the needed volumes. *See* AR 316, 318, 361, 363; *see also* AR 332, 381. Similar to the October 2021 requests, USS confirmed its inability to supply the requested volumes within weeks of filing its objections to the March 2022 requests.[4] *See* 325–26, 370–71. USS belatedly offered Seneca [          ] of TFS for delivery in [      ]. AR 332, 381. This represented less than [     ] of the roughly [    ] tons of TFS Seneca requested from USS [      ] and less than [     ] of the roughly 3,000 tons of TFS for which Seneca was seeking an exclusion. AR 306, 332. Delivery, moreover, was delayed until long after Seneca's foreign supplier. *See* AR 332. USS likewise offered only a small amount of ETP with delivery after the bulk of Seneca's imports were due to arrive. AR 330, 379. As with earlier requests, the evidence showed clearly that USS could *not* supply the needed tin mill products at the time Seneca placed the orders, at the time of the scheduled deliveries, or at the time of Seneca's March 2022 exclusion requests.

Accordingly, the Court's resolution of the disputed issues regarding the October 2021 and January 2022 exclusion requests will be highly relevant to how Commerce addresses the March 2022 requests on remand.

---

[4] For the October 2021 requests (as discussed above), USS again declined to supply Seneca days *after* objecting and claiming availability. For the March 2022 requests, USS told Seneca it could not supply the needed volumes shortly *before* objecting and claiming availability. *See* AR 336, 385.

13

This Court should therefore wait to remand the decisions on the March 2022 requests until it has adjudicated the APA challenges to the October 2021 and January 2022 requests. At that time, the Court should remand with instructions that the agency complete the remand in a timely manner and in accord with the Court's opinion. For "{i}t is better to defer consideration of remand to a time when it is unavoidable and can be accomplished with complete understanding of its necessity, in coordination with other aspects of the action, and with precise instructions." *Atl. Sugar, Ltd. v. United States*, 511 F. Supp. 819, 821 (Ct. Int'l Trade 1981) (delaying a decision on voluntary remand until after full briefing on the merits). Additionally, to ensure a prompt decision on remand, the Court should "retain{} jurisdiction over this case and the results of the voluntary remand," and impose a "tight deadline" by which Commerce must file its remand determination. *Sea Shepherd N.Z. v. United States*, 469 F. Supp. 3d 1330, 1337 (Ct. Int'l Trade 2020).

### E. An Open Remand of the October 2021 and January 2022 Requests Would Be Futile.

As the Federal Circuit recently confirmed, "an open-ended remand may not be required if it would be futile, for example because the record supports only one outcome." *Nexteel Co., Ltd. v. United States*, 28 F.4th 1226, 1238 (Fed. Cir. 2022) (cleaned up). When the record supports only one outcome, a remand with instructions or an outright reversal of the agency's determination is appropriate. *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1359 (Fed. Cir. 2006); *see also* Pl.'s Br. at 36–37 (collecting cases where remand was inappropriate). Commerce is therefore incorrect that this Court's recent decision in *NLMK Pa., LLC v. United States* requires an open remand. 617 F. Supp. 3d 1316 (Ct. Int'l Trade Jan 23, 2023). Unlike the record in *NLMK*, in this case Seneca has demonstrated that "Commerce could reach only one possible conclusion from the record." *Id.* at 1328; *see also* Def.'s Br. at 24.

Accordingly, this Court should order the Department to grant the denied exclusions. In the alternative, it should remand with instructions that Commerce properly consider all the evidence and promptly complete the remand in accordance with the APA.

## III. CONCLUSION

For these reasons, Seneca asks the Court to (i) grant its motion setting aside the Department's decisions denying Seneca's requests; (ii) declare that the Department's denials were arbitrary and capricious or otherwise unlawful under the APA; (iii) declare that Seneca was entitled to the requested exclusions from Section 232 tariffs; (iv) instruct the Department to grant the denied exclusions, enabling U.S. Customs and Border Protection to refund the Section 232 tariffs paid on import entries of Seneca's purchases; and (v) provide any other relief the Court deems just and proper. Alternatively, Seneca asks the court to remand the matter to the Department of Commerce for proper treatment and consideration of the requests in accordance with the requirements of the APA and subject to a specified deadline.

Respectfully Submitted,

*/s/ James M. Smith*
James M. Smith
Thomas Brugato
Kwan Woo (Kwan) Kim
Brock M. Mason
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com
tbrugato@cov.com
kkim@cov.com
bmason@cov.com

May 2, 2023                                         *Counsel for Plaintiff Seneca Foods Corporation*

**NONCONFIDENTIAL VERSION**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chambers Procedure 2(B)(2), the undersigned certifies that Plaintiff Seneca Foods Corporation's Reply Brief in Support of Plaintiff's Rule 56.1 Motion for Judgment on the Agency Record contains 4,770 words as computed by Covington & Burling's word processing system, excluding those portions that do not count toward the word limitation, and thus complies with the Court's Chambers Procedures.

*/s/ James M. Smith*
James M. Smith
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com

May 2, 2023                               *Counsel for Plaintiff Seneca Foods Corporation*