Slip Op. 23-152

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SENECA FOODS CORP., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Gary S. Katzmann, Judge <br> Court No. 22-00243 |

### OPINION AND ORDER

[ All eight of Commerce's denials are remanded for further explanation or reconsideration. ]

Dated: <u>October 18, 2023</u>

<u>James M. Smith</u>, Covington & Burling LLP, of Washington, D.C., argued for Plaintiff Seneca Foods Corp.  With him on the briefs were <u>Thomas Brugato</u>, <u>Kwan Woo Kim</u>, and <u>Brock M. Mason</u>.

<u>Kyle S. Beckrich</u>, Trial Attorney, U.S. Department of Justice, Washington, D.C., argued for Defendant United States.  With him on the briefs were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.

Katzmann, Judge:  This case arises from an agency's true-as-steel obligation to review the entire record and to sufficiently explain its determinations for judicial review and subsequent remedy.  Claiming that domestic steel producers are unable to provide it with sufficient tin mill products consisting of steel in order to manufacture cans, Plaintiff Seneca Foods Corporation ("Seneca"), the nation's largest vegetable canner and the last domestic food company that still makes its own cans, challenges eight decisions by the U.S. Department of Commerce ("Commerce") denying each of Seneca's requests for exclusion from steel tariffs, known as "national security" tariffs, imposed on imports from foreign producers of steel under Section 232

of the Trade Expansion Act of 1962, 19 U.S.C. § 1862.  See Compl. ¶¶ 7–8, 95–105, Aug. 19,

2022, ECF No. 6; Pl.'s Mot. for J. on Agency R. at 1, Feb. 28, 2023, ECF No. 31 ("Pl.'s Br.").[1]

In its motion for judgment on the agency record, Seneca requests that the court (1) enter judgment

that all eight of Commerce's denials were arbitrary and capricious or otherwise unlawful in

violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, (2) declare that Plaintiff

was entitled to the requested exclusions, or (3) in the alternative, remand the matter for

reconsideration.  Commerce opposes Seneca's motion as to six of the exclusion requests—the

October 2021 and January 2022 Requests—and asks the court to remand the two March 2022

Requests for further consideration.  Each denial relies on a separate administrative record and is

reviewed independently.

        First, the court concludes that Commerce's denials of the October 2021 and January 2022

Requests were arbitrary and capricious for their failure to consider and address record evidence

---

[1] Of the eight requests filed by Seneca, five requests, filed in October 2021, were denied in April 2022.  See Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257423 (Apr. 9, 2022), P.R. 1; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257428 (Apr. 9, 2022), P.R. 50; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257709 (Apr. 9, 2022), P.R. 100; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257709 (Apr. 9, 2022), P.R. 149; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 257712 (Apr. 9, 2022), P.R. 198 (together, the "October 2021 Requests").

One request, filed in January 2022, was denied in April 2022.  Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 275504 (Apr. 30, 2022), P.R. 247 (the "January 2022 Request").

The final two requests, filed in March 2022, were denied in July 2022.  See Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 283368 (July 9, 2022), P.R. 293; Bureau of Indus. & Sec., Dep't of Com., Steel Section 232 Remedy Exclusion Request, No. 283369 (July 9, 2022), P.R. 342 (together, the "March 2022 Requests").

that ran counter to Commerce's stated reasoning.  But because the record does not compel a grant

of the exclusion requests, the denials are remanded to Commerce.  Second, the denials of the March

2022 Requests are remanded, as sought by Commerce, without reaching the question of error

specific to those requests.   All eight denials are therefore remanded to Commerce for

reconsideration consistent with this opinion.

## BACKGROUND

### I.     *Legal Background*

Section 232 enables the President to impose tariffs on certain imported goods when the

Secretary of Commerce determines that the products in question are brought into the country in

"such quantities or under such circumstances as to threaten or impair the national security."  19

U.S.C. § 1862(c)(1)(A).  Presidential Proclamation 9705, issued in March 2018, invoked Section

232 to impose a 25 percent tariff on imports of specific steel articles from all countries except

Canada and Mexico.  See Adjusting Imports of Steel into the United States, Pres. Proc. No. 9705,

83 Fed. Reg. 11625 (Mar. 8, 2018).

The exclusion of a particular steel article from the steel tariffs was possible on one of two

bases.  To justify relief, Commerce was required to determine either (1) that the article was not

"produced in the United States in a sufficient and reasonably available amount or of a satisfactory

quality" or (2) that "specific national security considerations" justified the exclusion of the article.

Id. at 11627.  "Such relief shall be provided for a steel article only after a request for exclusion is

made by a directly affected party located in the United States."  Id.  Commerce accordingly issued

rules detailing the procedure for its review of exclusion requests.   See Requirements for

Submissions Requesting Exclusions From the Remedies Instituted in Presidential Proclamations

<u>Adjusting Imports of Steel Into the United States and Adjusting Imports of Aluminum Into the</u>

<u>United States; and the Filing of Objections to Submitted Exclusion Requests for Steel and</u>

<u>Aluminum</u>, 15 C.F.R. pt. 705, supp. 1 (Dep't Com. Dec. 14, 2020).

The process begins with the filing of an exclusion request by a "directly affected individual[] or organization[] located in the United States." <u>Id.</u> pt. 705, supp. 1(c)(1). The request must clearly identify and establish one of the two bases for exclusion: either (1) that the article "is not produced in the United States in a sufficient, reasonably available amount, and of a satisfactory quality," or (2) that "specific national security considerations" justify the exclusion of the article. <u>Id.</u> pt. 705, supp. 1(c)(5)(i). Commerce further defines the criteria for exclusion:

- An article "[n]ot produced in the United States in a sufficient and reasonably available amount" means that the article is not available "immediately" in the United States to meet the requester's specified business activities, with "immediately" defined as eight weeks or, if not possible, a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier. <u>Id.</u> pt. 705, supp. 1(c)(6)(i).

- An article "not produced in the United States in a satisfactory quality" means that no domestic "substitute product" for the article exists; a substitute product "means that the steel or aluminum being produced by an objector can meet 'immediately' . . . the quality (e.g., industry specs or internal company quality controls or standards), regulatory, or testing standards, in order for the U.S.-produced steel to be used in that business activity in the United States by that end user." <u>Id.</u> pt. 705, supp. 1(c)(6)(ii).

- "The exclusion review criterion 'or for specific national security considerations' is intended to allow the U.S. Department of Commerce, in consultation with other parts of the U.S. Government as warranted, to make determinations whether a particular exclusion request should be approved based on specific national security considerations." <u>Id.</u> pt. 705, supp. 1(c)(6)(iii).

Following the exclusion request, a domestic steel producer can file an objection that refutes "the specific basis identified in, and the support provided for, the submitted exclusion request." <u>Id.</u> pt. 705, supp. 1(d)(4). In its objection, the domestic steel producer must "identify how it will be able to produce and deliver the quantity of steel . . . needed" as part of its obligation to "clearly identify,

and provide support for, its opposition to the proposed exclusion." Id. pt. 705, supp. 1(d)(4).  The "burden is on that supplier to demonstrate that the exclusion should be denied because of failure to meet the specified criteria."  Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum, 83 Fed. Reg. 46026, 46029 (Dep't Com. Sept. 11, 2018).  The requester and objector may file a rebuttal and surrebuttal, respectively.  15 C.F.R. pt. 705, supp. 1(f)–(g).

All filings in the process—from the exclusion request to the surrebuttal—are submitted via online forms made available through Commerce's "232 Exclusions Portal."  Id. pt. 705, supp. 1(d)–(h).  It is further "incumbent on both the exclusion requester, and objecting producers, to provide supplemental evidence supporting their claimed delivery times."  Id. pt. 705, supp. 1(d)(4).  Such additional evidence may include confidential or proprietary business information ("CBI").  15 C.F.R. pt. 705, supp. 1(b)(5)(iii).  Moreover, each online form requires the filer to certify that the information submitted is "complete and correct to the best of [the filer's] knowledge."  See P.R. 18, 29–30, 35, 48.[2]

Commerce's Bureau of Industry and Security ("BIS") then evaluates all filings to determine whether the steel article meets one of the two bases for exclusion.  To determine whether the potentially excluded steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, BIS solicits a memorandum from the International

---

[2] P.R. refers to the Public Record, which contains the eight public administrative records relevant to this case.  See Pub. Admin. R., December 2, 2022, ECF No. 25.  Seneca has also made public certain information that it had treated as business proprietary given the "passage of time."  Pl.'s Resps. to Letter at 4 n.1, July 7, 2023, ECF No. 45.  Citations to this now-public information, which does not appear in the Public Record as filed, refer to the Confidential Record ("C.R.").  See Confidential Admin. R., Dec. 2, 2022, ECF No. 24.

Trade Administration ("ITA") that makes factual findings and recommends granting or denying the exclusion request in full or in part.  See P.R. 1.  BIS then issues a determination with an explanation that is "responsive to any of the objection(s), rebuttal(s) and surrebuttal(s) for that submitted exclusion request."  15 C.F.R. pt. 705, supp. 1(h)(2)(i).  In so doing, BIS's determination may accept and adopt the ITA's recommended findings if the BIS finds that there are no overriding national security concerns that compel a grant of the exclusion request.  See P.R. 1.

If the objector thereafter refuses to fulfill the requester's orders of the steel article in a sufficient and reasonably available amount or in a satisfactory quality, "the requester may submit a new request with documentation evidencing this refusal."  Section 232 Steel and Aluminum Tariff Exclusions Process: Interim Final Rule, 85 Fed. Reg. 81060, 81065 (Dep't Com. Dec. 14, 2020) ("Interim Final Rule").  That new exclusion request restarts the entire process described above.  If the objector continues to contest the new exclusion request, Commerce allows "the exclusion requester to document in the rebuttal the past activity with that objector."  Id.

## II.     Factual Background

As has been noted, Plaintiff Seneca is a U.S.-based company in the business of processing and canning fruits and vegetables.  See P.R. 20.  As the nation's largest vegetable canner and the last domestic food company that still makes its own cans, Seneca requires tin mill products consisting of steel to manufacture the cans.  See P.R. 20.  Citing domestic supply constraints and high demand, Seneca began in 2014 to import a portion of its required tin mill products from abroad.  P.R. 21.  In 2021, Seneca repeatedly contacted domestic suppliers to inquire about their availability of tin mill products but was only able to secure a limited volume that was below its needs.  See P.R. 21–22.  In particular, Seneca stated that U.S. Steel, a domestic producer of steel, was unwilling to give a quote for tin mill products due to its inability to supply any additional

material in 2021 and beyond.  P.R. 22.  Faced with such domestic supply shortages in recent years,

Seneca continued to purchase steel from foreign suppliers to meet its needs.  P.R. 22.

Seeking to exempt its purchases from Section 232 tariffs, Seneca filed a total of eight

exclusion requests with Commerce on the basis of insufficient U.S. availability of tin mill products.

See P.R. 10, 59, 109, 158, 207, 256, 306, 351.  The five October 2021 Requests were denied on

April 9, 2022; the January 2022 Request was denied on April 30, 2022; and the March 2022

Requests were denied on July 9, 2022.  Compl. ¶ 61; see also supra note 1.  The requests covered

imports of tin-free steel ("TFS") from Japan and China, as well as prime electrolytic tinplate

("ETP") from China and Turkey.  See Pl.'s Br. at 5.  U.S. Steel Corporation ("USS"), a domestic

producer of steel,  objected to each of the eight exclusion requests.  Compl. ¶ 11.  Seneca and USS

also filed rebuttals, surrebuttals, and additional evidence for all eight exclusion requests.  Id. ¶¶

63–94.

The chart below summarizes each request and accompanying denial, and the following

sections describe the requests and subsequent agency decisions in detail.

| Seneca's Exclusion Requests | | | | |
|---|---|---|---|---|
| **Shorthand** | **Number** | **Date Filed** | **Date Denied** | **Status in This Litigation** |
| October 2021 & January 2022 Requests | 257423 | Oct. 20, 2021 | Apr. 9, 2022 | Contested |
| | 257428 | Oct. 20, 2021 | Apr. 9, 2022 | Contested |
| | 257708 | Oct. 21, 2021 | Apr. 9, 2022 | Contested |
| | 257709 | Oct. 21, 2021 | Apr. 9, 2022 | Contested |
| | 257712 | Oct. 21, 2021 | Apr. 9, 2022 | Contested |
| | 275504 | Jan. 23, 2022 | Apr. 30, 2022 | Contested |
| March 2022 Requests | 283368 | Mar. 15, 2022 | July 9, 2022 | Remand Requested by Commerce |
| | 283369 | Mar. 15, 2022 | July 9, 2022 | Remand Requested by Commerce |

### A.      *October 2021 and January 2022 Requests*

In the October 2021 Requests, Seneca submitted a letter with the initial exclusion requests that described the domestic shortages of the goods that it had imported.  The letter recounted Seneca's attempts to secure supplies from domestic producers, including USS, prior to placing orders with importers.  See P.R. 20.[3]  USS filed an objection, stating in its online form that USS could supply 100 percent of the requested quantity of tin mill products within a timeframe shorter than that of Seneca's foreign suppliers.  P.R. 28.  USS also stated that it had supplied Seneca with tin mill products within the two years prior to the filing.  P.R. 29.

Seneca rebutted USS's statements by submitting a letter and two email exhibits.  Seneca's letter first emphasized that Seneca had placed purchase orders with foreign suppliers on November 20, 2020, April 22, 2021, and May 3, 2021, only after it had confirmed that no domestic producers were able to supply its requested volumes during 2021.  P.R. 37.  Corroborating its efforts, Seneca attached an email, dated November 13, 2020, from its Vice President of Strategic Sourcing to other Seneca employees.  P.R. 41.  The email, labeled "USS Update" and documenting a phone call with USS, states: "They are not offering anything now at any price," and "They say if they have available production in any month, they will contact us and see if we have interest.  They just don't want to commit to anything right now."  P.R. 36, 41.  Seneca's letter then stated that in the time period between USS's objection and Seneca's rebuttal filing, Seneca had engaged USS over email for volumes to be delivered in 2022; once again, USS had purportedly offered nothing.  P.R. 37–

---

[3] The records and Commerce's denials of each of the October 2021 Requests are almost identical in relevant part.  To avoid citations to five different records with each reference to the October 2021 Requests, the court cites the page in the record for the October 2021 Request that was filed first, numbered 257423.

38.  The second exhibit, an email chain between Seneca's Vice President of Strategic Sourcing

and a USS account manager from November 29–30, 2023, reads in relevant part:

> SENECA:     When we talked a couple months ago, you advised USS has no
>             tinplate or TFS to offer us for 2022.  You did say that if your
>             production efficiencies are good, some availability may free up later
>             in the year.  I understood that was kind of a long shot.
>
>             Has anything changed on the availability of ETP or TFS?
>
> USS:        Right now for Feb I don't have anything as of yet, if that changes
>             I'll let you know.

C.R. 43; see also supra note 2 (explaining that Seneca made this email public).  Among other

arguments, Seneca also stressed that USS's statement that it had supplied materials to Seneca

within the preceding two years was plainly false.  P.R. 38.

In its surrebuttal, USS emphasized that "Section 232 exclusion requests are prospective,

not retrospective, based on current availability," and maintained that it could supply Seneca with

the requested tin mill products through spot sales rather than contract sales.[4]  P.R. 45–46.  USS

explained that while it had not been able to supply products throughout 2020 and much of 2021

due to the Covid-19 pandemic and other economic shocks, it could nonetheless deliver the product

immediately at the time of filing the objection.  P.R. 45–46.  USS also included a letter containing

CBI to substantiate its claim that Seneca's tin mill products were immediately available.  P.R. 48–

---

[4] Spot sales and contract sales are different "methods of contracting" between purchasers and
suppliers.  See, e.g., Uruguay Round Agreements Act, Statement of Administrative Action, H.R.
Doc. No. 103-316, at 887 (1994).  In the context of this case, a spot sale is a "[a] contract to buy
or sell a . . . commodity . . . for immediate payment and delivery on a specified date."  Spot
Contract, Black's Law Dictionary (11th ed. 2019).  By contrast, a contractual sale is a contract to
purchase and deliver the commodity on a repeated basis over a certain period of time, which may
be annual or shorter-term.  See, e.g., Tin- and Chromium-Coated Steel Sheet from Japan at 15,
Inv. No. 731-TA-860 (Third Review), USITC Pub. 4795 (June 2018).

49.  The letter detailed USS's facilities' combined capacity to produce tin mill products, which exceeded Seneca's demand, and the production and delivery lead times for Seneca's requested products, which was shorter than those of Seneca's foreign suppliers.  P.R. 48–49.  USS also clarified that it had last supplied Seneca with tin mill products in February 2019, which was more than two years before USS's objection was filed; its contradictory statements in the objection were made in error.  P.R. 48.

The filings in the January 2022 Request proceeded in a similar manner but with a few notable differences.  After domestic producers allegedly declined to offer any tin mill products in late 2021, Seneca turned to importers to secure needed materials and filed an exclusion request.  P.R. 269–70.  USS objected and stated that it could timely meet 100 percent of Seneca's demand.  P.R. 279.  USS once again indicated that it had supplied Seneca with tin mill products within the preceding two years.  P.R. 280.  In the rebuttal, Seneca submitted a letter similar to the letter it had submitted in the October 2021 Requests and included only the second email from November 2021.  P.R. 291.  USS in its surrebuttal reiterated its ability to immediately meet demand but did not mention the distinction between spot and contract sales in the online form, as it had done in the surrebuttals to the October 2021 Requests.  See P.R. 287–90.  Instead, in its attached letter supplementing the record with CBI, USS stated only once that its "relevant tin mill facilities currently have available capacity to supply spot shipments."  P.R. 291.  Also unlike in the October 2021 Requests, USS did not correct its misstatement on the record that it had supplied Seneca with tin mill products within the preceding two years.  See P.R. 291–92.

Commerce denied the October 2021 and January 2022 Requests in April 2022.  In all six instances, BIS adopted ITA's factual conclusions and recommendations to deny the exclusion

requests.  P.R. 1, 247.  The ITA memoranda found that USS's tin mill products would be identical

to the articles subject to the exclusion request, P.R. 4, 250, and could be timely delivered, P.R. 5,

251.  As for USS's ability to produce Seneca's requested quantity, Commerce concluded that

nothing in the "request, rebuttal, or surrebuttal, including attachments, provide[d] evidence to

contradict the objector's claims" across all six of the requests.  P.R. 4, 250.  The memoranda for

the October 2021 requests further elaborated:

> U.S. Steel can produce 100 percent of the requested volume.  As such, U.S. Steel
> meets the quantity criterion. . . . Based on the evidence submitted, nothing
> contradicts the information certified by U.S. Steel in its objection submission.
> Seneca states in its rebuttal, "Contrary to its claims, USS has been unwilling to
> commit to any contractual volume thus far, most recently in November 2021." U.S.
> Steel states in its surrebuttal that it can provide the requested TFS as spot sales
> rather than contract volumes.  This does not impact U.S. Steel's ability to supply
> the requested quantity.

P.R. 4.  Commerce's denial of the January 2022 Request, however, differed slightly in why the

quantity criterion had not been met:

> U.S. Steel can produce 100 percent of the requested volume.  As such, U.S. Steel
> meets the quantity criterion.  ITA notes that Seneca states in its rebuttal, ". . . in
> November 2021 USS affirmatively declined to supply the very same volume that
> is at issue in this request."  Seneca also submitted confidential business information
> with its rebuttal.  Nothing in the information provided contradicts U.S. Steel's
> certified statements in its objection and in its surrebuttal that it can currently
> manufacture 100% of the requested quantity.

P.R. 250.

### B.  March 2022 Requests

Seneca filed two more exclusion requests for tin mill products in March 2022, to which

USS also filed objections.  P.R. 304, 349.[5]  A rebuttal and surrebuttal followed.  P.R. 316, 338.

---

[5] The records and Commerce's denials of each of the March 2022 Requests are almost identical in
relevant part.  To avoid citations to two different records with each reference to the March 2022

Seneca placed on the record the same email chain from November 2022, as well as later communications that remain confidential.  C.R. 338, 340–41.  Similar to the surrebuttal in the January 2022 Request, USS reiterated its capacity to deliver Seneca's volume and mentioned only once in its attached letter that volume was available in the form of spot sales.  P.R. 337.

Commerce also denied these requests but did not provide a complete analysis as to any of the quantity, quality, and timeliness criteria.  The ITA memoranda, adopted by BIS in its denials, stated without further elaboration that ITA was "unable to provide a complete analysis" as to the quantity criterion "due to an issue with the request[s]."  P.R. 296.  ITA's subject-matter expert also "determined there is insufficient technical information available" to evaluate the quality criterion.  P.R. 296.  As for the timeliness criterion, ITA concluded that the CBI in Seneca's rebuttal contained "conflicts with the delivery information in this exclusion request," and that ITA was therefore "unable to evaluate this exclusion request."  P.R. 297.

### III.   Procedural History

Seneca timely filed this action against Defendant the United States ("the Government") on August 19, 2022.  See Compl.  USS moved to intervene in the instant action under USCIT Rule 24, see Mot. to Intervene as Def.-Inter., Oct. 5, 2022, ECF No. 11, which the court denied, see Seneca Foods Corp. v. United States, 46 CIT __, 607 F. Supp. 3d 1295 (2022), ECF No. 26.

On February 28, 2023, Seneca filed a motion for judgment on the agency record under USCIT Rule 56.1.  See Pl.'s Br.  Defendant filed a response on April 11, 2022, see Def.'s Br. in Opp'n to Pl.'s Mot. for J. on the Agency R., Apr. 11, 2023, ECF No. 33 ("Def.'s Br."), to which

_____

Requests, the court cites the page in the record for the March 2022 Request that was filed first, numbered 283368.  See also supra note 3 (applying the same practice to the October 2021 Requests).

Plaintiff filed a reply on May 2, 2023, <u>see</u> Pl.'s Reply Br. in Supp. of Mot. for J. on Agency R.,

May 2, 2023, ECF No. 36 ("Pl.'s Reply").  The court issued questions in advance of oral argument,

<u>see</u> Letter re: Qs. for Oral Arg., June 23, 2023, ECF No. 42, to which the parties filed responses,

<u>see</u> Pl.'s Resps. to Letter; Def.'s Resp. to the Ct.'s Qs. for Oral Arg., July 7, 2023, ECF No. 44.

The court invited parties to file submissions after oral argument on July 11, 2023, <u>see</u> Oral Arg.,

July 11, 2023, ECF No. 46, and both parties made such submissions, <u>see</u> Pl.'s Post-Arg. Subm.,

July 21, 2023, ECF No. 49; Def.'s Post-Arg. Subm., July 21, 2023, ECF No. 48.  With briefing in

hand, the court turns to the merits.

## DISCUSSION

Jurisdiction lies under 28 U.S.C. § 1581(i)(2), which authorizes the Court of International

Trade to hear civil actions arising out of federal laws providing for "tariffs, duties, fees, or other

taxes on the importation of merchandise for reasons other than the raising of revenue."  Where

jurisdiction exists under § 1581(i), this court must apply "the standard of review set forth by the

Administrative Procedure Act and will 'hold unlawful and set aside [agency] action, findings, and

conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in

accordance with law.'"  <u>Canadian Lumber Trade All. v. United States</u>, 517 F.3d 1319, 1331 (Fed.

Cir. 2008) (quoting 5 U.S.C. § 706(2)).

Agency action is arbitrary and capricious when the agency has "relied on factors which

Congress has not intended it to consider, entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the

agency," or made a decision "so implausible that it could not be ascribed to a difference in view

or the product of agency expertise."  <u>Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.</u>

Auto. Ins. Co., 463 U.S. 29, 43 (1983); see also NLMK Pa., LLC v. United States, 47 CIT __, __,

617 F. Supp 3d 1316, 1320 (2023).  Because arbitrary and capricious review ensures "that agencies

have engaged in reasoned decisionmaking," Judulang v. Holder, 565 U.S. 42, 53 (2011), agencies

must "examine the relevant data and articulate a satisfactory explanation for [their] action," State

Farm, 463 U.S. at 43.  The record supporting an agency's decision must ultimately support a

"rational connection between the facts found and the choice made."  Burlington Truck Lines, Inc.

v. United States, 371 U.S. 156, 168 (1962).  Moreover, arbitrary and capricious review is a

"narrow" inquiry.  F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009).  In reviewing

agency action, the court may not reweigh evidence or substitute the agency's reasoned

decisionmaking with its own reasoning.  See Nippon Steel Corp. v. Int'l Trade Comm'n, 345 F.3d

1379, 1381–82 (Fed. Cir. 2003); In re Section 301 Cases, 47 CIT __, __, 628 F. Supp. 3d 1235,

1248 (2023) (explaining that agency action cannot be overturned on the basis of "mere

disagreement").

## I.      *Commerce's Denials of the October 2021 and January 2022 Requests Were Arbitrary and Capricious and Are Remanded*

Plaintiff argues that Commerce's denials of the October 2021 and January 2022 Requests

were arbitrary and capricious for three reasons: (1) the denials failed to address evidence on the

record that contradicted the agency's findings; (2) the record evidence compels the contrary

outcome of granting the exclusion requests; and (3) Commerce's procedure for considering

Section 232 exclusion requests is itself arbitrary and capricious, as applied and facially.  Pl.'s Br.

at 22–28; Pl.'s Reply at 2–11.  Plaintiffs also contend that an open remand would be futile and

instead request a remand with instructions or directed outcome as the appropriate remedy.  See

Pl.'s Br. at 37–39; Pl.'s Reply at 14–15.

The court concludes that Commerce's denials were arbitrary and capricious because they failed to acknowledge and address evidence on the record that contradicted the agency's findings. For slightly different reasons, the denials of the October 2021 Requests and of the February 2022 Requests were both too threadbare in addressing whether USS would be able to meet 100 percent of Seneca's demand, and Commerce's reasoning for crediting USS's statements was not otherwise reasonably discernible. Moreover, an open remand is the appropriate remedy and would not be futile. The denials of the October 2021 and January 2022 Requests are remanded to the agency for reconsideration of the denial or, if the agency opts to deny the exclusion requests again, for further explanation of its decision.[6]

### A.   Commerce's Denials of the October 2021 Requests Were Arbitrary and Capricious

Recall that Commerce adopted the following explanation from the ITA memoranda, which concluded that USS was able to produce the volume of tin mill products that Seneca required:

> U.S. Steel can produce 100 percent of the requested volume. As such, U.S. Steel meets the quantity criterion. . . . Based on the evidence submitted, nothing contradicts the information certified by U.S. Steel in its objection submission. Seneca states in its rebuttal, "Contrary to its claims, USS has been unwilling to commit to any contractual volume thus far, most recently in November 2021." U.S. Steel states in its surrebuttal that it can provide the requested TFS as spot sales rather than contract volumes. This does not impact U.S. Steel's ability to supply the requested quantity.

---

[6] In evaluating Plaintiffs' arguments, the court must review the record for each exclusion request independently. See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("The task of the reviewing court is to apply the appropriate . . . standard of review to the agency decision based on the record the agency presents to the reviewing court."); Yama Ribbons & Bows Co., Ltd. v. United States, 36 CIT 1250, 1256 (2012) ("[E]ach investigation has its own unique and separate administrative record."). Because the records and denials of the October 2021 Requests are almost identical in relevant part, the court considers all five denials at once. See infra section I.A; see also supra note 3. The denial of the January 2022 Request, however, merits separate discussion because it involved a slightly different record. See infra section I.B.

P.R. 4 (quoting P.R. 33).  Quoting from Seneca's rebuttal, Commerce acknowledges that Seneca

failed to secure contractual volume from USS.  See id.  But Commerce then references the fact

that USS, per its filing, was "only offering additional spot—not contract—volumes of tin mill

products for 2022."  P.R. 46; see also P.R. 47.  Commerce appears to have concluded that Seneca's

requested quantity was available through spot sales but not contract sales.

        That determination was in error.  Commerce did not clearly address evidence on the record

that contradicted the conclusion that Seneca's requested quantity was available through spot sales.

Without explaining why, Commerce disregarded Seneca's representations and evidence that

emphasized that USS was unwilling to offer any volume—spot or contract—and instead construed

Seneca's representations as limited to contractual volume.  Take, for instance, the following

excerpts from Seneca's initial exclusion request and rebuttal:

- "These orders were placed soon after all relevant domestic producers affirmatively declined to award Seneca any additional volume for 2021." P.R. 20 (emphasis added).

- "No domestic producer is able and willing to make any additional supply available to us within the relevant timeframe in 2021."  P.R. 21 (emphasis added).

- "For its part, U.S. Steel was unwilling even to give us a quote for tin mill products due to its inability to supply any additional material in 2021 or beyond."  P.R. 22 (emphasis added).

- "Further, the relevant purchase order was placed only after USS declined to commit any 2021 volume to Seneca."  P.R. 33–34 (emphasis added).

- "The imports of tin mill products covered by these exclusion requests are limited to volumes ordered—on November 20, 2020; April 22, 2021; and May 3, 2021—only after USS declined to contract to supply any tin mill products to Seneca during 2021.  As USS itself concedes, it had no availability to supply Seneca with any tin mill products at the time Seneca placed the purchase orders at issue."  P.R. 36 (citation omitted) (first emphasis in original and following emphases added).

- "In fact, as noted above, USS still to this day has <u>no volume</u> available for Seneca; most recently in November 2021, USS advised that it has <u>no ETP or TFS</u> to offer Seneca in 2022, after stating and certifying the opposite to Commerce."  P.R. 36 (emphasis added).

- "Finally, on Nov. 13, 2020, USS confirmed via phone that it would not offer Seneca <u>any</u> steel for 2021 delivery, regardless of price.  USS stated that it did not want to make <u>any</u> commitment at the time at <u>any</u> price and noted that if it had available volume in future months, it would contact Seneca.  To date, USS has not reached out to Seneca to commit <u>any</u> 2021 volume."  P.R. 37 (first and last emphases in original and other emphases added).

These statements make clear that Seneca took issue with USS's failure to supply <u>any</u> volume, as opposed to contract volume in particular.  So, too, with Seneca's email communications in the record.[7]  <u>See</u> P.R. 41; C.R. 43.  Neither email appears to distinguish between spot or contract sales.  <u>See</u> P.R. 41, 43.  What the emails do indicate, however, is that USS did not have capacity to offer

---

[7] Recall that Seneca introduced two emails into the agency records for the October 2021 Requests.  <u>See</u> <u>supra</u> pp. 8–9.

The first email, dated November 13, 2020, was from Seneca's Vice President of Strategic Sourcing to other Seneca employees.  P.R. 41.  Headed by the subject line "USS Update," the body of the email documented a phone call with USS and reads: "They are not offering <u>anything</u> now at any price," and "They say if they have available production in any month, they will contact us and see if we have interest.  They just don't want to commit to anything right now."  P.R. 36, 41.  The second email—a chain between Seneca's Vice President of Strategic Sourcing and a USS account manager from November 29–30, 2021—reads in relevant part:

SENECA:     When we talked a couple months ago, you advised USS has <u>no tinplate or TFS</u> to offer us for 2022.  You did say that if your production efficiencies are good, some availability may free up later in the year.  I understood that was kind of a long shot.

Has anything changed on the availability of ETP or TFS?

USS:        Right now for Feb I don't have <u>anything</u> as of yet, if that changes I'll let you know.

C.R. 43.

"anything" in November 2020 and—all the more probative—"anything" in November 2021,

which was mere days after USS had filed its objections.  P.R. 41; C.R. 43.

Why any of Seneca's representations or communications with USS were limited in scope

to contractual sales, as opposed to any sales, is not clear from the record or Commerce's denial.

Omitting any discussion of Seneca's representations and evidence, Commerce went so far as to

conclude that "<u>nothing</u> contradicts the information certified by U.S. Steel in its objection

submission." P.R. 4 (emphasis added).  That statement itself constitutes agency error.  Either (1)

Commerce overlooked Seneca's arguments and countervailing evidence entirely, <u>see</u> <u>Princeton</u>

<u>Vanguard, LLC v. Frito-Lay N. Am., Inc.</u>, 786 F.3d 960, 970 (Fed. Cir. 2015) (holding that an

agency cannot "disregard" evidence "without explanation"), or (2) Commerce, having acted for

reasons that are not reasonably discernible, failed to explain why Seneca's evidence is construed

as limited to contractual sales, <u>see</u> <u>Packard Press, Inc. v. Hewlett-Packard Co.</u>, 227 F.3d 1352,

1357 (Fed. Cir. 2000) (requiring an agency to "explain[ ] its decisions with sufficient precision,

including the underlying factfindings and . . . rationale"); <u>JSW Steel (USA) Inc. v. United States</u>,

44 CIT __, __, 466 F. Supp. 3d 1320, 1330 (2020) (remanding where the court was unable to

discern what additional evidence "was weighed, or why the evidence compelled denial").  For

example, if there is an industry understanding that a reference to "for 2022" or "for Feb" in the

second email would suggest a contractual sale, <u>see</u> C.R. 43, then Commerce would need to

articulate that basis for interpreting the emails.  Alternatively, if the text of the emails cannot

support an interpretation that is limited to contract sales, then Commerce will need to reweigh and

address Seneca's evidence in its final determination.

The Government's counterarguments are unavailing.  The Government first points out that Commerce's denial does note that, per Seneca's own rebuttal, USS failed to supply Seneca with contract volumes since 2018.  See P.R. 4 (Commerce acknowledges that "Seneca states in its rebuttal, 'Contrary to its claims, USS has been unwilling to commit to any contractual volume thus far, most recently in November 2021.'").  But that begs the question; it fails to clarify why all of the evidence concerning any volume is either disregarded or construed as limited to contractual volume.  See also NMLK, 617 F. Supp. 3d at 1323 (rejecting conclusory analysis because it failed to "address[] any of the issues raised in [the] Requests, Rebuttals, or Sur-Rebuttals").  Second, the Government argues that it is generally "entitled to rely on" certified factual statements in determining whether a party will comply with certain requirements.  Allied Tech., 649 F.3d at 1330.  But while USS indeed made a certified factual statement to the agency that USS could fulfill all of Seneca's demand via spot sales,  see P.R. 46–47, 48–49,  Commerce's obligation to review all "relevant data and articulate a satisfactory explanation for its action" is unflagging.  State Farm, 463 U.S. at 43.  Agencies relying on certified statements must still consider countervailing evidence that "create[s] doubt" about the veracity of a party's statements.  Allied Tech. at 1331 (quoting In re Spectrum Sys., Inc., B–401130, 2009 WL 1325352, at *2 (G.A.O. May 13, 2009)).

Commerce's failure to consider and address Seneca's representations and email evidence resulted in arbitrary and capricious decisionmaking, and the denials of the October 2021 Requests are remanded for further explanation or reconsideration.  Commerce must articulate on remand— and potentially reconsider—why it credits USS's statements about spot sale capacity in light of Seneca's representations and email evidence.

**B.**     ***Commerce's Denial of the January 2022 Request Was Arbitrary and Capricious***

Commerce's denial of the January 2022 Request was even more opaque than its denials of

the October 2021 Requests.  Recall that the ITA memoranda for this request determined:

> U.S. Steel can produce 100 percent of the requested volume.  As such, U.S. Steel
> meets the quantity criterion.  ITA notes that Seneca states in its rebuttal, ". . . in
> November 2021 USS affirmatively declined to supply the very same volume that
> is at issue in this request."  Seneca also submitted confidential business information
> with its rebuttal.  Nothing in the information provided contradicts U.S. Steel's
> certified statements in its objection and in its surrebuttal that it can currently
> manufacture 100% of the requested quantity.

P.R. 250.  Notably, Commerce did not invoke the distinction between spot and contract sales, see

P.R. 250, and USS mentioned its ability to provide Seneca's volume via spot sales only once

between its objection and surrebuttal, see P.R. 297.  Specifically, USS stated in its attached letter

containing CBI that its "relevant tin mill facilities currently have available capacity to supply spot

shipments."  P.R. 291.

Commerce's denial of the January 2022 Request is impermissibly conclusory.  As in the

October 2021 Requests, Seneca's representations and email communications appear to address the

availability of any supply from USS, regardless of sale type.  See P.R. 266–68, 279–80, 282–84,

292; see also, e.g., P.R. 280 ("In fact, USS has declined to quote, offer, or deliver a single ton of

steel to Seneca for more than two years.").  But Commerce once again concluded that "[n]othing

in the information provided contradicts U.S. Steel's certified statements in its objection and in its

surrebuttal that it can currently manufacture 100% of the requested quantity."  P.R. 250 (emphasis

added).  Once again, either (1) Commerce overlooked Seneca's arguments and countervailing

evidence entirely, see Princeton Vanguard, 786 F.3d at 970, or (2) Commerce, having acted for

reasons that are not reasonably discernible, failed to explain why Seneca's evidence did not

contradict USS's statements about prospective capacity, see Packard Press, 227 F.3d at 1357; JSW Steel, 466 F. Supp. 3d at 1330.  And to be clear, simply mentioning the difference between spot and contract volume would not be enough.  If Commerce again determines that USS can meet Seneca's demand via spot sales and Seneca's evidence is cabined only to the unavailability of contractual volume, then Commerce will need to justify that read of the record on remand.

Commerce's treatment of the October 2021 and January 2022 Requests raises broader questions about the administration of steel tariff exclusions.  As discussed above, Commerce may credit an objector's certified factual statement that it can meet 100 percent of requested volume, but it may not do so if it results in arbitrary and capricious decisionmaking.  See Allied Tech., 649 F.3d at 1330.  According to Seneca, if Commerce's position is that Seneca's evidence of past and contemporaneous failure to secure volume constitutes "nothing" that "contradicts" USS's statements about future capacity, P.R. 4, 250, then the administrative process "only perpetuates the precise result Commerce claims it wants to avoid: allowing domestic producers to object but then 'refus[e] to fill orders,'" Pl.'s Br. at 36 (quoting Interim Final Rule, 85 Fed. Reg. at 81065).[8] In other words, Seneca argues that a purely prospective approach to evaluating an objector's capacity would be arbitrary and capricious both as applied and facially.  See Pl.'s Reply at 9–12; see also State Farm, 463 U.S. at 43 ("[A]n agency rule [is] arbitrary and capricious if the agency has . . . entirely failed to consider an important aspect of the problem . . . .").  But because the agency's position is unclear in the denials before the court, and where the court has already

---

[8] The Interim Final Rule had addressed the issue of an objector's refusal to supply volume, see supra p. 6, but that guidance appears to apply only to a renewed exclusion request following a denial, not a first-time exclusion request.  See 85 Fed. Reg. at 81065 (responding to a commenter's concern that "rebuttals to [claims of availability] are difficult to make without more detailed information from objectors on how they could make products in sufficient quantity or quality").

determined that Commerce erred in denying Seneca's exclusion requests, Seneca's as-applied and facial challenges raise questions that are best left to another day.[9]   Commerce's reasoning on remand will likely provide a fuller context in which to assess such challenges, if pursued.

Because Commerce's failure to consider and address Seneca's representations and email evidence resulted in arbitrary and capricious decisionmaking,[10] the denial of the January 2022 Request is also remanded for further explanation or reconsideration.  Commerce must articulate on remand—and potentially reconsider—why Seneca's evidence did not contradict USS's statements about prospective capacity.

---

[9] Commerce does argue that its regulations do not require it to examine past interactions between objectors and requesters where the requester simply made an offer that went unaccepted, as opposed to executing an order that was later unfulfilled.  See Def.'s Br. at 19.  But that reasoning was never articulated in any of denials of the October 2021 and February 2022 Requests, so it cannot be the basis for sustaining Commerce's actions here.  See SKF USA Inc. v. United States, 254 F.3d 1022, 1028 (Fed. Cir. 2001) (citing SEC v. Chenery Corp., 318 U.S. 80, 87 (1943)).

[10] Seneca also stresses that USS incorrectly represented to Commerce that it had supplied Seneca with tin mill products within the two years prior to its objections.  See Pl.'s Br. at 27; see also P.R. 29, 280.  USS stated in the surrebuttal to the October 2021 Requests that its representation was an error, see P.R. 49, but it never corrected the record in the January 2022 Request.

Any error resulting from USS's misstatement is harmless on the record now before the court. Commerce did not rely on USS's representation in either set of requests.  In the October 2021 Requests, USS corrected itself, and Seneca fails to identify where in the administrative record Commerce relied on USS's initial misstatement.  As for the January 2022 Request, the denial expressly states that Commerce relied on USS's "certified statements . . . that it can currently manufacture 100% of the requested quantity."  P.R. 250.  USS's statement about its history with Seneca, even if later contested in the record by Seneca, see P.R. 288, did not form a basis for Commerce's determination.  Commerce's purported error in not taking note of that contested fact is, on the record now before the court, harmless.  See 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); see also Intercargo Ins. Co. v. United States, 83 F.3d 391, 394 (Fed. Cir. 1996) ("It is well settled that principles of harmless error apply to the review of agency proceedings.").

### C.  Open Remand of Commerce's Denials of the October 2021 and February 2022 Requests Is the Appropriate Remedy

Seneca also asks the court to direct Commerce to grant the October 2021 and February 2022 exclusion requests.  See Pl.'s Br. at 37–39; Pl.'s Reply at 14–15.  Because the record before the court now does not compel a grant of the exclusion requests, the court declines to do so.

In fashioning an administrative remedy, the Court of International Trade "may order such further administrative or adjudicative procedures as the court considers necessary to enable it to reach the correct decision," 28 U.S.C. § 2643(b), which include an "order[] of remand," id. § 2643(c)(1).  The so-called ordinary remand rule provides that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  INS v. Ventura, 537 U.S. 12, 16 (2002) (quoting Fla. Power, 470 U.S. at 744).  This rule exists, in part, to allow an "agency [to] bring its expertise to bear upon the matter" in reviewing evidence in first instance and to avoid judicial intrusion into the administrative process.  Id. at 16–17.  Moreover, remand is usually appropriate "because 'the record may well be enlarged' and 'even if it is not, new findings and explanations by the [agency] can be expected.'"  Nexteel Co., Ltd. v. United States, 28 F.4th 1226, 1238 (quoting Nippon Steel Corp. v. Int'l Trade Comm'n, 345 F.3d 1379, 1380–82 (Fed. Cir. 2003)).  In the rare case when the record "supports only one outcome," however, the court may find that a remand is "futile" and instead direct the agency to act.  See id. (citing Nippon Steel, 345 F.3d at 1359).

An open remand is the appropriate remedy here.  While Seneca has shown that Commerce has failed to consider or address certain representations and evidence, Seneca has not shown that the agency record before the court compels a grant of the exclusion requests.  See supra sections I.A–.B; see also NLMK, 617 F. Supp. 3d at 1327–28 (concluding that the plaintiffs had shown that

Commerce had erred but not that "Commerce could reach only one possible conclusion from the record"). Moreover, the exclusion requests at issue may greatly benefit from a reopening of the record, which Commerce may exercise its discretion to do.    Nexteel, 28 F.4th at 1238. Commerce's denials of the October 2021 and January 2022 Requests are therefore remanded for further explanation or reconsideration consistent with this opinion.

## II.      Commerce's Denials of the March 2022 Requests Are Remanded

Without confessing error, the Government asks the court to remand the denials of the March 2022 Requests so that it may reconsider the merits of the requests. See Def.'s Br. at 22. Seneca had initially argued that Commerce erred in two ways. Pl.'s Br. at 28. First, despite having access to similar evidence as for the October 2021 and January 2022 Requests, Commerce determined that it was unable to render a decision due to uncertain issues with the request. Id. at 29–30. Second, Seneca maintained that the decisions included important factual errors regarding Seneca's submissions. Id. at 30. Following the Government's request to remand, Seneca did not oppose and instead asked the court to remand the denials of the March 2022 Requests alongside the other denials. Pl.'s Reply at 12.

Commerce's request to remand is granted. An agency's request to remand, subject to the reviewing court's discretion, is appropriate where "the agency's concern is substantial and legitimate." SKF USA, 254 F.3d at 1029. Commerce's concern here is substantial because it has a compelling interest in deciding the merits of the March 2022 Requests in the first instance. See Ventura, 537 U.S. at 16–17; Shakeproof Assembly Components Div. of Ill. Tool Works, Inc. v. United States, 29 CIT 1516, 1523, 412 F. Supp. 2d 1330, 1336 (2005). Moreover, Commerce's concern is legitimate; no party alleges bad faith, frivolous conduct, or an effort to evade judicial review. See SKF USA, 254 F.3d at 1029. "[T]he need for finality" here "does not outweigh the

justification for voluntary remand," and the scope of the request is otherwise "appropriate."
Shakeproof, 29 CIT at 1523–26, 412 F. Supp. 2d at 1336–39.

The denials of the March 2022 Requests are therefore remanded for reconsideration.  In so
doing, the court notes that there is significant factual and evidentiary overlap between the March
2022 requests on the one hand, and the October 2021 and January 2022 Requests on the other.

## CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED** that Commerce's denials of the October 2021 and January 2022 Requests,
numbered 257423, 257428, 257708, 257709, 257712, and 275504, are remanded for further
explanation and reconsideration consistent with this opinion; and it is further

**ORDERED** that Commerce's denials of the March 2022 Requests, numbered 283368 and
283369, are remanded for reconsideration; and it is further

**ORDERED** that Commerce will file its remand redeterminations with the court within
ninety days of this date; that Seneca will have thirty days to file comments on the remand
redetermination thereafter; that Commerce will have thirty days to file its replies to the comments
on the remand redetermination thereafter; that the parties shall file the Joint Appendix within
fourteen days thereafter; and that Commerce shall file the administrative record within fourteen
days of the date of filing its remand determination.

**SO ORDERED.**

                                                          /s/      *Gary S. Katzmann*
                                                          Gary S. Katzmann, Judge

Dated: October 18, 2023
          New York, New York