## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE GARY S. KATZMANN

|  |  |  |
|---|---|---|
| SENECA FOODS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Court No. 22-00243 |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S COMMENTS ON REMAND REDETERMINATION

James M. Smith
Thomas Brugato
Kwan Woo (Kwan) Kim
Edward J. Thomas III

**COVINGTON & BURLING LLP**
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com

May 1, 2024                    *Counsel for Plaintiff Seneca Foods Corporation*

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   RELEVANT REGULATORY AND FACTUAL BACKGROUND ................................. 3

    A.    Commerce's Exclusion Request Process And Past Practice.................................. 3

    B.    Seneca's 2018 Exclusion Requests And 2019-2021 Dealings With U.S. Steel ................................................................................................................. 5

    C.    Seneca's 2021-2022 Exclusion Requests And Dealings With U.S. Steel ............. 6

    D.    Seneca Submitted Comments To Commerce Via Government Counsel Months In Advance Of The Remand Redetermination ......................................... 7

    E.    Commerce's Remand Redetermination ............................................................. 8

III.  STANDARD OF REVIEW ................................................................................... 10

IV.   ARGUMENT ..................................................................................................... 11

    A.    Commerce's Remand Redetermination Is Inconsistent With And Ignores Key Portions Of The Court's Opinion ................................................................ 11

        1.    Commerce Again Improperly Disregarded Substantial Record Evidence Demonstrating U.S. Steel Did Not Have *Anything* To Offer Seneca In 2021 And 2022 ...................................................... 11

        2.    Commerce Failed To Consider Countervailing Evidence That Creates Doubt About The Veracity of U.S. Steel's Certifications .......... 16

        3.    Commerce Ignored The Court's Finding That The Distinction Between Spot Sales And Contract Sales Was In Error ........................... 17

    B.    Commerce's Remand Redetermination Is Inconsistent With Its Regulations And Past Practice .......................................................................... 19

        1.    By Ignoring Evidence That The Steel At Issue In Seneca's Requests Was Not Produced In A Sufficient And Reasonably Available Amount, Commerce Departed From Its Past Practice ............. 20

        2.    Commerce Failed To Follow Its Regulations When Examining Seneca's Import Delivery Time And Whether U.S. Steel Could Produce And Deliver The Full Requested Quantity "Immediately" ........ 23

        3.    Commerce Departed From Its Regulations By Ignoring Evidence Of U.S. Steel's Many Prior Refusals To Supply Seneca Even After U.S. Steel Objected to Seneca's 2018 Exclusion Requests ..................... 26

C.      Commerce's Prospective Analysis Is Arbitrary And Capricious And Leads To Absurd Results...................................................................................................... 28

V.      CONCLUSION..................................................................................................................... 32

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allied Technology Group v. United States*,
  649 F.3d 1320 (Fed. Cir. 2011) ................................................................................16

*American Petroleum Inst. v. EPA*,
  706 F.3d 474 (D.C. Cir. 2013) .................................................................................30

*Aqua Prods., Inc. v. Matal*,
  872 F.3d 1290 (Fed. Cir. 2017) ...............................................................................31

*Bechtel v. FCC*,
  957 F.2d 873 (D.C. Cir. 1992) .................................................................................30

*Butte Cnty., Cal. v. Hogen*,
  613 F.3d 190 (D.C. Cir. 2010) .................................................................................31

*Euzebio v. McDonough*,
  989 F.3d 1305 (Fed. Cir. 2021) ..........................................................................11, 23

*Jicarilla Apache Nation v. Dep't of Interior*,
  613 F.3d 1112 (D. C. Cir. 2010) ..............................................................................10

*Judulang v. Holder*,
  565 U.S. 42 (2011) .............................................................................................10, 11

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
  463 U.S. 29 (1983) .............................................................................10, 13, 28, 29

*Nat. Res. Def. Council v. E.P.A.*,
  571 F.3d 1245 (D.C. Cir. 2009) ...............................................................................26

*NLMK Pennsylvania, LLC v. United States*,
  617 F. Supp. 3d 1316 (Ct. Int'l Trade 2023) ...................................10, 13, 27, 31

*Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*,
  786 F.3d 960 (Fed. Cir. 2015) .................................................................................10

*In re Sang-Su Lee*,
  277 F.3d 1338 (Fed. Cir. 2002) ...............................................................................10

*Seneca Foods Corp. v. United States*,
  663 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) ................................................. *passim*

**Statutes**

5 U.S.C. § 706(2) ....................................................................................................................10

28 U.S.C. § 2640(e) ...............................................................................................................10

**Regulations**

15 C.F.R. pt. 705, supp. 1(d)(4) ...........................................................................................23

**Other Authorities**

*Adjusting Imports of Steel into the United States, Pres. Proc. No. 9705*,
    83 Fed. Reg. 11,625 (Mar. 8, 2018) .................................................................................29

*Requirements for Submissions Requesting Exclusions From the Remedies
    Instituted in Presidential Proclamations Adjusting Imports of Steel Into the
    United States and Adjusting Imports of Aluminum Into the United States; and
    the Filing of Objections to Submitted Exclusion Requests for Steel and
    Aluminum*, 83 Fed. Reg. 12,106  (Dep't Commerce Mar. 19, 2018) ........................................3

*Section 232 Steel and Aluminum Tariff Exclusions Process*,
    85 Fed. Reg. 81,060 (Dep't Commerce Dec. 14, 2020) ................................................3, 23, 26

*Submissions of Exclusion Requests and Objections to Submitted Requests for Steel
    and Aluminum*, 83 Fed. Reg. 46,026 (Dep't Commerce Sept. 11, 2018) ..........................3, 26

# I.    INTRODUCTION

As the Court stated in the first sentence of its opinion remanding all eight Section 232 exclusion requests filed by Seneca Foods Corporation ("Plaintiff" or "Seneca") back to the U.S. Department of Commerce ("Commerce"), the agency has a "true-as-steel obligation to review the entire record and to sufficiently explain its determinations for judicial review and sufficient remedy." *Seneca Foods Corp. v. United States*, 663 F. Supp. 3d 1325, 1328 (Ct. Int'l Trade 2023). Commerce has once again failed to fulfill this basic obligation. Instead, Commerce has flatly ignored critical aspects of the Court's opinion, concocted hypertechnical reasons to disregard uncontested evidence of past and current unavailability, and continued to rely on certifications by U.S. Steel as to hypothetical (and, for the orders at issue, irrelevant) future availability that are contradicted by years of record evidence. In response to the Court's serious concerns about factual issues that detract from the agency's reasoning, such as the record of past unavailability and the difference between spot and contract sales, Commerce has thrown up its hands and labeled these issues "irrelevant." Redetermination Recommendation Document Pursuant to Court Remand (Apr. 1, 2024), ECF No. 57-2 ("Remand Redetermination") at 11-12. Evidence that runs contrary to Commerce's determination cannot lawfully be dismissed as irrelevant. The Administrative Procedure Act ("APA") requires more.

Like its initial denials, Commerce's remand redetermination fails to address key facts that demonstrate unavailability from U.S. Steel at the time that Seneca needed and placed orders for additional volumes of tin mill steel. Both in its 2018 requests and in the 2021-2022 requests at issue, Seneca placed orders for imports (i) only *after* confirming no further availability from U.S. Steel or other domestic producers during the time frame for deliveries, and (ii) *before* filing exclusion requests to cover deliveries of those prior orders, given that exclusions are retroactive to the filing date. U.S. Steel does not dispute that it offered zero volume to Seneca at the time the

orders covered by the requests were placed, but that basic fact has never been acknowledged, let alone addressed, by Commerce. Instead, both U.S. Steel and Commerce have pretended that Seneca's exclusion requests relate to orders that would be placed in the future, after all related submissions to the Section 232 portal were complete and the agency's decision memoranda were issued. As Seneca explained from the start, that pretense was incorrect: all orders at issue in these requests were placed *before* the requests were filed, when there is no dispute as to the unavailability of any volumes from U.S. Steel. The agency's willful blindness to these undisputed and dispositive facts is arbitrary and capricious.

Even under Commerce's regulatory guidance for situations that require an assessment of future availability, the evidence documenting U.S. Steel's repeated refusals to supply Seneca over several years, including after filing its baseless objections, should compel the agency to grant Seneca's exclusions. Commerce, however, has engineered excuses to ignore or discount evidence of past dealings and chosen to focus solely on whether U.S. Steel could in theory supply anything to Seneca at some later point in 2022 or 2023. Commerce's prospective analysis is arbitrary and capricious for failing to consider an important aspect of the problem: Seneca's exclusion requests cover purchase orders for imports placed before the requests were filed, when U.S. Steel conceded it had no tons available for Seneca. This blinkered analysis also leads to absurd results by allowing an objector to block any exclusion by claiming repeatedly in bad faith that it would be willing to provide the requester with the full requested volumes in the future, while always declining to do so in the present.

This Court should again remand Commerce's decisions denying Seneca's exclusion requests to the agency with clear instructions to approve Seneca's exclusion requests retroactive to the filing date. Commerce has already been given one opportunity to fix the significant errors

in its earlier decisions and has failed to do so. This Court should not allow Commerce to further delay the relief Seneca deserves.

## II.    RELEVANT REGULATORY AND FACTUAL BACKGROUND

### A.  Commerce's Exclusion Request Process And Past Practice

Commerce first developed its Section 232 exclusion procedures in March 2018 after receiving instructions from the President in Proclamation 9705 to provide relief from the Section 232 tariffs for steel products "determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality," or based upon "specific national security considerations." 83 Fed. Reg. 12,106, 12,106 (Dep't Commerce Mar. 19, 2018) ("March 2018 IFR"). When Commerce first introduced the exclusion request process, it only allowed an exclusion request and objections. *Id.*, 83 Fed. Reg. at 12,110. At that time, Commerce did not contemplate consideration of past dealings with an objector; the process was new, and the agency had no experience with how objectors would behave. However, as time passed and requesters complained about objectors filing baseless objections, Commerce introduced a rebuttal and surrebuttal process to allow parties to submit additional evidence of past dealings. 83 Fed. Reg. 46,026, 46,037-38, 46,042-43 (Dep't Commerce Sept. 11, 2018) ("September 2018 Revised IFR") (noting that Commerce's decision to introduce the rebuttal and surrebuttal process was informed by past dealings between requesters and objectors, including situations where objectors would object even if the steel was not immediately available).

Several years later, facing still more complaints, Commerce provided exclusion requesters with guidance on how to document prior dealings with objectors who refused to supply the exclusion requester with the requested steel product. 85 Fed. Reg. 81,060, 81,065-66 (Dep't Commerce Dec. 14, 2020) ("December 2020 Revised IFR"). Specifically, Commerce explained:

{I}f an exclusion request is not approved because of an objection, the exclusion requester will be able to *determine definitively whether an objector is in fact able to provide the steel or aluminum article in question by attempting to obtain the product from the objector*. Should all objectors be unable to produce a requested product as they represented in their objections, the requester may submit a new request with documentation evidencing this refusal. . . .

As for the request to allow an exclusion requester to subsequently reference in a new exclusion request that an objector was not able to provide the steel or aluminum in a previous exclusion request, the current process already addresses that sufficiently . . . *If the same objector objects to the new exclusion request, the rebuttal process allows the exclusion requester to document in the rebuttal the past activity with that objector*.

*Id.* (emphasis added).

To adjudicate requests that draw objections, Commerce considers three criteria—quantity, timeliness, and quality. *See, e.g.*, PR at 22-0243-005 to 008.[1] Commerce defines these criteria as follows: the objector must be able to provide the requested products in a reasonably available amount (quantity), in a sufficient amount of time (timeliness), and in satisfactory quality (quality). *Id.* at 008. If an objector does not meet any single criterion, Commerce ends the analysis and dismisses the objection.[2]

---

[1] The Public Record ("PR") and Confidential Record ("CR") referenced herein were filed on April 11, 2024, as ECF 59 and ECF 60, respectively. Each page of the PR and CR is stamped in the bottom right hand corner with a red number starting with "22-00243." When citing to the PR and CR, we refer to these page number stamps.

[2] *See, e.g.*, ITA Recommendation Document for Approval of Steel Exclusion Request Under Section 232 ("ITA Approval Document"), Exclusion Request ID Nos. 285327 and 405495 (declining to evaluate objector's ability to meet the quality and quantity criteria after finding it did not meet the timeliness criterion), *available at* https://232app.azurewebsites.net/Forms/ExclusionRequestItem/405495 and https://232app.azurewebsites.net/Forms/ExclusionRequestItem/285327; ITA Approval Document, Exclusion Request ID No. 229654 (declining to evaluate objector's ability to meet the quantity and timeliness criteria after finding it did not meet the quality criterion), *available at* https://232app.azurewebsites.net/Forms/ExclusionRequestItem/229654; ITA Approval Document, Exclusion Request ID No. 248746 (declining to evaluate objector's ability to meet the quality and timeliness criteria after finding it did not meet the quantity criterion ), *available at* https://232app.azurewebsites.net/Forms/ExclusionRequestItem/248746 (all memoranda cited are provided in **Attachment 1**).

Commerce has also developed a policy where it will "consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request." *Id*. Applying this policy, Commerce previously dismissed objections from a company where timely correspondence demonstrated that the objector did not have the current capacity to provide the requested product. Specifically, Commerce credited e-mail evidence provided by the requester, dismissed the objection for failing to meet the quantity criterion, and did not analyze the hypothetical delivery time that the objector claimed to be able to meet (the timeliness criterion). *See, e.g.*, ITA Recommendation Document, Exclusion Request ID Nos. 312626, 312627, and 312628 ("ITA Decision Nos. 312626–312628"), at 3-4 (dismissing objection where requester submitted e-mail correspondence with objector less than 90 days before filing of request in which the objector conceded it had no current capacity and noting that "{b}ecause {objector} does not meet the quantity criterion, ITA has not evaluated {objector's} ability to meet the timeliness criterion") (provided in **Attachment 1**).

### B.  Seneca's 2018 Exclusion Requests And 2019-2021 Dealings With U.S. Steel

Seneca first filed exclusion requests for a limited volume of imported prime electrolytic tinplate ("ETP") products in March and April 2018, shortly after Commerce established its exclusion procedures. Complaint ("Compl."), ECF No. 7, ¶ 10. Seneca filed these requests only *after* attempting to source the products from U.S. Steel and being told that the company "had no short term capacity" but expected to have availability later in the year. *Id.*, ¶ 11. Having confirmed the lack of additional availability from domestic sources, Seneca placed purchase orders with its foreign supplier before filing the requests, and the tin mill products ("TMP") that it ordered would be delivered before U.S. Steel would be able to supply even a fraction of the requested quantity. *Id.*, at Exhibits 1-5 (showing that Seneca placed purchase orders in Fall 2017 for 12,000 tons, with

up to 270 days for delivery, and that U.S. Steel could supply only 1,000 tons in July 2018). Despite telling Seneca that it had no short-term availability, U.S. Steel objected to these 2018 requests for orders placed beforehand. *Id.*, ¶ 11. Commerce accepted U.S. Steel's baseless objections and denied Seneca's requests. *Id.*

Despite U.S. Steel's refusal to supply anything close to the volumes in the requests that it blocked, Seneca continued to attempt to source TMP from U.S. Steel, one of very few domestic producers. *Id.*, ¶ 12. On May 15, 2018, Seneca placed a purchase order with U.S. Steel with delivery scheduled for August 2018. Deliveries were substantially delayed; the final coil arrived only in February 2019, roughly six months late. *Id.* Throughout the rest of 2019, all of 2020, and all of 2021, Seneca repeatedly continued trying to source from U.S. Steel. However, U.S. Steel declined to offer any volumes during this extended time period and did not supply Seneca with anything throughout those years. *Id.*; *see also* PR at 22-00243-040 and 103.

### C. Seneca's 2021-2022 Exclusion Requests And Dealings With U.S. Steel

As with its 2018 exclusion requests, Seneca contacted domestic producers and confirmed that none had additional availability *before* it placed orders for imports and then filed its October 2021, January 2022, and March 2022 exclusion requests. Compl., ¶¶ 13-14 and 20. Seneca did not seek exclusions prior to ordering imports. Rather, it first attempted to source TMP domestically, exhausted all available domestic volumes, ordered imports to cover that shortfall, and only then filed exclusions to cover those orders ex post. *See, e.g.*, PR at 22-00243-022 to 024, 293, and 390. Despite having told Seneca that it had no TMP available for 2021 and refusing to quote for 2022, PR at 22-00243-038 to 039, U.S. Steel objected to all of Seneca's exclusion requests. *See, e.g.*, PR at 22-00243-025 to 033. In its rebuttals, Seneca detailed its attempts to secure needed TMP domestically and provided e-mails demonstrating U.S. Steel's refusal to provide Seneca with *any* TMP in 2021 and most of 2022. *See, e.g.*, PR at 22-00243-038 to 043, 405-406; CR at 22-00243-

045, 369-371. U.S. Steel even declined to supply Seneca days after filing an objection in which it claimed the ability to supply the full volume immediately. *Compare* PR at 22-00243-021 and 025 to 030 (U.S. Steel's objection dated November 26, 2021, claiming ability to supply 100% of requested volumes immediately) *with* CR at 22-00243-045 (e-mail from U.S. Steel dated November 30, 2021, stating it has nothing to offer); *see also* PR at 22-00243-038. In its surrebuttals to the October 2021 exclusion requests (submitted in mid-December 2021), U.S. Steel also confirmed that it had no availability from 2019 through 2021 and that it had not supplied Seneca since February 2019. PR at 22-00243-103, 157, 211, and 265. Seneca also tied the purchase orders covered by the exclusion requests to specific correspondence in which domestic producers, including U.S. Steel, stated that they could not supply Seneca. PR at 22-00243-038 to 039, 091 to 092, 145 to 146, 199 to 202, 253 to 254, 307, and 405 to 406.

### D. Seneca Submitted Comments To Commerce Via Government Counsel Months In Advance Of The Remand Redetermination

In December 2023, with Commerce's remand actively pending, Seneca submitted comments to counsel to the United States highlighting two distinct policies that Commerce should consider when preparing its remand redetermination. *See* **Attachment 2**. Specifically, Seneca noted: (1) Commerce's policy of considering sales correspondence within 90 days of the exclusion request filing date, including a recent and similarly situated case where Commerce relied on such correspondence to dismiss an objection based on the objector's failure to meet the quantity criterion; and (2) Commerce's regulatory guidance indicating that it will consider past activity with an objector, including evidence of unavailability after prior exclusion requests were denied due to an objection from the same company. *Id.* This letter was submitted in December 2023, and counsel confirmed he would share the letter with Commerce. **Attachment 2**. Commerce then had months to review and consider the issues raised in Seneca's letter during the remand—for which

the agency requested and received two extensions totaling 76 extra days. ECF Nos. 52 and 55 (the redetermination was originally due January 16, 2024, but not submitted until April 1, 2024).

### E.  Commerce's Remand Redetermination

Commerce filed its remand redetermination on April 1, 2024, and continued to deny all eight exclusion requests. Commerce made certain findings with respect to the three groups of exclusion requests—October 2021, January 2022, and March 2022—and then concluded with two sections regarding (1) spot sales versus contract sales and (2) preceding months and years, which apply to all requests.

For the October 2021 requests, Commerce reviewed the November 2020 and November 2021 e-mails and continued to determine that U.S. Steel could supply Seneca at some point later in 2022 through spot sales. Remand Redetermination at 1-7. As part of its analysis, Commerce "assigned virtually no weight" to the November 2020 e-mail because, according to Commerce's unidentified Subject Matter Expert ("SME"), it did not identify or provide details about any product and was sent almost one year before the requests, about a time period preceding the requests. *Id.* at 2. For the November 2021 e-mail, Commerce claimed that while timely under its policy (*i.e.*, within 90 days of the filing of the exclusion requests), the e-mail "did not foreclose the possibility of U.S. Steel providing the requested product through spot sales." *Id.* at 6; *see also id.* at 4. Commerce never explained why the November 2020 and 2021 e-mails are not dispositive evidence of U.S. Steel's failure to meet the quantity criterion, given that U.S. Steel admitted it had nothing to offer Seneca (1) when Seneca placed the purchase orders for imports covered by the requests; (2) when Seneca filed the requests; and (3) even *after* U.S. Steel filed its objections.

For the January 2022 request, based on the November 2021 e-mail, Commerce again determined that despite the conceded unavailability of any volumes when the relevant orders were placed, U.S. Steel could in theory supply Seneca "through spot sales only" in the future. *Id.* at 8.

And Commerce again failed to explain how the November 2021 e-mails, which it admitted fall within its standard 90-day period, are not compelling and dispositive evidence of unavailability at the key points in time for Seneca's request.

For the March 2022 requests, Commerce discounted the November 2021 e-mails as being too far in the past to shed light on U.S. Steel's ability to deliver in 2022. *Id.* at 8-9. Commerce also discounted e-mails from February-April 2022 because they were sent "approximately four months after {Seneca} completed purchase orders with its foreign producer" and thus "do not pertain to the products specifically at issue in these exclusion requests." *Id.* at 10. For these purchase order dates, Commerce expressly relied on Exhibit 2 to Seneca's rebuttal, CR at 22-00243-368, a chart showing the relevant purchase order and delivery dates for the March 2022 requests and demonstrating that most covered volume would be delivered before U.S. Steel could supply even its limited quantity. Remand Redetermination at 9-10. Commerce failed to answer how that chart and the February-April 2022 e-mails, which reveal that U.S. Steel offered only one-sixth of what Seneca needed and only months later, do not establish that U.S. Steel was unable to meet the quantity criterion, especially given the agency's acknowledgement that the orders covered by the requests were placed months earlier.

With respect to *all* of the exclusion requests, Commerce made two claims: (1) that the distinction between spot and contract sales "is irrelevant to {its} analysis and decision," even though the redetermination emphasized future spot availability as a basis for denying the October 2021 and January 2022 requests, *id.* at 11; and (2) that evidence of prior dealings with U.S. Steel, including its refusal to sell to Seneca for more than two years, was "irrelevant" to its determination, *id.* at 12. At no point did Commerce acknowledge receipt of the December 2023 letter discussed in Section II.D, much less explain why the agency's policies and practices summarized in that

letter and the regulatory guidance discussed in Section II.A do not apply to Seneca's requests, given the extensive and undisputed evidence of Seneca's prior dealings with U.S. Steel.

## III.    STANDARD OF REVIEW

This Court reviews challenges to Section 232 exclusion denials under the standard provided by APA section 706. *See* 28 U.S.C. § 2640(e). Under the APA, the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2).

Arbitrary and capricious review "ensur{es} that agencies have engaged in reasoned decisionmaking." *Judulang v. Holder*, 565 U.S. 42, 53 (2011). The reviewing court must "examin{e} the reasons for agency decisions—or, as the case may be, the absence of such reasons," *id.*, to ensure that an agency not only reaches "a sound decision," but "articulate{s} the reasons for that decision." *In re Sang-Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002). The agency's articulation must make a "rational connection between the facts found and the choice made," *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up), and its "explanation for its decision must be sufficient to enable {courts} to conclude that {it} was the product of reasoned decisionmaking," *Jicarilla Apache Nation v. Dep't of Interior*, 613 F.3d 1112, 1118 (D. C. Cir. 2010). An agency cannot simply disregard evidence without explanation. *Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015).

Agency action is arbitrary and capricious when the agency, for example: (1) "entirely failed to consider an important aspect of the problem"; (2) "offered an explanation for its decision that runs counter to the evidence before the agency"; or (3) acted in a way "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *State Farm*, 463 U.S. at 43; *see also NLMK Pa., LLC v. United States*, 617 F. Supp. 3d 1316, 1320 (Ct. Int'l Trade 2023).

Likewise, agency action that departs from past practice without a reasoned justification, or treats "similarly situated {entities} differently" without "a reasoned explanation and substantial evidence," is arbitrary and capricious. *Euzebio v. McDonough*, 989 F.3d 1305, 1322 (Fed. Cir. 2021) (quoting *Burlington N. & Santa Fe. Ry. Co. v. Surface Transp. Bd.*, 403 F.3d 771, 777 (D.C. Cir. 2005)). The court plays "a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang*, 565 U.S. at 53.

## IV.    ARGUMENT

### A. Commerce's Remand Redetermination Is Inconsistent With And Ignores Key Portions Of The Court's Opinion

Commerce failed to adequately address three critical aspects of the Court's opinion: (1) the Court's finding that Commerce disregarded evidence demonstrating that U.S. Steel was unwilling to offer *any* volume, *Seneca*, 663 F. Supp. 3d at 1337; (2) the Court's direction to consider countervailing evidence that creates doubt about the veracity of U.S. Steel's certified representations, *id.* at 1339; and (3) the Court's ruling that Commerce's finding of availability through spot rather than contract sales was in error, *id.* at 1337. Commerce's refusal to address the Court's specific concerns warrants a second remand with clear instructions to approve Seneca's exclusion requests retroactive to the date of filing.

#### 1.    Commerce Again Improperly Disregarded Substantial Record Evidence Demonstrating U.S. Steel Did Not Have *Anything* To Offer Seneca In 2021 And 2022

Commerce's remand redetermination is arbitrary and capricious because it ignores the overwhelming record evidence cited by the Court demonstrating that U.S. Steel refused to offer *any* volume to Seneca for multiple years, including in "2021 or beyond." *Seneca*, 663 F. Supp. 3d at 1337 (quoting PR at 22-0243-024). The Court specifically found that "Commerce disregarded Seneca's representations and evidence that emphasized that USS was unwilling to offer *any*

volume" without explaining why. *Id.* at 1337 (emphasis in original). The Court further noted that the e-mails indicate "that USS did not have capacity to offer 'anything' in November 2020 and— all the more probable—'anything' in November 2021." *Id.* at 1338. In addition to being inconsistent with Commerce's prior decisions, as discussed *infra* at Section IV.B.1, Commerce's analysis is intrinsically flawed and at odds with the Court's opinion, *see Seneca*, 663 F. Supp. 3d at 1337-39, because the finding that U.S. Steel could supply Seneca rests on the very same factual foundations previously discredited by this Court: (i) U.S. Steel's representations about future conduct that were belied by its past refusals to supply Seneca, and (ii) illusory distinctions between contract and spot sales. Remand Redetermination at 4-8 and 10. Relying on the same factual bases that the Court previously found wanting is plainly arbitrary and capricious.

Commerce sidesteps the Court's opinion by raising two categories of unfounded arguments to justify ignoring incontrovertible evidence of unavailability. The first involves Commerce's claims that the November 2020 and February-April 2022 e-mails are not related to the same products requested for exclusion. The second involves Commerce's claims that the November 2020 and November 2021 e-mails are too distant in time from certain exclusion requests, or from the prospective time frame considered by the agency, to be deemed relevant to the issue of availability. Both categories of claims fail on their face.

In the first category, Commerce engineers ways to disregard the overwhelming record evidence of unavailability emphasized by the Court by questioning whether certain specific product types are being discussed in e-mails that expressly cover *all* tin mill specifications of interest to Seneca. For example, Commerce claims that it is not relying at all on the November 2020 e-mail because its unidentified SME could not discern what product was being discussed, Remand Redetermination at 2, even though the correspondence stated that U.S. Steel is "not

12

offering *anything* now at any price" and that they will contact Seneca "if they have *available production* in any month." PR at 22-00243-043 (emphases added). This exchange was not about a particular specification; it was about *any and all* TMP. The e-mail on its face makes clear that U.S. Steel had no TMP to offer Seneca, regardless of the product type. Seneca's rebuttal submission also states that "USS confirmed via phone that it would not offer Seneca *any* steel for 2021 delivery, regardless of price." PR at 22-00243-039 (emphasis in original). This Court reviewed the evidence submitted by Seneca and emphasized that the record indicates that U.S. Steel lacked capacity to offer "anything." *Seneca*, 663 F. Supp. 3d at 1338. Commerce's nonsensical reading of the word "anything" and improper discounting of this key communication reveal the agency straining to ignore evidence that cuts against its denials, when its obligation is to address that evidence.

The decision by the SME to disregard the November 2020 e-mails because those communications do not pertain to the products at issue is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise," rendering the decision to disregard those communications arbitrary and capricious. *State Farm*, 463 U.S. at 43. This court has held that it cannot credit the conclusions of an unidentified SME, nor can it identify "a rational connection between the facts found and the choice made" when it is unclear what factors the SME weighed, and who made this decision. *NLMK Pennsylvania*, 617 F. Supp. 3d at 1323-24 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

Commerce credited the SME's inexplicable finding that the November 2020 e-mails did not relate to the same products at issue in the October 2021 requests. Remand Redetermination at 2. Yet when the SME found that the February-April 2022 e-mails related to the product in the March 2022 requests, *id.* at 10, Commerce ignored this finding and developed its own theory for

13

why these e-mails do not pertain to the products at issue in those requests. *Id.* Commerce was thus

inconsistent in how it treated findings by the SME, strongly suggesting that its analysis was results-

driven. After reciting the SME's finding that the February-April 2022 e-mails relate to the same

product as the requests, Commerce stated:

> Seneca sent its initial solicitation email to U.S. Steel on February 24, 2022. This is
> approximately four months after it completed purchase orders with its foreign
> producer, as indicated by the foreign producer's expected delivery date document.
> As a result, Commerce does not consider this email chain as pertaining to the
> products at issue in exclusion request 283368 and 283369 because Seneca's initial
> solicitation email was sent several months after it had already ordered the product
> from its foreign producer.

*Id.* Oddly, for this limited purpose, the agency relied on Seneca's actual purchase order and

delivery dates, which it otherwise ignored across all of Seneca's requests. This is another example

of Commerce conjuring a nonsensical excuse to disregard record evidence that contradicts its

denials. These e-mails go to the heart of the issue. Did U.S. Steel have the ability to supply Seneca

with the full volumes at issue in the requests (*i.e.*, the quantity criterion)? The answer is clearly

"no."

These February-April 2022 e-mails, like the e-mails from 2020 and 2021, were about *any*

*and all* products. The e-mail sent by Seneca on February 24, 2022, has a subject line of "OFFERS"

and states "*Anything* to offer yet? I'm interested in *all* of our specs." CR at 22-00243-369 to 371

(emphases added).[3] After weeks of back and forth and U.S. Steel declining to supply the 3,000

tons originally requested, U.S. Steel agreed to supply only 500 tons and pushed delivery until July.

*Id.* This correspondence was submitted as Exhibit 3 to Seneca's April 22, 2022, rebuttal along with

another e-mail from November 30, 2021 (Exhibit 1 to that rebuttal) in which U.S. Steel indicated

---

[3] Seneca has decided to make public information previously treated as business proprietary in
Confidential Exhibit 3 of its rebuttal submitted on April 22, 2022 given the passage of time.

that it had nothing to offer for February 2022. CR at 22-00243-405 to 408. Seneca then sent another e-mail in February 2022, following up to see if U.S. Steel had anything to offer. Seneca submitted the February-April 2022 e-mails for the purpose of demonstrating that after not supplying Seneca with anything during 2020 or 2021, and after months of continuing discussions in 2022, U.S. Steel offered Seneca only a tiny fraction of the TMP it requested—and made this trivial volume available for delivery only months later, in July 2022. PR at 22-0243-405 to 406; CR at 22-00243-369 to 371. Instead of inventing an excuse to ignore this clear evidence of unavailability, Commerce should have examined the communications and concluded that U.S. Steel was unable to supply Seneca with the quantity requested in its March 2022 exclusion requests.

In the second category of claims, which relate to timing, Commerce disregards the November 2020 and November 2021 e-mails for being too distant from the filing date of the requests. Remand Redetermination at 2 and 10. Commerce claims that it will not consider sales correspondence dated more than 90 days from the submission of a request due to "the ever-changing nature of steel and aluminum production schedules and industry." *Id.* at 2. However, Commerce's policy includes a key qualifier: "Commerce will consider sales correspondence, submitted as evidence, *absent additional accompanying information*, only if such correspondence occurred within 90 days of the submission of the exclusion request." *Id.* at 2 (emphasis added). This qualifier allows consideration of sales correspondence outside the 90-day window where there is "additional accompanying information." Here, undisputed record evidence of U.S. Steel actively refusing over several years to supply Seneca with *any* volume more than justifies consideration of communications outside of the default 90-day window.

This correspondence is directly relevant to an issue that Commerce in its December 2020 Revised IFR stated it *would* consider: past activity with objectors. *See infra* at Section IV.B.3. The

November 2020 correspondence is also directly relevant to the orders covered by Seneca's exclusion requests, which were filed only after Seneca confirmed that U.S. Steel and other domestic producers had no additional availability for 2021 and placed purchase orders for 2021 volumes with foreign suppliers. PR at 22-00243-039. Furthermore, the e-mails relate to a time frame that extended well beyond November 2020, given the note indicating that if U.S. Steel has "available production in any month, they will contact us and see if we have interest." PR at 22-00243-043. The record evidence confirms that U.S. Steel never offered any volumes to Seneca during 2021. As reflected in the November 2021 e-mail and conceded by U.S. Steel, Seneca continued actively attempting to source from U.S. Steel throughout 2021, but was told they had nothing to offer. PR at 22-00243-038 to 039; CR at 22-00243-045; PR at 22-00243-103, 157, 211, and 265 (confirming that U.S. Steel had not supplied Seneca since February 2019 and had regularly discussed availability and sales with Seneca throughout 2019, 2020, and 2021).

### 2. Commerce Failed To Consider Countervailing Evidence That Creates Doubt About The Veracity of U.S. Steel's Certifications

The Court made clear that agencies "relying on certified statements must still consider countervailing evidence that 'creates doubt' about the veracity of a party's statements" and that failure to do so results in arbitrary and capricious decisionmaking. *Seneca*, 663 F. Supp. 3d at 1339. Commerce's remand redetermination once again fails to adequately consider countervailing evidence that creates doubt about U.S. Steel's certified statements, and is thus arbitrary and capricious. *Allied Technology Group v. United States*, 649 F.3d 1320, 1331 (Fed. Cir. 2011). After briefly mentioning several pieces of evidence that directly contradict U.S. Steel's certified representations, Commerce disregards them without explanation by focusing solely on whether U.S. Steel could hypothetically supply Seneca with the requested steel at some point long after the

filing of Seneca's exclusion requests. Remand Redetermination at 3-4, 6-8, and 10. This is not reasoned decisionmaking.

Despite voluminous evidence that U.S. Steel was unable to supply Seneca after being asked repeatedly over multiple years, and despite U.S. Steel's refusal to supply Seneca even after objecting to Seneca's October 2021 exclusion requests, Commerce has again blindly accepted U.S. Steel's representations and concluded that U.S. Steel could provide the full requested quantities through spot sales. *Id.* at 4-8 and 10. This Court provided Commerce with an opportunity to reconcile U.S. Steel's certified representations with the countervailing record evidence. *Seneca*, 663 F. Supp. 3d at 1339-1340. Commerce has failed to do so. The agency's decision to disregard or dismiss the overwhelming evidence of unavailability is directly at odds with the Court's clear instructions.

### 3. Commerce Ignored The Court's Finding That The Distinction Between Spot Sales And Contract Sales Was In Error

The Court previously held that Commerce's determination that Seneca's requested quantity was available through spot sales but not contract sales "was in error." *Seneca*, 663 F. Supp. 3d at 1337. The Court further instructed Commerce that if it continues to find U.S. Steel could "meet Seneca's demand via spot sales and Seneca's evidence is cabined only to the unavailability of contractual volume, then Commerce will need to justify that read of the record on remand." *Id.* at 1340. Despite these clear instructions, Commerce has again discounted Seneca's evidence of unavailability and concluded that U.S. Steel could hypothetically have supplied Seneca at some future point in 2022 or 2023 via spot sales, while failing to provide any justification for this reading of the record. Remand Redetermination at 4-5 and 7. In this respect as well, Commerce's Remand Redetermination remains arbitrary and capricious.

The Court cited seven different pieces of record evidence where Seneca made clear that U.S. Steel was unwilling to provide Seneca with "any" TMP in November 2020 and November 2021, whether via spot or contract sales. *Seneca*, 663 F. Supp. 3d at 1337-38. Instead of concluding that U.S. Steel's objection was meritless because it had nothing to offer Seneca, Commerce again focused its analysis on whether U.S. Steel could have supplied Seneca in the future via spot sales. Commerce has again read into the November 2021 e-mails concepts not present in that exchange— concluding that "nothing in the e-mail foreclosed U.S. Steel from providing spot sales"—and again drawn an illusory distinction between the availability of spot versus contract sales that the Court found to be in error. Remand Redetermination at 5. Doubling down on a distinction already found to be arbitrary and capricious falls far short of reasoned decisionmaking.

Perhaps worse, Commerce later contradicts itself by claiming that the distinction between contract sales and spot sales is irrelevant to its analysis and that it affords no substantive weight to a distinction that its own analysis introduces. *Id.* at 11. Commerce cannot have it both ways. If Commerce is not relying at all on the difference between spot and contract sales, the agency has no valid basis for concluding that U.S. Steel could have supplied Seneca on a spot basis.

The overwhelming record evidence demonstrates that U.S. Steel had nothing to offer when Seneca requested TMP volumes, regardless of the terms. PR at 22-0243-023 to 024, 038-039, 043, 307, 405-406; CR at 22-00243-045. Seneca urged U.S. Steel to offer *anything* that it had available on any terms and at any time, yet U.S. Steel supplied Seneca nothing from February 2019 until July 2022. And even when U.S. Steel finally offered something, it was a mere fraction of what Seneca requested and far short of the volumes at issue in the denied requests. PR at 22-0243-405 to 406; CR at 22-00243-369 to 371. Commerce's continued failure to account for these facts

renders its decision arbitrary and capricious and warrants another remand by this Court with clear instructions.

### B. Commerce's Remand Redetermination Is Inconsistent With Its Regulations And Past Practice

In addition to being at odds with the record, Commerce's remand redetermination cannot be sustained because it is also inconsistent with Commerce's regulations and past practice. Commerce has failed to follow its regulations and past practice when assessing whether the TMP in Seneca's requests was produced by U.S. Steel in a sufficient and reasonably available amount. Record evidence clearly demonstrated that U.S. Steel did not meet the quantity criterion, as interpreted and applied by the agency in the context of other requests. Commerce's past treatment of similarly situated parties requires the agency to treat U.S. Steel's objections in a similar manner or explain why it refuses to do so. Commerce has done neither. Additionally, Commerce has misunderstood and misapplied the delivery lead time information from its own Section 232 Exclusion Portal, choosing the wrong time frame for assessing whether the steel requested by Seneca was "available immediately" and systematically inflating the relevant number of days. In other words, while ignoring the actual delivery time frames for the orders covered by Seneca's requests, the agency failed even to calculate its theoretical delivery window correctly. Finally, Commerce directly contradicted its own regulatory guidance by dismissing evidence of U.S. Steel's conceded failure over several years to supply Seneca as "irrelevant." Commerce's failure to take this evidence into account consistent with its regulatory guidance is arbitrary and capricious.

**1. By Ignoring Evidence That The Steel At Issue In Seneca's Requests Was Not Produced In A Sufficient And Reasonably Available Amount, Commerce Departed From Its Past Practice**

As part of its determination of whether a product is produced in a sufficient and reasonably available amount when an objection has been filed, Commerce determines (1) whether the objector can provide a reasonably available amount (the quantity criterion) and (2) whether the objector can provide the product in a sufficient amount of time (the timeliness criterion). *See, e.g.*, PR at 22-0243-006 to 008. Commerce considers these to be two separate findings, and if the objector does not meet either of them, the objection is routinely disregarded and the exclusion granted.

Commerce's practice in cases similar to Seneca's is to analyze the objection filed, as well as any contemporaneous sales correspondence submitted, and determine whether the objector meets all three criteria: quantity, timeliness, and quality. In a very similar situation, brought to the agency's attention in Seneca's December 2023 letter (*see* **Attachment 2**), an exclusion requester submitted recent correspondence indicating that the objector had no capacity to supply the requested product. On that basis, Commerce determined that the objector did not meet the quantity criterion, dismissed the objection, and did not further analyze the timeliness or quality criteria. *See* **Attachment 1** (ITA Decision No. 312626). In this prior case, the requester sought an exclusion in July 2022 after first reaching out to domestic producers to see if any had available capacity. The domestic producers either did not respond, explained they had no current capacity, or offered to supply from non-U.S. sources. *See* Request 312626.[4] Two domestic producers objected, and one publicly claimed to be able to supply the requested product in 60 days. *See* Objections 121975 and

---

[4] This exclusion request is available at the following link:
https://232app.azurewebsites.net/Forms/ExclusionRequestItem/312626.

124760.[5] In its rebuttal, the exclusion requester submitted e-mails from several months prior to the filing of the request in which the objector stated it was "pretty much at maximum capacity" and "completely booked." *See* Rebuttal 54858.[6]

Seneca likewise confirmed with domestic producers before filing its exclusion requests that they had no additional TMP to offer. *See* PR at 22-00243-022 to 024, 075 to 077, 129 to 131, 183 to 185, 237 to 239, 291 to 293, 342 to 344, and 388 to 391. When U.S. Steel objected and claimed to have availability to cover the full requested volumes, Seneca submitted contemporaneous e-mail correspondence in which U.S. Steel said that it had nothing to offer (for the October 2021 and January 2022 requests) or could offer only one-sixth of the volume, and only months later (for the March 2022 exclusion requests). CR 22-00243-045 (November 2021 e-mails) and CR at 22-00243-369 to 371 (February-April 2022 e-mails). Consistent with its practice in the case raised in Seneca's December 2023 letter (*see* **Attachment 2**), Commerce should have determined on remand that U.S. Steel failed the quantity criterion and dismissed its objections. Instead, not even acknowledging the letter, Commerce departed from its prior practice without explanation.

---

[5] These objections are available at the following links:
https://232app.azurewebsites.net/Forms/ObjectionFilingItem/121975;
https://232app.azurewebsites.net/Forms/ObjectionFilingItem/124760. The second objection kept confidential the number of days it would take to supply the requested product. Commerce ultimately denied the exclusion, but solely based on the objection from the other company that it found met the quantity, quality, and timeliness criteria.

[6] This rebuttal is available at the following link:
https://232app.azurewebsites.net/Forms/ObjectionRebuttalItem/54858.

For the October 2021 exclusion requests,[7] Commerce focused exclusively on the timeliness criterion and did not explicitly mention the quantity criterion.[8] Remand Redetermination at 3-7. As part of its timeliness analysis, Commerce analyzed whether U.S. Steel could hypothetically supply Seneca with TMP at some later point in 2022 or 2023, based on an order-to-delivery lead time reported by Seneca, which Commerce incorrectly calculated (*see infra* Section IV.B.2). Remand Redetermination at 3-4, 6-7. For the January 2022 exclusion request,[9] Commerce improperly conflated the quantity and timeliness criteria. *Id.* at 8. That is, Commerce reviewed the November 2021 e-mails, which confirm that U.S. Steel had zero quantity to offer Seneca through at least February 2022, but then dismissed them as irrelevant based on the time frame for its assessment of timeliness ("we do not deem the contents of the November 2021 e-mail relevant to a determination . . . given the long, forward-looking timeframe for production and delivery"). *Id.* Finally, for the March 2022 exclusion requests,[10] Commerce stated in conclusory fashion that U.S. Steel meets the quantity criterion. *Id.* at 10-11. However, Commerce failed to consider the February-April 2022 e-mails when making this determination, having somehow concluded that those e-mails relate to products distinct from those in the exclusion requests. *Id.* at 10.

Commerce's decisions are arbitrary and capricious because the agency failed to fully consider an important aspect of the problem—the quantity criterion—and failed to treat similarly situated parties the same. For the October 2021 requests, Commerce should have separately

---

[7] Exclusion Request Nos. 257423, 257428, 257708, 257709, and 257712.

[8] Commerce stated that the November 2021 e-mail from U.S. Steel "does not establish unavailability from U.S. Steel given U.S. Steel's certified representations in these proceedings that it could timely provide the full quantity of the requested product through spot sales." Remand Redetermination at 4.

[9] Exclusion Request No. 275504.

[10] Exclusion Request Nos. 283368 and 283369.

examined the quantity criterion, and in light of the November 2021 e-mails indicating no current availability from U.S. Steel either dismissed the objection or explained why it treated "similarly situated {entities} differently." *Euzebio*, 989 F.3d at 1322. For the January 2022 request, consistent with its practice elsewhere, Commerce should have evaluated the November 2021 e-mails for the quantity criterion, not the timeliness criterion, and determined that U.S. Steel's objection fell short. Finally, for the March 2022 requests, Commerce should have granted the exclusions based on evidence that U.S. Steel could offer only a fraction of the requested volume or explained its decision to treat "similarly situated {entities} differently." *Id.* Commerce's refusal to address evidence demonstrating U.S. Steel's inability to meet the quantity criterion is arbitrary and capricious, as are its departures from past practice.

### 2. Commerce Failed To Follow Its Regulations When Examining Seneca's Import Delivery Time And Whether U.S. Steel Could Produce And Deliver The Full Requested Quantity "Immediately"

Commerce's regulations provide that "the objector must identify how it will be able to produce and deliver the quantity of steel . . . needed either within eight weeks, or if after eight weeks, by a date which is earlier than the date that a named foreign supplier can deliver the entire quantity of the requested product." December 2020 Revised IFR, 85 Fed. Reg. at 81,067 (summarizing 15 C.F.R. pt. 705, supp. 1(d)(4)); *see also Seneca*, 663 F. Supp. 3d at 1330 (quoting same). When determining if an objector can make the product "available immediately," Commerce compares the time reported by the exclusion requester to take delivery of the requested product with the time reported by the objector to deliver the same quantity of steel.

To conduct this analysis, Commerce's exclusion request form asks the requester to "Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization" ("Question 1a"). PR at 22-00243-012. As a subset of that window, Commerce also asks the exclusion requester to

"Estimate the number of days required to manufacture the product covered by this Exclusion Request, from the time a binding purchase order is executed" ("Question 1b"), and to "Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock" ("Question 1c"). *Id.*

Applying these regulations to Seneca's requests, the proper starting point for the timeliness analysis should be the dates on which Seneca actually placed the purchase orders covered by the requests, not the date on which Seneca filed the requests. For all eight requests, as Seneca explained in its initial submissions to the agency, the relevant purchase orders were placed *before* each request was submitted, and after Seneca confirmed no additional availability from domestic suppliers. PR at 22-00243-024, 077, 131, 185, 239, 293, 344, and 390. For Seneca's requests, the only appropriate time frame to test an objector's claim of "immediate" availability is when Seneca expected to receive deliveries of the full requested and previously ordered volume. For its timeliness assessment, however, Commerce wholly ignored the applicable purchase order and delivery dates provided by Seneca, instead focusing on an irrelevant delivery time frame that runs from the filing date of each request. *See* Remand Redetermination at 3, 5, 7, 10 (adding the import delivery time to October 21, 2021, January 23, 2022, and March 15, 2022).

Commerce explained that the "operative delivery period upon which to base its analysis" must come from Seneca's initial request, not its rebuttal. Remand Redetermination at 9. Commerce further explained that the "Section 232 exclusion process is an iterative process that begins with the requestor providing public notice of its foreign producer's delivery time," and that "domestic producers rely upon the requestor's initial exclusion request when deciding whether to file an objection." *Id.* For Seneca, however, the process did not start with its requests;

it started when Seneca confirmed that domestic producers had no additional availability and placed purchase orders for imports to cover the shortfall. PR at 22-00243-023, 076 to 077, 130 to 131, 184 to 185, 238 to 239, 291 to 293, 342 to 344, and 388 to 390. Moreover, *in its initial requests*, Seneca disclosed generally when the purchase orders were placed and when deliveries of those orders would be complete. *Id.* Seneca also identified precise purchase order dates in its rebuttals. *Id.* at 035, 088, 142, 196, 250, 308, 357, and 405. But if Commerce insists that information *in the requests* must define the operative delivery time frame, then the agency should have examined U.S. Steel's objections in light of the purchase order and delivery times provided by Seneca in its initial requests. Commerce received the relevant delivery time frame information in Seneca's requests, but failed to consider or evaluate it correctly.

Even as to the duration of this delivery time frame, Commerce erred. In its remand redetermination, Commerce failed to properly calculate and analyze Seneca's lead time for import deliveries. For all eight requests, Commerce erred by adding the number of days reported for Question 1a to the number of days reported for Question 1c and then comparing this figure to the number of days U.S. Steel claimed to be able to supply Seneca. *Compare* Remand Redetermination at 3, 5, 7, and 10 (identifying import delivery times of 170 days or 360 days) *with* PR at 22-00243-012, 064, 119, 173, 227, 281, 332, and 378 (reporting 120 days or 270 days in response to Question 1a). This approach obviously double counts the shipping time: Question 1a accounts for all time to manufacture *and ship* the requested product to Seneca. Adding shipping time from Question 1c to the Question 1a number, which already includes shipping time, is clear error—an error that even U.S. Steel avoided, as it referenced Seneca's Question 1a numbers. PR at 22-00243-026, 079, 133, 187, 241, 295, 347, and 393.

Despite its regulations, Commerce never cited to any evidence establishing *how* U.S. Steel in reality would be able to produce and deliver the quantity of steel needed "immediately," especially given U.S. Steel's conceded inability to supply anything in prior years. This kind of decisionmaking, after a remand to correct legal and factual errors, deserves no deference.

### 3. Commerce Departed From Its Regulations By Ignoring Evidence Of U.S. Steel's Many Prior Refusals To Supply Seneca Even After U.S. Steel Objected to Seneca's 2018 Exclusion Requests

Due to numerous complaints from exclusion requesters forced to deal with objectors who later refuse to supply requested product, Commerce modified its exclusion regulations by (1) providing a rebuttal process whereby requesters could submit documentation regarding past dealings with objectors and (2) explaining in the preamble to its revised regulations how an exclusion requester facing meritless objections should document this course of dealing for the agency. September 2018 Revised IFR, 83 Fed. Reg. at 46,042-043; December 2020 Revised IFR, 85 Fed. Reg. at 81,065-066. Commerce made clear in its December 2020 Revised IFR that it would take evidence of past refusals by an objector into account when adjudicating exclusion requests. Specifically, Commerce directed exclusion requesters who are unable to source steel from an objector to "submit a new request with documentation evidencing this refusal." December 2020 Revised IFR, 85 Fed. Reg. at 81,065. Commerce further explained that the "rebuttal process allows the exclusion requester to document in the rebuttal the past activity with that objector." *Id.* at 81,066. Because this guidance was clear, and because it represented the culmination of the agency's decisionmaking with regard to operation of the exclusion process, it should be treated as binding. *See Nat. Res. Def. Council v. E.P.A.*, 571 F.3d 1245, 1252 (D.C. Cir. 2009).

Despite this binding regulatory guidance, Commerce's remand redetermination fails to consider the evidence of U.S. Steel's past activity and repeated refusals to supply Seneca. Undisputed record evidence confirms that U.S. Steel affirmatively declined to supply Seneca from

February 2019 through July 2022 and that Seneca confirmed with U.S. Steel that it had nothing to offer *prior* to placing orders for imported TMP and then filing exclusion requests to cover those orders. PR Doc. 22-00243-024, 038-039, 265, 356, 405-406; CR at 22-00243-369 to 371. This evidence should have led the agency to conclude that U.S. Steel did not meet the quantity criterion, as U.S. Steel did not have current availability when the orders were placed and the exclusion requests were filed. Instead, Commerce dismissed this evidence as "irrelevant" and stated that it generally does not give "considerable weight to the evidence of history or interactions of requesters and objectors in its analysis unless it is clearly related to a denial of a prior request for the same product, or clearly indicative of the parties' future dealings." Remand Redetermination at 12.

This conclusory statement contradicts Commerce's own regulatory guidance and thus cannot be sustained. Furthermore, the court has previously found that evidence of an objector not supplying a product for years is "contrary evidence" that "Commerce must address." *NLMK Pennsylvania*, 617 F. Supp. 3d at 1327. Simply declaring such evidence to be "irrelevant" because it runs contrary to the agency's decision is plainly arbitrary and capricious. Commerce must actually address this evidence and explain (1) how such evidence does not support a finding that U.S. Steel failed to meet the quantity criterion; and (2) how such evidence does not contradict U.S. Steel's certified representations about its ability to deliver the full requested quantities.

Commerce's dismissal of this evidence is not only inconsistent with its regulations and prior court decisions, but also incorrect factually. The agency explained that it gives "considerable weight" to evidence of past dealing that is "clearly related to a denial of a prior request for the same product, or clearly indicative of the parties' future dealings." Remand Redetermination at 12. Both criteria are met here. The evidence submitted by Seneca in its rebuttals about past dealings with U.S. Steel and the discussion of the denied exclusion requests from 2018 in Seneca's

December 2023 letter (*see* **Attachment 2**) are both "clearly related to a denial of a prior request for the same product" and "clearly indicative of the parties' future dealings."

As explained in the December 2023 letter and in the Complaint, the exclusion requests filed by Seneca in 2018 and denied based on U.S. Steel's objections were for prime ETP, just like several requests filed in October 2021, January 2022, and March 2022. *See* **Attachment 2** at 5-7; Compl., ECF No. 7, ¶¶ 10, 11, 13, and 19; PR at 22-0243-038, 307, and 405. Seneca also explained in its requests and rebuttals its attempts from 2018 through 2022 to source TMP from U.S. Steel, and U.S. Steel's repeated refusals and failures to supply anything more than a fraction of what Seneca required, on a delayed schedule. PR at 22-0243-023 to 024, 038 to 040, and 405-406. All of this evidence was "clearly indicative of the parties' future dealings," especially as Seneca documented with contemporaneous correspondence how U.S. Steel was telling Seneca it would not be able to supply it with the requested steel while simultaneously telling Commerce a different story. *Compare* PR 22-0243-021 (showing U.S. Steel's objection dated November 26, 2021) *with* CR 22-00243-45 (e-mail from U.S. Steel dated November 30, 2021 in which U.S. Steel states it has nothing to offer Seneca).

The record documented by Seneca falls squarely within the agency's binding guidance regarding when it will take evidence of past dealings into account. The failure of Commerce even to acknowledge Seneca's invocation of these policies, let alone to explain why those policies do not apply to Seneca's requests, falls far short of what the APA requires.

### C. Commerce's Prospective Analysis Is Arbitrary And Capricious And Leads To Absurd Results

Commerce's prospective analysis of Seneca's exclusion requests is arbitrary and capricious because it "entirely fail{s} to consider an important aspect of the problem"—substantial record evidence demonstrating years of repeated refusals by U.S. Steel to supply Seneca. *State Farm*, 463

U.S. at 43. While Commerce claims in its regulatory guidance that it will consider this kind of evidence, and has in fact relied on similar evidence to dismiss objections in other cases, Commerce has unreasonably and without sufficient explanation refused to do the same here.

The result of Commerce's remand redetermination is that exclusion requesters like Seneca, who face repeated objections from companies that for years have refused to supply them, will never be able to obtain an exclusion so long as the objector states that it can supply the full volume at some time in the future—a time that never arrives. This absurd result should be rejected by this Court. According to Commerce, it does not matter that the exclusion requester provides documentation and evidence demonstrating the objector's refusal to supply over several years; nor does it matter that the objector declined to provide any volume at the time the orders covered by the requests were placed; nor does it matter that in the very same month the objector submitted an objection, it again told the requester it had nothing available. Remand Redetermination at 11-12; PR 22-0243-021, 024, 077, 131, 185, 239, 293, 344, and 390; CR 22-00243-045.

As applied here, Commerce's prospective analysis also runs afoul of the President's proclamation establishing the Section 232 exclusion process. In that proclamation, the President authorized the Secretary of Commerce to "provide relief" from Section 232 tariffs when "any steel article" is "not to be produced in the United States in a sufficient and reasonably available amount." 83 Fed. Reg. 11,625, 11,627 (Mar. 8, 2018). When domestic suppliers are *actually* unable or unwilling to supply needed steel for years, including at the time the purchase orders covered by the requests are placed, requesters deserve relief. Any purely prospective approach to determine whether steel articles are "produced in the United States in a sufficient and reasonably available amount" will "entirely fail{} to consider an important aspect of the problem" that such exclusions were meant to address. *State Farm*, 463 U.S. at 43. A rule that considers only claims of future,

theoretical capacity, while ignoring uncontested evidence of past refusals to supply—including for the very same orders covered by specific exclusion requests—provides no "relief" for eligible requesters. Domestic producers can simply continue to object, yet never fulfill orders for the full requested volumes, precisely as U.S. Steel has done here—leaving requesters to suffer the results. The Proclamation cannot be read this way, and such an approach is wholly unreasonable. A purely prospective methodology provides no "relief" at all when on-the-ground market realities contradict objectors' theoretical projections of future availability. Such a process cannot be sustained in light of the President's directive, and as applied to Seneca—or to any requester that seeks supply from an objector in vain, places purchase orders to cover the shortfall in domestic availability, and then files exclusion requests to cover imminent deliveries of those orders—this Court should set it aside.

Finally, Commerce's prospective analysis applied here violates the APA. Under the APA, the "reasonableness" of a prospective approach "necessarily invites reflection" on past applications, and a method that ignores past unavailability becomes arbitrary "in the face of experience." *American Petroleum Inst. v. EPA*, 706 F.3d 474, 477 (D.C. Cir. 2013). More generally, "changes in factual . . . circumstances may impose upon {an} agency an obligation to reconsider a settled policy," *Bechtel v. FCC*, 957 F.2d 873, 881 (D.C. Cir. 1992), especially when "a significant factual predicate of a prior decision has been removed," *id*. (cleaned up). The APA thus requires Commerce to consider an objector's history of unavailability vis-à-vis the requester. Turning a blind eye to an undisputed record of past and present dealings while focusing on hypothetical future dealings renders the entire exclusion process arbitrary. Here, Seneca demonstrated that U.S. Steel's claims of availability were not credible and were contradicted by U.S. Steel's own contemporaneous written communications. Any assessment of availability and the quantity criterion requires an evaluation of the objector's credibility and track record of

supplying the relevant products. Where an objector consistently refuses to supply a product over years despite continuing outreach from the requester, and then declines to supply the specific volumes at issue in the purchase orders covered by the requests, sudden claims of future availability deserve no weight. Ignoring those past and present dealings would be unreasonable and lead to absurd results. *See Aqua Prods., Inc. v. Matal*, 872 F.3d 1290, 1325 (Fed. Cir. 2017) ("{T}he agency must take account of all the evidence of record, including that which detracts from the conclusion the agency ultimately reaches."); *Butte Cnty., Cal. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010) ("{A}n agency cannot ignore evidence contradicting its position."); *NLMK Pennsylvania*, 617 F. Supp. 3d at 1327 (evidence that objector had not supplied product for years was "contrary evidence" that "Commerce must address").

## V.        CONCLUSION

For these reasons, Seneca respectfully urges the Court to (i) declare that Commerce's denials were arbitrary and capricious or otherwise unlawful under the APA; (ii) declare that Seneca was entitled to the requested exclusions from Section 232 tariffs retroactive to the date of filing; (iii) instruct Commerce to grant the denied exclusions, enabling U.S. Customs and Border Protection to refund the Section 232 tariffs paid on import entries of Seneca's purchases; and (iv) provide any other relief the Court deems just and proper.

Respectfully Submitted,

*/s/ James M. Smith*
James M. Smith
Thomas Brugato
Kwan Woo (Kwan) Kim
Edward J. Thomas III

**COVINGTON & BURLING LLP**
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com
tbrugato@cov.com
kkim@cov.com
ejthomas@cov.com

May 1, 2024                    *Counsel for Plaintiff Seneca Foods Corporation*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Chambers Procedure 2(B)(2), the undersigned certifies that Plaintiff Seneca Foods Corporation's Comments on Remand Redetermination contains 9,991 words as computed by Covington & Burling's word processing system, excluding those portions that do not count toward the word limitation, and thus complies with the Court's Chambers Procedures.

<u>/s/ James M. Smith</u>
James M. Smith
COVINGTON & BURLING LLP
850 Tenth Street, NW
Washington, DC 20001-4956
(202) 662-6000
jmsmith@cov.com

May 1, 2024                    *Counsel for Plaintiff Seneca Foods Corporation*

**Attachment 1**

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 285327**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime Tin-Free Steel (TFS or ECCS) according to ASTM A623, Type L, DR8, CA, 7C Melted Finish, PET-laminated Electrolytic Chromium-Coated Steel, 65# Basis Weight (0.18161mm nominal thickness) and 95# Basis Weight (0.26543mm nominal thickness)
- HTSUS: 7210500020
- Total Requested Annual Exclusion Quantity in Kilograms: 1433228
- Date Submitted: 3/29/2022

**Analysis:**

The Bureau of Industry and Security ("BIS") has received a request, referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 11, 2018, has solicited and taken into account analysis provided by the International Trade Administration (ITA), and assessed other interagency comments as applicable.

In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA has provided the attached findings to BIS and recommends granting the request for an exclusion.

BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be denied notwithstanding the recommendation of approval.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be granted for one year.

This approval of your exclusion request does not constitute a ruling under Title 19 Part 177, Code of Federal Regulations (19 CFR 177.1(d)(1)), or official confirmation of the correct provision under the Harmonized Tariff Schedule of the United States for your goods.  To be certain of the correct tariff provision, you may request a ruling by either mailing your request to Director, National Commodity Specialist Division, Customs and Border Protection, 201 Varick Street, Suite 501, New York NY 10014, attn: Binding Ruling Request or you may submit your request electronically at https://erulings.cbp.gov/s.

**DECISION ON EXCLUSION REQUEST #285327**

_____X_____ I approve granting this exclusion request. The granted exclusion number is 285327. This exclusion is granted for the merchandise described in the exclusion request and classified in the 10-digit provision of the Harmonized Tariff Schedule of the United States (HTSUS) claimed in the exclusion request. This exclusion is granted only in the quantities requested from each identified supplier and country of origin, as specified in the original exclusion request form. This exclusion is granted for one year from the date of signature below. The requester may consult CSMS #18-000378 for further instructions on using the exclusion number and receiving retroactive relief.

_____ I do not approve granting this exclusion request.

_____ I would like to discuss.

_Matthew S. Borman_
Deputy Assistant Secretary of Export Administration

**January 28, 2023**
Date

**International Trade Administration (ITA)**
**Recommendation Document for Approval of Steel Exclusion Request Under Section 232**

The Bureau of Industry and Security (BIS) has referred this exclusion request to ITA for ITA's recommendation as to whether the Steel article subject to this exclusion request is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, within the meaning of Supplement 1 of 15 CFR Part 705. ITA provides the following recommendation based on an evaluation of all relevant submitted documentation, including relevant confidential or proprietary business information (CBI), and, when appropriate, an evaluation of facts by a Subject Matter Expert (SME).

Exclusion Request ID: 285327
Requestor:  Seneca Foods Corporation (Seneca)
Objector(s):

    United States Steel Corporation (U.S. Steel)

Case Filings

|  | Seneca | U.S. Steel |  |  |  |
|---|---|---|---|---|---|
| Rebuttal against Objector? |  | Yes |  |  |  |
| Surrebuttal against Requestor? |  | Yes |  |  |  |
| CBI submitted? (*request/objection*) | No | No |  |  |  |
| CBI submitted? (*rebuttal/surrebuttal*) | No | Yes |  |  |  |
| Supporting docs included? (*request/objection*) | Yes | Yes |  |  |  |
| Supporting docs included? (*rebuttal/surrebuttal*) | Yes | Yes |  |  |  |

Recommendation: Approval
Rationale: Objector(s) does/do not meet the quality, quantity, and/or timeliness criteria.

| **QUALITY** | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) – QUALITY** | | | | |
| | U.S. Steel | | | |
| Identical (1.c or 1.d filled in)* | No | | | |
| Substitute (1.e or 1.f filled in)* | Yes | | | |
| **2.c\*** match | Yes | | | |
| **2.d\*** match | Yes | | | |
| **2.e\*** match | No | | | |
| **Standards** match Exclusion Request | N/A | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | | | |
| **Subject Matter Expert (SME) Evaluation of Facts:** No | | | | |
| **Analysis of the Record:** Because U.S. Steel does not meet the timeliness criterion, ITA has not evaluated U.S. Steel's ability to meet the quality criterion. | | | | |

| **QUANTITY** | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) –QUANTITY** | | | | |
| | U.S. Steel | | | |
| **3.a** | 100% | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | | | |
| **Analysis of the Record:** Because U.S. Steel does not meet the timeliness criterion, ITA has not evaluated U.S. Steel's ability to meet the quantity criterion. | | | | |

| TIMELINESS | | | | |
|---|---|---|---|---|
| **REQUESTOR– DELIVERY TIME** | | | | |
| **2.d (request form):** Days: 270 | | | | |
| **2.f (request form):** Days: 90 | | | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the requestor's delivery time information specified in 2.d and 2.f? | | | | |
| No | | | | |
| **OBJECTOR – DELIVERY TIME** | | | | |
|  | U.S. Steel |  |  |  |
| **3.b** | BPI |  |  |  |
| **3.d** | BPI |  |  |  |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the objector's delivery time information specified in 3b and 3d? | | | | |
|  | No |  |  |  |
| **Delivery Time Totals**<br>   o  Requestor's Import Delivery Time = {*2d + 2f of the exclusion request, plus any adjustments*}<br>   o  Objector's Delivery Time = {*3b + 3d of the objection, plus any adjustments*} | | | | |
| **Analysis of the Record:** Seneca reports 360 days for import delivery time. U.S. Steel claims its delivery time is business proprietary information, and provides this BPI in its confidential attachment to its surrebuttal filing. In its surrebuttal attachment, U.S. Steel states it, "cannot provide the exact number of days a processing partner would require to laminate the TFS manufactured by U.S. Steel." The information provided in both the public and confidential attachments is ambiguous and it is unclear what timeline U.S. Steel is committing to. Therefore, ITA is unable to evaluate U.S. Steel's delivery time in comparison to the timeframe in which Seneca can get the imported product delivered. As such, U.S. Steel does not meet the timeliness criterion. | | | | |

**Explanation/Additional Comments** (if needed)**:**

| General Notes: |
|---|
| **This memorandum describes, in full, the factors which ITA has considered in reaching its recommendation and provides a complete explanation for the basis of that recommendation.**<br><br>ITA reviews each individual exclusion request for which objections are submitted by U.S. producers and provides the Bureau of Industry and Security with a recommendation on the technical merits of the request. In making a recommendation, ITA examines only the claims and information submitted in the certified documentation for requests, objections, rebuttals and surrebuttals, to determine if a company meets the criteria specified in the regulations; specifically, if the objector can provide the products at issue in a sufficient amount of time (timeliness), in a reasonably available amount (quantity), and in a quality which is satisfactory. Per Department of Commerce (Department) policy, ITA will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request. When determining if a company meets the quantity criteria, ITA examines the response to section 3.a; ITA does not examine the production capacity of a company or industry as a whole. The Department collects such capacity data in section 1 only for statistical purposes and not for use in analyzing individual exclusion requests and objections.<br><br>Due to changes announced in the Interim Final Rule (IFR) on December 14, 2020 (85 FR 81060), ITA no longer utilizes the responses to Section 1 of the objection form when determining if a company meets the timeliness criterion. For exclusion requests submitted on or after December 14, 2020, ITA will utilize the information in Section 3 to determine if a company meets the timeliness criterion, by comparing the Requestor's import delivery time and the Objector's delivery time. If the Objector's delivery time is equal to or less than the Requestor's import delivery time, then the Objector meets the timeliness criterion. ITA determines the Requestor's import delivery time by adding the numbers in 2d and 2f of the exclusion request form, plus any appropriate adjustments based on evidence provided in any submitted documentation. ITA determines the Objector's delivery time by adding the numbers in 3b and 3d of the objection form, plus any appropriate adjustments based on evidence provided in any submitted documentation.  In addition, if the Objector's delivery time is greater than the Requestor's import delivery time, but is equal or less than 8 weeks, the Objector meets the timeliness criterion.<br><br>An SME's evaluation of facts is typically sought when submitted documentation indicates: the objector offers a substitute product, the specifications differ in an objector's offering from the request, a processing method differs between the request and objection, or any other relevant product-specific issues. ITA takes an SME's evaluation of facts into consideration when making a recommendation; however, an SME's evaluation of facts is not the only determining factor and is not necessarily dispositive.<br><br>**ITA will base its recommendation on an evaluation of all relevant submitted certified documentation, including relevant CBI, and, when appropriate, an evaluation of facts by an SME. Only information provided in the submitted documentation will be used in the** |

| Field Definitions (Requestor Form) | |
|---|---|
| 2.d | Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization: |
| 2.f | Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock: |

|  |  |
|---|---|

| * Field Definitions (Objection Form) | |
|---|---|
| 1.c | Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company- owned plant in the United States? If "Yes" identify the location(s) of your production facilities in the United States. |
| 1.d | This organization does not currently manufacture the identified product, but can produce the product identified in the Exclusion Request within the following time period at the following |
| 1.e | Does this organization currently manufacture, or can immediately manufacture (within 8 weeks), in a company-owned plant located in the United States a substitute product for the identified product that has similar form, fit, function, and performance? If "Yes" identify the location(s) of your production facilities in the United States, current plant capacity and utilization |
| 1.f | This organization does not currently manufacture the identified product, but can make a substitute product that has similar form, fit, function, and performance within the following time period at the following facilities: |
| 2.c | State the chemical composition of the specific product that your organization can manufacture at a company-owned production facility located in the United States. |
| 2.d | Provide the following information on the single product that is the subject of this Objection Filing: 1) dimensional information covering the single product subject to the Exclusion Request; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature. |
| 2.e | Provide the following information on the single product that is the subject of this Objection Filing: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness. |
| 3.a | What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis? |
| 3.b | State the number of days required by your organization to ship from its U.S. manufacturing plant the product covered by this Exclusion Request from the time the purchase order is received: |
| 3.c | State the number of days required to manufacture the product covered by this Exclusion Request from the time a binding purchase order is received: |
| 3.d | State the delivery time in days for the product covered under this Exclusion Request from the time it is shipped from your manufacturing plant to the Exclusion Requestor's loading dock: |

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 405495**

**Summary:**

- Requester: Trivium Packaging USA Inc
- Product Description: Single Reduced DWI/D&I Electrolytic Tinplate Steel Coil, TH360, 50/20 ETP. Thickness tolerance .215 - .238mm. Width tolerance 1200 - 1203mm.
- HTSUS: 7225990090
- Total Requested Annual Exclusion Quantity in Kilograms: 600000
- Date Submitted: 11/17/2023

**Analysis:**

The Bureau of Industry and Security ("BIS") has received a request, referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 11, 2018, has solicited and taken into account analysis provided by the International Trade Administration (ITA), and assessed other interagency comments as applicable.

In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA has provided the attached findings to BIS and recommends granting the request for an exclusion.

BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be denied notwithstanding the recommendation of approval.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be granted for one year.

This approval of your exclusion request does not constitute a ruling under Title 19 Part 177, Code of Federal Regulations (19 CFR 177.1(d)(1)), or official confirmation of the correct provision under the Harmonized Tariff Schedule of the United States for your goods.  To be certain of the correct tariff provision, you may request a ruling by either mailing your request to Director, National Commodity Specialist Division, Customs and Border Protection, 201 Varick Street, Suite 501, New York NY 10014, attn: Binding Ruling Request or you may submit your request electronically at https://erulings.cbp.gov/s.

**DECISION ON EXCLUSION REQUEST #405495**

_____**X**_____ I approve granting this exclusion request. The granted exclusion number is 405495. This exclusion is granted for the merchandise described in the exclusion request and classified in the 10-digit provision of the Harmonized Tariff Schedule of the United States (HTSUS) claimed in the exclusion request. This exclusion is granted only in the quantities requested from each identified supplier and country of origin, as specified in the original exclusion request form. This exclusion is granted for one year from the date of signature below. The requester may consult CSMS #18-000378 for further instructions on using the exclusion number and receiving retroactive relief.

_____ I do not approve granting this exclusion request.

_____ I would like to discuss.

*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

**March 2, 2024**
Date

**International Trade Administration (ITA)**
**Recommendation Document for Approval of Steel Exclusion Request Under Section 232**

The Bureau of Industry and Security (BIS) has accepted this exclusion request as meeting the requirements for submission, including the product definition. BIS referred this exclusion request to ITA to analyze the objection(s) and for ITA's recommendation as to whether the Steel article subject to this exclusion request is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, within the meaning of Supplement 1 of 15 CFR Part 705. ITA provides the following recommendation based on an evaluation of all relevant submitted documentation, including relevant confidential or proprietary business information (CBI), and, when appropriate, an evaluation of facts by a Subject Matter Expert (SME).

Exclusion Request ID: 405495
Requestor:   Trivium Packaging USA Inc (Trivium)
Objector(s):

Cleveland-Cliffs Steel Inc. (Cleveland-Cliffs )

Case Filings

|  | Trivium | Cleveland-Cliffs |  |  |  |
|---|---|---|---|---|---|
| Rebuttal against Objector? |  | Yes |  |  |  |
| Surrebuttal against Requestor? |  | Yes |  |  |  |
| CBI submitted? *(request/objection)* | No | Yes |  |  |  |
| CBI submitted? *(rebuttal/surrebuttal)* | Yes | No |  |  |  |
| Supporting docs included? *(request/objection)* | No | No |  |  |  |
| Supporting docs included? *(rebuttal/surrebuttal)* | Yes | No |  |  |  |

Recommendation: Approval
Rationale: Objector(s) does/do not meet the quality, quantity, and/or timeliness criteria.

| QUALITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) – QUALITY** | | | | |
| | Cleveland-Cliffs | | | |
| Identical (1.c or 1.d filled in)* | Yes | | | |
| Substitute (1.e or 1.f filled in)* | Blank | | | |
| **2.c\*** match | | | | |
| **2.d\*** match | | | | |
| **2.e\*** match | | | | |
| **Standards** match Exclusion Request | | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| **Subject Matter Expert (SME) Evaluation of Facts:** No | | | | |
| **Analysis of the Record:** Because Cleveland-Cliffs does not meet the timeliness criterion, ITA has not evaluated Cleveland-Cliffs' ability to meet the quality criterion. | | | | |

| QUANTITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) –QUANTITY** | | | | |
| | Cleveland-Cliffs | | | |
| **3.a** | 100% | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| **Analysis of the Record:** Because Cleveland-Cliffs does not meet the timeliness criterion, ITA has not evaluated Cleveland-Cliffs' ability to meet the quantity criterion. | | | | |

| TIMELINESS | | | | |
|---|---|---|---|---|
| **REQUESTOR– DELIVERY TIME** | | | | |
| **2.d (request form):** Days: 130 | | | | |
| **2.f (request form):** Days: 50 | | | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the requestor's delivery time information specified in 2.d and 2.f? | | | | |
| No | | | | |
| **OBJECTOR – DELIVERY TIME** | | | | |
| | Cleveland-Cliffs | | | |
| **3.b** | BPI | | | |
| **3.d** | BPI | | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the objector's delivery time information specified in 3b and 3d? | | | | |
| | Yes | | | |

**Delivery Time Totals**
- Requestor's Import Delivery Time = {*2.d + 2.f of the exclusion request, plus any adjustments*}
- Objector's Delivery Time = {*3.b + 3.d of the objection, plus any adjustments*}

**Analysis of the Record:** Trivium reports 180 days for import delivery. Cleveland-Cliffs claims the information for 3.b and 3.d is business proprietary in its objection form. ITA requested that information from Cleveland-Cliffs and Cleveland-Cliffs submitted the delivery timeframe as business proprietary information (BPI). In addition, in its objection, Cleveland-Cliffs explains, "Cliffs is capable and willing to produce D&I steel for the can industry. While not done recently, based on the melting requirements for other steel markets Cliffs successfully supplies, we are confident in our ability to supply D&I steel. There is currently a major D&I internal development project in process at Weirton to refine our ability to produce this product." Further, in its surrebuttal, Cleveland-Cliffs states, "Cleveland Cliffs/Weirton is currently conducting a high priority internal qualification process to refine the parameters that will allow us to return to supplying steel for D&I end uses for the US market." These statements make it clear that Cleveland-Cliffs is still in a development process for manufacturing the requested product. Upon analysis, ITA finds that the BPI provided by Cleveland-Cliffs did not specify the length of time that might be necessary for it to complete its internal development project or its internal qualification process or indicate whether that timeframe has been included with the information it provided. Based on Cleveland-Cliffs' statements and this lack of clarity, ITA does not know how long it will take for Cleveland-Cliffs to deliver the product; and ITA is unable to evaluate Cleveland-Cliffs' delivery time in comparison to the timeframe in which Trivium can get the imported product delivered. As such, ITA has determined that Cleveland-Cliffs does not meet the timeliness criterion.

**Explanation/Additional Comments** (if needed):

| General Notes: |
|---|

**This memorandum describes, in full, the factors which ITA has considered in reaching its recommendation and provides a complete explanation for the basis of that recommendation.**

ITA reviews each individual exclusion request for which objections are submitted by U.S. producers and provides the Bureau of Industry and Security with a recommendation on the technical merits of the request. In making a recommendation, ITA examines only the claims and information submitted in the certified documentation for requests, objections, rebuttals and surrebuttals, to determine if a company meets the criteria specified in the regulations; specifically, if the objector can provide the products at issue in a sufficient amount of time (timeliness), in a reasonably available amount (quantity), and in a quality which is satisfactory. Per Department of Commerce (Department) policy, ITA will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request. When determining if a company meets the quantity criteria, ITA examines the response to section 3.a; ITA does not examine the production capacity of a company or industry as a whole. The Department collects such capacity data in section 1 only for statistical purposes and not for use in analyzing individual exclusion requests and objections.

Due to changes announced in the Interim Final Rule (IFR) on December 14, 2020 (85 FR 81060), ITA no longer utilizes the responses to Section 1 of the objection form when determining if a company meets the timeliness criterion. For exclusion requests submitted on or after December 14, 2020, ITA will utilize the information in Section 3 to determine if a company meets the timeliness criterion, by comparing the Requestor's import delivery time and the Objector's delivery time. If the Objector's delivery time is equal to or less than the Requestor's import delivery time, then the Objector meets the timeliness criterion. ITA determines the Requestor's import delivery time by adding the numbers in 2.d and 2.f of the exclusion request form, plus any appropriate adjustments based on evidence provided in any submitted documentation. ITA determines the Objector's delivery time by adding the numbers in 3.b and 3.d of the objection form, plus any appropriate adjustments based on evidence provided in any submitted documentation.  In addition, if the Objector's delivery time is greater than the Requestor's import delivery time, but is equal or less than 8 weeks, the Objector meets the timeliness criterion.

An SME's evaluation of facts is typically sought when submitted documentation indicates: the objector offers a substitute product, the specifications differ in an objector's offering from the request, a processing method differs between the request and objection, or any other relevant product-specific issues. ITA takes an SME's evaluation of facts into consideration when making a recommendation; however, an SME's evaluation of facts is not the only determining factor and is not necessarily dispositive.

**ITA will base its recommendation on an evaluation of all relevant submitted certified documentation, including relevant CBI and, when appropriate, an evaluation of facts by an SME. Only information provided in the submitted documentation will be used in the**

| Field Definitions (Requestor Form) |
|---|

| 2.d | Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization: |
|-----|---|
| 2.f | Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock: |


| * Field Definitions (Objection Form) | |
|-----|---|
| 1.c | Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company- owned plant in the United States? If "Yes" identify the location(s) of your production facilities in the United States. |
| 1.d | This organization does not currently manufacture the identified product, but can produce the product identified in the Exclusion Request within the following time period at the following |
| 1.e | Does this organization currently manufacture, or can immediately manufacture (within 8 weeks), in a company-owned plant located in the United States a substitute product for the identified product that has similar form, fit, function, and performance? If "Yes" identify the location(s) of your production facilities in the United States, current plant capacity and utilization |
| 1.f | This organization does not currently manufacture the identified product, but can make a substitute product that has similar form, fit, function, and performance within the following time period at the following facilities: |
| 2.c | State the chemical composition of the specific product that your organization can manufacture at a company-owned production facility located in the United States. |
| 2.d | Provide the following information on the single product that is the subject of this Objection Filing: 1) dimensional information covering the single product subject to the Exclusion Request; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature. |
| 2.e | Provide the following information on the single product that is the subject of this Objection Filing: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness. |
| 3.a | What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis? |
| 3.b | State the number of days required by your organization to ship from its U.S. manufacturing plant the product covered by this Exclusion Request from the time the purchase order is received: |
| 3.c | State the number of days required to manufacture the product covered by this Exclusion Request from the time a binding purchase order is received: |
| 3.d | State the delivery time in days for the product covered under this Exclusion Request from the time it is shipped from your manufacturing plant to the Exclusion Requestor's loading dock: |

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 229654**

**Summary:**

- Requester: Seneca Foods Corporation
- Product Description: Prime Tin-Free Steel (TFS or ECCS) according to ASTM A623, Type L, DR8, CA, 7C Melted Finish, CDC-3 Chemical Treatment, PET-Laminated Electrolytic Chromium-Coated Steel, 65# Basis Weight (0.18161mm thickness)
- HTSUS: 7210500020
- Total Requested Annual Exclusion Quantity in Kilograms: 140000
- Date Submitted: 7/2/2021

**Analysis:**

The Bureau of Industry and Security ("BIS") has received a request, referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 11, 2018, has solicited and taken into account analysis provided by the International Trade Administration (ITA), and assessed other interagency comments as applicable.

In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA has provided the attached findings to BIS and recommends granting the request for an exclusion.

BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be denied notwithstanding the recommendation of approval.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be granted for one year.

This approval of your exclusion request does not constitute a ruling under Title 19 Part 177, Code of Federal Regulations (19 CFR 177.1(d)(1)), or official confirmation of the correct provision under the Harmonized Tariff Schedule of the United States for your goods.  To be certain of the correct tariff provision, you may request a ruling by either mailing your request to Director, National Commodity Specialist Division, Customs and Border Protection, 201 Varick Street, Suite 501, New York NY 10014, attn: Binding Ruling Request or you may submit your request electronically at https://erulings.cbp.gov/s.


**DECISION ON EXCLUSION REQUEST #229654**


_____**X**_____ I approve granting this exclusion request. The granted exclusion number is 229654. This exclusion is granted for the merchandise described in the exclusion request and classified in the 10-digit provision of the Harmonized Tariff Schedule of the United States (HTSUS) claimed in the exclusion request. This exclusion is granted only in the quantities requested from each identified supplier and country of origin, as specified in the original exclusion request form. This exclusion is granted for one year from the date of signature below. The requester may consult CSMS #18-000378 for further instructions on using the exclusion number and receiving retroactive relief.


_____ I do not approve granting this exclusion request.


_____ I would like to discuss.


*Matthew S. Borman*
Deputy Assistant Secretary of Export Administration

**October 16, 2021**
Date

**International Trade Administration (ITA)**
**Recommendation Document for Approval of Steel Exclusion Request Under Section 232**

The Bureau of Industry and Security (BIS) has referred this exclusion request to ITA for ITA's recommendation as to whether the Steel article subject to this exclusion request is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, within the meaning of Supplement 1 of 15 CFR Part 705. ITA provides the following recommendation based on an evaluation of all relevant submitted documentation, including relevant confidential or proprietary business information (CBI), and, when appropriate, an evaluation of facts by a Subject Matter Expert (SME).

Exclusion Request ID: 229654
Requestor:   Seneca Foods Corporation (Seneca)
Objector(s):

      United States Steel Corporation (U.S. Steel)

Case Filings

|  | Seneca | U.S. Steel |  |  |  |
|---|---|---|---|---|---|
| Rebuttal against Objector? |  | Yes |  |  |  |
| Surrebuttal against Requestor? |  | Yes |  |  |  |
| CBI submitted? *(request/objection)* | No | No |  |  |  |
| CBI submitted? *(rebuttal/surrebuttal)* | No | Yes |  |  |  |
| Supporting docs included? *(request/objection)* | Yes | Yes |  |  |  |
| Supporting docs included? *(rebuttal/surrebuttal)* | Yes | Yes |  |  |  |

Recommendation: Approval
Rationale: Objector(s) does/do not meet the quality, quantity, and/or timeliness criteria.

| QUALITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) – QUALITY** | | | | |
| | U.S. Steel | | | |
| Identical (1.c or 1.d filled in)* | No | | | |
| Substitute (1.e or 1.f filled in)* | Yes | | | |
| **2.c*** match | Yes | | | |
| **2.d*** match | Yes | | | |
| **2.e*** match | Yes | | | |
| **Standards** match Exclusion Request | N/A | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | | | |
| **Subject Matter Expert (SME) Evaluation of Facts:** No | | | | |
| **Analysis of the Record:** Seneca is requesting exclusion for laminated tin-free steel (LTFS) to be used in the manufacture of food cans. U.S. Steel offers to manufacture a tin-free steel (TFS) substitute product which can be laminated by a third-party processor. However, U.S. Steel includes contradictory statements about whether it has an agreement with a third-party processor to facilitate the lamination. In its objection, U.S. Steel states it "can facilitate further coating of its products by a trusted processing partner prior to delivery", but in its surrebuttal, U.S. Steel states it "is actively pursuing additional partnerships to provide laminated TFS". This creates an ambiguity in U.S. Steel's product offering and whether it will be laminated as specified. LTFS and TFS are not interchangeable based on either manufacturability or performance as a can holding product. Because U.S. Steel's offering is ambiguously defined, between LTFS and TFS, ITA is unable to determine if U.S. Steel is offering a suitable substitute. As such, U.S. Steel does not meet the quality criterion. | | | | |

| QUANTITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) –QUANTITY** | | | | |
| | U.S. Steel | | | |
| **3.a** | 100% | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | | | |
| **Analysis of the Record:** Because U. S. Steel does not meet the quality criterion, ITA has not evaluated U.S. Steel's ability to meet the quantity criterion. | | | | |

| **TIMELINESS** | | | | |
|---|---|---|---|---|
| **REQUESTOR– DELIVERY TIME** | | | | |
| **2.d (request form):** Days: 270 | | | | |
| **2.f (request form):** Days: 90 | | | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the requestor's delivery time information specified in 2.d and 2.f? | | | | |
| No | | | | |
| **OBJECTOR – DELIVERY TIME** | | | | |
|  | U.S. Steel |  |  |  |
| **3.b** | BPI |  |  |  |
| **3.d** | BPI |  |  |  |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the objector's delivery time information specified in 3b and 3d? | | | | |
|  | No |  |  |  |
| **Delivery Time Totals**<br>○   Requestor's Import Delivery Time = {*2d + 2f of the exclusion request, plus any adjustments*}<br>○   Objector's Delivery Time = {*3b + 3d of the objection, plus any adjustments*} | | | | |
| **Analysis of the Record:** Because U. S. Steel does not meet the quality criterion, ITA has not evaluated U.S. Steel's ability to meet the timeliness criterion. | | | | |

**Explanation/Additional Comments** (if needed)**:**

| General Notes: |
|---|
| **This memorandum describes, in full, the factors which ITA has considered in reaching its recommendation and provides a complete explanation for the basis of that recommendation.** |
| ITA reviews each individual exclusion request for which objections are submitted by U.S. producers and provides the Bureau of Industry and Security with a recommendation on the technical merits of the request. In making a recommendation, ITA examines only the claims and information submitted in the certified documentation for requests, objections, rebuttals and surrebuttals, to determine if a company meets the criteria specified in the regulations; specifically, if the objector can provide the products at issue in a sufficient amount of time (timeliness), in a reasonably available amount (quantity), and in a quality which is satisfactory. When determining if a company meets the quantity criteria, ITA examines the response to section 3.a; ITA does not examine the production capacity of a company or industry as a whole. The Department of Commerce collects such capacity data in section 1 only for statistical purposes and not for use in analyzing individual exclusion requests and objections. |
| Due to changes announced in the Interim Final Rule (IFR) on December 14, 2020 (85 FR 81060), ITA no longer utilizes the responses to Section 1 of the objection form when determining if a company meets the timeliness criterion. For exclusion requests submitted on or after December 14, 2020, ITA will utilize the information in Section 3 to determine if a company meets the timeliness criterion, by comparing the Requestor's import delivery time and the Objector's delivery time. If the Objector's delivery time is equal to or less than the Requestor's import delivery time, then the Objector meets the timeliness criterion. ITA determines the Requestor's import delivery time by adding the numbers in 2d and 2f of the exclusion request form, plus any appropriate adjustments based on evidence provided in any submitted documentation. ITA determines the Objector's delivery time by adding the numbers in 3b and 3d of the objection form, plus any appropriate adjustments based on evidence provided in any submitted documentation.  In addition, if the Objector's delivery time is greater than the Requestor's import delivery time, but is equal or less than 8 weeks, the Objector meets the timeliness criterion. |
| An SME's evaluation of facts is typically sought when submitted documentation indicates: the objector offers a substitute product, the specifications differ in an objector's offering from the request, a processing method differs between the request and objection, or any other relevant product-specific issues. ITA takes an SME's evaluation of facts into consideration when making a recommendation; however, an SME's evaluation of facts is not the only determining factor and is not necessarily dispositive. |
| **ITA will base its recommendation on an evaluation of all relevant submitted certified documentation, including relevant CBI, and, when appropriate, an evaluation of facts by an SME. Only information provided in the submitted documentation will be used in the evaluation of exclusion requests and objections. ITA will not include any ex-parte communications in its evaluation.** |

| Field Definitions (Requestor Form) | |
|---|---|
| 2.d | Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization: |
| 2.f | Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock: |

|   |   |
|---|---|
|   |   |

| * Field Definitions (Objection Form) | |
|---|---|
| 1.c | Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company- owned plant in the United States? If "Yes" identify the location(s) of your production facilities in the United States. |
| 1.d | This organization does not currently manufacture the identified product, but can produce the product identified in the Exclusion Request within the following time period at the following |
| 1.e | Does this organization currently manufacture, or can immediately manufacture (within 8 weeks), in a company-owned plant located in the United States a substitute product for the identified product that has similar form, fit, function, and performance? If "Yes" identify the location(s) of your production facilities in the United States, current plant capacity and utilization |
| 1.f | This organization does not currently manufacture the identified product, but can make a substitute product that has similar form, fit, function, and performance within the following time period at the following facilities: |
| 2.c | State the chemical composition of the specific product that your organization can manufacture at a company-owned production facility located in the United States. |
| 2.d | Provide the following information on the single product that is the subject of this Objection Filing: 1) dimensional information covering the single product subject to the Exclusion Request; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature. |
| 2.e | Provide the following information on the single product that is the subject of this Objection Filing: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness. |
| 3.a | What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis? |
| 3.b | State the number of days required by your organization to ship from its U.S. manufacturing plant the product covered by this Exclusion Request from the time the purchase order is received: |
| 3.c | State the number of days required to manufacture the product covered by this Exclusion Request from the time a binding purchase order is received: |
| 3.d | State the delivery time in days for the product covered under this Exclusion Request from the time it is shipped from your manufacturing plant to the Exclusion Requestor's loading dock: |

**BIS Decision Document – Steel Section 232 Remedy Exclusion Request**

**EXCLUSION REQUEST NUMBER: 248746**

**Summary:**

- Requester: Trivium Packaging USA Inc
- Product Description: This product is a cold-rolled single-reduced chromium- and chromium oxide-coated tin-free steel sheet in coils laminated on both sides of the surface with a polyethylene terephthalate (PET) laminate film, meeting the following characteristics: width at least 859mm but no more than 862mm; thickness at least 0.186mm but no more than 0.206mm
- HTSUS: 7210500020
- Total Requested Annual Exclusion Quantity in Kilograms: 11970000
- Date Submitted: 9/14/2021

**Analysis:**

The Bureau of Industry and Security ("BIS") has received a request, referenced above, to exclude certain steel articles from the remedies (including quantitative limitations and/or duties, as applicable) set forth by the President in Proclamation 9705 of March 8, 2018, as amended, and in Proclamation 9740 of April 30, 2018 and Proclamation 9759 of May 31, 2018 and their accompanying annexes, in exercise of his authority to adjust imports under Section 232 of the Trade Expansion Act of 1962, as amended (19 U.S.C. 1862). Clause 3 of Proclamation 9705 and Clause 1 of Proclamation 9777 of August 29, 2018 authorized the Secretary of Commerce to provide relief from duties and quantitative limitations, respectively, upon request by a directly affected party and in consultation with other executive agencies as appropriate, for: 1) any steel article determined not to be produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality or 2) based upon specific national security considerations.

The above-captioned request for relief ("exclusion request") has met the requirements for consideration as a "complete submission" under Supplement No. 1 to 15 CFR Part 705.

BIS has considered the evidence provided, including in the exclusion request as well as any applicable objection filings and its report to the President of January 11, 2018, has solicited and taken into account analysis provided by the International Trade Administration (ITA), and assessed other interagency comments as applicable.

In examining whether the relevant steel article is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, ITA has provided the attached findings to BIS and recommends granting the request for an exclusion.

BIS accepts ITA's recommended findings and finds that no overriding national security concerns require that this exclusion request be denied notwithstanding the recommendation of approval.

**Final Recommendation:**

The Bureau of Industry and Security recommends that the above-captioned exclusion request should be granted for one year.

This approval of your exclusion request does not constitute a ruling under Title 19 Part 177, Code of Federal Regulations (19 CFR 177.1(d)(1)), or official confirmation of the correct provision under the Harmonized Tariff Schedule of the United States for your goods.  To be certain of the correct tariff provision, you may request a ruling by either mailing your request to Director, National Commodity Specialist Division, Customs and Border Protection, 201 Varick Street, Suite 501, New York NY 10014, attn: Binding Ruling Request or you may submit your request electronically at https://erulings.cbp.gov/s.


**DECISION ON EXCLUSION REQUEST #248746**


_____X_____  I approve granting this exclusion request. The granted exclusion number is 248746. This exclusion is granted for the merchandise described in the exclusion request and classified in the 10-digit provision of the Harmonized Tariff Schedule of the United States (HTSUS) claimed in the exclusion request. This exclusion is granted only in the quantities requested from each identified supplier and country of origin, as specified in the original exclusion request form. This exclusion is granted for one year from the date of signature below. The requester may consult CSMS #18-000378 for further instructions on using the exclusion number and receiving retroactive relief.


_____ I do not approve granting this exclusion request.


_____ I would like to discuss.


*Matthew S. Borman*
_____
Deputy Assistant Secretary of Export Administration

**December 31, 2021**
_____
Date

**International Trade Administration (ITA)**
**Recommendation Document for Approval of Steel Exclusion Request Under Section 232**

The Bureau of Industry and Security (BIS) has referred this exclusion request to ITA for ITA's recommendation as to whether the Steel article subject to this exclusion request is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, within the meaning of Supplement 1 of 15 CFR Part 705. ITA provides the following recommendation based on an evaluation of all relevant submitted documentation, including relevant confidential or proprietary business information (CBI), and, when appropriate, an evaluation of facts by a Subject Matter Expert (SME).

Exclusion Request ID: 248746
Requestor:  Trivium Packaging USA Inc (Trivium)
Objector(s):

     United States Steel Corporation (U.S. Steel)

Case Filings

|  | Trivium | U.S. Steel |  |  |  |
|---|---|---|---|---|---|
| Rebuttal against Objector? |  | Yes |  |  |  |
| Surrebuttal against Requestor? |  | Yes |  |  |  |
| CBI submitted? *(request/objection)* | No | No |  |  |  |
| CBI submitted? *(rebuttal/surrebuttal)* | No | Yes |  |  |  |
| Supporting docs included? *(request/objection)* | No | Yes |  |  |  |
| Supporting docs included? *(rebuttal/surrebuttal)* | Yes | Yes |  |  |  |

Recommendation: Approval
Rationale: Objector(s) does/do not meet the quality, quantity, and/or timeliness criteria.

| QUALITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) – QUALITY** | | | | |
| | U.S. Steel | | | |
| Identical (1.c or 1.d filled in)* | No | | | |
| Substitute (1.e or 1.f filled in)* | Yes | | | |
| **2.c*** match | Yes | | | |
| **2.d*** match | Yes | | | |
| **2.e*** match | No | | | |
| **Standards** match Exclusion Request | N/A | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | | | |
| **Subject Matter Expert (SME) Evaluation of Facts:** No | | | | |
| **Analysis of the Record:** Because U.S. Steel does not meet the quantity criterion, ITA has not evaluated U.S. Steel's ability to meet the quality criterion. | | | | |

| QUANTITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) –QUANTITY** | | | | |
| | U.S. Steel | | | |
| **3.a** | 0% | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | | | |
| **Analysis of the Record:** U.S. Steel states that it can manufacture zero percent of the requested quantity. ITA notes that U.S. Steel states in its objection that, "Market conditions prevent U. S. Steel from supplying additional contract volumes of tin mill products in the short-term." Further, U.S. Steel provides confidential business information (CBI) in an attachment to its surrebuttal. Nothing in the CBI provided contradicts the information provided by U.S. Steel in its objection. Because U.S. Steel manufactures zero percent of the requested quantity, U.S. Steel does not meet the quantity criterion. | | | | |

| **TIMELINESS** | | | | |
|---|---|---|---|---|
| **REQUESTOR– DELIVERY TIME** | | | | |
| **2.d (request form):** Days: 120 | | | | |
| **2.f (request form):** Days: 50 | | | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the requestor's delivery time information specified in 2.d and 2.f? | | | | |
| No | | | | |
| **OBJECTOR – DELIVERY TIME** | | | | |
|  | U.S. Steel |  |  |  |
| **3.b** | BPI |  |  |  |
| **3.d** | BPI |  |  |  |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the objector's delivery time information specified in 3b and 3d? | | | | |
|  | No |  |  |  |
| **Delivery Time Totals**<br>    o   Requestor's Import Delivery Time = {*2d + 2f of the exclusion request, plus any adjustments*}<br>    o   Objector's Delivery Time = {*3b + 3d of the objection, plus any adjustments*} | | | | |
| **Analysis of the Record:** Because U.S. Steel does not meet the quantity criterion, ITA has not evaluated U.S. Steel's ability to meet the timeliness criterion. | | | | |

**Explanation/Additional Comments** (if needed)**:**

| General Notes: |
| --- |
| **This memorandum describes, in full, the factors which ITA has considered in reaching its recommendation and provides a complete explanation for the basis of that recommendation.**<br><br>ITA reviews each individual exclusion request for which objections are submitted by U.S. producers and provides the Bureau of Industry and Security with a recommendation on the technical merits of the request. In making a recommendation, ITA examines only the claims and information submitted in the certified documentation for requests, objections, rebuttals and surrebuttals, to determine if a company meets the criteria specified in the regulations; specifically, if the objector can provide the products at issue in a sufficient amount of time (timeliness), in a reasonably available amount (quantity), and in a quality which is satisfactory. When determining if a company meets the quantity criteria, ITA examines the response to section 3.a; ITA does not examine the production capacity of a company or industry as a whole. The Department of Commerce collects such capacity data in section 1 only for statistical purposes and not for use in analyzing individual exclusion requests and objections.<br><br>Due to changes announced in the Interim Final Rule (IFR) on December 14, 2020 (85 FR 81060), ITA no longer utilizes the responses to Section 1 of the objection form when determining if a company meets the timeliness criterion. For exclusion requests submitted on or after December 14, 2020, ITA will utilize the information in Section 3 to determine if a company meets the timeliness criterion, by comparing the Requestor's import delivery time and the Objector's delivery time. If the Objector's delivery time is equal to or less than the Requestor's import delivery time, then the Objector meets the timeliness criterion. ITA determines the Requestor's import delivery time by adding the numbers in 2d and 2f of the exclusion request form, plus any appropriate adjustments based on evidence provided in any submitted documentation. ITA determines the Objector's delivery time by adding the numbers in 3b and 3d of the objection form, plus any appropriate adjustments based on evidence provided in any submitted documentation.  In addition, if the Objector's delivery time is greater than the Requestor's import delivery time, but is equal or less than 8 weeks, the Objector meets the timeliness criterion.<br><br>An SME's evaluation of facts is typically sought when submitted documentation indicates: the objector offers a substitute product, the specifications differ in an objector's offering from the request, a processing method differs between the request and objection, or any other relevant product-specific issues. ITA takes an SME's evaluation of facts into consideration when making a recommendation; however, an SME's evaluation of facts is not the only determining factor and is not necessarily dispositive.<br><br>**ITA will base its recommendation on an evaluation of all relevant submitted certified documentation, including relevant CBI, and, when appropriate, an evaluation of facts by an SME. Only information provided in the submitted documentation will be used in the evaluation of exclusion requests and objections. ITA will not include any ex-parte communications in its evaluation.** |

| Field Definitions (Requestor Form) | |
| --- | --- |
| 2.d | Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization: |
| 2.f | Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock: |

|  |  |
|--|--|

| * Field Definitions (Objection Form) | |
|--|--|
| 1.c | Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company- owned plant in the United States? If "Yes" identify the location(s) of your production facilities in the United States. |
| 1.d | This organization does not currently manufacture the identified product, but can produce the product identified in the Exclusion Request within the following time period at the following |
| 1.e | Does this organization currently manufacture, or can immediately manufacture (within 8 weeks), in a company-owned plant located in the United States a substitute product for the identified product that has similar form, fit, function, and performance? If "Yes" identify the location(s) of your production facilities in the United States, current plant capacity and utilization |
| 1.f | This organization does not currently manufacture the identified product, but can make a substitute product that has similar form, fit, function, and performance within the following time period at the following facilities: |
| 2.c | State the chemical composition of the specific product that your organization can manufacture at a company-owned production facility located in the United States. |
| 2.d | Provide the following information on the single product that is the subject of this Objection Filing: 1) dimensional information covering the single product subject to the Exclusion Request; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature. |
| 2.e | Provide the following information on the single product that is the subject of this Objection Filing: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness. |
| 3.a | What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis? |
| 3.b | State the number of days required by your organization to ship from its U.S. manufacturing plant the product covered by this Exclusion Request from the time the purchase order is received: |
| 3.c | State the number of days required to manufacture the product covered by this Exclusion Request from the time a binding purchase order is received: |
| 3.d | State the delivery time in days for the product covered under this Exclusion Request from the time it is shipped from your manufacturing plant to the Exclusion Requestor's loading dock: |

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Request Under Section 232**

The Bureau of Industry and Security (BIS) has referred this exclusion request to ITA for ITA's recommendation as to whether the Steel article subject to this exclusion request is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, within the meaning of Supplement 1 of 15 CFR Part 705. ITA provides the following recommendation based on an evaluation of all relevant submitted documentation, including relevant confidential or proprietary business information (CBI), and, when appropriate, an evaluation of facts by a Subject Matter Expert (SME).

Exclusion Request ID: 312626
Requestor:  Borusan Mannesmann Pipe U.S. Inc. (Borusan)
Objector(s):

       Maverick Tube Corporation (Maverick)
       Zekelman Industries (Zekelman)

Case Filings

|  | Borusan | Maverick | Zekelman |  |  |
|---|---|---|---|---|---|
| Rebuttal against Objector? |  | Yes | Yes |  |  |
| Surrebuttal against Requestor? |  | Yes | No |  |  |
| CBI submitted? *(request/objection)* | No | No | No |  |  |
| CBI submitted? *(rebuttal/surrebuttal)* | Yes | No | No |  |  |
| Supporting docs included? *(request/objection)* | Yes | Yes | No |  |  |
| Supporting docs included? *(rebuttal/surrebuttal)* | Yes | Yes | No |  |  |

Recommendation: Denial
Rationale: {At least one} objector meets the quality, quantity, and timeliness criteria.

| **QUALITY** | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) – QUALITY** | | | | |
| | Maverick | Zekelman | | |
| Identical (1.c or 1.d filled in)* | Yes | Yes | | |
| Substitute (1.e or 1.f filled in)* | No | Blank | | |
| **2.c\*** match | Yes | | | |
| **2.d\*** match | Yes | | | |
| **2.e\*** match | No | | | |
| **Standards** match Exclusion Request | No | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | | | |
| **Subject Matter Expert (SME) Evaluation of Facts:** Yes | | | | |
| **Analysis of the Record:** Borusan seeks exclusion for its welded pipe and specifies API 5CT J55 Upgradeable. Maverick's product matches the specifications of the request; however, Maverick does not specifically mention API 5CT J55 Upgradeable in the objection offering. ITA notes that Maverick includes a statement that, "Maverick manufactures Pipes to the dimensional, chemical, and mechanical specifications cited in the Exclusion Request." As such, ITA has determined that the specific statement made by the objector satisfies and meets the specification listed in the exclusion request. Therefore, Maverick meets the quality criterion. Because Zekelman does not meet the quantity criterion, ITA has not evaluated Zekelman's ability to meet the quality criterion. | | | | |

| QUANTITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) –QUANTITY** | | | | |
| | Maverick | Zekelman | | |
| **3.a** | 100% | 100% | | |

| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
|---|---|---|---|---|
| | No | Yes | | |

**Analysis of the Record:** Maverick states that it can manufacture 100 percent of the requested quantity. Borusan submits an attachment containing request for quotes as evidence that Maverick cannot provide the product. SME analysis was requested to determine if the requested product is referenced in the email submitted by Borusan. The SME determined the email exchange includes the requested product. Based on the evidence submitted nothing contradicts the information certified by Maverick in its objection and surrebuttal. Therefore, Maverick meets the quantity criterion. Zekelman claims it can produce 100 percent of the requested volume. ITA notes Borusan in its rebuttal provides a copy of emails between Zekelman and Borusan in May 2022, inquiring about the availability of the requested product. Zekelman's response indicated it does not currently have the capacity to provide the requested product. SME analysis confirms the requested product and the product detailed in the emails provided by Borusan match. The email evidence provided by Borusan contradicts Zekelman's claim that it can provide the requested quantity. As such, Zekelman does not meet the quantity criterion.

| TIMELINESS | | | | |
|---|---|---|---|---|
| **REQUESTOR– DELIVERY TIME** | | | | |
| **2.d (request form):** Days: 120 | | | | |
| **2.f (request form):** Days: 30 | | | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the requestor's delivery time information specified in 2.d and 2.f? | | | | |
| No | | | | |
| **OBJECTOR – DELIVERY TIME** | | | | |
| | Maverick | Zekelman | | |
| **3.b** | BPI | Days: 60 | | |
| **3.d** | BPI | Days: 60 | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the objector's delivery time information specified in 3b and 3d? | | | | |
| | No | | | |
| **Delivery Time Totals** <br>    o Requestor's Import Delivery Time = {*2d + 2f of the exclusion request, plus any adjustments*} <br>    o Objector's Delivery Time = {*3b + 3d of the objection, plus any adjustments*} | | | | |
| **Analysis of the Record:** Maverick claims the information for 3.b and 3.d is business proprietary in its objection form. ITA requested that information from Maverick. Based on the information provided by Maverick, compared to the requestor's import delivery time, Maverick is able to deliver the product in a timely manner. Therefore, Maverick meets the timeliness criterion. Because Zekelman does not meet the quantity criterion, ITA has not evaluated Zekelman's ability to meet the timeliness criterion. | | | | |

**Explanation/Additional Comments** (if needed)**:**

| General Notes: |
|---|
| **This memorandum describes, in full, the factors which ITA has considered in reaching its recommendation and provides a complete explanation for the basis of that recommendation.** <br><br> ITA reviews each individual exclusion request for which objections are submitted by U.S. producers and provides the Bureau of Industry and Security with a recommendation on the technical merits of the request. In making a recommendation, ITA examines only the claims and information submitted in the certified documentation for requests, objections, rebuttals and surrebuttals, to determine if a company meets the criteria specified in the regulations; specifically, if the objector can provide the products at issue in a sufficient amount of time (timeliness), in a reasonably available amount (quantity), and in a quality which is satisfactory. Per Department of Commerce (Department) policy, ITA will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request. When determining if a company meets the quantity criteria, ITA examines the response to section 3.a; ITA does not examine the production capacity of a company or industry as a whole. The Department collects such capacity data in section 1 only for statistical purposes and not for use in analyzing individual exclusion requests and objections. <br><br> Due to changes announced in the Interim Final Rule (IFR) on December 14, 2020 (85 FR 81060), ITA no longer utilizes the responses to Section 1 of the objection form when determining if a company meets the timeliness criterion. For exclusion requests submitted on or after December 14, 2020, ITA will utilize the information in Section 3 to determine if a company meets the timeliness criterion, by comparing the Requestor's import delivery time and the Objector's delivery time. If the Objector's delivery time is equal to or less than the Requestor's import delivery time, then the Objector meets the timeliness criterion. ITA determines the Requestor's import delivery time by adding the numbers in 2d and 2f of the exclusion request form, plus any appropriate adjustments based on evidence provided in any submitted documentation. ITA determines the Objector's delivery time by adding the numbers in 3b and 3d of the objection form, plus any appropriate adjustments based on evidence provided in any submitted documentation.  In addition, if the Objector's delivery time is greater than the Requestor's import delivery time, but is equal or less than 8 weeks, the Objector meets the timeliness criterion. <br><br> An SME's evaluation of facts is typically sought when submitted documentation indicates: the objector offers a substitute product, the specifications differ in an objector's offering from the request, a processing method differs between the request and objection, or any other relevant product-specific issues. ITA takes an SME's evaluation of facts into consideration when making a recommendation; however, an SME's evaluation of facts is not the only determining factor and is not necessarily dispositive. <br><br> **ITA will base its recommendation on an evaluation of all relevant submitted certified documentation, including relevant CBI, and, when appropriate, an evaluation of facts by an SME. Only information provided in the submitted documentation will be used in the** |

| Field Definitions (Requestor Form) | |
|---|---|
| 2.d | Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization: |
| 2.f | Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock: |

|  |  |
|---|---|

| * Field Definitions (Objection Form) | |
|---|---|
| 1.c | Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company- owned plant in the United States? If "Yes" identify the location(s) of your production facilities in the United States. |
| 1.d | This organization does not currently manufacture the identified product, but can produce the product identified in the Exclusion Request within the following time period at the following |
| 1.e | Does this organization currently manufacture, or can immediately manufacture (within 8 weeks), in a company-owned plant located in the United States a substitute product for the identified product that has similar form, fit, function, and performance? If "Yes" identify the location(s) of your production facilities in the United States, current plant capacity and utilization |
| 1.f | This organization does not currently manufacture the identified product, but can make a substitute product that has similar form, fit, function, and performance within the following time period at the following facilities: |
| 2.c | State the chemical composition of the specific product that your organization can manufacture at a company-owned production facility located in the United States. |
| 2.d | Provide the following information on the single product that is the subject of this Objection Filing: 1) dimensional information covering the single product subject to the Exclusion Request; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature. |
| 2.e | Provide the following information on the single product that is the subject of this Objection Filing: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness. |
| 3.a | What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis? |
| 3.b | State the number of days required by your organization to ship from its U.S. manufacturing plant the product covered by this Exclusion Request from the time the purchase order is received: |
| 3.c | State the number of days required to manufacture the product covered by this Exclusion Request from the time a binding purchase order is received: |
| 3.d | State the delivery time in days for the product covered under this Exclusion Request from the time it is shipped from your manufacturing plant to the Exclusion Requestor's loading dock: |

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Request Under Section 232**

The Bureau of Industry and Security (BIS) has referred this exclusion request to ITA for ITA's recommendation as to whether the Steel article subject to this exclusion request is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, within the meaning of Supplement 1 of 15 CFR Part 705. ITA provides the following recommendation based on an evaluation of all relevant submitted documentation, including relevant confidential or proprietary business information (CBI), and, when appropriate, an evaluation of facts by a Subject Matter Expert (SME).

Exclusion Request ID: 312627
Requestor:  Borusan Mannesmann Pipe U.S. Inc.  (Borusan)
Objector(s):

      Maverick Tube Corporation (Maverick)
      Zekelman Industries (Zekelman)

Case Filings

|  | Borusan | Maverick | Zekelman |  |  |
|---|---|---|---|---|---|
| Rebuttal against Objector? |  | Yes | Yes |  |  |
| Surrebuttal against Requestor? |  | Yes | No |  |  |
| CBI submitted? *(request/objection)* | No | No | No |  |  |
| CBI submitted? *(rebuttal/surrebuttal)* | Yes | No | No |  |  |
| Supporting docs included? *(request/objection)* | Yes | Yes | No |  |  |
| Supporting docs included? *(rebuttal/surrebuttal)* | Yes | Yes | No |  |  |

Recommendation: Denial
Rationale: {At least one} objector meets the quality, quantity, and timeliness criteria.

| QUALITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) – QUALITY** | | | | |
| | Maverick | Zekelman | | |
| Identical (1.c or 1.d filled in)* | Yes | Yes | | |
| Substitute (1.e or 1.f filled in)* | Blank | Blank | | |
| **2.c*** match | Yes | | | |
| **2.d*** match | Yes | | | |
| **2.e*** match | Yes | | | |
| **Standards** match Exclusion Request | No | | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | | | |
| **Subject Matter Expert (SME) Evaluation of Facts:** Yes | | | | |
| **Analysis of the Record:** Borusan seeks exclusion for its welded pipe and specifies API 5CT J55 Upgradeable. Maverick's product matches the specifications of the request; however, Maverick does not specifically mention API 5CT J55 Upgradeable in the objection offering. ITA notes that Maverick includes a statement that, "Maverick manufactures Pipes to the dimensional, chemical, and mechanical specifications cited in the Exclusion Request." As such, ITA has determined that the specific statement made by the objector satisfies and meets the specification listed in the exclusion request. Therefore, Maverick meets the quality criterion. Because Zekelman does not meet the quantity criterion, ITA has not evaluated Zekelman's ability to meet the quality criterion. | | | | |

| QUANTITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) –QUANTITY** | | | | |
| | Maverick | Zekelman | | |
| **3.a** | 100% | 100% | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | Yes | | |

**Analysis of the Record:** Maverick states that it can manufacture 100 percent of the requested quantity. Borusan submits an attachment containing request for quotes as evidence that Maverick cannot provide the product. SME analysis was requested to determine if the requested product is referenced in the email submitted by Borusan. The SME determined the email exchange includes the requested product. Based on the evidence submitted nothing contradicts the information certified by Maverick in its objection and surrebuttal. Therefore, Maverick meets the quantity criterion. Zekelman claims it can produce 100 percent of the requested volume. ITA notes Borusan in its rebuttal provides a copy of emails between Zekelman and Borusan in May 2022, inquiring about the availability of the requested product. Zekelman's response indicated it does not currently have the capacity to provide the requested product. SME analysis confirms the requested product and the product detailed in the emails provided by Borusan match. The email evidence provided by Borusan contradicts Zekelman's claim that it can provide the requested quantity. As such, Zekelman does not meet the quantity criterion.

| TIMELINESS | | | | |
|---|---|---|---|---|
| **REQUESTOR– DELIVERY TIME** | | | | |
| **2.d (request form):** Days: 120 | | | | |
| **2.f (request form):** Days: 30 | | | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the requestor's delivery time information specified in 2.d and 2.f? | | | | |
| No | | | | |
| **OBJECTOR – DELIVERY TIME** | | | | |
| | Maverick | Zekelman | | |
| **3.b** | BPI | Days: 60 | | |
| **3.d** | BPI | Days: 60 | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the objector's delivery time information specified in 3b and 3d? | | | | |
| | No | | | |
| **Delivery Time Totals**<br>   ○ Requestor's Import Delivery Time = {*2d + 2f of the exclusion request, plus any adjustments*}<br>   ○ Objector's Delivery Time = {*3b + 3d of the objection, plus any adjustments*} | | | | |

| **Analysis of the Record:** Maverick claims the information for 3.b and 3.d is business proprietary in its objection form. ITA requested that information from Maverick. Based on the information provided by Maverick, compared to the requestor's import delivery time, Maverick is able to deliver the product in a timely manner. Therefore, Maverick meets the timeliness criterion. Because Zekelman does not meet the quantity criterion, ITA has not evaluated Zekelman's ability to meet the timeliness criterion. |
|---|

**Explanation/Additional Comments** (if needed):

| General Notes: |
| --- |
| **This memorandum describes, in full, the factors which ITA has considered in reaching its recommendation and provides a complete explanation for the basis of that recommendation.** |
| ITA reviews each individual exclusion request for which objections are submitted by U.S. producers and provides the Bureau of Industry and Security with a recommendation on the technical merits of the request. In making a recommendation, ITA examines only the claims and information submitted in the certified documentation for requests, objections, rebuttals and surrebuttals, to determine if a company meets the criteria specified in the regulations; specifically, if the objector can provide the products at issue in a sufficient amount of time (timeliness), in a reasonably available amount (quantity), and in a quality which is satisfactory. Per Department of Commerce (Department) policy, ITA will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request. When determining if a company meets the quantity criteria, ITA examines the response to section 3.a; ITA does not examine the production capacity of a company or industry as a whole. The Department collects such capacity data in section 1 only for statistical purposes and not for use in analyzing individual exclusion requests and objections. |
| Due to changes announced in the Interim Final Rule (IFR) on December 14, 2020 (85 FR 81060), ITA no longer utilizes the responses to Section 1 of the objection form when determining if a company meets the timeliness criterion. For exclusion requests submitted on or after December 14, 2020, ITA will utilize the information in Section 3 to determine if a company meets the timeliness criterion, by comparing the Requestor's import delivery time and the Objector's delivery time. If the Objector's delivery time is equal to or less than the Requestor's import delivery time, then the Objector meets the timeliness criterion. ITA determines the Requestor's import delivery time by adding the numbers in 2d and 2f of the exclusion request form, plus any appropriate adjustments based on evidence provided in any submitted documentation. ITA determines the Objector's delivery time by adding the numbers in 3b and 3d of the objection form, plus any appropriate adjustments based on evidence provided in any submitted documentation.  In addition, if the Objector's delivery time is greater than the Requestor's import delivery time, but is equal or less than 8 weeks, the Objector meets the timeliness criterion. |
| An SME's evaluation of facts is typically sought when submitted documentation indicates: the objector offers a substitute product, the specifications differ in an objector's offering from the request, a processing method differs between the request and objection, or any other relevant product-specific issues. ITA takes an SME's evaluation of facts into consideration when making a recommendation; however, an SME's evaluation of facts is not the only determining factor and is not necessarily dispositive. |
| **ITA will base its recommendation on an evaluation of all relevant submitted certified documentation, including relevant CBI, and, when appropriate, an evaluation of facts by an SME. Only information provided in the submitted documentation will be used in the** |

| Field Definitions (Requestor Form) | |
| --- | --- |
| 2.d | Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization: |
| 2.f | Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock: |

|  |  |
|---|---|

| * Field Definitions (Objection Form) | |
|---|---|
| 1.c | Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company- owned plant in the United States? If "Yes" identify the location(s) of your production facilities in the United States. |
| 1.d | This organization does not currently manufacture the identified product, but can produce the product identified in the Exclusion Request within the following time period at the following |
| 1.e | Does this organization currently manufacture, or can immediately manufacture (within 8 weeks), in a company-owned plant located in the United States a substitute product for the identified product that has similar form, fit, function, and performance? If "Yes" identify the location(s) of your production facilities in the United States, current plant capacity and utilization |
| 1.f | This organization does not currently manufacture the identified product, but can make a substitute product that has similar form, fit, function, and performance within the following time period at the following facilities: |
| 2.c | State the chemical composition of the specific product that your organization can manufacture at a company-owned production facility located in the United States. |
| 2.d | Provide the following information on the single product that is the subject of this Objection Filing: 1) dimensional information covering the single product subject to the Exclusion Request; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature. |
| 2.e | Provide the following information on the single product that is the subject of this Objection Filing: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness. |
| 3.a | What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis? |
| 3.b | State the number of days required by your organization to ship from its U.S. manufacturing plant the product covered by this Exclusion Request from the time the purchase order is received: |
| 3.c | State the number of days required to manufacture the product covered by this Exclusion Request from the time a binding purchase order is received: |
| 3.d | State the delivery time in days for the product covered under this Exclusion Request from the time it is shipped from your manufacturing plant to the Exclusion Requestor's loading dock: |

**International Trade Administration (ITA)**
**Recommendation Document for Denial of Steel Exclusion Request Under Section 232**

The Bureau of Industry and Security (BIS) has referred this exclusion request to ITA for ITA's recommendation as to whether the Steel article subject to this exclusion request is produced in the United States in a sufficient and reasonably available amount or of a satisfactory quality, within the meaning of Supplement 1 of 15 CFR Part 705. ITA provides the following recommendation based on an evaluation of all relevant submitted documentation, including relevant confidential or proprietary business information (CBI), and, when appropriate, an evaluation of facts by a Subject Matter Expert (SME).

Exclusion Request ID: 312628
Requestor:  Borusan Mannesmann Pipe U.S. Inc.  (Borusan)
Objector(s):

> Maverick Tube Corporation (Maverick)
> United States Steel Corporation (U.S. Steel)
> Zekelman Industries (Zekelman)

Case Filings

|  | Borusan | Maverick | U.S. Steel | Zekelman |  |
|---|---|---|---|---|---|
| Rebuttal against Objector? |  | Yes | Yes | Yes |  |
| Surrebuttal against Requestor? |  | Yes | Yes | No |  |
| CBI submitted? *(request/objection)* | No | No | No | No |  |
| CBI submitted? *(rebuttal/surrebuttal)* | Yes | No | Yes | No |  |
| Supporting docs included? *(request/objection)* | Yes | Yes | No | No |  |
| Supporting docs included? *(rebuttal/surrebuttal)* | Yes | Yes | Yes | No |  |

Recommendation: Denial
Rationale: {At least one} objector meets the quality, quantity, and timeliness criteria.

| QUALITY | | | | |
|---|---|---|---|---|
| **OBJECTOR(S) – QUALITY** | | | | |
| | Maverick | U.S. Steel | Zekelman | |
| Identical (1.c or 1.d filled in)* | Yes | Yes | Yes | |
| Substitute (1.e or 1.f filled in)* | Blank | No | Blank | |
| **2.c*** match | Yes | Yes | | |
| **2.d*** match | Yes | Yes | | |
| **2.e*** match | Yes | Yes | | |
| **Standards** match Exclusion Request | No | Yes | | |
| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | | | |
| | No | No | | |
| **Subject Matter Expert (SME) Evaluation of Facts:** Yes | | | | |

**Analysis of the Record:** Borusan seeks exclusion for its welded pipe and specifies API 5CT J55 Upgradeable. Maverick's product matches the specifications of the request; however, Maverick does not specifically mention API 5CT J55 Upgradeable in the objection offering. ITA notes that Maverick includes a statement that, "Maverick manufactures Pipes to the dimensional, chemical, and mechanical specifications cited in the Exclusion Request." As such, ITA has determined that the specific statement made by the objector satisfies and meets the specification listed in the exclusion request. Therefore, Maverick meets the quality criterion. U.S. Steel claims to manufacture an identical product to the product in the request. U.S. Steel states in its surrebuttal attachment its seamless API 5CT pipe is an identical product. ITA notes Borusan claims the seamless pipe offered by U.S. Steel will not meet its requirements. SME analysis was requested to evaluate the statements made by Borusan and U.S. Steel. The SME determined API 5CT does not allow the substitution of seamless pipe for welded pipe without an agreement from the buyer. Based on technical factors, the objection offering is not a suitable substitute. As such, U.S. Steel does not meet the quality criterion. Because Zekelman does not meet the quantity criterion, ITA has not evaluated Zekelman's ability to meet the quality criterion.

| QUANTITY | | | |
|---|---|---|---|
| **OBJECTOR(S) –QUANTITY** | | | |
| | Maverick | U.S. Steel | Zekelman | |
| **3.a** | 100% | 100% | 100% | |

| Does anything in the request, rebuttal, or surrebuttal, including attachments, provide evidence to contradict the objector's claims? | | |
|---|---|---|
| | No | Yes |

**Analysis of the Record:** Maverick states that it can manufacture 100 percent of the requested quantity. Borusan submits an attachment containing request for quotes as evidence that Maverick cannot provide the product. SME analysis was requested to determine if the requested product is referenced in the email submitted by Borusan. The SME determined the email exchange includes the requested product. Based on the evidence submitted nothing contradicts the information certified by Maverick in its objection and surrebuttal. Therefore, Maverick meets the quantity criterion. Because U.S. Steel does not meet the quality criterion, ITA has not evaluated U.S. Steel's ability to meet the quantity criterion. Zekelman claims it can produce 100 percent of the requested volume. ITA notes Borusan in its rebuttal provides a copy of emails between Zekelman and Borusan in May 2022, inquiring about the availability of the requested product. Zekelman's response indicated it does not currently have the capacity to provide the requested product. SME analysis confirms the requested product and the product detailed in the emails provided by Borusan match. The email evidence provided by Borusan contradicts Zekelman's claim that it can provide the requested quantity. As such, Zekelman does not meet the quantity criterion.

| TIMELINESS | | | | |
|---|---|---|---|---|
| **REQUESTOR– DELIVERY TIME** | | | | |
| **2.d (request form):** Days: 120 | | | | |
| **2.f (request form):** Days: 30 | | | | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the requestor's delivery time information specified in 2.d and 2.f? | | | | |
| No | | | | |
| **OBJECTOR – DELIVERY TIME** | | | | |
| | Maverick | U.S. Steel | Zekelman | |
| **3.b** | BPI | BPI | Days: 60 | |
| **3.d** | BPI | BPI | Days: 60 | |
| Does anything in the request, objection, rebuttal, or surrebuttal, including attachments, provide evidence that contradicts or requires adjustment to the objector's delivery time information specified in 3b and 3d? | | | | |
| | No | | | |
| **Delivery Time Totals**<br>   o   Requestor's Import Delivery Time = {*2d + 2f of the exclusion request, plus any adjustments*}<br>   o   Objector's Delivery Time = {*3b + 3d of the objection, plus any adjustments*} | | | | |
| **Analysis of the Record:** Maverick claims the information for 3.b and 3.d is business proprietary in its objection form. ITA requested that information from Maverick. Based on the information provided by Maverick, compared to the requestor's import delivery time, Maverick is able to deliver the product in a timely manner. Therefore, Maverick meets the timeliness criterion. Because U.S. Steel does not meet the quality criterion, ITA has not evaluated U.S. Steel's ability to meet the timeliness criterion. Because Zekelman does not meet the quantity criterion, ITA has not evaluated Zekelman's ability to meet the timeliness criterion. | | | | |

**Explanation/Additional Comments** (if needed)**:**

| General Notes: |
|---|
| **This memorandum describes, in full, the factors which ITA has considered in reaching its recommendation and provides a complete explanation for the basis of that recommendation.** |
| ITA reviews each individual exclusion request for which objections are submitted by U.S. producers and provides the Bureau of Industry and Security with a recommendation on the technical merits of the request. In making a recommendation, ITA examines only the claims and information submitted in the certified documentation for requests, objections, rebuttals and surrebuttals, to determine if a company meets the criteria specified in the regulations; specifically, if the objector can provide the products at issue in a sufficient amount of time (timeliness), in a reasonably available amount (quantity), and in a quality which is satisfactory. Per Department of Commerce (Department) policy, ITA will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request. When determining if a company meets the quantity criteria, ITA examines the response to section 3.a; ITA does not examine the production capacity of a company or industry as a whole. The Department collects such capacity data in section 1 only for statistical purposes and not for use in analyzing individual exclusion requests and objections. |
| Due to changes announced in the Interim Final Rule (IFR) on December 14, 2020 (85 FR 81060), ITA no longer utilizes the responses to Section 1 of the objection form when determining if a company meets the timeliness criterion. For exclusion requests submitted on or after December 14, 2020, ITA will utilize the information in Section 3 to determine if a company meets the timeliness criterion, by comparing the Requestor's import delivery time and the Objector's delivery time. If the Objector's delivery time is equal to or less than the Requestor's import delivery time, then the Objector meets the timeliness criterion. ITA determines the Requestor's import delivery time by adding the numbers in 2d and 2f of the exclusion request form, plus any appropriate adjustments based on evidence provided in any submitted documentation. ITA determines the Objector's delivery time by adding the numbers in 3b and 3d of the objection form, plus any appropriate adjustments based on evidence provided in any submitted documentation.  In addition, if the Objector's delivery time is greater than the Requestor's import delivery time, but is equal or less than 8 weeks, the Objector meets the timeliness criterion. |
| An SME's evaluation of facts is typically sought when submitted documentation indicates: the objector offers a substitute product, the specifications differ in an objector's offering from the request, a processing method differs between the request and objection, or any other relevant product-specific issues. ITA takes an SME's evaluation of facts into consideration when making a recommendation; however, an SME's evaluation of facts is not the only determining factor and is not necessarily dispositive. |
| **ITA will base its recommendation on an evaluation of all relevant submitted certified documentation, including relevant CBI, and, when appropriate, an evaluation of facts by an SME. Only information provided in the submitted documentation will be used in the** |

| Field Definitions (Requestor Form) | |
|---|---|
| 2.d | Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization: |
| 2.f | Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock: |

| | |
|---|---|
| | |

| * Field Definitions (Objection Form) | |
|---|---|
| 1.c | Is the product type identified in the Exclusion Request currently manufactured by your organization in the United States, or can it immediately be made (within 8 weeks) by your organization, in a company- owned plant in the United States? If "Yes" identify the location(s) of your production facilities in the United States. |
| 1.d | This organization does not currently manufacture the identified product, but can produce the product identified in the Exclusion Request within the following time period at the following |
| 1.e | Does this organization currently manufacture, or can immediately manufacture (within 8 weeks), in a company-owned plant located in the United States a substitute product for the identified product that has similar form, fit, function, and performance? If "Yes" identify the location(s) of your production facilities in the United States, current plant capacity and utilization |
| 1.f | This organization does not currently manufacture the identified product, but can make a substitute product that has similar form, fit, function, and performance within the following time period at the following facilities: |
| 2.c | State the chemical composition of the specific product that your organization can manufacture at a company-owned production facility located in the United States. |
| 2.d | Provide the following information on the single product that is the subject of this Objection Filing: 1) dimensional information covering the single product subject to the Exclusion Request; 2) performance data for tensile strength, yield strength, hardness, impact, shear and test temperature. |
| 2.e | Provide the following information on the single product that is the subject of this Objection Filing: 1) performance data for ductility, magnetic permeability, surface finish; and 2) metal coating process, material type, weight, and thickness. |
| 3.a | What percentage of the total product tonnage requirement covered under the Exclusion Request that is the subject of this Objection Filing can your organization manufacture at its U.S. plants on a timely basis? |
| 3.b | State the number of days required by your organization to ship from its U.S. manufacturing plant the product covered by this Exclusion Request from the time the purchase order is received: |
| 3.c | State the number of days required to manufacture the product covered by this Exclusion Request from the time a binding purchase order is received: |
| 3.d | State the delivery time in days for the product covered under this Exclusion Request from the time it is shipped from your manufacturing plant to the Exclusion Requestor's loading dock: |

**Attachment 2**

# COVINGTON

BEIJING  BOSTON  BRUSSELS  DUBAI  FRANKFURT
JOHANNESBURG  LONDON  LOS ANGELES  NEW YORK
PALO ALTO  SAN FRANCISCO  SEOUL  SHANGHAI  WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 6000

**Via E-mail**                                                    December 19, 2023

Kyle S. Beckrich
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
(202) 616-9322
kyle.beckrich@usdoj.gov

**Re:  Remand Redetermination Ordered by *Seneca Foods Corp.***
***v. United States*, Ct. No. 22-00243, Slip Op. No. 23-152**

Dear Kyle:

On behalf of Seneca Foods Corporation ("Seneca"), we respectfully request that the U.S. Department of Commerce ("Commerce") take into consideration two distinct but related aspects of its existing policies as it prepares the forthcoming remand redetermination for Section 232 exclusion request numbers 257423, 257428, 257708, 257709, 257712, 275504, 283368, and 283369.  These Commerce policies, which were not raised or addressed directly in the Seneca exclusion requests at issue, should inform the agency's pending remand redeterminations. Their relevance to the Seneca requests is clear, based on factual information already in the possession of Commerce.  As a result, the policies can be applied by Commerce on remand without reopening the factual record.

As you are aware, the Court concluded that Commerce's denials of the October 2021 and January 2022 exclusion requests were arbitrary and capricious for their failure to consider and

**COVINGTON**

Letter to Mr. Kyle S. Beckrich
December 19, 2023
Page 2

address record evidence that ran counter to Commerce's stated reasoning.[1]  The Court also

granted Commerce's motion for voluntary remand to reconsider the March 2022 requests

without reaching the question of any errors made by Commerce in adjudicating those requests.[2]

In accordance with the Court's opinion and the directly relevant agency policies discussed

below, Seneca urges Commerce to approve all eight of the remanded exclusion requests

retroactive to the date of filing of the original exclusion request.

**I.    Commerce Has Indicated In Its Section 232 Exclusion Decision Memoranda That It Will Consider Sales Correspondence Within 90 Days Of The Exclusion Request Filing Date And Recently Proposed To Consider Sales Correspondence Within 12 Months of the Request**

Commerce's International Trade Administration ("ITA") explained in its

"Recommendation Document for Denial of Steel Exclusion Request Under Section 232," that

> Per Department of Commerce (Department) policy, ITA will consider sales correspondence, submitted as evidence, absent additional accompanying information, only if such correspondence occurred within 90 days of the submission of the exclusion request.[3]

Applying this policy, Commerce's ITA has previously disregarded objections from a company

where timely correspondence demonstrated that the objector did not currently have the capacity

to provide the requested product.[4]

---

[1] Slip Op. 23-152 at 2-3.

[2] *Id.* at 3.

[3] *See, e.g.*, Administrative Record ("AR") for Seneca Exclusion Request Number 257423, Public Set, at 006.

[4] ITA Recommendation Document for Denial of Steel Exclusion Request Under Section 232, Exclusion Request ID 312626, at 3 ("ITA notes Borusan in its rebuttal provides a copy of emails between Zekelman and Borusan in May 2022, inquiring about the availability of the requested product. Zekelman's response indicated it does not currently have the capacity to provide the requested product. SME analysis confirms the requested product and the product detailed in the emails provided by Borusan match. The email evidence provided by Borusan contradicts

**COVINGTON**

Letter to Mr. Kyle S. Beckrich
December 19, 2023
Page 3

More recently, Commerce has proposed requiring objectors to submit evidence with their objection from the last 12 months indicating that they have commercially sold the same product or that they have engaged in sales discussions with the requesting company about the same product.[5]

In its remand redetermination for the eight exclusions, Commerce should follow its established policy and its proposed rule and disregard the objections filed by U.S. Steel, given the definitive sales correspondence in the original record. Record evidence in the form of undisputed correspondence demonstrates U.S. Steel's repeated refusals to provide the requested products during the relevant time period specified in Commerce's policies. Seneca submitted substantial evidence detailing U.S. Steel's refusals and inability to supply it with *any* of the tin mill products requested, not only at the time of the requests but also for the year-plus preceding the requests. Specifically, Seneca submitted the following documentation, each of which fall within either the 90-day or the 12-month windows discussed above:

- November 13, 2020: An e-mail memorializing a phone conversation with U.S. Steel where U.S. Steel stated that they were not offering "anything now at any price," but that if they have available production in any month, they would contact Seneca.[6] This e-mail falls within the 12-month window prior to the exclusion requests filed in October 2021.

- November 29, 2021: An e-mail discussing conversations that took place "a couple months ago" where U.S. Steel advised that it had "no tinplate or TFS to offer

---

Zekelman's claim that it can provide the requested quantity. As such, Zekelman does not meet the quantity criterion.").

[5] *Revisions of the Section 232 Steel and Aluminum Tariff Exclusions Process*, 88 Fed. Reg. 58,525, 58,527 (Dep't Commerce Aug. 28, 2023). Commerce has also proposed to require objectors to certify that they will within 12 months offer to sell and make "immediately available" to the requestor the full quantity of the product requested at then-existing market rates and terms. *Id.*, 88 Fed. Reg. at 58,537.

[6] AR for Exclusion Request Number 257423, Confidential Set, at 041.

**COVINGTON**

Letter to Mr. Kyle S. Beckrich
December 19, 2023
Page 4

{Seneca} for 2022" and asking whether anything had changed with respect to U.S. Steel's availability to supply electrolytic tinplate or tin-free steel.[7]  This correspondence falls within the 90-day window for both the October 2021 and January 2022 exclusion requests and falls within the 12-month window for the March 2022 exclusion requests.  While dated for November 29, 2021, it references communications that took place within the past couple months, which was prior to the October 21, 2021 filing date of the October 2021 exclusions requests.

- November 30, 2021:  U.S. Steel's response to the November 29, 2021 e-mail wherein U.S. Steel states that they do not have any availability through February 2022.[8]  This correspondence falls within the 90-day window for the January 2022 exclusion request and within the 12-month window for the March 2022 exclusion requests.

- February 24, 2022 – April 13, 2022:  An e-mail chain between Seneca and U.S. Steel where Seneca inquires as to whether U.S. Steel has anything to offer in late February 2022.[9]  Seneca expresses its desire to purchase whatever is available. After several weeks of communication, U.S. Steel only commits to a fraction of what Seneca needed and will not deliver it until three months later, in July 2022. This correspondence falls within the 90-day window for the March 2022 exclusion requests.

As the Court noted in its decision finding Commerce's denials to be arbitrary and capricious, the e-mail correspondence between Seneca and U.S. Steel indicated that "USS did not have capacity to offer 'anything' in November 2020 and and—all the more probative— 'anything' in November 2021, which was mere days after USS had filed its objections."[10]  Given this overwhelming evidence of U.S. Steel's refusals to supply Seneca during the relevant period, and consistent with Commerce's policy and practice in dockets such as Exclusion Request Number 312626, Commerce should set aside U.S. Steel's objections in its remand redeterminations and grant Seneca's exclusion requests retroactive to the date of filing.

---

[7] AR for Exclusion Request Number 257423, Confidential Set, at 043.

[8] *Id.*

[9] AR for Exclusion Request Number 283369, Confidential Set, at 389-391.

[10] Slip Op. 23-152 at 17-18.

**COVINGTON**

Letter to Mr. Kyle S. Beckrich
December 19, 2023
Page 5

## II.    Commerce Should Take Into Account U.S. Steel's Meritless Objections Going Back To 2018 And Repeated Refusals To Supply Seneca From 2019 to 2022

In the *Preamble* to its Section 232 product exclusion request regulations, Commerce expressed concerns about companies objecting to exclusions and then failing to supply the requested volumes.[11]  As a safeguard, Commerce established the rebuttal process, which allows the exclusion requestor "to document in the rebuttal the past activity with that objector."[12] Commerce also advised requestors that they could "reference in a new exclusion request that an objector was not able to provide the steel or aluminum in a previous exclusion request" and provide "documentation evidencing this refusal."[13]  Commerce's position has been that the way "to determine definitively whether an objector is in fact able to provide the steel . . . article in question {is} by attempting to obtain the product from the objector."[14]

As reflected in the Commerce dockets on regulations.gov and the 232 Portal, Seneca's experience with U.S. Steel's repeated meritless objections provide a textbook example of what Commerce's regulations sought to address.  Seneca first filed exclusion requests for tin mill products in March and April 2018.[15]  U.S. Steel objected despite informing Seneca in March

---

[11] *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060, 81,066 (Dep't Commerce Dec. 14, 2020).

[12] 85 Fed. Reg. at 81,066; *see also Submissions of Exclusion Requests and Objections to Submitted Requests for Steel and Aluminum*, 83 Fed. Reg. 46,026, 46,043 (Dep't Commerce Sept. 11, 2018).

[13] 85 Fed. Reg. at 81,065-66; *see also* 83 Fed. Reg. at 46,043.

[14] 85 Fed. Reg. at 81,065.

[15] Complaint, ECF No. 7 at ¶¶ 10-12 & Exhibit Nos. 1, 2, 3, 4, 5 & 6 (Seneca exclusion requests BIS-2018-0006-0019, -0770, and -5050; Seneca rebuttals to USS objections for BIS-2018-0006-0019 and -0770; and BIS decision document for BIS-2018-0006-0770).

**COVINGTON**

Letter to Mr. Kyle S. Beckrich
December 19, 2023
Page 6

2018 that it "had no short term capacity."[16]  In May 2018, Seneca subsequently placed a purchase order with U.S. Steel for a small quantity of tin mill products scheduled for delivery in August 2018.[17]  Delivery of that order was substantially delayed, with the final coil arriving six months late, in February 2019.[18]  From that time forward, and despite repeated attempts by Seneca to source tin mill products from U.S. Steel, U.S. Steel *did not supply a single ton* of any such products throughout the rest of 2019, all of 2020 and 2021, and most of 2022.[19]  At the same time as U.S. Steel was filing meritless objections to Seneca's exclusion requests, U.S. Steel was telling Seneca candidly that it could not supply it with any requested tin mill products now or in the foreseeable future.[20]  Indeed, U.S. Steel has admitted to Commerce that it did not sell any tin mill products to Seneca between February 2019 and December 2021 despite regularly discussing tin mill product availability and sales with Seneca throughout 2019, 2020, and 2021.[21]  Following Commerce's regulatory guidance, Seneca provided all of this evidence to Commerce during the exclusion request and rebuttal processes.[22]

Commerce now has a second chance to evaluate the evidence presented in light of its policies and the information contained in the agency's public dockets regarding the conduct of U.S. Steel following its 2018 objections to Seneca's initial requests.  With the factual information

---

[16] Complaint, ECF No. 7 at ¶ 11 and Exhibits 4-5.

[17] Brief in Support of Plaintiff's Rule 56.1 Motion for Judgment on the Agency Record at 10-11.

[18] *Id.*

[19] *Id.*

[20] AR for Exclusion Request Number 257423, Confidential Set, at 021-022, 036-038, 041, and 043.

[21] AR for Exclusion Request Number 257423, Confidential Set, at 049.

[22] *See* ARs for Exclusion Request Numbers 257423, 257428, 257708, 257709, 257712, 275504, 283368, and 283369.

**COVINGTON**

Letter to Mr. Kyle S. Beckrich
December 19, 2023
Page 7

already in the agency's possession, Seneca respectfully requests that Commerce fairly apply its

regulatory guidance and (1) conclude that U.S. Steel's objections to Seneca's eight exclusion

requests were unsubstantiated, and then (2) approve Seneca's eight exclusion requests

retroactive to the date of filing.

\*        \*        \*        \*        \*

      Please contact the undersigned should you have any questions regarding this matter.

    Sincerely,

    */s/ James M. Smith*
    James M. Smith
    Thomas Brugato
    Kwan Woo (Kwan) Kim
    Edward J. Thomas III
    Covington & Burling LLP
    850 Tenth Street, NW
    Washington, D.C. 20001-4956
    (202) 662-6000
    jmsmith@cov.com
    tbrugato@cov.com
    kkim@cov.com
    ejthomas@cov.com

    *Counsel for Plaintiff Seneca
    Foods Corporation*

CC:    Tara K. Hogan
        U.S. Department of Justice
        tara.hogan@usdoj.gov

        Kenneth S. Kessler
        Of Counsel
        U.S. Department of Commerce
        kkessler@doc.gov

**Thomas, E.J.**

| | |
|---|---|
| **From:** | Beckrich, Kyle (CIV) <Kyle.Beckrich@usdoj.gov> |
| **Sent:** | Tuesday, December 19, 2023 1:53 PM |
| **To:** | Smith, James (Jay) |
| **Cc:** | Hogan, Tara (CIV); kkessler@doc.gov; Brugato, Thomas; Thomas, E.J. |
| **Subject:** | RE: CIT No. 22-243 -- Seneca Comments on DOC Remand Redeterminations |

[EXTERNAL]

Hi Jay,

Thanks for the message and hope all is well. I will pass on the letter to Commerce and let you know if we have any questions or if we would like to discuss.

Best,
Kyle

**Kyle S. Beckrich**
Trial Attorney  |  U.S. Department of Justice
(202) 616-9322

---

**From:** Smith, James (Jay) <jmsmith@cov.com>
**Sent:** Tuesday, December 19, 2023 8:58 AM
**To:** Beckrich, Kyle (CIV) <Kyle.Beckrich@usdoj.gov>
**Cc:** Hogan, Tara (CIV) <Tara.Hogan@usdoj.gov>; kkessler@doc.gov; Brugato, Thomas <tbrugato@cov.com>; Thomas, E.J. <EJThomas@cov.com>
**Subject:** [EXTERNAL] CIT No. 22-243 -- Seneca Comments on DOC Remand Redeterminations

Kyle,

On behalf of Seneca Foods Corporation ("Seneca"), we submit the attached letter for consideration during the remand redeterminations ordered by the Court in *Seneca Foods Corp. v. United States*, Ct. No. 22-00243, Slip Op. No. 23-152. These comments focus on two distinct agency policies that should be considered by the U.S. Department of Commerce as it prepares its remand redeterminations.

Please let me know if you have any questions or would like to discuss, and happy holidays.

Best,

Jay

**James McCall Smith**
Covington & Burling LLP
One CityCenter, 850 Tenth Street, NW, Washington, DC 20001
T +1 202 662 5550 | jmsmith@cov.com

**COVINGTON**

*This message is from a law firm and may contain information that is confidential or legally privileged. If you are not the intended recipient, please immediately advise the sender by reply e-mail that this message has been inadvertently transmitted to you and delete this e-mail from your system. Thank you for your cooperation.*