**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:    THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| SENECA FOODS CORPORATION,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>UNITED STATES,<br><br>　　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)　　Court No. 22-00243<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S REPLY**
**TO PLAINTIFF'S COMMENTS ON REMAND REDETERMINATION**

　　　　　　　　　　　　　　　BRIAN M. BOYNTON
　　　　　　　　　　　　　　　Principal Deputy Assistant Attorney General

　　　　　　　　　　　　　　　PATRICIA M. McCARTHY
　　　　　　　　　　　　　　　Director

OF COUNSEL:

TRISTAN DE VEGA　　　　　　　TARA K. HOGAN
Attorney　　　　　　　　　　　　Assistant Director
　　　　　　　　　　　　　　　Civil Division
KENNETH KESSLER　　　　　　　Commercial Litigation Branch
Senior Counsel　　　　　　　　　Department of Justice
Office of the Chief Counsel for　　P.O. Box 480, Ben Franklin Station
Industry and Security　　　　　　Washington, D.C. 20044
Department of Commerce　　　　　Tel.: (202) 616-2228
　　　　　　　　　　　　　　　Email: Tara.Hogan@usdoj.gov


June 14, 2024　　　　　　　　　Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

STATEMENT PURSUANT TO USCIT RULE 56.1(c)(1) ................................................ 1

    I.     The Administrative Determinations Under Review ................................ 1

    II.    Statement of the Issue ............................................................................. 2

STATEMENT OF FACTS .............................................................................................. 2

    I.     The Court's Remand Order ..................................................................... 2

    II.    Commerce's Remand Redetermination .................................................. 3

         A.    October 2021 Requests (257423, 257428, 2557708, 257709, and 257712) ................................................................................ 3

         B.    January 2022 Exclusion Request (275504) .................................. 5

         C.    March 15, 2022 Exclusion Requests (Nos. 283368 and 283669) .............. 6

ARGUMENT .................................................................................................................. 8

    I.     Standard of Review ................................................................................. 8

    II.    The Court Should Sustain The Remand Redetermination ...................... 9

         A.    Commerce Complied With The Remand Order ........................... 9

         B.    Commerce Did Not Depart From Past Practice .......................... 13

         C.    Commerce's Regulations, Which Focus on Current Domestic Availability, Are Reasonable ................................... 17

CONCLUSION ............................................................................................................ 21

i

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

## <u>CASES</u>

*Ancientree Cabinet Co., Ltd. v. United States,*
    565 F. Supp. 3d 1373 (Ct. Int'l Trade 2022) ............................................................14

*Axiom Res. Mgmt, Inc. v. United States,*
    564 F.3d 1374 (Fed. Cir. 2009)................................................................................13

*Bethlehem Steel Corp. v. United States,*
    223 F. Supp. 2d 1372 (Ct. Int'l Trade 2002) ...........................................................8

*Canadian Lumber Trade All. v. United States,*
    517 F.3d 1319 (Fed. Cir. 2008)................................................................................8

*Citizens to Preserve Overton Park, Inc. v. Volpe,*
    401 U.S. 402 (1971)................................................................................................13

*Dibble v. Fenimore,*
    545 F.3d 208 (2d Cir. 2008)....................................................................................9

*Dixon Ticonderoga Co. v. United States,*
    468 F.3d 1353 (Fed. Cir. 2006)................................................................................8

*FCC v. Prometheus Radio Project,*
    592 U.S. 414 (2021)................................................................................................8

*Fujian Yinfeng Imp. & Exp. Trading Co. v. United States,*
    607 F. Supp. 3d 1301 (Ct. Int'l Trade 2022) ...........................................................14

*Level the Playing Field v. FEC,*
    961 F.3d 462 (D.C. Cir. 2020)................................................................................9

*Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,*
    463 U.S. 29 (1983)..............................................................................................8, 20

*NLMK Pa v. United States,*
    617 F. Supp. 3d 1316 (Ct. Int'l Trade 2023) ...........................................................12

*Seneca Foods Corp. v. United States,*
    663 F. Supp. 3d 1325 (Ct. Int'l Trade 2023) ...........................................2, 3, 11, 13

*Sierra Club v. U.S. Dep't of Interior,*
    990 F.3d 909 (5th Cir. 2021)....................................................................................8

*Transpacific Steel LLC v United States,*
    4 F.4th 1306 (Fed. Cir. 2021) ................................................................18

*United States v. Ford Motor Co.,*
    463 F.3d 1267 (Fed. Cir. 2006).............................................................17

## STATUTES

5 U.S.C. § 706(2) ........................................................................................8

28 U.S.C. § 1581(i) ......................................................................................8

28 U.S.C. § 2640(e) .....................................................................................8

## RULES

USCIT Rule 56.1(c)(1) .................................................................................1

## REGULATIONS

15 C.F.R. Part 705, Supp. 1 (c)(5)(i). .......................................................14

15 C.F.R. Part 705, Supp. 1 (c)(6) ...............................................11, 14, 16

15 C.F.R. Part 705, Supp. 1 h(2)(iii)..........................................................16

## FEDERAL REGISTER NOTICES

*Proclamation 9705: Adjusting Imports of Steel into the United States,*
    83 Fed. Reg. 11,625 (Mar. 15, 2018)....................................................18

*Section 232 Steel and Aluminum Tariff Exclusions Process,*
    85 Fed. Reg. 81,060 (Dep't of Commerce Dec. 14, 2020)................19, 20

IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| SENECA FOODS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 22-243 |
| | ) | |
| UNITED STATES, | ) | PUBLIC DOCUMENT |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY
TO PLAINTIFF'S COMMENTS ON REMAND REDETERMINATION

Pursuant to the Court's orders dated October 18, 2023 and May 17, 2024,

defendant, the United States, respectfully submits this reply to plaintiff Seneca Foods

Corporation's comments on the remand redetermination, ECF Docket No. 62, filed by the

Department of Commerce in this case, ECF Docket No. 58-1 (*Remand Results*).  As we

explain below, because the remand redetermination is supported by substantial evidence

and in accordance with law, the Court should sustain the remand redetermination case

and enter judgment in favor of the United States.

STATEMENT PURSUANT TO USCIT RULE 56.1(c)(1)

I.    The Administrative Determinations Under Review

The administrative determinations under review are Commerce's denials, upon

remand redetermination, of Seneca's eight requests to exclude certain imports of prime

tin-free steel (TFS) and prime electrolytic tinplate (ETP) from the Section 232 national

security duties on steel articles.

1

II.    Statement of the Issue

Whether Seneca has demonstrated that Commerce's remand redetermination, which continued to deny Seneca's requests to exclude imports of TFS and ETP from the President's national security tariffs were arbitrary, capricious, or contrary to law.

## STATEMENT OF FACTS

At issue in this case are eight exclusion requests filed by Seneca. Compl. ¶¶ 13;19. Commerce originally denied all eight requests, finding that the steel products for which the exclusions were requested were domestically available in the requested quantities and quality. Compl. ¶¶ 16; 22; *Seneca Foods Corp. v. United States*, 663 F. Supp. 3d 1325, 1332 (Ct. Int'l Trade 2023) (*Remand Order*). Seneca filed suit, challenging Commerce's denials.

I.    The Court's Remand Order

This Court remanded all 8 requests to Commerce for reconsideration. *Remand Order*, 663 F. Supp. 3d at 1336. The Court found that Commerce had not addressed record evidence that contradicted its findings and that Commerce's reasoning for "crediting USS's statements was not otherwise reasonably discernable." *Id*. Specifically, the Court found, with respect to the October 2021 requests, that Commerce had not addressed evidence that "USS was unwilling to offer any volume – spot or contract." *Id*. at 1337. With respect to the January 2022 requests, the Court concluded that Commerce's denials were "impermissibly conclusory" and did not address certain of Seneca's representations about the purported ability of US Steel to provide tin. *Id*. at 1339.

The Court denied Seneca's request for a remand order directing Commerce to grant the requests, explaining that "the record before the court now does not compel a grant of the exclusion requests." *Id*. at 1341.  The Court also declined to decide Seneca's challenges to the regulations. *Id.* at 1340.  Finally, the Court granted Commerce's request for a voluntary remand to reconsider 2 requests (nos. 283368 and 283369). *Id*. at 1342.

II.     <u>Commerce's Remand Redetermination</u>

On remand, Commerce provided the requested explanation of its weighing of the record evidence and continued to deny all eight requests. *See Final Remand Results*, ECF Docket No. 58-1.  In a recommendation document, Commerce outlined its analysis and reasoning for the denials.  Redetermination Recommendation Document Pursuant to Court Remand, ECF Docket No. 58-2 (*Recommendation Document*).

A.     <u>October 2021 Requests (257423, 257428, 2557708, 257709, and 257712)</u>

As directed by the Court, Commerce further explained the evidentiary weight it afforded certain record correspondence in determining that U.S. Steel could provide the requested steel products.  Commerce explained that the November 2020 email correspondence relating to U.S. Steel's production and capacity occurred almost a year before Seneca filed its October 2021 exclusion requests. *Recommendation Document* at 2.  Because of the "ever-changing nature of steel and aluminum production schedules and industry," Commerce considers sales correspondence more than 90 days old to be of limited probative value. *Id*.[1]  Commerce further found that Seneca's statement that U.S.

---

[1]    Additionally, the November 2020 hearsay email between Seneca employees did not identify any particular product or provide any details; in other words, there was

Steel did not want to "commit to anything *right now*" highlighted the temporal nature and outdated indication of U.S. Steel's ability or willingness to supply as of November 2020. *Id*. (emphasis supplied); *see* PRR22-00243-258.[2]

Commerce also addressed and analyzed the November 29-30, 2021 emails, which occurred within 90 days of the exclusion requests. *Recommendation Document* at 3-6; CRR22-0243-266 to 267. Because the email concerned U.S. Steel's statements about production availability in November 2021, Commerce considered it in connection with the import delivery times reported by Seneca. *Id*. at 3. For requests 257423 and 257428, Seneca's request indicated a total of 170 days for import delivery time, or approximately April 9, 2022. *Id*. at 3; PRR22-0243-012. Based on the totality of the evidence, Commerce concluded that the November 2021 correspondence from U.S. Steel indicated only an inability to provide "contract sales," "leaving open the possibility for future sales." *Recommendation Document* at 4.

As support for this conclusion, Commerce considered the subject and context of the email itself, as well as Seneca's and U.S Steel's representations during the administrative proceeding. Commerce considered U.S. Steel's explicit representation that it could timely supply the requested product through spot sales, rather than contracts. *Id*. at 5. Commerce also considered that Seneca itself characterized the November 2021 email as referring to contract sales. *Id.* (noting that in Seneca's rebuttal, Seneca cited the

---

no evident connection between the email and any specific product for which Seneca requested an exclusion. *See Recommendation Document* at 2; PPR22-00243-258.

[2] "PRR__" and "CRR" refer to the public and confidential administrative record of the remand redetermination in this case, ECF Docket Nos. 59 and 60, filed on April 11, 2024.

email as evidence that "USS has been unwilling to commit to any contractual volume thus far, most recently in November 2021"); *see also* PRR22-00243-035.

Thus, ultimately, Commerce considered and determined that the email from November 2021 concerned the availability of steel available through contract sales and did not undermine U.S. Steel's certified statements that it could provide the full quantity of requested products through spot sales by the delivery date. *Recommendation Document* at 4. Commerce explicitly credited U.S. Steel's statements that it would be able to provide the requested quantity of steel through spot sales. *Id*. at 5. Thus, Commerce provided an explanation for crediting U.S. Steel's contemporaneous statements during the administrative proceeding concerning its future production and availability of spot sales over Seneca's snippet of prior sales correspondence that Commerce (and Seneca too) attributed to contract sales. *Id*. at 4.

For the remaining three October 2022 requests, Commerce considered the 360-day lead time needed for Seneca's foreign seller to deliver the requested product. *Id*. at 5. Again, Commerce analyzed the evidence and concluded that the November 2021 email indicating that U.S. Steel could not provide steel in February 2022 concerned the ability to offer contract sales, and did not undermine U.S Steel's confidential and public statements that it could, through spot sales, provide steel at a later date (a date that was still earlier than Seneca's foreign supplier could deliver). *Id*. at 6.

B.    January 2022 Exclusion Request (275504)

Commerce also examined the November 29-30, 2021 email within the context of the January 2022 exclusion request. *Recommendation Document* at 7-8. Commerce evaluated the November 2021 email correspondence because it fell within ninety days of

the exclusion request. *Id.* at 7. Commerce considered that Seneca indicated 360 days for the import delivery time and that U.S. Steel indicated that it could supply the requested volumes within 270 days (or earlier, as indicated in its confidential submission). *Id*. at 8; PRR22-0243-295; CRR22-0243-324 to 325. As above, Commerce concluded that a statement that U.S. Steel could not supply products through contract sales in February 2022 did not preclude its ability or negate its representation that it could supply the requested product by late-October 2022 (or even earlier) through spot sales. *Id.*

  C. <u>March 15, 2022 Exclusion Requests (Nos. 283368 and 283669)</u>

  Seneca placed on the record the November 2021 email to support its March 2022 requests. Commerce explained that its policy is to afford no weight to sales correspondence that is more than 90 days old. *Id*. at 8. In light of the Court's remand order, however, Commerce provided a further explanation for its conclusion that the November 2021 email, which "only speaks to {U.S. Steel's} capacity to deliver the product in February 2022 has little bearing upon its ability to" deliver by import delivery time reported by Seneca, which was 360 days. *Recommendation Document* at 9; PRR-22-0243-332. Accordingly, Commerce found no conflict or contradiction between U.S. Steel's apparent inability to commit to contract sales for tin plate in February 2022 and U.S. Steel's certified statement during the administrative proceeding that it would still be in the business of manufacturing and selling domestic tin plate by late October 2022 through spot sales. *Recommendation Document* at 9.

  Commerce also considered Seneca's rebuttal submission of an unidentified and undated summary chart that purports to show its foreign supplier's expected delivery dates. Commerce determined that the document was relevant to its consideration of the

two March 2022 exclusion requests. *Recommendation Document* at 9; CRR22-0243-422. Contrary to Seneca's suggestion, however, Commerce did not conclude that the information was "dispositive" as to its calculation of Seneca's import delivery time because Seneca had stated a different delivery date at the outset of the process (360 days, *see* PRR22-0243-332), and that was the delivery date for which the objectors had public notice and opportunity to respond. Commerce considered the evidence provided by Seneca and continued to rely upon the earlier-provided date as the operative delivery date. *Recommendation Document* at 10. Nonetheless, given that the information did not negate or contradict Seneca's certified representations as to its import delivery times, Commerce observed that this rebuttal document was "corroborative" of the earlier-provided dates. *Id*.

Finally, Commerce considered emails between Seneca and U.S. Steel which occurred between February and April 2022. *Recommendation Document* at 10; CRR22-00243-369 to 371. Commerce evaluated these emails, which reflect a course of negotiation that occurred after Seneca placed its order with its foreign supplier, and determined that they "do not pertain to the products specifically at issue in these exclusion requests." *Recommendation Document* at 10.

Consistent with the remand order, Commerce also provided additional rationale and explanation for its treatment of contract sales versus spot sales, as well as its treatment of the past business relationship between Seneca and U.S. Steel. *Recommendation Document* at 11-12.

Commerce continued to deny all 8 exclusion requests.

ARGUMENT

I.     Standard of Review

"The same standard of review applies to the review of a remand determination as to the review of the original determination." *Bethlehem Steel Corp. v. United States*, 223 F. Supp. 2d 1372, 1375 (Ct. Int'l Trade 2002).

In a civil action brought under 28 U.S.C. § 1581(i), "the Court of International Trade shall review the matter as provided in section 706 of title 5." 28 U.S.C. § 2640(e). "When reviewing a decision of the Court of International Trade in a suit brought pursuant to 28 U.S.C. § 1581(i), {the Court} appl{ies} the standard of review set forth by the Administrative Procedure Act {(APA)}, and will 'hold unlawful and set aside {agency} action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Canadian Lumber Trade All. v. United States*, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (quoting 5 U.S.C. § 706(2)) (citing *Dixon Ticonderoga Co. v. United States*, 468 F.3d 1353, 1354 (Fed. Cir. 2006)).

The APA's arbitrary and capricious standard is "narrow and highly deferential." *Sierra Club v. U.S. Dep't of Interior*, 990 F.3d 909, 913 (5th Cir. 2021) (citation omitted). In applying the standard, a court "is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). "A court simply ensures that the agency has acted within a zone of reasonableness and, in particular, has reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021).

II.    <u>The Court Should Sustain The Remand Redetermination</u>

As we demonstrate below, Commerce's remand redeterminations are reasonable, in accordance with law, and address the deficiencies identified in the Court's remand order.  Accordingly, the Court should sustain the remand redeterminations and enter judgment in favor of the United States.  Seneca's arguments ask this Court to reweigh evidence and substitute its judgment for that of Commerce, which this Court cannot do.

A.    <u>Commerce Complied With The Remand Order</u>

On remand, Commerce complied with, and addressed the issues identified in, the remand order.  Seneca contends that Commerce failed to comply with or address certain aspects of the remand order.  Pl. Cmts. at 11-17.  Seneca's arguments, however, amount to mere "disagree{ment} with" Commerce's "weighing of the evidence," which "it is not enough for the courts to overturn {Commerce's} decisions as arbitrary, capricious, or contrary to law."  *Level the Playing Field v. FEC*, 961 F.3d 462, 465 (D.C. Cir. 2020).

Seneca first argues that Commerce disregarded "overwhelming evidence" that U.S. Steel refused to offer any volume to Seneca in November 2020 and November 2021. Pl. Cmt. at 11.  To the contrary, Commerce specifically addressed these two pieces of evidence.  Commerce explained that the November 2020 internal email (and in some cases, the November 2021 emails) were more than 90 days from the dates of the subject exclusion requests, and as such, had limited probative value as to U.S. Steel's ability to produce and deliver the requested product.  Specifically, Commerce found that these emails about discussions of past product availability were of limited probative value to whether U.S. Steel presently and prospectively had the availability and expectation to

continue domestically manufacturing the steel products at issue.  *Recommendation Document* at 2; 8.

Seneca also criticizes Commerce's determination that the emails were generic in nature and did not specifically relate to a specific requested steel product.  Pl. Cmts. at 12.  Steel products are myriad and diverse, with requestors required to provide information such as thickness, diameter, strength, and chemical composition.  For example, Seneca's exclusion request no. 257712 defined the requested steel product as "prime electrolytic tinplate according to ASTM A623M, Type L, DR8.5, CA, 7C Melted Finish, CDC-3 Chemical Treatment, coating 1.1gm2/2.2gm2, 58# Base Weight (0.16205mm thickness).  PRR22-0243-228.  The emails in question make no reference to these specifications or specific products.  Commerce acts rationally and reasonably by affording little weight to: (1) Seneca's hearsay statements about U.S. Steel's availability and (2) generic business inquiry emails that do not clearly relate to a specific product, such as that identified above.  *Cf. Dibble v. Fenimore*, 545 F.3d 208, 220 (2d Cir. 2008) (finding that an agency had "ample justification" for affording little weight to undisputed pieces of evidence that were speculation, unsubstantiated generalizations, or hearsay").

Seneca contends that Commerce's policy to disregard sales information if it is over 90 days old, is qualified by "absent additional accompanying information," and that it has provided such "additional accompanying information."  Pl. Cmts at 15.  However, this semantics argument appears to rely upon the very same stale information as its qualifying "additional accompanying information."  In any event, Seneca's complaint amounts to only a disagreement about the weighing of the evidence, which is insufficient to reverse Commerce's decisions.

On remand, Commerce considered the evidence "countervailing" U.S. Steel's certified statements.  Pl. Cmts. at 16; *Remand Order*, 663 F. Supp. 3d at 1339. Commerce specifically explained how the November 2021 emails (which related to U.S. Steel's product availability in February 2022) did not cause it to disregard and ignore U.S. Steel's certified statements about its ability to manufacture and deliver product through spot sales *at later dates*.  *Recommendation Document* at 3; 5; 8.  Commerce considered U.S. Steel's explanations concerning "production constraints in 2020 and 2021 due to the COVID-19 pandemic" that clarify why U.S. Steel in November 2021 was unable to contractually promise the product for February 2022, but would still be able to produce product through spot sales.  *Recommendation Document* at 5; PRR22-0243-262. Seneca's only undisputed evidence is that prior to filing its exclusion request, during a worldwide pandemic, it and U.S. Steel were unable to consummate specific contractual commitments for a specific delivery date of its desired product.  This evidence was not ignored by Commerce, nor is it the standard for granting Seneca's exclusion requests.

As explained by Commerce in its remand redetermination, for a requestor to obtain an exclusion, it must be able to satisfy the regulatory criterion "that the article is not produced in the United States in {a} sufficient and reasonably available amount." *Recommendation Document* at 3 (*citing* 15 C.F.R. Part 705 Supp.1 ¶ (c)(6)).  Pursuant to the regulations, "reviews will be made on a case-by-case basis to determine whether the requester has shown that the article is not produced in the United States in sufficient and reasonably available amount."  15 C.F.R. Part 705 Supp.1 ¶ (c)(6).

The term "reasonably available amount" means "that the amount that is needed by the end user requesting the exclusion is not available immediately in the United States to

meet its specified business activities." *Id.* ¶ (c)(6)(i). The term available ''immediately'' means "that a product (whether it is currently being produced in the United States, or could be produced in the United States) can be delivered by a U.S. producer . . . by a date earlier than the time required for the requester to obtain the entire quantity of the product from the requester's foreign supplier." *Id.* Understandably, the test for the agency, and this Court, is not whether the parties already have or will enter into a binding agreement because there are myriad business and economic reasons driving both parties' decisions, such as who to contract with, under what terms, and for how much.

Rather, the relevant, requisite finding by Commerce before it can grant a party an exclusion of the President's national security tariffs is that "the article is not produced in the United States in {a} sufficient and reasonably available amount." *See id.* Here, pursuant to the regulation, Seneca was entitled to the agency's full consideration of its exclusion request and evidence in its quest to show that the United States lacked enough timely domestic production to potentially fill its potential orders. It is not entitled to a determination of whether it has or will obtain a contract with U.S. Steel. Thus, Commerce sufficiently addressed the contrary record evidence concerning prior unavailability. *See* Pl. Cmts at 27 (citing *NLMK Pa v. United States*, 617 F. Supp. 3d 1316, 1327 (Ct. Int'l Trade 2023)).

Consistent with the remand order, Commerce also addressed the distinction between spot sales and contract sales. These are commercial terms, to be negotiated between buyer and seller, and they are irrelevant for Section 232 regulatory purposes. *Recommendation Document* at 11. Seneca contends that this Court found that Commerce

erroneously drew an "illusory distinction between the availability of spot versus contract sales." Pl. Cmts. at 18.  Not so.

The Court stated that, "{i}f Commerce again determines that {U.S. Steel} can meet Seneca's demand via spot sales and Seneca's evidence is cabined only to the unavailability of contractual volume, then Commerce will need to justify that read of the record on remand." *Remand Order*, 663 F. Supp. 3d at 1340.  As Commerce explained, Seneca's evidence was largely stale and generic; that, along with the finding that it related to contractual availability, is reasonable and sufficient to sustain the remand redetermination.

B.    Commerce Did Not Depart From Past Practice

Seneca also argues that Commerce acted arbitrarily by departing from past practice, by referencing a single exclusion decision issued for a different requestor.  Pl. Cmts at 9; 20-21; Attachment 1.  As a preliminary matter, the attachments Seneca references are not part of the record, and therefore was not considered by the decision-maker, for any of these exclusion requests.  The remand decisions explain that the decisions were based on the original administrative record, subject matter expert opinions, and the 2018 report to the President.  *See, e.g*., Final Results Pursuant to Court Remand at p. 1-2.  Judicial review is generally limited to the full administrative record before the agency at the time it rendered its decision, *see Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971); *Axiom Res. Mgmt, Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009).[3]  Section 232 exclusion requests are reviewed and

---

[3]  "{S}upplementation of the record should be limited to cases in 'which the omission of extra-record evidence precludes effective judicial review.'"  *Axiom*, 564 F.3d

decided "on a case-by-case basis," on the record of the specific request.  15 C.F.R Part 705 Supp.1 ¶ (c)(6).  On this basis alone, the Court should decline to entertain Seneca's argument based on extra-record evidence.

Moreover, Seneca merely cites past decisions in which, based on different factual records and different objectors/requestors, including different language in the sales correspondence, Commerce reached a different conclusion about domestic availability. This does not evidence arbitrary action or departure from established practice, but merely consideration and analysis of different factual records.  "{I}solated investigations do not prove the existence of past practice, but rather only that Commerce thought differently on different facts and different times." *Ancientree Cabinet Co., Ltd. v. United States*, 565 F. Supp. 3d 1373, 1381 (Ct. Int'l Trade 2022) (cleaned up).  Indeed, the very "case-by-case nature" of these fact-bound analyses "complicates any efforts to divine rules from past agency practice." *Fujian Yinfeng Imp. & Exp. Trading Co. v. United States*, 607 F. Supp. 3d 1301, 1316 (Ct. Int'l Trade 2022) (cleaned up).

Seneca observes, unremarkably, that Commerce has a past practice of "analyz{ing} the objection filed, as well as any contemporaneous sales correspondence submitted, and determin{ing} whether the objector meets all three criteria: quantity, timeliness, and quality."  Pl. Cmt. at 20.  To be clear, Commerce's regulations provide that Commerce will grant an exclusion only "if an article is not produced in the United States in a sufficient, reasonably available amount, and of a satisfactory quality, or for specific national security considerations."  15 C.F.R. Part 705 Supp. 1 ¶ (c)(5)(i).

---

at 1380 (citation omitted).  Seneca has not alleged such circumstances are present here, and there are none.

Commerce has explained that it will reject an exclusion request if at least one objector can "deliver the product (identical or substitute quality), {in} the quantity requested" and "in less time that it would take the requestor to obtain it from abroad. *See Recommendation Document* at 11. Available quantity and delivery time are simply two aspects of the "sufficient, reasonably available amount" criterion.

More specifically, Seneca argues that Commerce failed to consider available quantity and/or conflated quantity with timeliness. Pl. Cmts. at 22. As explained above, delivery date and available quantity are simply two aspects of the same "sufficient, reasonably available amount" criterion. And Commerce correctly considered both aspects. U.S. Steel provided certified statements attesting to their ability to manufacture and deliver the volume requested by Seneca. *See, e.g*., PRR22-243-026 and 030 to 032 (objection to exclusion no. 257423). Commerce considered emails referencing U.S. Steel's inability to provide their requested volume through contract sales. *Recommendation Document* at 5; *see* PRR22-00243-258. Other than its general refrain that U.S. Steel has, in years past, under different circumstances, been unable or unwilling to offer steel products, Seneca has not identified any record evidence that detracts from Commerce's finding that U.S. Steel has the present capacity to manufacture and deliver the requested quantities of steel.

Seneca also argues that Commerce failed to follow its regulation when examining whether the requested {steel} was immediately available. Pl. Cmts. at 23-26. Commerce must determine whether a domestic supplier can deliver the product "in a time period

equal to or less than the time needed for the requester to obtain the product from their foreign supplier."  15 C.F.R. Pt. 705 Supp. 1 ¶ (c)(6).[4]

Seneca alleges that, per Commerce's regulations, the "proper starting point" should be "the dates on which Seneca actually placed the purchase orders {with its foreign seller}, not the date on which Seneca filed the requests."  Pl. Cmts. at 24.  Not so. There is no regulatory requirement or provision that a requestor will have necessarily placed a purchase order of foreign steel *prior* to submitting an exclusion request; the exclusion filing date is the most consistent date from which Commerce, and objectors, can measure any objector's capability of manufacture and delivery.  Indeed, requestors must identify the applicable requested volume for covered future entries in their exclusion requests.  As a result, requestors must anticipate their need for future and/or *past* orders *before* submitting a request with Commerce, to ensure maximum exclusion coverage.  In addition to a granted exclusion being valid for one year, the effective date is retroactive to the date of the request's submission, allowing for duty-free treatment of imports that arrived on or after the date of the submission  15 C.F.R. Part 705 Supp. 1 ¶ h(2)(iii).

---

[4]  Seneca also contends that Commerce "misunderstood" its own exclusion form when it calculates availability.  Pl. Cmts. at 19.  This is incorrect.  Commerce consistently calculates delivery time in the same way, by adding the figure provided in box 2.d ("Estimate the number of days required to take delivery of the product covered by this Exclusion Request, from the time the purchase order is issued by your organization") with the figure in the box 2.f ("Estimate the number of days required to ship the product covered under this Exclusion Request, from the foreign port of departure to the Exclusion Requester's loading dock"), plus any adjustments.  The equation for calculating delivery times is displayed on ITA's recommendation document, the terms "2.d" and "2.f." are defined in the "Field Definitions (Requestor Form)" section and an explanation of the equation is listed in the "Notes" section of ITA's recommendation document.  *See, e.g.*, PRR 22-00243-007 to 009.

Seneca also complains that Commerce focused on the delivery dates Seneca itself identified in its original submission, and not expected delivery dates provided in an unspecified document submitted with its rebuttal.  Pl. Cmts. at 24 (referencing *Recommendation Document* at 9 and request nos. 283368 and 283369).  But it is plainly fair for objectors to be able to rely upon the information provided in an initial exclusion request.[5]  Indeed, as Seneca acknowledges, it knew that it had already placed purchase orders and "when deliveries of those orders would be complete" at the time it filed the requests.  Pl. Cmts. at 25.   Moreover, Commerce acknowledged that the later-provided expected delivery dates merely corroborated the original information, and those dates fell within the original timeframe Seneca provided for delivery.  *Recommendation Document* at 10.

   C.    Commerce's Regulations, Which Focus on *Current* Domestic Availability, Are Reasonable

Finally, Seneca argues that Commerce's overall "prospective analysis" leads to "absurd results," and therefore violates the Administrative Procedure Act.  Pl. Cmts at 28-31.  In Seneca's view, Commerce acts unreasonably by focusing on whether there is evidence of "future, theoretical capacity" rather than "past refusals to supply."  *Id.* at 30.  Commerce's approach, however, is reasonable, cognizant of the dynamic steel industry and market, and consistent with the purpose of the Section 232 measures.

The national security goal of the Section 232 tariffs is to strengthen the domestic steel manufacturing industry, with an aim of increasing domestic capacity utilization.

---

   [5]  The law recognizes the corollary that arguments or evidence raised for the first time in a reply brief are generally not considered.  *See United States v. Ford Motor Co.*, 463 F.3d 1267, 1276 (Fed. Cir. 2006).

*Transpacific Steel LLC v United States*, 4 F.4th 1306, 1313 (Fed. Cir. 2021);

*Proclamation 9705: Adjusting Imports of Steel into the United States*, 83 Fed. Reg.

11,625, 11,626 ¶ 8 (Mar. 15, 2018).  The President expected that the imposition of the

Section 232 tariffs would, over time, lead to the improvement of the health of the

domestic steel manufacturing industry.  *Proclamation 9705*, 83 Fed. Reg. at 11,626-27

¶¶ 8; 11.  Imposition of the tariffs would lead to a reduced import penetration rate, giving

domestic manufacturers the market opportunity to increase production capacity.

 Commerce's procedures and criteria are consistent with the purpose of the Section

232.  Precisely *because* domestic capacity utilization is expected to increase and improve

with time, Commerce's exclusion process considers the most current situation of the

capabilities of domestic steel manufacturers.  Commerce's regulatory approach,

therefore, appropriately does not focus on past course of dealings between commercial

parties.  In that sense, Commerce acted consistently with the purpose of the exclusion

program by crediting U.S. Steel's specific certified statements regarding specific products

over generic business inquiry correspondence.

 Proclamation 9705 authorized the Secretary of Commerce to "provide relief"

from Section 232 duties "for any steel article determined not to be produced in the United

States in a sufficient and reasonably available amount or of a satisfactory quality."

*Proclamation 9705*, 83 Fed. Reg. at 11,627.  The President did not direct that the

Secretary make the determination of domestic unavailability in any particular way or with

any particular test.  Further, Commerce appropriately limits exclusions for purchasers of

foreign steel, such as Seneca, in the limited situations in which the specific product is not

currently available domestically.

Throughout its brief, Seneca conflates the regulatory criteria of domestic *unavailability* (that is, that the particular steel product is not manufactured in the United States) with a particular manufacturer's "refusal to supply" or engage in business relationships. Pl. Cmts. at 7; 9; 30.[6] Commerce's inquiry reasonably and rationally focuses on whether specific steel products are currently domestically manufactured. The most relevant and probative evidence of current availability is a domestic manufacturer's statements about their current capacity to produce and deliver steel; not stale information about business inquiries or negotiations from months or years earlier.

Nor is the purpose of the Section 232 measures served by granting exclusions simply because commercial terms of sale are not as favorable to a buyer as they would prefer. Commerce's role is not to facilitate commercial transactions or foster business relationships, nor may it dictate that a requestor must purchase steel from an objector. *Section 232 Steel and Aluminum Tariff Exclusions Process*, 85 Fed. Reg. 81,060, 81,068 (Dep't of Commerce Dec. 14, 2020) (*Interim Final Rule*). Indeed, allowing duty-free importation of foreign steel based solely on business preferences or vague assertions of unavailability would undermine the effectiveness of the President's national security measures. Buyers remain free to make their own economic decisions about whether to accept the terms and prices of any particular seller, domestic or foreign. The commercial terms upon which a domestic steel manufacturer may make its products available (spot sales versus contract sales) is irrelevant for purposes of Commerce's analysis. *Recommendation Document* at 11.

---

[6] Notably, Seneca cites no record evidence, and there is none, that any domestic manufacturer ever *refused* to sell steel on any terms to Seneca.

Moreover, Commerce generally does not give "considerable weight to the evidence of history or interaction {between} requestors and objectors . . . unless it is clearly related to the denial of a prior request for the same product." *Recommendation Document* at 12. Commerce declines to do so in light of myriad reasons why a domestic manufacturer might not be able or willing to supply (economics, practical, capacity) in the past, circumstances which may be reasonably expected to change in the future. *Id*.

Finally, as we have previously explained, the regulations do provide an avenue for relief for the situation of which Seneca complains. *See* Pl. Cmts at 29. If, after Commerce denies an exclusion request, "the objector thereafter refuses to fulfill the requester's orders of the steel article in a sufficient and reasonably available amount or in a satisfactory quality, "the requester may submit a new request with documentation evidencing this refusal." *Interim Final Rule*, 85 Fed. Reg. at 81,065. Thus, a requestor may "submit a successive exclusion request" in the situation where an objection may have resulted in the denial, but "no objector was able to deliver the steel or aluminum in the quantity and quality needed." *Id. at* 81,068. If U.S. Steel refuses or cannot accept an order from Seneca after the date of the denials, the remedy is for Seneca to return to request another exclusion, including this information. But it was not error for Commerce to deny the exclusion request before giving U.S. Steel the opportunity to be true to its word.

Thus, Commerce's regulations already contemplate, and provide a unique option for importers in the circumstances as Seneca alleges. It cannot be said that Commerce has "failed to consider an important aspect of the problem." *Motor Vehicle Manufacturers*, 463 U.S. at 43. That avenue for relief was available to Seneca; Seneca

cannot complain that Commerce did not apply the regulation when Seneca never returned

to renew its requests with a showing that U.S. Steel has not yet been unable to

manufacture and deliver the specific products identified in Seneca's exclusion requests.[7]

*See* Pl. Cmts. at 26-28.

<u>CONCLUSION</u>

  For these reasons, we respectfully request that the Court sustain Commerce's

remand redetermination and enter judgment in favor of the United States.

       Respectfully submitted,

       BRIAN M. BOYNTON
       Principal Deputy Assistant Attorney General

       PATRICIA M. McCARTHY
       Director


<u>OF COUNSEL</u>:

| | |
|---|---|
| | /s/Tara K. Hogan |
| TRISTAN DE VEGA | TARA K. HOGAN |
| Attorney | Assistant Director |
| | Civil Division |
| KENNETH KESSLER | Commercial Litigation Branch |
| Senior Counsel | Department of Justice |
| Office of the Chief Counsel for | P.O. Box 480, Ben Franklin Station |
| Industry and Security | Washington, D.C. 20044 |
| Department of Commerce | Tel.: (202) 616-2228 |
| | Email: Tara.Hogan@usdoj.gov |
| | |
| June 14, 2024 | Attorneys for Defendant |

---

[7] *See* Def. Post-Hrg. Submission, July 21, 2023, ECF Docket No. 48 at 2.

<u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Standard Chambers Procedures ¶ 2(B)(2), I hereby certify that this document contains <u>5,426</u> words.


<u>/s/Tara K. Hogan</u>